RANDYE B. SOREF (State Bar No. 99146)
rsoref@polsinelli.com
TANYA BEHNAM (State Bar No. 322593)
tbehnam@polsinelli.com
Polsinelli LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone: (310) 556-1801
Facsimile: (310) 556-1802

JERRY L. SWITZER, JR. (pro hac vice pending)
jswitzer@polsinelli.com
JEAN SOH (pro hac vice pending)
jsoh@polsinelli.com
Polsinelli PC
150 North Riverside Plaza, Suite 3000
Chicago, IL 60606
Telephone:   (312) 819-1900
Facsimile:   (312) 819-1910

*Attorneys for Busey Bank*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:** | Case No. 20-30819 |
| **BENJA INCORPORATED,** | Chapter 11 |
| **Debtor.** | Judge Dennis Montali |
| | **DECLARATION OF JOE ALOUF IN SUPPORT OF CREDITOR BUSEY BANK'S (MOTION FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE OR, IN THE ALTERNATIVE, FOR CONVERSION OF CASE TO CHAPTER 7 OF THE BANKRUPTCY CODE** |

Polsinelli LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
310.556.1801

DECLARATION OF JOE ALOUF

75117163.3

stamp:
Case: 20-30819    Doc# 21    Filed: 10/20/20    Entered: 10/20/20 17:51:40    Page 1 of 125

Polsinelli LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
310.556.1801

## DECLARATION OF JOE ALOUF

Pursuant to 28 U.S.C. § 1764, Joe Alouf declares as follows under the penalty of perjury:

1.     Except as otherwise indicated herein, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.

2.     I am a resident of the State of California.  I am over the age of twenty-one and have never been convicted of a felony or crime of moral turpitude.

3.     I make this Declaration in support of Creditor Busey Bank's Motion for the Appointment of a Chapter 11 Trustee or, in the Alternative, for Conversion of Case to Chapter 7 of the Bankruptcy Code (the "Motion") filed by Busey Bank (the "Bank") in this action. Unless otherwise defined herein, capitalized terms have the meanings assigned to such terms in the Motion.

4.     I am a Certified Public Accountant, and I have over three decades of corporate finance and restructuring experience in a multitude of industries.

5.     I frequently serve as a part time or interim Chief Financial Officer (CFO) or other C-level positions for companies experiencing rapid growth, or those in financial distress and need of operational transformation or business model reengineering.

6.     I have significant experience in corporate governance and leadership positions. I served in an executive or board director or observer capacity for public and private corporations, including Mrs. Fields Cookies, Chicken of the Sea, Guckernheimer, Grubb and Ellis, Bills DollarStores, AirMethods, Victoria Jewelry, Delia's Cleaners, Neuvant Aerospace, Foote and Davies, Minami International and QT Optoelectronics.

7.     In late May 2020, I was contacted by an executive recruiter I know about a possible engagement with a San Francisco based company called Benja Incorporated ("Benja").  I was told that Benja is a $25 million per year revenue e-commerce company

Polsinelli LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
310.556.1801

(information regarding Benja is available for review on its website at www.benja.co) led by a young, charismatic but relatively inexperienced Chief Executive Officer, Andrew J. Chapin ("Chapin"), and that Benja's Board of Directors wanted a seasoned financial consultant to provide financial guidance and discipline to Chapin and the company. I was told it would be a part-time engagement of 15-20 hours per month where I would be responsible for putting financial reporting and other systems in place to enable Benja to grow its business. As the business would grow, either I would scale up my time, or a more permanent CFO would be hired.

8.    Thereafter, Chapin agreed to have Benja engage me as a consultant on a trial-basis, initially to review and comment on a proposed $1 million secured loan transaction that Chapin wanted Benja to enter into with E-Revshare Core, LLC d/b/a Empowerment Capital ("Empowerment"). During our discussions regarding the potential Empowerment transaction, Chapin mentioned that Benja had a $3 million secured line of credit with the Bank that was untapped. I advised Chapin that the proposed Empowerment transaction was not attractive because its terms were too expensive, and that Benja should simply draw on the much cheaper and available Bank line of credit. Chapin said he wanted to "keep his powder dry" with the Bank line of credit and that the Board was pushing to proceed with the Empowerment transaction. I also asked how he could do the Empowerment transaction given that the Bank likely had a lien on all of Benja's assets and asked to see the underlying Bank loan documents. Chapin claimed that the Bank line of credit was secured solely by Benja's "deposits" (as I later learned, the Bank has a lien on all of Benja's assets), so it would not be an issue. He provided me a copy of the Bank's Promissory Note, but would not provide me the rest of the Bank's loan documents that would reflect the nature and extent of the Bank's security interest.

75117163.3

Polsinelli LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
310.556.1801

9.    After these discussions, I did not hear anything more from Chapin or Benja for several weeks.  Then, in early June 2020, I was contacted by a Michael Stern with Empowerment.  Mr. Stern advised me that he had closed and funded the $1 million loan transaction on or about June 5, 2020, and that Chapin had advised him to contact me, who Chapin advised to be Benja's incoming Chief Financial Officer, to provide Mr. Stern various financial information regarding Benja, including bank statements, financial statements, etc.  I told Mr. Stern that I was not aware that the transaction had closed or that Chapin wanted him to talk with me.  I told Mr. Stern that I would look into the issues and revert back to him.

10.   On or about June 1, 2020, Chapin extended me an offer to become Benja's part-time CFO.  I was first retained as an independent contractor, through CFOs2go, but shortly thereafter was hired as a W-2 employee of the company, retroactive to July 1, 2020.

11.   In order to perform my duties as CFO, I requested access to all books and records of the company so that I could, among other things, get up to speed and start preparing GAAP-compliant financial statements to comply with the company's reporting requirements and enable Benja to be in a position to raise capital in order to grow.  Chapin advised me that he would arrange a call with the company's outside bookkeeper, a Jennifer Li, and he would provide me the access I needed.  Despite his statements, Chapin never put me in touch with Ms. Li, or provided me access to the company's books and records, despite my repeated requests over time.  (Much later I finally made contact with Ms. Li, who said that she had done very little work for Benja, was never provided access to the company's books and records, and had learned that Chapin had falsely represented to lenders and investors that she served as the company's CFO, had created a fictitious Benja email account for her from which he was corresponding with investors, and submitted tax returns purportedly signed by an individual in her firm, all without her knowledge.)

12.     Throughout July and August, I received repeated requests, often daily, from Mr. Stern at Empowerment for all of the Benja financial records he requested back in June.   I advised Mr. Stern that I was still not being granted access to the company's books and records and that I would continue to try to get the information he wanted.   Mr. Stern grew more and more concerned about the situation.

13.     In late July 2020, in preparation for a scheduled call with Mr. Stern, and still without access to the accounting system, I asked Chapin to provide me with a copy of the financial statements. Chapin sent me a copy of Benja's balance sheet dated as of June 30, 2020. A true and correct copy of the financial statement I received from Chapin, as well as the transmittal e-mail are attached hereto as **Exhibit A**.   The financial statement does not reflect the outstanding loans from either the Bank or Empowerment.   (Nor does the financial statement reflect the outstanding $3.5 million loan from MHC (as set forth below) and other loans from individuals to the company.)  It also shows little by way of accounts payable.  When I specifically asked as to the existence of any debt as of the date of the report, Chapin replied that there was none, since no borrowings existed on the Busey line as of that date, and that Empowerment didn't fund until July.   When I subsequently confirmed with Mr. Stern that Empowerment funded on June 5th, I pointed out to Chapin that the balance sheet was incorrect and that the discrepancy needed to be fixed.   In response, he claimed that the Empowerment loan did not need to be listed because it was a "revenue sharing" agreement (even though the loan was fully secured, and as a CPA, I believe and so advised Chapin that the loan is not an off-balance sheet obligation) (I later found out that Benja had other creditors, including MHC with significant debt outstanding as of that date, loans from an investor, and that the Bank line of credit was drawn at the time.)   I noted, again, that regardless of the balance sheet discrepancies, in my view, after obtaining and reviewing the UCC filings, that contractually the

75117163.3

Polsinelli LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
310.556.1801

Polsinelli LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
310.556.1801

Bank was secured by all assets of the company and hence the company was in default with not only Empowerment, but also with the Bank. Chapin claimed again that the Bank's security interests were limited to "deposits" and that Empowerment was okay with that lien because Empowerment's security was accounts receivable. He further indicated that he had a legal opinion from Benja's outside counsel, Fenwick & West ("Fenwick"), to that effect. I later learned from Fenwick that they never worked on any matter related to the Bank.

14.     Given the situation with Empowerment and my concern that the Empowerment transaction was a violation of the Bank's loan documents, I pressed Chapin to provide me copies of all of the Bank loan documents. Chapin finally provided me a copy of the Bank's Loan Agreement, which confirmed that the Bank's line of credit is a traditional asset-based loan secured by all assets of Benja. I told Chapin that we needed to resolve the conflict between the Bank and Empowerment liens and the outstanding defaults with both lenders. Chapin finally agreed to authorize me to address the defaults, and I proceeded to discuss the situation with Mr. Stern. Although concerned, Mr. Stern tentatively agreed to renegotiate, including re-price, the Empowerment transaction to reflect the loan as unsecured, or provide for a second lien behind the Bank.

15.     When I told Chapin that I wanted to talk with the Bank directly to discuss the situation, disclose the defaults, and work on a resolution, he claimed that the Bank was aware of the Empowerment transaction and had agreed to amend its security interest to be limited to "deposits" (I later learned this was not true), and that he would facilitate an introduction with the Bank. Despite his representation, Chapin did not put me in touch with the Bank. All along Chapin assured me that the Debtor's net position with the Bank was positive (deposits less debt). I later realized this was very much the reverse.

75117163.3

Polsinelli LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
310.556.1801

16.     Unbeknownst to me and the Board at the time, Chapin caused Benja to borrow an additional $2 million from the Bank in August, bringing the total outstanding Bank loan to $5 million.

17.     On September 11, 2020, I received an email from Chapin asking me to talk with a Mike Roznowski from Fractal Capital Advisors, who Chapin said was working to introduce Benja to potential lenders.  Shortly thereafter, I got on a call with Mr. Roznowski, who said that he had been working with Chapin for several months and was seeking to arrange a new loan from MidFirst Bank ("MidFirst") and wanted me to talk with MidFirst to answer questions regarding Benja's finances.  Mr. Roznowski and I then got on a call with MidFirst representatives, who said they were ready to issue a term sheet for a minimum $5 million loan to Benja but needed to obtain various financial records as part of their due diligence.  I told them that I did not yet have access to the company's books and records, and that I would need time after getting access to prepare the GAAP-compliant financials they were requesting. MidFirst said they would proceed with their credit review and prepare the loan for committee approval pending receipt of the financial information.  I never received access to the books and records, and MidFirst never funded the loan.

18.     Immediately after the MidFirst call, I asked Mr. Roznowski to call me.  During that call I asked him how the company could get a secured loan from MidFirst given that Benja already had outstanding loans with the Bank and Empowerment.  Mr. Roznowski said that Chapin had never told him about these outstanding loans.  Mr. Roznowski then told me that Benja had another outstanding loan with MHC Financial Services, Inc. ("MHC") of approximately $3.5 million, the MHC loan was in default, MHC had made a demand for payment, Benja and MHC had entered into a standstill agreement, and the proposed MidFirst

75117163.3

Polsinelli LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
310.556.1801

loan was intended to help pay off the MHC loan. This was the first time I had heard about the MHC loan.

19. I also learned from Mr. Roznowski that Chapin had previously attempted to get a loan from UMB Bank ("UMB"), and that in anticipation of the loan UMB filed a UCC financing statement against Benja. He indicated that as part of its preparation to fund the new loan, UMB discovered various inconsistencies with information it was receiving from and was becoming suspicious of Chapin. Subsequently, in early August, UMB decided not to proceed with the proposed loan and terminated its security interest.

20. On September 14, 2020, I called Chapin to confront him about the MHC loan. I also told him that MHC's security interest appeared in lien searches I had obtained. He first denied any knowledge of MHC and said it was a mistake. He later acknowledged that MHC had previously made a loan, but that the loan had been refinanced in 2019, and was paid off with the loan from the Bank. I told Chapin that I believed he was lying and wanted to understand the true story. Chapin responded that "all of this can be explained" in due course.

21. Based on my growing concerns about Chapin's actions, I contacted one of Benja's Directors, Scott Sklar, on September 14, 2020. I participated in a call that night with both Mr. Sklar and Nick Floppe, both Directors of Benja, and shared with them my findings and my concerns about Chapin and Benja. On September 15, 2020, I requested to have a call with the company's Board and counsel, Fenwick, to discuss my concerns. In the day leading to this call, I learned that Benja was in the process of raising $1.5 million in equity of which about $1 million was already funded.

22. The call took place on September 17th. During the call, I stated that one of my concerns is that a condition to the equity raise is a certification by Chapin to investors that Benja was not in default of any loans. This certification was problematic, as the Bank,

75117163.3

Polsinelli LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
310.556.1801

Empowerment and MHC loans were in default at that time. I also laid out a plan to reach out to Empowerment and the Bank (note that I was of the impression that MHC was fully paid off at that point, which I later learned was not the case). I demanded access to the books and records, so that I could begin the process of accurately presenting the company's financial condition to lenders and stockholders. Chapin committed to provide this access no later than the end of the business day. However, Chapin never provided me the necessary access.

23. Later that day, Empowerment emailed Chapin advising him that unless I was given full access to the books and records, they would accelerate their loan the following day.

24. Late that evening, after not being granted the needed access, I sent an email to Chapin and the other parties that were on the conference call advising them that Chapin had failed on his promise. I stated that if I did not receive access to the company's books and records, I could not continue with the company. Moments later, Chapin responded that he accepted my "resignation," which I interpreted to mean that I was being fired. Shortly thereafter, I advised Mr. Stern that I had been fired and that I would not be able to provide the requested information. Based on that development, Empowerment accelerated their loan pursuant to a notice dated the following day, September 18, 2020.

25. Fenwick thereafter advised Chapin and the company that if I was not reinstated, they would withdraw as counsel. The Directors also advised Chapin that they would resign as well. Other investors weighed in and demanded my involvement. As a result, Chapin reinstated me on September 19th. I was to report to the Board, and Chapin was to provide me immediate and full access to all books and records.

26. On September 20, 2020, I had a call with the lead counsel at Fenwick. I advised him that Chapin had told me that a Fenwick attorney was in contact with the Bank about the situation, and that the Bank had agreed to limit its security interest to "deposits" in order to

resolve the Empowerment situation. (I later learned this was not true.) He responded that he was not aware of these communications with the Bank, but agreed to investigate within his firm. He thereafter confirmed that no one at Fenwick had been in contact with the Bank. On September 21, 2020, Fenwick withdrew as Benja's counsel.

27. On September 21, 2020, I introduced Chapin to the law firm of Vedder Price, and Chapin engaged Scott Olson from that firm as replacement counsel.

28. On September 22, 2020, Chapin sent a letter to Messrs. Sklar and Floppe, firing them as Directors. (Both are investors with Benja).

29. On or about September 26, 2020, I understand that Messrs. Sklar and Floppe, another shareholder, Pano Anthos, and Mr. Olson had a conversation with Chapin about the situation. They advised Chapin that he needed to resign as CEO and Director of the company and that an interim officer would be appointed in his place. He was told that he could stay on with the company in a sales or related capacity, but that he had to immediately relinquish all financial oversight of the business. He was to provide full access to me of all the books and records, tax returns, bank accounts, payroll system etc. Chapin agreed with the plan and committed to provide this access.

30. Mr. Olson prepared the corporate documents to effectuate the management changes pursuant to which Chapin resigned as CEO and Director, I was appointed as Interim President (in addition to being CFO), and Mr. Anthos was appointed as Board Chairman. True and correct copies of the Written Consents executed by Chapin on September 28, 2020, effectuating these changes are attached hereto as Group **Exhibit B**.

31. The following morning, Chapin began the process to transition access to the bank accounts and payroll system. However, he failed to satisfy a very specific request—to demonstrate that the accounts receivable appearing on the borrowing base certificates provided

**DECLARATION OF JOE ALOUF**

Case: 20-30819   Doc# 21   Filed: 10/20/20   Entered: 10/20/20 17:51:40   Page 10 of 125

75117163.3

Polsinelli LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
310.556.1801

to the Bank were legitimate. To this day, Chapin hasn't provided any indication that the accounts receivable are associated with legitimate invoices to real clients.

32.     Mr. Sklar later forwarded me an e-mail communication dated September 28, 2020 from a partner at the Armstrong Teasdale LLP law firm stating that the firm's records do not reflect it ever represented Benja, in response to Mr. Sklar's written inquiry concerning a master shareholder's draft agreement he received, and ultimately asked to sign via DocuSign, from that law firm, relative to his investment in Benja. A true and correct copy of the September 28, 2020 e-mail is attached hereto as **<u>Exhibit C</u>**.

33.     The following day, September 30, 2020, Chapin reversed course and announced that he intended, as majority shareholder, to reinstate himself as CEO and sole Director of Benja. In the Board resolutions he prepared, he stated, among other things, that I resigned, which was not the case. Moreover, it is not at all clear whether Chapin is in fact the majority shareholder of Benja and has the ability to take this action. Various documents previously provided by Chapin since 2018 have all shown that he holds about 25% of the equity.

34.     As a result of Chapin's actions, Vedder Price withdrew as Benja's counsel on the same day. The process of granting me access terminated.

35.     On October 1, 2020, Chapin sent an email to the Bank, on which I was copied, announcing the foregoing management changes and that neither Mr. Anthos nor I are authorized to speak for Benja. A true and correct copy of Chapin's email is attached hereto as **<u>Exhibit D</u>**.

36.     Although Chapin consistently refused to give me access to the books and records of Benja, I was able to gain access to certain limited company financial documents. In addition to the June 30, 2020 financial statement provided by Mr. Stern as noted above, Mr. Stern provided me with copies of monthly statements of Benja's deposit account at the Bank

for the months of April through August 2020, which he had received from Chapin, true and correct copies of which are attached hereto as **Exhibit E** (collectively, the "Chapin Bank Statements"). I am aware that Chapin provided the Chapin Bank Statements not only to Empowerment, but to other potential lenders and investors.

37.     During recent discussions with representatives of the Bank, I received from the Bank copies of the actual monthly statements of Benja's deposit account at the Bank for the months of April through August 2020, true and correct copies of which are attached hereto as **Exhibit F** (collectively, the "Busey Bank Statements"). Upon my review with the Bank of both sets of bank statements, we determined that Chapin had altered the Chapin Bank Statements to reflect numerous large deposits to the Bank account from purported customers that do not appear in the actual Busey Bank Statements, the result of which is to substantially inflate the account balances appearing in the Chapin Bank Accounts. Below are the month-end account balances as reflected in each set of bank statements as prepared by the Bank and provided to me:

|  | Account Balance in Busey Bank Statements | Account Balance in Chapin Bank Statements |
|---|---|---|
| April 30, 2020 | $195,406.71 | $1,371,516.57 |
| May 30, 2020 | $3,016.22 | $227,186.20 |
| June 30, 2020 | $17,983.54- | $4,804,007.63 |
| July 31, 2020 | $27,538.59- | $2,313,294.48 |
| August 31, 2020 | $1,974.80 | $1,272,044.92 |

38.     Thus, it appears that Chapin overstated the balance of the Bank account in the Chapin Bank Statements he provided to Empowerment and other creditors and investors by hundreds of thousands or millions of dollars, including by over $4.8 million in the June 2020 statement and approximately $1.27 million in the last (August 2020) statement.

Polsinelli LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
310.556.1801

Polsinelli LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
310.556.1801

39.     Additionally, I am aware that Chapin executed and delivered to the Bank borrowing base certificates from March to July 2020 reflecting accounts receivable totaling between $4.7 million to $6 million, which I have no reason to believe are accurate.  Among other things, the attached Busey Bank Statements do not reflect any deposits made to the Bank account from the purported customers appearing in the borrowing base certificates indicating that the accounts receivable are not real.

40.     I also have come to learn that approximately three months ago, Chapin caused Benja to open a separate account at JPMorgan Chase Bank ("Chase"), which was not permitted under the Bank's loan documents.  I was able to gain limited access to the activity in the Chase account, and there is no indication that customer deposits have been made to that account in the past few months.  This reflects that if Benja has any real customers, they are remitting payment to a company account that only Chapin is aware exists.  While reviewing activity in the Chase account, I did discover that a $600,000 deposit was made to the Chase account on September 25, 2020, made by a company called the Taco Corporation of America ("TCA").  Because TCA is not a customer or a known party doing business with Benja, I investigated TCA to determine the nature of the deposit.  I determined that TCA is owned or otherwise affiliated with a Brett Brueck.  I then reached out to Mr. Brueck and thereafter had several conversations with him and his counsel.  Mr. Brueck advised me that the $600,000 deposit was a secured loan he had just made to Benja at Chapin's request.  He also acknowledged to have previously been a director and shareholder of Benja.  He confirmed that over the last year he had received approximately $4.6 million from Benja, apparently in repayment of his equity interests in the company.  A review of the Busey Bank Statements reflects some of these transfers.  I believe that Mr. Brueck and his counsel, believing that Benja just hit a "bump in the road," convinced Chapin to rescind his resignation as CEO and director of Benja by suggesting that his

75117163.3

Polsinelli LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
310.556.1801

1    resignation was done under duress and that I and the Directors have some agenda in seeking

2    his removal.  They conditioned their support of Chapin and the company on receiving proof

3    that the account receivables and associated clients were legitimate.  I understand that Chapin

4    didn't provide this, at which point they withdrew any interest in providing any support.

5        41.    When I discovered the $600,000 deposit in the Chase account from TCA, I

6    noticed that immediately thereafter a $387,000 transfer was made out of the Chase account to a

7    personal Chapin account at Chase.  When I raised this transfer with Chapin, he claimed that he

8    needed $350,000 in order to return an equity investment (pursuant to a Share Repurchase

9    Agreement that he sent days before to equity investors, unbeknownst to me or Benja's counsel)

10   from a Tom Peters of $250,000 in connection with the recent equity raise.  Chapin claimed he

11   couldn't make the transfer out of Benja's Chase account because the withdrawal would require

12   two signatures.  Chapin claimed he needed the extra $100,000 to repay an additional amount

13   owed to MHC.  I later confirmed that Peters was paid $250,000 and approximately $95,000

14   was received by MHC.

15       42.    As part of Chapin agreeing to step down, I contacted Chase to have signature

16   authority transferred over to me.  However, the next day, after Chapin reinstated himself as

17   CEO, and he contacted Chase to reassert control over the account.  Similar action took place in

18   connection with the payroll account.

19       43.    On October 2, 2020, Chapin emailed me and advised me that he was

20   terminating my employment with Benja.  To date, I have not been able to determine whether

21   Chapin has the corporate authority to terminate my employment.  I asked Benja's then newly-

22   hired corporate counsel, Wilson Sonsini Goodrich & Rosati ("Wilson Sonsini"), to give me

23   direction as to my status, which they have not provided.  In fact, I was advised on October 5,

24   2020, that Wilson Sonsini declined to go forward with its representation of Benja.

Polsinelli LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
310.556.1801

44.     There are strong indications by documents previously provided by Chapin himself, including but not limited to a capitalization table in the master shareholder agreement, that he is not the majority shareholder of Benja and thus had no authority to unilaterally rescind his resignations and reappoint himself Director and CEO, terminate Mr. Anthos as a Director, or terminate me as Interim President and Chief Financial Officer.  It is also unclear Chapin had the corporate authority to cause Benja to file its bankruptcy petition.  Attached hereto as **Exhibit G** is a true and correct copy of a capitalization table that Chapin provided to me in August 2020 reflecting that Chapin holds only 23.3% of the equity in Benja.

45.     During my recent discussions with the Bank, they advised me that when Benja first applied for its original loan with the Bank, Chapin provided the Bank with a copy of Benja's purported federal tax return for 2018, and they provided me with a copy of that return, a true and correct copy of which is attached hereto as **Exhibit H**.  The tax return indicates that it was prepared by a Tom Dunn at Numbrstudio Financial Group, LLC ("Numbrstudio").  As it turns out, Jennifer Li, whom I reference above, is the founder of Numbrstudio.  On October 16, 2020, I emailed Ms. Li to confirm whether Numbrstudio prepared the 2018 tax return.  In response, Ms. Li stated that there is no Tom Dunn affiliated with Numbrstudio, that Numbrstudio does not prepare tax returns (it outsources that work to another firm), and that the return appears to be fraudulent.  A true and correct copy of my email exchange with Ms. Li is attached hereto as **Exhibit I**.

***[Remainder of page left intentionally blank]***

Polsinelli LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
310.556.1801

1   46.     Based on all of the foregoing, I firmly believe that Chapin has operated, and

2   will continue to operate, Benja as a fraudulent enterprise to the detriment of the Bank, other

3   creditors and investors.  I believe it is critical that a trustee be appointed for Benja in order to

4   investigate Chapin's actions and safeguard Benja's remaining assets.

5          I declare under penalty of perjury that the foregoing is true and correct.

6   Executed this 20th day of October, 2020.

7

8                                      /s/ Joe Alouf

9                                      Joe Alouf

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

75117163.3

# EXHIBIT A

# Balance Sheet
## Benja Incorporated
## As at 30 June 2020

|  | 30 Jun 2020 | 30 Jun 2019 |
|---|---|---|
| **Assets** | | |
| | | |
| **Current Assets** | | |
| Accounts Receivable | $5,529,750.75 | $2,531,145.72 |
| Cash and cash equivalent | $3,704,007.73 | $1,525,415.02 |
| **Total Current Assets** | **$9,233,758.48** | **$4,056,560.74** |
| | | |
| **Total Assets** | **$9,233,758.48** | **$4,056,560.74** |
| | | |
| **Liabilities and Equity** | | |
| | | |
| **Liabilities** | | |
| | | |
| **Current Liabilities** | | |
| Accounts Payable | $1,585,795.60 | $26,866.40 |
| **Total Current Liabilities** | **$1,585,795.60** | **$26,866.40** |
| | | |
| **Total Liabilities** | **$1,585,795.60** | **$26,866.40** |
| | | |
| **Equity** | | |
| Current Year Earnings | $2,034,562.05 | $1,375,102.81 |
| Investment from Outside Investo | $1,500,000.00 | $1,500,000.00 |
| Retained Earnings | $4,113,400.83 | $1,154,591.53 |
| **Total Equity** | **$7,647,962.88** | **$4,029,694.34** |
| | | |
| **Total Liabilities and Equity** | **$9,233,758.48** | **$4,056,560.74** |

**Jean Soh**

| | |
|---|---|
| **From:** | Joe Alouf <alouf@cfos2go.com> |
| **Sent:** | Monday, October 19, 2020 4:43 PM |
| **To:** | Jerry Switzer; Jean Soh |
| **Subject:** | Fw: Income Statement and Balance Sheet - June 2020 |
| **Attachments:** | Benja Incorporated - Income Statement[143].xls; Benja Incorporated - Balance Sheet[142].xls |

**EXTERNAL EMAIL** **alouf@cfos2go.com**

Here is the original email from Andrew.

Joe Alouf, CPA
Partner
CFOs2GO
C. 415.395.686
O. 925.299.4450
http://linkedin.com/in/joealouf

www.CFOs2GO.com

**From:** Andrew Chapin <andrew@benja.co>
**Sent:** Monday, July 27, 2020 10:45 AM
**To:** Joe Alouf <alouf@cfos2go.com>
**Subject:** Income Statement and Balance Sheet - June 2020

In advance of your call with Stern.

AJC

# EXHIBIT B

00020

**BENJA INCORPORATED**

**UNANIMOUS WRITTEN CONSENT OF THE BOARD OF DIRECTORS**

**September 29, 2020**

The undersigned, being the sole member of the Board of Directors (the "Board") of Benja Incorporated, a Delaware corporation (the "Corporation"), hereby consent and agree, in lieu of a special meeting of the Board, to the approval and adoption of the following resolutions:

1.    With Respect to the Election of a New Chief Executive Officer:

    **WHEREAS**, Andrew Chapin has resigned as Chief Executive Officer of the Corporation, effective as of September 29, 2020;

    **WHEREAS**, in accordance with Section 5.5 of the Bylaws of the Corporation, any vacancy occurring in any officer position of the Corporation may be filled by the Board; and

    **WHEREAS**, the Board has determined that it is in the best interest of the Corporation to appoint Joe Alouf as Interim President of the Corporation.

    **NOW, THEREFORE, BE IT RESOLVED**, that effective as of date hereof, Joe Alouf be, and the same hereby is, appointed as Interim President of the Corporation, to serve until the earlier of his death, resignation or removal or until his successor shall have been duly elected and qualified.

2.    Omnibus:

    **RESOLVED**, that, in order to fully carry out the intent and effectuate the purposes of the foregoing resolutions, the directors and officers of the Corporation be, and each of them hereby is, individually authorized in the name and on behalf of the Corporation from time to time (i) to prepare, execute, deliver and perform, as the case may be, such agreements, amendments, applications, approvals, certificates, communications, consents, demands, directions, documents, further assurances, instruments, notices, orders, requests, resolutions, supplements or undertakings, (ii) to pay or cause to be paid on behalf of the Corporation any related costs and expenses and (iii) to take such other actions, in the name and on behalf of the Corporation, as each such director or officer, in such person's discretion, shall deem necessary or advisable to complete and effect the foregoing transactions or to carry out the intent and purposes of the foregoing resolutions and the transactions contemplated thereby, the preparation, execution, delivery and performance of any such agreements, amendments, applications, approvals, certificates, communications, consents, demands, directions, documents, further assurances, instruments, notices, orders, requests, resolutions, supplements or undertakings, the

Case: 20-30819   Doc# 21   Filed: 10/20/20   Entered: 10/20/20 17:51:40   Page 21 of
125
00021

payment of any such costs or expenses and the performance of any such other acts shall be conclusive evidence of the approval of the Board thereof and all matters relating thereto.

**[SIGNATURE PAGE TO FOLLOW]**

VP/#40220901

*(Signature Page to Unanimous Written Consent of the Board of Directors of Benja Incorporated.)*

This written consent is made pursuant to Section 141(f) of the General Corporation Law of the State of Delaware, and amended, shall be effective as of the date hereof, shall have the same force and effect as a vote of the Board at a duly called meeting and shall be filed with the minutes of the Corporation in the Corporation's minute book. A facsimile or electronic mail copy of a signature page hereto shall be deemed an original for all purposes. This consent may be executed in two or more counterparts, each of which shall be deemed an original but all of which shall together constitute one and the same document.

Dated as of the date first written above.

**<u>BOARD</u>:**

_____
Andrew J. Chapin

VP/#40220901

**BENJA INCORPORATED**

**WRITTEN CONSENT OF THE [MAJORITY OF COMMON STOCK][1]**

**September 29, 2020**

The undersigned, being the holders of the majority of the common stock (the "Majority Holders") of Benja Incorporated, a Delaware corporation (the "Corporation"), hereby consent and agree, in lieu of a special meeting of the stockholders, to the approval and adoption of the following resolutions:

1.    With Respect to the Election of a Director:

**WHEREAS**, Andrew Chapin resigned as the sole director of the Corporation, effective as of September 29, 2020; and

**WHEREAS**, the Majority Holders have determined that it is in the best interest of the Corporation to appoint Pano Anthos as the sole director of the Corporation.

**NOW, THEREFORE, BE IT RESOLVED**, that effective as of the date hereof, Pano Anthos be, and the same hereby is, appointed as the sole director of the Corporation, to serve until the earlier of his death, resignation or removal or until his successor shall have been duly elected and qualified.

2.    Omnibus:

**RESOLVED**, that, in order to fully carry out the intent and effectuate the purposes of the foregoing resolutions, the directors and officers of the Corporation be, and each of them hereby is, individually authorized in the name and on behalf of the Corporation from time to time (i) to prepare, execute, deliver and perform, as the case may be, such agreements, amendments, applications, approvals, certificates, communications, consents, demands, directions, documents, further assurances, instruments, notices, orders, requests, resolutions, supplements or undertakings, (ii) to pay or cause to be paid on behalf of the Corporation any related costs and expenses and (iii) to take such other actions, in the name and on behalf of the Corporation, as each such director or officer, in such person's discretion, shall deem necessary or advisable to complete and effect the foregoing transactions or to carry out the intent and purposes of the foregoing resolutions and the transactions contemplated thereby, the preparation, execution, delivery and performance of any such agreements, amendments, applications, approvals, certificates, communications, consents, demands, directions, documents, further assurances,

---

[1] NTD: Please confirm.

**1**

VP/#40220907.3

instruments, notices, orders, requests, resolutions, supplements or undertakings, the payment of any such costs or expenses and the performance of any such other acts shall be conclusive evidence of the approval of the Majority Holders thereof and all matters relating thereto.

**[SIGNATURE PAGE TO FOLLOW]**

Case: 20-30819    Doc# 21    Filed: 10/20/20    Entered: 10/20/20 17:51:40    Page 25 of
125
00025

*(Signature Page to Written Consent of the Majority Holders of Benja Incorporated.)*

This written consent is made pursuant to Section 228 of the General Corporation Law of the State of Delaware, and amended, shall be effective as of the date hereof, shall have the same force and effect as a vote of the Majority Holders at a duly called meeting and shall be filed with the minutes of the Corporation in the Corporation's minute book.   A facsimile or electronic mail copy of a signature page hereto shall be deemed an original for all purposes.   This consent may be executed in two or more counterparts, each of which shall be deemed an original but all of which shall together constitute one and the same document.

Dated as of the date first written above.

**MAJORITY HOLDERS:**

By _____
Andrew Chapin

[_]

By _____
Name:
Its:

[_]

By _____
Name:
Its:

[_]

By _____
Name:
Its:

VP/#40220907.3

*(Signature Page to Written Consent of the Majority Holders of Benja Incorporated.)*

VP/#40220907.3

# EXHIBIT C

| **From:** | Jennifer R. Byrne <JByrne@atllp.com> |
|---|---|
| **Sent:** | Monday, September 28, 2020 2:21 PM |
| **To:** | Scott Sklar |
| **Subject:** | RE: Benja |

Scott,

Thank you for your email and voicemail messages. You are raising some serious issues. Our records do not reflect that we have ever represented Benja. We have no record of our firm preparing or sending a DocuSign package to you or any other potential investor in Benja, and I have confirmed with our IT group that we did not even have the ability to send DocuSign packages from our system until this year.

Without violating any duties or agreements of confidentiality, can you please tell me what led you to believe that our firm was involved in this transaction?

Best regards,
Jennifer


Armstrong Teasdale LLP
Jennifer R. Byrne | Partner
DIRECT: 314.342.8025 | FAX: 314.552.4886 | MAIN OFFICE: 314.621.5070 | CELL: 314.705.0108

***********************PRIVATE AND CONFIDENTIAL***********************
This transmission and any attached files are privileged, confidential or otherwise the exclusive property of the intended recipient or Armstrong Teasdale LLP. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is strictly prohibited. If you have received this transmission in error, please contact us immediately by e-mail (admin@armstrongteasdale.com) or telephone (314-621-5070) and promptly destroy the original transmission and its attachments. Opinions, conclusions and other information in this message that do not relate to the official business of Armstrong Teasdale LLP shall be understood as neither given nor endorsed by it.

-----Original Message-----
From: Scott Sklar [mailto:scottsklar1@comcast.net]
Sent: Sunday, September 27, 2020 4:41 PM
To: Jennifer R. Byrne
Subject: Benja

CAUTION:        EXTERNAL EMAIL


Hi Jennifer,
On 12/12/18 I received a DocuSign from your office with a master shareholders agreement to sign in conjunctions with my investment in Benja. In the past two week I have discovered many fraudulent activities in conjunction with this investment, including the fact that Cultivation Capital and Cliff Holekamp (as their representative) never in fact made any investment in Benja. His signatures, his gmail accounts were all forged. There are part of multiple deceptions that

have occurred with Benja apparently all perpetrated by its CEO Andrew Chapin. I am reconstructing these as best I can.
If you would please contact me asap it would be much appreciated. I left you a voice mail as well.
Your prompt reply would be much appreciated Scott Sklar'
 415 389 8496 (home office)
4154 613 9411

# EXHIBIT D

**From:** Andrew Chapin <andrew@benja.co>
**Date:** October 1, 2020 at 11:54:55 AM CDT
**To:** "Ricke, Patrick" <Patrick.Ricke@busey.com>
**Cc:** Joe Alouf <alouf@benja.co>, Pano Anthos <pano@xrclabs.com>
**Subject: State of Benja**

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Patrick,

As you are likely aware, there were a few management changes at Benja the last few days.

A long story made short — I am writing to inform you the move made early in the week (appointing Pano Anthos to the Board of Directors and Joe Alouf as Interim President) has been undone by vote of the majority of shareholders. I have returned to each of those roles effective yesterday.

Mr. Anthos and Mr. Alouf are no longer authorized to speak on behalf of Benja as it relates to this matter.

I would like to discuss the state of affairs between Benja and Busey. I come bearing a plan for resolution - and the sooner we can connect, the sooner we can put this in motion.

I'm available at (203) 695 4167 or (415) 326 4167. Give me a call, would be good to touch base briefly before a call with the full group.

Best,

**Andrew J. Chapin**
Co-Founder
Benja Incorporated

The information contained in this e-mail is privileged and confidential. Unless otherwise indicated or obvious from the message, this is intended only for the individual(s) listed above. Please see our Privacy Notices at http://www.busey.com.

# EXHIBIT E



100 W University Ave
Champaign IL 61820

| 7283947 | Date 4/30/2020 | Page 1 |
| BENJA INC | Primary Account | 4766 |
| 845 MARKET ST 450A | | |
| SAN FRANCISCO CA 94103 | | |

## CHECKING ACCOUNT SUMMARY & DETAIL

| BUSINESS ANALYSIS | | Number of Enclosures | 0 |
|---|---|---|---|
| Account Number | 4766 | Statement Dates | 4/01/20 thru 4/30/20 |
| Previous Balance | 353,222.03 | Days in the statement period | 30 |
| 19 Deposits/Credits | 1,944,608.17 | Average Ledger | 862,369.30 |
| 4 Checks/Debits | 926,313.63 | Average Collected | 862,369.30 |
| Service Charge | .00 | | |
| Interest Paid | .00 | | |
| Ending Balance | 1,371,516.57 | | |

| | Total For This Period | Total Year-to-Date |
|---|---|---|
| Overdraft Item Fees | $.00 | $.00 |
| Returned Item Fees | $.00 | $.00 |

## DEPOSITS AND OTHER CREDITS

| DATE | TRANSACTION DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 4/1 | STRIPE TRANSFER X | TRANSFER | 1,250.00 |
| 4/1 | STRIPE TRANSFER X | TRANSFER | 1,990.00 |
| 4/1 | STRIPE TRANSFER X | TRANSFER | 3,734.22 |
| 4/1 | STRIPE TRANSFER X | TRANSFER | 15,630.00 |
| 4/1 | UNDER ARMOUR INC ACH/CRED 200401 OFA58223889962 | TRANSFER | 39,442.01 |
| 4/1 | ZAPPOS.COM, INC. ACH/CRED 200401 OFA51566133585 | TRANSFER | 49,100.65 |
| 4/1 | PATAGONIA INTERNATIONAL, INC. ACH/CRED 200401 OFA99403294665 | TRANSFER | 102,184.75 |

Case: 20-30819   Doc# 21   Filed: 10/20/20   Entered: 10/20/20 17:51:40   Page 34 of 125

00034



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                 4766 (Continued)

## DEPOSITS AND OTHER CREDITS

| DATE | TRANSACTION DESCRIPTION | | AMOUNT |
|------|------------------------|-------------|-----------|
| 4/1 | COLUMBIA SPORTSWEAR CO ACH/CRED 200401 OFA82401998473 | TRANSFER | 166,474.00 |
| 4/1 | NEW BALANCE ATHLETICS, INC ACH/CRED 200401 OFA83394855793 | TRANSFER | 322,445.49 |
| 4/1 | BACKCOUNTRY.COM, LLC. ACH/CRED 200401 OFA87411909044 | TRANSFER | 357,309.60 |
| 4/2 | FANATICS INC. ACH/CRED  200402 OFA78016096012 | TRANSFER | 479,383.68 |
| 4/30 | STRIPE TRANSFER X | TRANSFER | 1,990.00 |
| 4/30 | STRIPE TRANSFER X | TRANSFER | 1,998.75 |
| 4/30 | STRIPE TRANSFER X | TRANSFER | 3,425.50 |
| 4/30 | HELLY HANSEN LEISURE INC. ACH/CRED 200430 OFA69938477483 | TRANSFER | 16,780.00 |
| 4/30 | UNDER ARMOUR INC ACH/CRED 200430 OFA33412878394 | TRANSFER | 46,862.86 |
| 4/30 | ZAPPOS.COM, INC. ACH/CRED 20430 OFA34851134728 | TRANSFER | 53,091.76 |
| 4/30 | PATAGONIA INTERNATIONAL, INC. ACH/CRED 200430 OFA92715807823 | TRANSFER | 101,176.50 |
| 4/30 | COLUMBIA SPORTSWEAR CO ACH/CRED 200430 OFA86925798887 | TRANSFER | 180,338.40 |

Case: 20-30819   Doc# 21   Filed: 10/20/20   Entered: 10/20/20 17:51:40   Page 35 of 125
00035



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766 (Continued)

## CHECKS AND OTHER DEBITS

| DATE | TRANSACTION DESCRIPTION | | AMOUNT |
|------|-------------------------|---|--------|
| 4/1 | BILL PAY FLIPBOARD BENJA CK ON 200401 | PAYMENT | 158,424.00– |
| 4/30 | Amazon Az 3600037 EDI PYMNTS BENJA INCOR OFA04166994160 | PAYMENT | 76,715.43– |
| 4/30 | BILL PAY FLIPBOARD BENJA CK ON 200430 | PAYMENT | 152,904.00– |
| 4/30 | BILL PAY PINTEREST INC BENJA CK ON 200430 | PAYMENT | 538,270.30– |



100 W University Ave
Champaign IL 61820

```
      7990492                    Date 5/31/2020         Page      1
      BENJA INC                  Primary Account               4766
      845 MARKET ST 450A
      SAN FRANCISCO CA 94103
```

## CHECKING ACCOUNT SUMMARY & DETAIL

```
BUSINESS ANALYSIS                    Number of Enclosures                0
Account Number             4766      Statement Dates     5/01/20 thru 5/31/20
Previous Balance     1,371,516.57    Days in the statement period       31
        9 Deposits/Credits  1,659,965.67    Average Ledger            799,351.39
        9 Checks/Debits     2,804,296.04    Average Collected         799,351.39
Service Charge                .00
Interest Paid                 .00
Ending Balance        227,186.20
```

|  | Total For This Period | Total Year-to-Date |
|---|---|---|
| Overdraft Item Fees | $.00 | $.00 |
| Returned Item Fees | $.00 | $.00 |

## DEPOSITS AND OTHER CREDITS

| DATE | TRANSACTION DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 5/1 | STRIPE TRANSFER X | TRANSFER | 2,317.50 |
| 5/1 | STRIPE TRANSFER X | TRANSFER | 3,984.12 |
| 5/1 | WOLVERINE WORLD WIDE C ACH/CRED 200501 OFA18474943192 | TRANSFER | 16,248.00 |
| 5/1 | STRIPE TRANSFER X | TRANSFER | 76,455.00 |
| 5/1 | NEW BALANCE ATHLETICS, INC ACH/CRED 200501 OFA47918205132 | TRANSFER | 324,408.11 |
| 5/1 | BACKCOUNTRY.COM, LLC. ACH/CRED 200501 OFA20349940646 | TRANSFER | 357,309.60 |

Case: 20-30819   Doc# 21   Filed: 10/20/20   Entered: 10/20/20 17:51:40   Page 37 of 125
00037



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766 (Continued)

| DEPOSITS AND OTHER CREDITS | | |
|---|---|---|
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** |
| 5/1 | NIKE INC. ACH/CRED 200501 OFA95740208255 | TRANSFER | 374,652.53 |
| 5/1 | FANATICS INC. ACH/CRED  200501 OFA31706715418 | TRANSFER | 483,094.95 |
| 5/2 | STRIPE TRANSFER X | TRANSFER | 1,250.00 |



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766 (Continued)

| CHECKS AND OTHER DEBITS | | |
|---|---|---|
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** |
| 5/1 | GUSTO Benja Incorporated n60lttz0rr8 PAYMENT | 124,332.29– |
| 5/1 | Online Domestic Wire Transfer Via:MUFG UNION BANK/122000496 A/C: JOMBOY MEDIA INC. PAYMENT | 160,000.00– |
| 5/1 | Online Domestic Wire Transfer Via:Silvergate Lajolla/322286803.. PAYMENT | 263,271.44– |
| 5/1 | BILL PAY SPORTSILLU xxxBENJA ON PAYMENT | 576,807.00– |
| 5/31 | Amazon Az 3600037 EDI PYMNTS BENJA INCOR OFA42515646530 PAYMENT | 79,198.13– |
| 5/31 | BILL PAY FLIPBOARD BENJA CK ON 200531 PAYMENT | 164,447.70– |
| 5/31 | Online Domestic Wire Transfer Via:Silvergate Lajolla/322286803.. PAYMENT | 274,654.84– |
| 5/31 | BILL PAY PINTEREST INC BENJA CK ON 200531 OFA68401088588 PAYMENT | 583,664.64– |
| 5/31 | BILL PAY SPORTSILLU xxxBENJA ON PAYMENT | 613,961.25– |



100 W University Ave
Champaign IL 61820

```
       8020564                    Date 6/30/2020        Page      1
       BENJA INC                  Primary Account                 4766
       845 MARKET ST 450A
       SAN FRANCISCO CA 94103
```

## CHECKING ACCOUNT SUMMARY & DETAIL

```
BUSINESS ANALYSIS                      Number of Enclosures              0
Account Number                  4766   Statement Dates    6/01/20 thru 6/30/20
Previous Balance          227,186.20   Days in the statement period      30
     43 Deposits/Credits 6,324,533.45  Average Ledger          1,483,076.64
      8 Checks/Debits    1,747,711.92  Average Collected       1,483,076.64
Service Charge                   .00
Interest Paid                    .00
Ending Balance          4,804,007.73
```

|  | Total For This Period | Total Year-to-Date |
|---|---|---|
| Overdraft Item Fees | $.00 | $.00 |
| Returned Item Fees | $.00 | $.00 |

## DEPOSITS AND OTHER CREDITS

| DATE | TRANSACTION DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 6/1 | STRIPE TRANSFER X | TRANSFER | 1,250.00 |
| 6/1 | STRIPE TRANSFER X | TRANSFER | 2,011.91 |
| 6/1 | STRIPE TRANSFER X | TRANSFER | 2,019.80 |
| 6/1 | STRIPE TRANSFER X | TRANSFER | 2,463.75 |
| 6/1 | STRIPE TRANSFER X | TRANSFER | 3,484.49 |
| 6/1 | STRIPE TRANSFER X | TRANSFER | 4,019.82 |
| 6/1 | HELLY HANSEN LEISURE INC. ACH/CRED 200601 OFA89924079043 | TRANSFER | 17,083.40 |
| 6/1 | WOLVERINE WORLD WIDE C ACH/CRED 200601 OFA49389309622 | TRANSFER | 17,400.00 |
| 6/1 | STRIPE TRANSFER X | TRANSFER | 20,582.88 |



100 W University Ave
Champaign IL 61820

Date 6/30/2020 Page 2
Primary Account 4766

BUSINESS ANALYSIS                    4766 (Continued)

## DEPOSITS AND OTHER CREDITS

| DATE | TRANSACTION DESCRIPTION | | AMOUNT |
|------|-------------------------|---|--------|
| 6/1 | UNDER ARMOUR INC ACH/CRED 200601 OFA60545457583 | TRANSFER | 53,676.20 |
| 6/1 | ZAPPOS.COM, INC. ACH/CRED 200601 OFA61339634857 | TRANSFER | 53,837.69 |
| 6/1 | PATAGONIA INTERNATIONAL, INC. ACH/CRED 200601 OFA584739079394 | TRANSFER | 96,218.50 |
| 6/1 | COLUMBIA SPORTSWEAR CO ACH/CRED 200601 OFA54480887555 | TRANSFER | 212,473.85 |
| 6/1 | NEW BALANCE ATHLETICS, INC ACH/CRED 200601 OFA20683754258 | TRANSFER | 324,805.50 |
| 6/1 | BACKCOUNTRY.COM, LLC. ACH/CRED 200601 OFA60406856944 | TRANSFER | 358,864.45 |
| 6/1 | NIKE INC. ACH/CRED 200601 OFA54571761717 | TRANSFER | 380,281.86 |
| 6/1 | FANATICS INC. ACH/CRED 200601 OFA77381734722 | TRANSFER | 462,183.93 |
| 6/5 | WIRE TRANSFER ... | TRANSFER | 1,000,000.00 |
| 6/9 | ADVANCE TO ***4766 ADVANCE FROM ***0865 | TRANSFER | 1,100,000.00 |
| 6/30 | STRIPE TRANSFER X | TRANSFER | 1,250.00 |
| 6/30 | STRIPE TRANSFER X | TRANSFER | 2,140.03 |

Case: 20-30819   Doc# 21   Filed: 10/20/20   Entered: 10/20/20 17:51:40   Page 41 of 125
00041



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766 (Continued)

## DEPOSITS AND OTHER CREDITS

| DATE | TRANSACTION DESCRIPTION | | AMOUNT |
|------|------------------------|---|--------|
| 6/30 | STRIPE TRANSFER X | TRANSFER | 2,194.00 |
| 6/30 | STRIPE TRANSFER X | TRANSFER | 2,514.94 |
| 6/30 | STRIPE TRANSFER X | TRANSFER | 3,660.44 |
| 6/30 | STRIPE TRANSFER X | TRANSFER | 4,199.00 |
| 6/30 | STRIPE TRANSFER X | TRANSFER | 5,055.12 |
| 6/30 | COLUMBIA SPORTSWEAR CO ACH/CRED 200630 OFA29775116753 | TRANSFER | 13,967.72 |
| 6/30 | HELLY HANSEN LEISURE INC. ACH/CRED 200630 OFA23541722980 | TRANSFER | 17,255.90 |
| 6/30 | WOLVERINE WORLD WIDE C ACH/CRED 200630 OFA39202182771 | TRANSFER | 17,927.22 |
| 6/30 | PATAGONIA INTERNATIONAL, INC. ACH/CRED 200630 OFA60924447472 | TRANSFER | 18,768.25 |
| 6/30 | NEW BALANCE ATHLETICS, INC ACH/CRED 200630 OFA9647096787 | TRANSFER | 21,069.78 |
| 6/30 | STRIPE TRANSFER X | TRANSFER | 21,540.84 |
| 6/30 | NIKE INC. ACH/CRED 200630 OFA59642156022 | TRANSFER | 24,636.71 |
| 6/30 | BACKCOUNTRY.COM, LLC. ACH/CRED 200630 OFA49415436471 | TRANSFER | 24,847.80 |
| 6/30 | ZAPPOS.COM, INC. ACH/CRED 200630 OFA62443625650 | TRANSFER | 54,729.73 |
| 6/30 | UNDER ARMOUR INC ACH/CRED 200401 OFA58223889962 | TRANSFER | 55,206.36 |
| 6/30 | CHECK DEP | TRANSFER | 89,118.00 |

Case: 20-30819   Doc# 21   Filed: 10/20/20   Entered: 10/20/20 17:51:40   Page 42 of 125

00042



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766 (Continued)

## DEPOSITS AND OTHER CREDITS

| DATE | TRANSACTION DESCRIPTION | | AMOUNT |
|------|------------------------|---|--------|
| 6/30 | PATAGONIA INTERNATIONAL, INC. ACH/CRED 200630 OFA96259626036 | TRANSFER | 102,018.25 |
| 6/30 | COLUMBIA SPORTSWEAR CO ACH/CRED 200630 OFA94483634455 | TRANSFER | 208,453.60 |
| 6/30 | NEW BALANCE ATHLETICS, INC ACH/CRED 200630 OFA61261172972 | TRANSFER | 316,963.13 |
| 6/30 | NIKE INC. ACH/CRED 200630 OFA20383116002 | TRANSFER | 368,265.59 |
| 6/30 | BACKCOUNTRY.COM, LLC. ACH/CRED 200630 OFA42685451429 | TRANSFER | 371,854.80 |
| 6/30 | FANATICS INC. ACH/CRED 200630 OFA36495538206 | TRANSFER | 464,238.21 |



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766 (Continued)

## CHECKS AND OTHER DEBITS

| DATE | TRANSACTION DESCRIPTION | | AMOUNT |
|------|------------------------|-|--------|
| 6/1 | Amazon Az 3600037 EDI PYMNTS BENJA INCOR OFA81030497279 | PAYMENT | 98,364.57- |
| 6/1 | GUSTO Benja Incorporated n60lttz0rr8 | PAYMENT | 124,332.29- |
| 6/1 | CK #5009 | PAYMENT | 140,000.00- |
| 6/1 | BILL PAY PINTEREST INC BENJA CK ON 200102 OFA68401088588 | PAYMENT | 146,520.33- |
| 6/1 | Online Domestic Wire Transfer Via:MUFG UNION BANK/122000496 A/C: JOMBOY MEDIA INC. | PAYMENT | 170,000.00- |
| 6/1 | BILL PAY SPORTSILLU xxxBENJA ON | PAYMENT | 598,647.00- |
| 6/30 | BILL PAY FLIPBOARD BENJA CK ON 200630 | PAYMENT | 189,710.81- |
| 6/30 | Online Domestic Wire Transfer Via:Silvergate Lajolla/322286803.. | PAYMENT | 280,136.92- |

Case: 20-30819   Doc# 21   Filed: 10/20/20   Entered: 10/20/20 17:51:40   Page 44 of 125
00044



100 W University Ave
Champaign IL 61820

```
     8069609                Date 7/31/2020        Page      1
     BENJA INC              Primary Account                4766
     845 MARKET ST 450A
     SAN FRANCISCO CA 94103
```

## CHECKING ACCOUNT SUMMARY & DETAIL

```
BUSINESS ANALYSIS               Number of Enclosures              0
Account Number            4766  Statement Dates   7/01/20 thru 7/31/20
Previous Balance    4,804,007.73 Days in the statement period      31
     1 Deposits/Credits   88,794.00 Average Ledger         3,494,585.87
    12 Checks/Debits  2,579,507.25 Average Collected      3,494,585.87
Service Charge            .00
Interest Paid             .00
Ending Balance     2,313,294.48
```

|  | Total For This Period | Total Year-to-Date |
|---|---|---|
| Overdraft Item Fees | $.00 | $.00 |
| Returned Item Fees | $.00 | $.00 |

## DEPOSITS AND OTHER CREDITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|---|---|---|
| 7/1 | COVERAGEGEAR<br>ACH/CRED 200701        TRANSFER | 88,794.00 |

Case: 20-30819    Doc# 21    Filed: 10/20/20    Entered: 10/20/20 17:51:40    Page 45 of 125
00045



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766 (Continued)

## CHECKS AND OTHER DEBITS

| DATE | TRANSACTION DESCRIPTION | | AMOUNT |
|------|-------------------------|---|--------|
| 7/1 | GUSTO Benja Incorporated | PAYMENT | 146,520.33– |
| 7/1 | PINTEREST INC BENJA CK ON PAYMENT OFA | PAYMENT | 585,795.60– |
| 7/2 | Amazon Az EDI PYMNTS BENJA INCOR PAYMENT OFA | PAYMENT | 95,509.47– |
| 7/2 | TIK TOK INC. TRANSFER OFA | PAYMENT | 138,000.00– |
| 7/2 | PINTEREST INC BENJA CK ON PAYMENT OFA | PAYMENT | 609,133.20– |
| 7/3 | NEXT DOOR BENJA CK ON PAYMENT | PAYMENT | 86,250.00– |
| 7/3 | Online Domestic Wire Transfer Via:MUFG UNION BANK A/C: JOMBOY MEDIA INC. | PAYMENT | 260,000.00– |
| 7/3 | CK PAYMENT | PAYMENT | 283,772.84– |
| 7/10 | Wire Transfer Debit E-Revshare Core LLC 121000248 1200787933 WELLS FARGO BANK,Benja June 2020 | PAYMENT | 3,597.44– |
| 7/14 | Wire Transfer Debit E-Revshare Core LLC 121000248 1200787933 WELLS FARGO BANK,20200714MMQFMP UN000137 | PAYMENT | 33,917.56– |
| 7/31 | SPOTIFY INT xxxBENJA ON PAYMENT | PAYMENT | 133,500.00– |
| 7/31 | FLIPBOARD CK ON PAYMENT | PAYMENT | 203,510.81– |



100 W University Ave
Champaign IL 61820

| | | |
|---|---|---|
| 8102849 | Date 8/31/2020 | Page    1 |
| BENJA INC | Primary Account | 4766 |
| 845 MARKET ST 450A | | |
| SAN FRANCISCO CA 94103 | | |

## CHECKING ACCOUNT SUMMARY & DETAIL

| BUSINESS ANALYSIS | | Number of Enclosures | 0 |
|---|---|---|---|
| Account Number | 4766 | Statement Dates | 8/01/20 thru 8/31/20 |
| Previous Balance | 2,313,294.48 | Days in the statement period | 31 |
| 23 Deposits/Credits | 2,275,275.28 | Average Ledger | 2,400,566.19 |
| 13 Checks/Debits | 3,316,524.84 | Average Collected | 2,400,566.19 |
| Service Charge | .00 | | |
| Interest Paid | .00 | | |
| Ending Balance | 1,272,044.92 | | |

| | Total For This Period | Total Year-to-Date |
|---|---|---|
| Overdraft Item Fees | $.00 | $.00 |
| Returned Item Fees | $.00 | $.00 |

## DEPOSITS AND OTHER CREDITS

| DATE | TRANSACTION DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 8/3 | STRIPE TRANSFER X | TRANSFER | 1,500.00 |
| 8/3 | STRIPE TRANSFER X | TRANSFER | 1,950.00 |
| 8/3 | STRIPE TRANSFER X | TRANSFER | 2,080.00 |
| 8/3 | STRIPE TRANSFER X | TRANSFER | 2,250.00 |
| 8/3 | NIKE INC. ACH/CRED TRANSFER OFA | TRANSFER | 2,397.50 |
| 8/3 | NEW BALANCE ATHLETICS, INC. ACH/CRED | TRANSFER | 2,441.11 |
| 8/3 | STRIPE TRANSFER X | TRANSFER | 4,080.00 |
| 8/3 | PATAGONIA TRANSFER INTERNATIONAL INC. ACH/CRED OFA | TRANSFER | 4,625.00 |
| 8/3 | STRIPE TRANSFER X | TRANSFER | 5,137.37 |

Case: 20-30819   Doc# 21   Filed: 10/20/20   Entered: 10/20/20 17:51:40   Page 47 of 125
00047



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766 (Continued)

## DEPOSITS AND OTHER CREDITS

| DATE | TRANSACTION DESCRIPTION | | AMOUNT |
|------|------------------------|-----------|--------|
| 8/3 | SPORTSILLU xxxBENJA ON PAYMENT | TRANSFER | 5,542.08 |
| 8/3 | BACKCOUNTRY.COM LLC. ACH/CRED TRANSFER OFA | TRANSFER | 5,802.21 |
| 8/3 | HELLY HANSEN LEISURE INC. ACH/CRED TRANSFER OFA | TRANSFER | 16,090.00 |
| 8/3 | WOLVERWINE WORLD WIDE C ACH/CRED TRANSFER OFA | TRANSFER | 16,854.00 |
| 8/3 | STRIPE TRANSFER X | TRANSFER | 22,144.68 |
| 8/3 | FANATICS INC. ACH/CRED TRANSFER OFA | TRANSFER | 31,962.47 |
| 8/3 | COVERAGEGEAR ACH/CRED 200803 | TRANSFER | 89,946.00 |
| 8/3 | COLUMBIA SPORTSWEAR CO ACH/CRED | TRANSFER | 259,931.74 |
| 8/3 | NEW BALANCE ATHLETICS, INC. ACH/CRED | TRANSFER | 393,552.67 |
| 8/3 | NIKE INC. ACH/CRED TRANSFER OFA | TRANSFER | 451,048.68 |
| 8/3 | FANATICS INC. ACH/CRED TRANSFER OFA | TRANSFER | 457,464.90 |
| 8/3 | BACKCOUNTRY.COM LLC. ACH/CRED TRANSFER OFA | TRANSFER | 460,688.09 |
| 8/10 | Wire Transfer Credit WF EXC RTN TO SNDR 721 WIP MAC P6101-081 1300 SW 5TH AVE 8TH FL PORTLAND OR 97201-566720200810I1B7031 R011337 | TRANSFER | 37,386.78 |

Case: 20-30819   Doc# 21   Filed: 10/20/20   Entered: 10/20/20 17:51:40   Page 48 of
125

00048



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766 (Continued)

## DEPOSITS AND OTHER CREDITS

| DATE | TRANSACTION DESCRIPTION | | AMOUNT |
|------|------------------------|---|--------|
| 8/21 | Memo Credit PAYPAL TRANSFER ACH Entry | TRANSFER | 400.00 |

## CHECKS AND OTHER DEBITS

| DATE | TRANSACTION DESCRIPTION | | AMOUNT |
|------|------------------------|---|--------|
| 8/3 | SPORTSILLU xxxBENJA ON PAYMENT | PAYMENT | 603,750.00- |
| 8/10 | Wire Transfer Debit E-Revshare Core LLC 121000248 026012881 WELLS FARGO BANK,20200810MMQFMP UN000097 | PAYMENT | 37,386.78- |
| 8/12 | Wire Transfer Debit E-Revshare Core LLC 121000248 1200787933 WELLS FARGO BANK,20200812MMQFMP UN000149 | PAYMENT | 37,386.78- |
| 8/31 | Amazon Az EDI PYMNTS BENJA INCOR PAYMENT OFA | PAYMENT | 96,758.43- |
| 8/31 | GUSTO Benja Incorporated | PAYMENT | 146,520.33- |
| 8/31 | NEXT DOOR BENJA CK ON PAYMENT OFA | PAYMENT | 149,533.00- |
| 8/31 | TIK TOK INC. TRANSFER OFA | PAYMENT | 164,000.00- |
| 8/31 | FLIPBOARD CK ON PAYMENT OFA | PAYMENT | 203,510.81- |
| 8/31 | CONDE xxxBENJA | PAYMENT | 208,484.54- |
| 8/31 | Online Domestic Wire Transfer Via:MUFG UNION BANK A/C: JOMBOY MEDIA INC. | PAYMENT | 260,000.00- |
| 8/31 | CK PAYMENT | PAYMENT | 283,772.84- |



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS        4766 (Continued)

## CHECKS AND OTHER DEBITS

| DATE | TRANSACTION DESCRIPTION | | AMOUNT |
|------|------------------------|---------|--------|
| 8/31 | PINTEREST INC BENJA<br>CK ON PAYMENT OFA | PAYMENT | 549,937.48- |
| 8/31 | SPOTIFY INT<br>xxxBENJA ON PAYMENT | PAYMENT | 575,937.48- |

# EXHIBIT F

00051



100 W University Ave
Champaign IL 61820

15810992
BENJA INC
845 MARKET ST 450A
SAN FRANCISCO CA 94117

Date 8/31/20        Page      1
Primary Account              4766

## CHECKING ACCOUNT SUMMARY & DETAIL

| BUSINESS ANALYSIS | | Number of Enclosures | 2 |
|---|---|---|---|
| Account Number | 4766 | Statement Dates  8/03/20 thru  8/31/20 | |
| Previous Balance | 27,538.59- | Days in the statement period | 29 |
| 38 Deposits/Credits | 2,289,795.77 | Average Ledger | 8,477.06 |
| 35 Checks/Debits | 2,260,282.38 | Average Collected | 8,477.06 |
| Service Charge | .00 | | |
| Interest Paid | .00 | | |
| Ending Balance | 1,974.80 | | |

| | Total For This Period | Total Year-to-Date |
|---|---|---|
| Overdraft Item Fees | $.00 | $910.00 |
| Returned Item Fees | $.00 | $35.00 |

## DEPOSITS AND OTHER CREDITS

| DATE | TRANSACTION DESCRIPTON | AMOUNT |
|---|---|---|
| 8/03 | CGUSABENJA        TRANSFER<br>ANDREW CHAPIN<br>ST-M2D0B0E2U5B4 | 77.21 |
| 8/04 | Reverse OD Item Charge | 35.00 |
| 8/04 | CGUSABENJA        TRANSFER<br>ANDREW CHAPIN<br>ST-C2I2I7X5Q0F3 | 273.50 |
| 8/05 | Reverse OD Item Charge | 35.00 |
| 8/05 | Reverse OD Item Charge | 35.00 |
| 8/05 | Reverse OD Item Charge | 35.00 |
| 8/05 | Reverse OD Item Charge | 35.00 |
| 8/05 | Wire Transfer Credit<br>ANDREW J CHAPIN<br>26 CRAGMONT AVE<br>SAN FRANCISCO CA 94116-1308 US<br>20200805B1QGC08C003144<br>20200805MMQFMPUN000082<br>08050914FT03 | 25,000.00 |
| 8/05 | CGUSABENJA        TRANSFER<br>ANDREW CHAPIN<br>ST-Q7Z8U4B8W7E5 | 127.47 |
| 8/06 | Reverse OD Item Charge | 35.00 |
| 8/06 | Reverse OD Item Charge | 35.00 |
| 8/06 | Wire Transfer Credit | 20,000.00 |

Case: 20-30819   Doc# 21   Filed: 10/20/20   Entered: 10/20/20 17:51:40   Page 52 of 125

## CHANGE OF ADDRESS FORM

Please notify us immediately of any address changes on your accounts..

Customer Name: _____
                                                            (Account Number)

New Address: _____

(Street Address) _____  (Unit #) _____

(City) _____  (State) _____  (Zip Code) _____

Member FDIC

(Telephone Number) _____  (Social Security Number) _____

(Customer Signature) _____

**Please return this form to the address listed below or bring it to our office**

### THIS FORM WILL HELP YOU BALANCE YOUR CHECKBOOK

| CHECKS or WITHDRAWALS OUTSTANDING Not Charged To Your Account | | | | |
|---|---|---|---|---|
| Check No. | $ | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL | $ | | | |

ENDING BALANCE Shown On This Statement   $ _____

ADD (+)
Deposits, Loan Advances, Credit Memos, And   $ _____
Other Automatic Deposits Not Shown On This   $ _____
Statement   $ _____

SUBTRACT (-)   $ _____
Total of Checks Outstanding, Automatic Loan   $ _____
Payments, Automatic Savings Transfers, Service   $ _____
Charges, Debit Memos And Other Automatic   $ _____
Deductions Not Shown On This Statement   $ _____

BALANCE   $ _____

Current Checkbook Balance   $ _____

ADD (+)
Interest Earned From This Statement   $ _____

SUBTRACT (-)
Misc. Charges From This Statement   $ _____

NEW CHECKBOOK BALANCE
Should Agree With BALANCE Line   $ _____

### IMPORTANT INFORMATION

**In Case of General Statement Errors**

You must examine your statement of account with "reasonable promptness." If you discover (or reasonably should have discovered) any errors, unauthorized signatures, or alterations, you must promptly notify us of the relevant facts. You agree that the time you have to examine your statement and report to us will depend on the circumstances, but will not, in any circumstance, exceed a total of 30 days from when the statement is first sent or made available to you.

### IMPORTANT INFORMATION FOR CONSUMER ACCOUNTS

**In Case of Errors or Questions About Your Electronic Transactions**

Telephone or write us at the number or address listed below if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.
(1) Tell us your name and account number.
(2) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
(3) Tell us the date and the dollar amount of the suspected error.
We will investigate your complaint and will correct any error promptly.If we take more than 10 business days to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation. To qualify for this recredit, we require a written notice of the problem or complaint within 10 business days of your telephone call to us.

**In Case of Errors or Questions About Your Line of Credit or Home Equity Loan**

If you think your bill is wrong, or if you need information about this loan or a transaction on this statement, please write to us at the address listed below. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, please give us the following information:
(1) Your name and account number.
(2) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
(3) The date and the dollar amount of the suspected error.
You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your questions, we cannot report you as delinquent or take any action to collect the amount you question.

**Balance Subject to Interest Rate for Line of Credit**

Balance Subject to Interest Rate / Average Daily Balance - We figure the interest charge on your account by applying the periodic rate to the 'AVERAGE DAILY BALANCE' of your account (including current transactions). To get the 'AVERAGE DAILY BALANCE', we take the beginning balance of your account each day, add any new advances and subtract any payments or credits, also subtracting any unpaid finance charges. The automatic minimum payment amount is excluded when calculating the 'AVERAGE DAILY BALANCE' and 'INTEREST CHARGE'. If the account does not have sufficient funds to cover payment and another advance is made to cover minimum payment, this is also excluded from figuring the 'AVERAGE DAILY BALANCE' but is reflected in the beginning balance of the next statement cycle. This gives us the daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the 'AVERAGE DAILY BALANCE'. Written notification of any errors must be given to preserve your rights under the Truth in Lending Act. At any time the debtor may pay the aggregate balance or any portion of his/her indebtedness.

*We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.*

**Telephone Number and Address to Be Notified in the Event of Errors**

Call us at 800.672.8739 or write to us at Busey Bank, Attention: Customer Care Center, P.O. Box 4028, Champaign, IL 61824. You should also call us at this phone number or write to us at this address if you believe a transfer has been made using the information from your check without your permission.

00053

0146-STMT



BUSINESS ANALYSIS                    4766   (Continued)

## DEPOSITS AND OTHER CREDITS

| DATE | TRANSACTION DESCRIPTON | AMOUNT |
|---|---|---|
| | 26 CRAGMONT AVE | |
| | SAN FRANCISCO CA 94116-1308 US | |
| | 20200806B1QGC03C005761 | |
| | 20200806MMQFMPUN000133 | |
| | 08061035FT03 | |
| 8/06 | CGUSABENJA      TRANSFER | 70.22 |
| | ANDREW CHAPIN | |
| | ST-Y3N2O6U8G3E5 | |
| 8/07 | Wire Transfer Credit | 134,000.00 |
| | ANDREW J CHAPIN | |
| | 26 CRAGMONT AVE | |
| | SAN FRANCISCO CA 94116-1308 US | |
| | 20200807B1QGC05C009613 | |
| | 20200807MMQFMPUN000204 | |
| | 08071319FT03 | |
| 8/07 | CGUSABENJA      TRANSFER | 111.32 |
| | ANDREW CHAPIN | |
| | ST-W5G3P6P5G5R8 | |
| 8/10 | Wire Transfer Credit | 25,000.00 |
| | ANDREW J CHAPIN | |
| | 26 CRAGMONT AVE | |
| | SAN FRANCISCO CA 94116-1308 US | |
| | 20200810B1QGC06C002330 | |
| | 20200810MMQFMPUN000037 | |
| | 08100801FT03 | |
| 8/10 | Wire Transfer Credit | 37,386.78 |
| | WF EXC RTN TO SNDR 721 WIP | |
| | MAC P6101-081 | |
| | 1300 SW 5TH AVE 8TH FL | |
| | PORTLAND OR 97201-5667 | |
| | 20200810I1B7031R011337 | |
| | 20200810MMQFMPUN000177 | |
| | 08101335FT03 | |
| 8/10 | CGUSABENJA      TRANSFER | 20.21 |
| | ANDREW CHAPIN | |
| | ST-O6C6P2B7B2U4 | |
| 8/11 | Wire Transfer Credit | 4,000.00 |
| | ANDREW J CHAPIN | |
| | 26 CRAGMONT AVE | |
| | SAN FRANCISCO CA 94116-1308 US | |
| | 20200811B1QGC05C005373 | |
| | 20200811MMQFMPUN000141 | |
| | 08111113FT03 | |
| 8/11 | CGUSABENJA      TRANSFER | 155.35 |
| | ANDREW CHAPIN | |
| | ST-J9H7B0X1H0D5 | |
| 8/12 | CGUSABENJA      TRANSFER | 49.67 |
| | ANDREW CHAPIN | |



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766  (Continued)

## DEPOSITS AND OTHER CREDITS

| DATE | TRANSACTION DESCRIPTON | | AMOUNT |
|------|------------------------|--|--------|
| | ST-E1N1O8T8K9W6 | | |
| 8/14 | CGUSABENJA | TRANSFER | 215.66 |
| | ANDREW CHAPIN | | |
| | ST-B2I0O3L2W3X5 | | |
| 8/17 | CGUSABENJA | TRANSFER | 112.19 |
| | ANDREW CHAPIN | | |
| | ST-E5N8U1U0K8O3 | | |
| 8/18 | Wire Transfer Credit | | 11,000.00 |
| | ANDREW J CHAPIN | | |
| | 26 CRAGMONT AVE | | |
| | SAN FRANCISCO CA 94116-1308 US | | |
| | 20200818B1QGC01C007938 | | |
| | 20200818MMQFMPUN000164 | | |
| | 08181252FT03 | | |
| 8/18 | CGUSABENJA | TRANSFER | 418.48 |
| | ANDREW CHAPIN | | |
| | ST-X6F7Z6A7F6Z3 | | |
| 8/19 | Wire Transfer Credit | | 20,803.49 |
| | ANDREW J CHAPIN | | |
| | 26 CRAGMONT AVE | | |
| | SAN FRANCISCO CA 94116-1308 US | | |
| | 20200819B1QGC02C008957 | | |
| | 20200819MMQFMPUN000279 | | |
| | 08191531FT03 | | |
| 8/19 | CGUSABENJA | TRANSFER | 181.67 |
| | ANDREW CHAPIN | | |
| | ST-X3I1C7P0A7P8 | | |
| 8/20 | CGUSABENJA | TRANSFER | 130.35 |
| | ANDREW CHAPIN | | |
| | ST-U9Y3O6Y5T6X3 | | |
| 8/20 | FROM LOAN 0865 | | 1,979,296.50 |
| 8/21 | CGUSABENJA | TRANSFER | 93.62 |
| | ANDREW CHAPIN | | |
| | ST-H5D2Y3E4J5I0 | | |
| 8/21 | From L 6706744910865 | | 20,803.00 |
| | To DDA 500764766 | | |
| 8/24 | CGUSABENJA | TRANSFER | 141.80 |
| | ANDREW CHAPIN | | |
| | ST-Q0L0W9V7I0J7 | | |
| 8/25 | CGUSABENJA | TRANSFER | 398.10 |
| | ANDREW CHAPIN | | |
| | ST-K8G5M0Y6C8R5 | | |
| 8/26 | CGUSABENJA | TRANSFER | 32.80 |
| | ANDREW CHAPIN | | |
| | ST-H4R5F4Q7W9S8 | | |
| 8/27 | PAYPAL | TRANSFER | 8,410.46 |
| | ANDREW CHAPIN | | |
| | 1010139078579 | | |



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                         4766   (Continued)

## DEPOSITS AND OTHER CREDITS

| DATE | TRANSACTION DESCRIPTON | AMOUNT |
|------|------------------------|--------|
| 8/28 | CGUSABENJA        TRANSFER<br>ANDREW CHAPIN<br>ST-L7S9T9J4R1Y0 | 85.56 |
| 8/31 | CGUSABENJA        TRANSFER<br>ANDREW CHAPIN<br>ST-D1V4E7Y2O4G4 | 155.36 |
| 8/31 | PAYPAL            TRANSFER<br>ANDREW CHAPIN<br>1010179433893 | 1,000.00 |

## CHECKS AND OTHER DEBITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|------|-------------------------|--------|
| 8/03 | STRIPE            TRANSFER<br>ANDREW CHAPIN<br>ST-Y3D8S2F0R4C3 | 1,526.64- |
| 8/03 | Overdraft Item Charge | 35.00- |
| 8/04 | GUSTO            FEE 275077<br>Benja Incorporated<br>6semjooc091 | 111.00- |
| 8/04 | STRIPE            TRANSFER<br>ANDREW CHAPIN<br>ST-X4Q7W9P7X0R4 | 170.57- |
| 8/04 | SSBTRUSTOPS      P/R Contr<br>BENJA INCORPORAT | 5,703.75- |
| 8/04 | Overdraft Item Charge | 140.00- |
| 8/05 | STRIPE            TRANSFER<br>ANDREW CHAPIN<br>ST-R5G1I8I8A7G3 | 320.18- |
| 8/05 | AMEX EPAYMENT    ACH PMT<br>Andrew Chapin<br>M4460 | 5,800.00- |
| 8/05 | Overdraft Item Charge | 70.00- |
| 8/06 | Guideline Retire GUIDELINE.<br>BENJA INCORPORATED<br>ST-W1Z6D6R7G1G0 | 39.00- |
| 8/06 | STRIPE            TRANSFER<br>ANDREW CHAPIN<br>ST-K1T5Y5N3I4V2 | 60.06- |
| 8/07 | Wire Transfer Debit<br>Sports Byline USA<br>122016066<br>0450009504<br>CITY NATIONAL BANK<br>20200807MMQFMPUN000270<br>20200807L2LFCK1C003392<br>08071344FT03 | 2,000.00- |

Case: 20-30819   Doc# 21   Filed: 10/20/20   Entered: 10/20/20 17:51:40   Page 56 of 125

00056



BUSINESS ANALYSIS                    4766  (Continued)

## CHECKS AND OTHER DEBITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|------|-------------------------|--------|
| 8/07 | Wire Transfer Debit<br>Koosh Media<br>321370765<br>8103786531<br>AMERICAN SAVINGS B<br>INV AUGUST<br>20200807MMQFMPUN000313<br>20200807GMQFMP01020788<br>08071428FT03 | 10,000.00- |
| 8/07 | Wire Transfer Debit<br>Sean C Fleming Rev Trust 5/1/0<br>026007993<br>101-WA-258641-000<br>UBS AG<br>Further Credit U2 32785 SCF Tr<br>20200807MMQFMPUN000312<br>20200807B1Q8051R000649<br>08071428FT03 | 12,500.00- |
| 8/07 | Wire Transfer Debit<br>MHC Financial Services, Inc.<br>101000695<br>9872224221<br>UMB BANK, N.A.<br>20200807MMQFMPUN000348<br>20200807J1B7841C001254<br>08071459FT03 | 100,000.00- |
| 8/10 | Wire Transfer Debit<br>E-Revshare Core LLC<br>121000248<br>026012881<br>WELLS FARGO BANK,<br>20200810MMQFMPUN000097<br>20200810I1B7033R010050<br>08101129FT03 | 37,386.78- |
| 8/10 | STRIPE          TRANSFER<br>ANDREW CHAPIN<br>ST-K1H7F8F2G2G0 | 401.43- |
| 8/12 | Wire Transfer Debit<br>E-Revshare Core LLC<br>121000248<br>1200787933<br>WELLS FARGO BANK,<br>20200812MMQFMPUN000149<br>20200812I1B7031R011373<br>08121206FT03 | 37,386.78- |
| 8/12 | STRIPE          TRANSFER<br>ANDREW CHAPIN<br>ST-I8D8U3A1D6Z5 | 41.89- |



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS         4766   (Continued)

## CHECKS AND OTHER DEBITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|------|------------------------|--------|
| 8/13 | Wire Transfer Debit<br>TYZ LAW GROUP PC<br>321171184<br>206670879<br>CITIBANK, N.A.<br>20200813MMQFMPUN000021<br>20200813B1Q8021R009731<br>08130904FT03 | 4,500.00- |
| 8/14 | Account Analysis Charge | 230.26- |
| 8/17 | STRIPE        TRANSFER<br>ANDREW CHAPIN<br>ST-D3A1U6U2I8C0 | 135.82- |
| 8/18 | From DDA 500764766<br>to L 6706744910865 | 10,260.63- |
| 8/20 | Wire Transfer Debit<br>MHC Financial Services, Inc.<br>101000695<br>9872224221<br>UMB BANK, N.A.<br>20200820MMQFMPUN000031<br>20200820J1B7841C000325<br>08200926FT03 | 1,941,298.12- |
| 8/20 | FEE AND INT DUE LOAN 0865 | 20,803.49- |
| 8/21 | Wire Transfer Debit<br>Andrew Chapin<br>322271627<br>555475257<br>JPMORGAN CHASE BAN<br>20200821MMQFMPUN000116<br>20200821B1QGC01R031442<br>08211128FT03 | 30,000.00- |
| 8/24 | WCB Warehouse    WCB Wareho<br>BENJA INCORPORATED<br>ST-J1P7E3N5I8K0 | 571.75- |
| 8/24 | CHASE CREDIT CRD EPAY<br>ANDREW J CHAPIN<br>4842308773 | 8,000.00- |
| 8/24 | PAYPAL        INST XFER<br>ANDREW CHAPIN<br>MARTIJNKLEI | 8,410.46- |
| 8/25 | Wire Transfer Debit<br>Martinus Petrus Kleiweg<br>031176110<br>36105355930<br>CAPITAL ONE, NA<br>20200825MMQFMPUN000068<br>20200825MMQFMPGH001506<br>08251031FT03 | 9,065.00- |



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766  (Continued)

## CHECKS AND OTHER DEBITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|------|------------------------|--------|
| 8/27 | Wire Transfer Debit | 702.40- |
|      | Benja Incorporated | |
|      | 322271627 | |
|      | 599330732 | |
|      | JPMORGAN CHASE BAN | |
|      | 20200827MMQFMPUN000017 | |
|      | 20200827B1QGC01R021347 | |
|      | 08270920FT03 | |
| 8/27 | Wire Transfer Debit | 10,000.00- |
|      | MHC Financial Services Inc. | |
|      | 101000695 | |
|      | 9872224221 | |
|      | UMB BANK, N.A. | |
|      | 20200827MMQFMPUN000115 | |
|      | 20200827J1B7841C000678 | |
|      | 08271150FT03 | |
| 8/28 | Wire Transfer Debit | 2,500.00- |
|      | MHC Financial Services, Inc. | |
|      | 101000695 | |
|      | 9872224221 | |
|      | UMB BANK, N.A. | |
|      | 20200828MMQFMPUN000308 | |
|      | 20200828J1B7841C001659 | |
|      | 08281546FT03 | |

## CHECKS IN SERIAL NUMBER ORDER

| DATE | CHECK NO | AMOUNT | DATE | CHECK NO | AMOUNT |
|------|----------|--------|------|----------|--------|
| 8/04 | 5015 | 110.46 | 8/07 | 5016 | .91 |

*Indicates break in check number sequence

## DAILY BALANCE SECTION

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|------|---------|------|---------|------|---------|
| 8/03 | 29,023.02- | 8/04 | 34,950.30- | 8/05 | 15,873.01- |
| 8/06 | 4,168.15 | 8/07 | 13,778.56 | 8/10 | 38,397.34 |
| 8/11 | 42,552.69 | 8/12 | 5,173.69 | 8/13 | 673.69 |
| 8/14 | 659.09 | 8/17 | 635.46 | 8/18 | 1,793.31 |
| 8/19 | 22,778.47 | 8/20 | 40,103.71 | 8/21 | 31,000.33 |
| 8/24 | 14,159.92 | 8/25 | 5,493.02 | 8/26 | 5,525.82 |
| 8/27 | 3,233.88 | 8/28 | 819.44 | 8/31 | 1,974.80 |

Case: 20-30819   Doc# 21   Filed: 10/20/20   Entered: 10/20/20 17:51:40   Page 59 of
125
00059



Check 5015 Amount $110.46 Date 8/4/2020



Check 5016 Amount $0.91 Date 8/7/2020



100 W University Ave
Champaign IL 61820

14776286
BENJA INC
845 MARKET ST 450A
SAN FRANCISCO CA 94117

Date  7/31/20       Page    1
Primary Account            4766

| CHECKING ACCOUNT SUMMARY & DETAIL |
|---|

| BUSINESS ANALYSIS | | Number of Enclosures | 0 |
|---|---|---|---|
| Account Number | 4766 | Statement Dates   7/01/20 thru  8/02/20 | |
| Previous Balance | 17,983.54- | Days in the statement period | 33 |
| 42 Deposits/Credits | 124,314.55 | Average Ledger | 5,614.76- |
| 67 Checks/Debits | 133,869.60 | Average Collected | 5,614.76- |
| Service Charge | .00 | | |
| Interest Paid | .00 | | |
| Ending Balance | 27,538.59- | | |

| | Total For This Period | Total Year-to-Date |
|---|---|---|
| Overdraft Item Fees | $105.00 | $910.00 |
| Returned Item Fees | $.00 | $35.00 |

| DEPOSITS AND OTHER CREDITS | | |
|---|---|---|
| DATE | TRANSACTION DESCRIPTON | AMOUNT |
| 7/01 | Reverse OD Item Charge | 35.00 |
| | Reverse OD Item Charge | 35.00 |
| 7/01 | CGUSABENJA        TRANSFER ANDREW CHAPIN ST-P2P7L9K0W0G3 | 125.09 |
| 7/02 | Reverse OD Item Charge | 35.00 |
| 7/02 | CGUSABENJA        TRANSFER ANDREW CHAPIN ST-B1T1Y9G8C7W7 | 45.73 |
| 7/03 | Reverse OD Item Charge | 35.00 |
| | Reverse OD Item Charge | 35.00 |
| 7/06 | CGUSABENJA        TRANSFER ANDREW CHAPIN ST-Z2Z7A7V2X7L0 | 56.96 |
| 7/07 | Reverse OD Item Charge | 35.00 |
| 7/07 | CGUSABENJA        TRANSFER ANDREW CHAPIN ST-L7D3I7O1M6K4 | 222.24 |
| 7/08 | Reverse OD Item Charge | 35.00 |
| 7/08 | Reverse OD Item Charge | 35.00 |
| 7/08 | Reverse OD Item Charge | 35.00 |
| 7/08 | Reverse OD Item Charge | 35.00 |
| 7/09 | Wire Transfer Credit | 17,850.00 |

Case: 20-30819   Doc#21   Filed: 10/20/20   Entered: 10/20/20 17:51:40   Page 61 of 125

# CHANGE OF ADDRESS FORM

Please notify us immediately of any address changes on your accounts..

Customer Name: _____

(Account Number)

New Address: _____

(Street Address)                                                (Unit #)

_____

(City)                          (State)                         (Zip Code)

🏠 Member FDIC    _____
EQUAL HOUSING
LENDER
(Telephone Number)                                              (Social Security Number)

_____

(Customer Signature)

**Please return this form to the address listed below or bring it to our office**

## THIS FORM WILL HELP YOU BALANCE YOUR CHECKBOOK

| CHECKS or WITHDRAWALS OUTSTANDING Not Charged To Your Account | | | | |
|---|---|---|---|---|
| Check No. | $ | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| TOTAL | $ | | | |

ENDING BALANCE Shown On This Statement          $ _____

ADD (+)
Deposits, Loan Advances, Credit Memos, And     $ _____
Other Automatic Deposits Not Shown On This     $ _____
Statement                                       $ _____

SUBTRACT (-)                                    $ _____
Total of Checks Outstanding, Automatic Loan    $ _____
Payments, Automatic Savings Transfers, Service $ _____
Charges, Debit Memos And Other Automatic       $ _____
Deductions Not Shown On This Statement         $ _____

BALANCE                                         $ _____

Current Checkbook Balance                       $ _____

ADD (+)
Interest Earned From This Statement             $ _____

SUBTRACT (-)
Misc. Charges From This Statement               $ _____

NEW CHECKBOOK BALANCE
Should Agree With BALANCE Line                  $ _____

## IMPORTANT INFORMATION

### In Case of General Statement Errors

You must examine your statement of account with "reasonable promptness." If you discover (or reasonably should have discovered) any errors, unauthorized signatures, or alterations, you must promptly notify us of the relevant facts. You agree that the time you have to examine your statement and report to us will depend on the circumstances,but will not, in any circumstance, exceed a total of 30 days from when the statement is first sent or made available to you.

## IMPORTANT INFORMATION FOR CONSUMER ACCOUNTS

### In Case of Errors or Questions About Your Electronic Transactions

Telephone or write us at the number or address listed below if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.
(1) Tell us your name and account number.
(2) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
(3) Tell us the date and the dollar amount of the suspected error.
We will investigate your complaint and will correct any error promptly.If we take more than 10 business days to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation. To qualify for this recredit, we require a written notice of the problem or complaint within 10 business days of your telephone call to us.

### In Case of Errors or Questions About Your Line of Credit or Home Equity Loan

If you think your bill is wrong, or if you need information about this loan or a transaction on this statement, please write to us at the address listed below. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, please give us the following information:
(1) Your name and account number.
(2) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
(3) The date and the dollar amount of the suspected error.
You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your questions, we cannot report you as delinquent or take any action to collect the amount you question.

### Balance Subject to Interest Rate for Line of Credit

Balance Subject to Interest Rate / Average Daily Balance - We figure the interest charge on your account by applying the periodic rate to the 'AVERAGE DAILY BALANCE' of your account (including current transactions). To get the 'AVERAGE DAILY BALANCE', we take the beginning balance of your account each day, add any new advances and subtract any payments or credits, also subtracting any unpaid finance charges. The automatic minimum payment amount is excluded when calculating the 'AVERAGE DAILY BALANCE' and 'INTEREST CHARGE'. If the account does not have sufficient funds to cover payment and another advance is made to cover minimum payment, this is also excluded from figuring the 'AVERAGE DAILY BALANCE' but is reflected in the beginning balance of the next statement cycle. This gives us the daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the 'AVERAGE DAILY BALANCE'. Written notification of any errors must be given to preserve your rights under the Truth in Lending Act. At any time the debtor may pay the aggregate balance or any portion of his/her indebtedness.

*We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.*

### Telephone Number and Address to Be Notified in the Event of Errors

Call us at 800.672.8739 or write to us at Busey Bank, Attention: Customer Care Center, P.O. Box 4028, Champaign, IL 61824. You should also call us at this phone number or write to us at this address if you believe a transfer has been made using the information from your check without your permission.

00062



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                4766  (Continued)

## DEPOSITS AND OTHER CREDITS

| DATE | TRANSACTION DESCRIPTON | AMOUNT |
|---|---|---|
|  | 26 CRAGMONT AVE | |
|  | SAN FRANCISCO CA 94116-1308 US | |
|  | 20200709B1QGC08C007019 | |
|  | 20200709MMQFMPUN000143 | |
|  | 07091148FT03 | |
| 7/09 | CGUSABENJA       TRANSFER | 92.93 |
|  | ANDREW CHAPIN | |
|  | ST-M0L6Y9Q8L4W8 | |
| 7/10 | Wire Transfer Credit | 19,600.00 |
|  | ANDREW J CHAPIN | |
|  | 26 CRAGMONT AVE | |
|  | SAN FRANCISCO CA 94116-1308 US | |
|  | 20200710B1QGC07C004764 | |
|  | 20200710MMQFMPUN000155 | |
|  | 07101113FT03 | |
| 7/13 | CGUSABENJA       TRANSFER | 160.34 |
|  | ANDREW CHAPIN | |
|  | ST-L3P5K1H5O8G2 | |
| 7/13 | Benja - Affordab Benja - Af | 3,800.00 |
|  | ANDREW CHAPIN | |
|  | ST-C1Z3A0J4V8F5 | |
| 7/13 | From L  6706744910865 | 3,800.00 |
|  | To DDA 500764766 | |
| 7/14 | Wire Transfer Credit | 32,818.09 |
|  | ANDREW J CHAPIN | |
|  | 26 CRAGMONT AVE | |
|  | SAN FRANCISCO CA 94116-1308 US | |
|  | 20200714B1QGC02C006404 | |
|  | 20200714MMQFMPUN000140 | |
|  | 07141147FT03 | |
| 7/14 | CGUSABENJA       TRANSFER | 254.97 |
|  | ANDREW CHAPIN | |
|  | ST-B8G4G2D3T0C3 | |
| 7/15 | Wire Transfer Credit | 40,000.00 |
|  | ANDREW J CHAPIN | |
|  | 26 CRAGMONT AVE | |
|  | SAN FRANCISCO CA  94116-1308 | |
|  | 20200715E6B7361C000380 | |
|  | 20200715MMQFMPUN000040 | |
|  | 07150818FT03 | |
| 7/15 | CGUSABENJA       TRANSFER | 32.17 |
|  | ANDREW CHAPIN | |
|  | ST-G6E1B1Z9U6P3 | |
| 7/15 | Benja - Affordab Benja - Af | 550.00 |
|  | ANDREW CHAPIN | |
|  | ST-O9E2A6J0W0O6 | |
| 7/16 | Benja - Affordab Benja - Af | 1,350.00 |
|  | ANDREW CHAPIN | |

Case: 20-30819   Doc# 21   Filed: 10/20/20   Entered: 10/20/20 17:51:40   Page 63 of
125

00063



100 W University Ave
Champaign IL 61820

Date  7/31/20        Page     3
Primary Account           4766

BUSINESS ANALYSIS                4766  (Continued)

## DEPOSITS AND OTHER CREDITS

| DATE | TRANSACTION DESCRIPTON | | AMOUNT |
|------|------------------------|---|--------|
| | ST-N7Z5F8V2F7J2 | | |
| 7/20 | CGUSABENJA | TRANSFER | 115.02 |
| | ANDREW CHAPIN | | |
| | ST-T2C0S9X1K9N4 | | |
| 7/20 | Benja - Affordab Benja - Af | | 658.58 |
| | ANDREW CHAPIN | | |
| | ST-T1G3B4V6C2S4 | | |
| 7/21 | CGUSABENJA | TRANSFER | 462.71 |
| | ANDREW CHAPIN | | |
| | ST-N6Y6R6X8J5C5 | | |
| 7/22 | CGUSABENJA | TRANSFER | 32.80 |
| | ANDREW CHAPIN | | |
| | ST-H1D2M6V8M3E8 | | |
| 7/22 | Benja - Affordab Benja - Af | | 390.00 |
| | ANDREW CHAPIN | | |
| | ST-P0Z2N5H4O5T4 | | |
| 7/23 | CGUSABENJA | TRANSFER | 65.83 |
| | ANDREW CHAPIN | | |
| | ST-J1T0X5E6G1U3 | | |
| 7/24 | CGUSABENJA | TRANSFER | 257.08 |
| | ANDREW CHAPIN | | |
| | ST-F1W0O9T7Y7W7 | | |
| 7/27 | CGUSABENJA | TRANSFER | 58.18 |
| | ANDREW CHAPIN | | |
| | ST-S6Z9F0O0S1F4 | | |
| 7/27 | Benja - Affordab Benja - Af | | 640.00 |
| | ANDREW CHAPIN | | |
| | ST-I3O4R0R4R7W3 | | |
| 7/28 | CGUSABENJA | TRANSFER | 137.60 |
| | ANDREW CHAPIN | | |
| | ST-X4H6Y1K8C2G1 | | |
| 7/28 | Benja - Affordab Benja - Af | | 200.00 |
| | ANDREW CHAPIN | | |
| | ST-G3V7I5W5I4N8 | | |
| 7/30 | CGUSABENJA | TRANSFER | 57.06 |
| | ANDREW CHAPIN | | |
| | ST-C9M4N1V7H6I2 | | |
| 7/31 | Reverse OD Item Charge | | 35.00 |
| 7/31 | Reverse OD Item Charge | | 35.00 |
| 7/31 | Reverse OD Item Charge | | 35.00 |
| 7/31 | CGUSABENJA | TRANSFER | 26.17 |
| | ANDREW CHAPIN | | |
| | ST-H2I5E0G6Q2P1 | | |

## CHECKS AND OTHER DEBITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|------|-------------------------|--------|



100W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766  (Continued)

## CHECKS AND OTHER DEBITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|------|-------------------------|--------|
| 7/01 | SHOPIFY CAPITAL  RLCTKHK5S<br>Andrew Chapin<br>R7581875 | 26.74- |
| 7/01 | Overdraft Item Charge | 35.00- |
| 7/02 | SHOPIFY CAPITAL  RAFYIHIGX<br>Andrew Chapin<br>R7592370 | 54.52- |
| 7/02 | GUSTO          FEE 955354<br>Benja Incorporated<br>6semjol7uee | 117.00- |
| 7/02 | Overdraft Item Charge | 70.00- |
| 7/06 | SHOPIFY CAPITAL  RIQGVENQI<br>Andrew Chapin<br>R7603172 | 55.43- |
| 7/06 | Overdraft Item Charge | 35.00- |
| 7/07 | SHOPIFY CAPITAL  RUK26RHJG<br>Andrew Chapin<br>R7644096 | 21.80- |
| 7/07 | SHOPIFY CAPITAL  RX5AASE5C<br>Andrew Chapin<br>R7634750 | 35.98- |
| 7/07 | SHOPIFY CAPITAL  RPUOUZGDQ<br>Andrew Chapin<br>R7624759 | 46.25- |
| 7/07 | SHOPIFY CAPITAL  REFDLBBLF<br>Andrew Chapin<br>R7614041 | 57.00- |
| 7/07 | Overdraft Item Charge | 140.00- |
| 7/08 | SHOPIFY CAPITAL  R3YTE3HVO<br>Andrew Chapin<br>R7653886 | 38.60- |
| 7/08 | Overdraft Item Charge | 35.00- |
| 7/09 | SHOPIFY CAPITAL  RA6JN4TG4<br>Andrew Chapin<br>R7664471 | 9.49- |
| 7/09 | WCB Warehouse    WCB Wareho<br>BENJA INCORPORATED<br>ST-S0K3N3Q8V9B7 | 729.38- |
| 7/09 | Overdraft Item Charge | 70.00- |
| 7/10 | Wire Transfer Debit<br>Sports Byline USA<br>122016066<br>0450009504<br>CITY NATIONAL BANK<br>20200710MMQFMPUN000256<br>20200710L2LFCK1C003772<br>07101432FT03 | 2,000.00- |
| 7/10 | Wire Transfer Debit<br>E-Revshare Core LLC | 3,597.44- |

Case: 20-30819   Doc# 21   Filed: 10/20/20   Entered: 10/20/20 17:51:40   Page 65 of
125



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766  (Continued)

## CHECKS AND OTHER DEBITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|------|------------------------|--------|
|      | 121000248 | |
|      | 1200787933 | |
|      | WELLS FARGO BANK, | |
|      | Benja June 2020 | |
|      | 20200710MMQFMPUN000119 | |
|      | 20200710I1B7031R009610 | |
|      | 07101131FT03 | |
| 7/10 | SHOPIFY CAPITAL  RGY5P45I5 | 37.72- |
|      | Andrew Chapin | |
|      | R7675495 | |
| 7/10 | CGUSABENJA        TRANSFER | 48.17- |
|      | ANDREW CHAPIN | |
|      | ST-D7A4R1M2X3B5 | |
| 7/10 | to loan 6706744910865 | 11,199.54- |
|      | from dda 500764766 | |
| 7/13 | SHOPIFY CAPITAL  RHOHWPCKL | 26.18- |
|      | Andrew Chapin | |
|      | R7686557 | |
| 7/14 | Wire Transfer Debit | 33,917.56- |
|      | E-Revshare Core LLC | |
|      | 121000248 | |
|      | 1200787933 | |
|      | WELLS FARGO BANK, | |
|      | 20200714MMQFMPUN000137 | |
|      | 20200714I1B7031R011008 | |
|      | 07141203FT03 | |
| 7/14 | SHOPIFY CAPITAL  RVXEXCCSD | 35.84- |
|      | Andrew Chapin | |
|      | R7708123 | |
| 7/14 | SHOPIFY CAPITAL  RFD7MTUJM | 38.65- |
|      | Andrew Chapin | |
|      | R7717989 | |
| 7/14 | PAYPAL          INST XFER | 47.44- |
|      | ANDREW CHAPIN | |
|      | REESE8453 EBAY | |
| 7/14 | SHOPIFY CAPITAL  RBKII5AXD | 51.93- |
|      | Andrew Chapin | |
|      | R7697558 | |
| 7/14 | GUSTO          CND 027771 | 75.00- |
|      | Benja Incorporated | |
|      | 6semjom9jlq | |
| 7/15 | Account Analysis Charge | 286.68- |
| 7/15 | Wire Transfer Debit | 13,125.00- |
|      | Sean C Fleming Rev Trust 5/1/0 | |
|      | 026007993 | |
|      | 101WA258641000 | |
|      | UBS AG | |
|      | U2 32785 SCF Tr Alt Inv | |



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766  (Continued)

| CHECKS AND OTHER DEBITS | | |
| --- | --- | ---: |
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** |
| | 20200715MMQFMPUN000041 | |
| | 20200715B1Q8052R000407 | |
| | 07150921FT03 | |
| 7/15 | Wire Transfer Debit | 30,000.00- |
| | UMB Bank NA | |
| | 101000695 | |
| | 9872215826 | |
| | UMB BANK, N.A. | |
| | 20200715MMQFMPUN000042 | |
| | 20200715J1B7841C000337 | |
| | 07150921FT03 | |
| 7/15 | SHOPIFY CAPITAL   RR3G3Z7R7 | 115.49- |
| | Andrew Chapin | |
| | R7728106 | |
| 7/15 | WCB Warehouse    WCB Wareho | 250.00- |
| | BENJA INCORPORATED | |
| | ST-D6Q8E9Y3S9O9 | |
| 7/15 | GUSTO            CND 063362 | 500.00- |
| | Benja Incorporated | |
| | 6semjomjc6q | |
| 7/16 | Wire Transfer Debit | 4,250.00- |
| | CFOs2Go | |
| | 121143260 | |
| | 0101150100 | |
| | WESTERN ALLIANCE B | |
| | 20200716MMQFMPUN000249 | |
| | 20200716L1LFB71C001608 | |
| | 07161536FT03 | |
| 7/16 | CGUSABENJA       TRANSFER | 9.73- |
| | ANDREW CHAPIN | |
| | ST-U0F5Z7N1N4Q8 | |
| 7/16 | SHOPIFY CAPITAL   RNS6W7IBL | 70.61- |
| | Andrew Chapin | |
| | R7738730 | |
| 7/17 | CGUSABENJA       TRANSFER | .37- |
| | ANDREW CHAPIN | |
| | ST-S5N2F5B0R8U1 | |
| 7/17 | SHOPIFY CAPITAL   RZ6DPYVYF | 34.97- |
| | Andrew Chapin | |
| | R7749605 | |
| 7/20 | SHOPIFY CAPITAL   RBLUIHBSA | 48.48- |
| | Andrew Chapin | |
| | R7760752 | |
| 7/21 | SHOPIFY CAPITAL   R7MEQNSVL | 5.46- |
| | Andrew Chapin | |
| | R7771889 | |
| 7/21 | SHOPIFY CAPITAL   RQ7Y4LEKA | 13.22- |
| | Andrew Chapin | |



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766   (Continued)

| | CHECKS AND OTHER DEBITS | | |
|---|---|---|---|
| **DATE** | **TRANSACTION DESCRIPTION** | | **AMOUNT** |
| | R7792529 | | |
| 7/21 | SHOPIFY CAPITAL   RCJSO5DIK | | 19.30- |
| | Andrew Chapin | | |
| | R7782568 | | |
| 7/21 | SMOOTHOSTING LTD IAT PAYPAL | | 110.00- |
| | ANDREW CHAPIN | | |
| 7/22 | SHOPIFY CAPITAL   RKMAVDNTR | | 20.79- |
| | Andrew Chapin | | |
| | R7802761 | | |
| 7/22 | PAYPAL           INST XFER | | 148.30- |
| | ANDREW CHAPIN | | |
| | AIRBRUSHUNL | | |
| 7/24 | VENMO            PAYMENT | | 11.99- |
| | ANDREW CHAPIN | | |
| | 3806386704 | | |
| 7/24 | SHOPIFY CAPITAL   RZD7VLYFH | | 52.27- |
| | Andrew Chapin | | |
| | R7824477 | | |
| 7/24 | WCB Warehouse    WCB Wareho | | 250.00- |
| | BENJA INCORPORATED | | |
| | ST-U7T5A5U5I9H4 | | |
| 7/27 | PAYPAL           INST XFER | | 16.26- |
| | ANDREW CHAPIN | | |
| | SPORTSKARDC EBA | | |
| 7/27 | SHOPIFY CAPITAL   RRRRH62HX | | 47.87- |
| | Andrew Chapin | | |
| | R7835433 | | |
| 7/28 | SHOPIFY CAPITAL   RKFDGNVL3 | | 6.37- |
| | Andrew Chapin | | |
| | R7867135 | | |
| 7/28 | SHOPIFY CAPITAL   R673UTSRW | | 12.83- |
| | Andrew Chapin | | |
| | R7857229 | | |
| 7/28 | SHOPIFY CAPITAL   RKSIS5ECF | | 13.55- |
| | Andrew Chapin | | |
| | R7846553 | | |
| 7/29 | CGUSABENJA       TRANSFER | | 48.17- |
| | ANDREW CHAPIN | | |
| | ST-A2B3U3O7U3Z5 | | |
| 7/30 | GUSTO            CND 142790 | | 50.00- |
| | Benja Incorporated | | |
| | 6semjono4dl | | |
| 7/30 | GUSTO            CND 142790 | | 150.00- |
| | Benja Incorporated | | |
| | 6semjono4eo | | |
| 7/30 | GUSTO            CND 142790 | | 200.00- |
| | Benja Incorporated | | |
| | 6semjono4ef | | |



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766   (Continued)

## CHECKS AND OTHER DEBITS

| DATE | TRANSACTION DESCRIPTION | | AMOUNT |
|------|------------------------|---|--------|
| 7/30 | GUSTO | CND 142790 | 300.00- |
| | Benja Incorporated | | |
| | 6semjono4el | | |
| 7/30 | GUSTO | CND 142790 | 400.00- |
| | Benja Incorporated | | |
| | 6semjono4e3 | | |
| 7/30 | GUSTO | CND 142790 | 450.00- |
| | Benja Incorporated | | |
| | 6semjono4dn | | |
| 7/30 | GUSTO | CND 142790 | 1,000.00- |
| | Benja Incorporated | | |
| | 6semjono4en | | |
| 7/30 | GUSTO | REM 142476 | 1,900.00- |
| | Benja Incorporated | | |
| | 6semjonpvv5 | | |
| 7/30 | GUSTO | TAX 142477 | 7,717.25- |
| | Benja Incorporated | | |
| | 6semjonpvpo | | |
| 7/30 | GUSTO | NET 142475 | 19,476.98- |
| | Benja Incorporated | | |
| | 6semjonpvmu | | |
| 7/30 | Overdraft Item Charge | | 105.00- |

## DAILY BALANCE SECTION

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|------|---------|------|---------|------|---------|
| 7/01 | 17,850.19- | 7/02 | 18,010.98- | 7/03 | 17,940.98- |
| 7/06 | 17,974.45- | 7/07 | 18,018.24- | 7/08 | 17,951.84- |
| 7/09 | 817.78- | 7/10 | 1,899.35 | 7/13 | 9,633.51 |
| 7/14 | 8,540.15 | 7/15 | 4,845.15 | 7/16 | 1,864.81 |
| 7/17 | 1,829.47 | 7/20 | 2,554.59 | 7/21 | 2,869.32 |
| 7/22 | 3,123.03 | 7/23 | 3,188.86 | 7/24 | 3,131.68 |
| 7/27 | 3,765.73 | 7/28 | 4,070.58 | 7/29 | 4,022.41 |
| 7/30 | 27,669.76- | 7/31 | 27,538.59- | | |

**AGREEMENT AND CONSENT TO ELECTRONIC DELIVERY OF BANK STATEMENTS, NOTICES AND OTHER ACCOUNT DOCUMENTS**

1. Welcome to Busey Bank's e-delivery service. Busey Bank's goal is to provide you with an easy and convenient way to receive electronically your periodic bank account statements ("Bank Statements"), notices and other account documents.

2. **Your consent:** For Busey Bank (the "Bank") to begin forwarding your Bank Statements and other account documents to you electronically, the Bank needs your consent. Your consent is given when you accept this Agreement and Consent to Electronic Delivery of Bank Statements and Other Account Documents (this "Agreement"). By agreeing to have these documents sent electronically, you also agree to notify the Bank immediately by telephone at the numbers set forth in this Agreement of any change in your email address or any errors or complications relating to your electronic receipt or access of your Bank Statements and other account documents. To the extent that you previously agreed to electronic delivery of your Bank Statements and other account documents, this Agreement hereby supersedes any prior agreement and your consent to electronic delivery remains in place unless you instruct the Bank otherwise within thirty (30) calendar days after receiving this Agreement by contacting the Bank at the phone number, email address or mailing address included below.

- **Statement delivery -** If you elect to receive your Bank Statements through electronic delivery, the Bank will no longer send you your Bank Statements through the mail.

- **Whether your consent applies only to a particular transaction or to categories of transactions –** Your consent will authorize the Bank to forward to you electronically your periodic Bank Statements, notices and other documents regarding your account(s), including but not limited to, Truth in Savings disclosures and other required disclosures and documents relating to your accounts.

- **The right to withdraw consent to have records provided electronically, including any consequences or fees associated with doing so -** To discontinue this electronic delivery service, you can log into the Busey online banking platform and navigate to the Documents section. Under the Sign Up/ Changes option you can elect to unenroll any accounts you wish to have paper delivery. It will take up to forty-five (45) days for the Bank to implement your request, and after such time you will no longer receive your Bank Statements, notices, disclosures, and other documents regarding your accounts electronically.

- **How the customer may obtain a paper copy of records upon request –** To obtain paper copies of a particular Bank Statement, notice or other account document contact the Bank at 1-800-672-8739. A fee per statement will be charged to your account. Please see Terms and Fees Disclosure for the fee amount.

- **Hardware and software requirements for access and retention of the electronic information -** The hardware and software requirements to enable you to receive and retain your Bank Statements, notices and other account documents electronically are discussed below in **The Bank's Requirements**.

3. **The Bank's Requirements:** First, the same terms apply with respect to electronically delivered Bank Statements, notices and other accounts documents as apply to those in paper form, and, except as set forth in **Your Consent** with respect to this Agreement, the account agreements and disclosures that you have previously entered into with or received from the Bank remain in effect.

Second, for you to be able to receive and view your documents effectively, you must use an Internet browser that supports 128-bit encryption. It is recommended that only certified/supported browsers be used to view Bank Statements. A list of supported browsers is available on the Bank's website at www.busey.com/personal/products-and-services/online---mobile/online-banking. To review your Bank Statements, you will need Adobe Acrobat Flash Player. This product is available for free at http:// www.adobe.com.

**You may print or download your eStatements to retain copies of them.**

4. **Privacy:** The Bank's privacy policy (that has been previously provided to you) will apply to this service and the policy is incorporated into and made a part of this Agreement.

5. **Service Availability:** The Bank may change, suspend or eliminate all or any aspect of this delivery service upon notice to you.

6. **Security:** You will access your Bank Statements, notices and other account documents through the Busey

00070

online banking platform. To protect the security of your banking information, you must not disclose or share your Busey online banking password with any third party. In addition, your Bank Statements and notices will not be forwarded to you through email. Documents such as terms and conditions and similar disclosure agreements may be sent directly to you by email.

7.   **NO WARRANTY FOR CONTINUOUS OR UNINTERRUPTED SERVICE:** BECAUSE OF THE UNPREDICTABILITY OF THE INTERNET, THE BANK DOES NOT GUARANTEE CONTINUOUS OR UNINTERRUPTED ACCESS TO YOUR BANK STATEMENTS THROUGH THE INTERNET.

8.   **LIMIT OF LIABILITY:** YOU AGREE THAT IN NO EVENT WILL THE BANK OR THE BANK'S SUPPLIERS (OR ANY OF THE BANK'S OR ITS SUPPLIER'S SHAREHOLDERS, MEMBERS, OFFICERS, DIRECTORS OR EMPLOYEES) BE LIABLE FOR LOST PROFITS OR ANY SPECIAL, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES ARISING OUT OF OR IN CONNECTION WITH YOUR USE OF THE BANK'S SERVICE, EVEN IF THE BANK HAS BEEN ADVISED OF THE POSSIBILITY THAT SUCH DAMAGE WILL OCCUR. FURTHER YOU AGREE THAT NEITHER THE BANK NOR THE BANK'S SUPPLIERS (OR ANY OF THE BANK'S OR THE BANK'S SUPPLIER'S SHAREHOLDERS, MEMBERS, OFFICERS, DIRECTORS OR EMPLOYEES) WILL BE LIABLE FOR ANY TECHNICAL, HARDWARE OR SOFTWARE FAILURE OF ANY KIND, ANY INTERRUPTION IN THE AVAILABILITY OF THE BANK'S SERVICE, ANY DELAY IN OPERATION OR TRANSMISSION, ANY INCOMPLETE OR GARBLED TRANSMISSION, COMPUTER VIRUS, LOSS OF DATA, OR OTHER SIMILAR LOSS. TO THE EXTENT THE BANK MAY HAVE BREACHED ANY TERM OF THIS AGREEMENT, YOU AGREE THAT YOUR SOLE REMEDY IS TO DISCONTINUE USE OF THIS SERVICE. YOU FURTHER AGREE THAT THE BANK'S LIABILITY TO YOU IN ANY CASE (WHETHER IN CONTRACT OR TORT) WILL NOT EXCEED AMOUNTS PAID TO THE BANK WITHIN THE LAST NINETY (90) DAYS (IF ANY) FOR THIS SERVICE.

9.   **Notice:** If you want to send the Bank a notice in relation to this Agreement, you must send it by email or regular mail to the addresses listed below. The Bank may notify you by sending notice to your email address or by mailing you notice by U.S. mail to the most current mailing address that the Bank has for you. You agree that any notices sent by email will be deemed delivered and received 48 hours after being sent. You agree that any notices sent by U.S. mail as provided in this paragraph will be deemed delivered and received three days after the date of mailing.

10.   **Arbitration:** To the extent that your account(s) is one not already governed by another arbitration provision with the Bank, you agree that at any claim or controversy relating to this Agreement will be settled by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association. You agree that any claim or controversy you may have will be arbitrated on an individual basis and will not be consolidated in any arbitration with any claim or controversy of any other party. You agree that the arbitration will be conducted in the city in which the Bank's main office is located and that judgment on the arbitration award may be enforced by any court having proper jurisdiction.

11.   **Governing Law:** You agree that this Agreement is governed by the laws of the State of Illinois, excluding any application of conflicts of laws rules or principals. You agree that the sole jurisdiction and venue for any litigation arising from your use of the Bank's service shall be an appropriate federal or state court located in Champaign County, Illinois.

12.  **Contact us:**

- Phone:   1-800-672-8739   Option   2
  Email: customersupport@busey.com
- Treasury Management Customers may contact us by phone at 1-800-749-7844 and by Email at treasurymanagement@busey.com
- Address: Attn: eStatements, Busey Bank, P.O. Box 17430, Urbana, IL 61803-9934.

# TERMS AND CONDITIONS
## OF YOUR ACCOUNT

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT -** To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.

What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

**AGREEMENT -** This document, along with any other documents we give you pertaining to your account(s), is a contract that establishes rules which control your account(s) with us. Please read this carefully and retain it for future reference. If you sign the signature card or open or continue to use the account, you agree to these rules. You will receive a separate schedule of rates, qualifying balances, and fees which are incorporated herein by reference if they are not included in this document. If you have any questions, please call us. **This agreement requires that disputes be resolved in arbitration on an individual basis, rather than through jury trials or class actions. See section Dispute Resolution by Binding Arbitration below for details. If you do not wish to agree to arbitration, you must follow the rejection procedure set forth in the section Dispute Resolution by Binding Arbitration below.**

This agreement is subject to applicable federal laws, the laws of the state of the branch in which your account is located and other applicable rules such as the operating letters of the Federal Reserve Banks and payment processing system rules (except to the extent that this agreement can and does vary such rules or laws). The body of state and federal law that governs our relationship with you, however, is too large and complex to be reproduced here. The purpose of this document is to:

(1) summarize some laws that apply to common transactions;

(2) establish rules to cover transactions or events which the law does not regulate;

(3) establish rules for certain transactions or events which the law regulates but permits variation by agreement; and

(4) give you disclosures of some of our policies to which you may be entitled or in which you may be interested.

If any provision of this document is found to be unenforceable according to its terms, all remaining provisions will continue in full force and effect. We may permit some variations from our standard agreement, but we must agree to any variation in writing either on the signature card for your account or in some other document. Nothing in this document is intended to vary our duty to act in good faith and with ordinary care when required by law.

As used in this document the words "we," "our," and "us" mean the financial institution and the words "you" and "your" mean the account holder(s) and anyone else with the authority to deposit, withdraw, or exercise control over the funds in the account. However, this agreement does not intend, and the terms "you" and "your" should not be interpreted, to expand an individual's responsibility for an organization's liability. If this account is owned by a corporation, partnership or other organization, individual liability is determined by the laws generally applicable to that type of organization. The headings in this document are for convenience or reference only and will not govern the interpretation of the provisions. Unless it would be inconsistent to do so, words and phrases used in this document should be construed so the singular includes the plural and the plural includes the singular. **In Florida,** "Party" means a person who, by the terms of an account, has a present right, subject to request, to payment from the account other than as a beneficiary or agent.

Throughout this document, when a provision is identified as being applicable to a certain state (for example, "in Illinois"), it means that the provision is only applicable if your account is held at a branch located in that particular state. Any provision which is not described as applying to a particular state, applies to your account.

**LIABILITY -** You agree, for yourself (and the person or entity you represent if you sign as a representative of another) to the terms of this account and the schedule of charges. You authorize us to deduct these charges, without notice to you, directly from the account balance as accrued. You will pay any additional reasonable charges for services you request which are not covered by this agreement.

Each of you also agrees to be jointly and severally (individually) liable for any account shortage resulting from charges or overdrafts, whether caused by you or another with access to this account. This liability is due immediately, and we can deduct any amounts deposited into the account and apply those amounts to the shortage. You have no right to defer payment of this liability, and you are liable regardless of whether you signed the item or benefited from the charge or overdraft.

You will be liable for our costs as well as for our reasonable attorneys' fees, to the extent permitted by law, whether incurred as a result of collection or in any other dispute involving your account. This includes, but is not limited to, disputes between you and another joint owner; you and an authorized signer or similar party; or a third party claiming an interest in your account. This also includes any action that you or a third party takes regarding the account that causes us, in good faith, to seek the advice of an attorney, whether or not we become involved in the dispute. All costs and attorneys' fees can be deducted from your account when they are incurred, without notice to you.

**DEPOSITS -** We will give you provisional credit until collection is final for any items, other than cash, we accept for deposit (including items drawn "on us"). Before settlement of any item becomes final, we act only as your agent, regardless of the form of indorsement or lack of indorsement on the item and even though we provide you provisional credit for the item. We may reverse any provisional credit for items that are lost, stolen, or returned. Unless prohibited by law, we also reserve the right to charge back to your account the amount of any item deposited to your account or cashed for you which was initially paid by the payor bank and which is later returned to us due to an allegedly forged, unauthorized or missing indorsement, claim of alteration, encoding error, counterfeit cashier's check or other problem which in our judgment justifies reversal of credit. You authorize us to attempt to collect previously returned items without giving you notice, and in attempting to collect we may permit the payor bank to hold an item beyond the midnight deadline. Actual credit for deposits of, or payable in, foreign currency will be at the exchange rate in effect on final collection in U.S. dollars. We are not responsible for transactions by mail or outside depository until we actually record them. We will treat and record all transactions received after our "daily cutoff time" on a business day we are open, or received on a day we are not open for business, as if initiated on the next business day that we are open. At our option, we may take an item for collection rather than for deposit. If we accept a third-party check or draft for deposit, we may require any third-party indorsers to verify or guarantee their indorsements, or indorse in our presence.

**WITHDRAWALS -**

**Generally -** Unless clearly indicated otherwise on the account records, any of you, acting alone, who signs to open the account or has authority to make withdrawals may withdraw or transfer all or any part of the account balance at any time. Each of you (until we receive written notice to the contrary) authorizes each other person who signs or has authority to make withdrawals to indorse any item payable to you or your order for deposit to this account or any other transaction with us.

**Postdated checks -** A postdated check is one which bears a date later than the date on which the check is written. We may properly pay and charge your account for a postdated check even though payment was made before the date of the check, unless we have received written notice of the postdating in time to have a reasonable opportunity to act. Because we process checks mechanically, your notice will not be effective and we will not be liable for failing to honor your notice unless it precisely identifies the number, date, amount and payee of the item.

**Checks and withdrawal rules -** If you do not purchase your check blanks from us, you must be certain that we approve the check blanks you purchase. We may refuse any withdrawal or transfer request which you attempt on forms not approved by us or by any method we do not specifically permit. We may refuse any withdrawal or transfer request which is greater in number than the frequency permitted, or which is for an amount greater or less than any withdrawal limitations. We will use the date the transaction is completed by us (as opposed to the date you initiate it) to apply the frequency limitations. In addition, we may place limitations on the account until your identity is verified. Even if we honor a nonconforming request, we are not required to do so later. If you violate the stated transaction limitations (if any), in our discretion we may close your account or reclassify it as a transaction account. If we reclassify your account, your account will be subject to the fees and earnings rules of the new account classification.

If we are presented with an item drawn against your account that would be a "substitute check," as defined by law, but for an error or defect in the item introduced in the substitute check creation process, you agree that we may pay such item.

See the funds availability policy disclosure for information about when you can withdraw funds you deposit. For those accounts to which our funds availability policy disclosure does not apply, you can ask us when you make a deposit when those funds will be available for withdrawal. An item may be returned after the funds from the deposit of that item are made available for withdrawal. In that case, we will reverse the credit of the item. We may determine the amount of available funds in your account for the purpose of deciding whether to return an item for insufficient funds at any time between the time we receive the item and when we return the item or send a notice in lieu of return. We need only make one determination, but if we choose to make a subsequent determination, the account balance at the subsequent time will determine whether there are insufficient available funds.

**Cash withdrawals -** We recommend you take care when making large cash withdrawals because carrying large amounts of cash may pose a danger to your personal safety. As an alternative to making a large cash withdrawal, you may want to consider a cashier's check or similar instrument. You assume full responsibility of any loss in the event the cash you withdraw is lost, stolen, or destroyed. You agree to hold us harmless from any loss you incur as a result of your decision to withdraw funds in the form of cash.

**A temporary debit authorization hold affects your account balance -** On debit card purchases, merchants may request a temporary hold on your account for a specified sum of money when the merchant does not know the exact amount of the purchase at the time the card is authorized. The amount of the temporary hold may be more than the actual amount of your purchase.

Some common transactions where this occurs involve purchases of gasoline, hotel rooms, or meals at restaurants. When this happens, our processing system cannot determine that the amount of the hold exceeds the actual amount of your purchase. This temporary hold, and the amount charged to your account, will eventually be adjusted to the actual amount of your purchase, but it could be three calendar days, or even longer in some cases, before the adjustment is made. Until the adjustment is made, the amount of funds in your account available for other transactions will be reduced by the amount of the temporary hold. If another transaction is presented for payment in an amount greater than the funds left after the deduction of the temporary hold amount, that transaction will be a nonsufficient funds (NSF) transaction if we do not pay it or an overdraft transaction if we do pay it. You will be charged an NSF or overdraft fee according to our NSF or overdraft fee policy. You will be charged the fee

© 2019 Wolters Kluwer Financial Services, Inc. All rights reserved.
TC-BRO 8/1/2019

even if you would have had sufficient funds in your account if the amount of the hold had been equal to the amount of your purchase. An item that has been returned and subsequently resubmitted for payment is considered a new item that may result in an additional NSF fee each time the item is returned for non-sufficient funds.

**Overdrafts -** You understand that we may, at our discretion, honor withdrawal requests that overdraw your account. However, the fact that we may honor withdrawal requests that overdraw the account balance does not obligate us to do so later. So you can NOT rely on us to pay overdrafts on your account regardless of how frequently or under what circumstances we have paid overdrafts on your account in the past. We can change our practice of paying, or not paying, discretionary overdrafts on your account without notice to you. You can ask us if we have other account services that might be available to you where we commit to paying overdrafts under certain circumstances, such as an overdraft protection line-of-credit or a plan to sweep funds from another account you have with us. You agree that we may charge fees for overdrafts.

For consumer accounts, we will not charge fees for overdrafts caused by ATM withdrawals or one-time debit card transactions if you have not opted-in to that service. We may use subsequent deposits, including direct deposits of social security or other government benefits, to cover such overdrafts and overdraft fees.

**Multiple signatures, electronic check conversion, and similar transactions -** An electronic check conversion transaction is a transaction where a check or similar item is converted into an electronic fund transfer as defined in the Electronic Fund Transfers regulation. In these types of transactions the check or similar item is either removed from circulation (truncated) or given back to you. As a result, we have no opportunity to review the check to examine the signatures on the item. You agree that, as to these or any items as to which we have no opportunity to examine the signatures, you waive any requirement of multiple signatures.

**Notice of withdrawal -** We reserve the right to require not less than 7 days' notice in writing before each withdrawal from an interest-bearing account other than a time deposit or demand deposit, or from any other savings account as defined by Regulation D. (The law requires us to reserve this right, but it is not our general policy to use it.) Withdrawals from a time account prior to maturity or prior to any notice period may be restricted and may be subject to penalty. See your notice of penalty for early withdrawal.

**In Illinois, OWNERSHIP OF ACCOUNT AND BENEFICIARY DESIGNATION -** These rules apply to this account depending on the form of ownership and beneficiary designation, if any, specified on the account records. We make no representations as to the appropriateness or effect of the ownership and beneficiary designations, except as they determine to whom we pay the account funds.

**Individual Account -** is an account in the name of one person.

**Joint Account - With Survivorship (And Not As Tenants In Common) -** is an account in the name of two or more persons. Each of you intend that when you die the balance in the account (subject to any previous pledge to which we have agreed) will belong to the survivor(s). If two or more of you survive, you will own the balance in the account as joint tenants with survivorship and not as tenants in common.

**Joint Account - No Survivorship (As Tenants In Common) -** This is owned by two or more persons, but none of you intend (merely by opening this account) to create any right of survivorship in any other person. We encourage you to agree and tell us in writing of the percentage of the deposit contributed by each of you. This information will not, however, affect the number of signatures necessary for withdrawal.

**Revocable Trust or Pay-on-Death Account -** If two or more of you create this type of account, you own the account jointly with survivorship. Beneficiaries of either of these account types cannot withdraw unless: (1) all persons creating the account die, and (2) the beneficiary is then living. If two or more beneficiaries are named and survive the death of the owner(s) of the account, such beneficiaries will own this account in equal shares, without right of survivorship. The person(s) creating either a Pay-On-Death or Revocable Trust account reserves the right to: (1) change beneficiaries, (2) change account types, and (3) withdraw all or part of the account funds at any time.

**In Florida, OWNERSHIP OF ACCOUNT AND BENEFICIARY DESIGNATION -** These rules apply to this account depending on the form of ownership and beneficiary designation, if any, specified on the account records. We make no representations as to the appropriateness or effect of the ownership and beneficiary designations, except as they determine to whom we pay the account funds.

**Single-Party Account -** Such an account is owned by one party.

**Multiple-Party Account -** Such an account is payable on request to one or more of two or more parties, whether or not a right of survivorship is mentioned.

**Multiple-Party Account - Tenancy by the Entireties -** The account is owned by two parties who are married to each other and hold the account as tenants by the entirety.

**Rights At Death- Single-Party Account -** At the death of a party, ownership passes as part of the party's estate.

**Multiple-Party Account With Right of Survivorship -** At death of party, ownership passes to the surviving party or parties.

**Multiple-Party Account Without Right of Survivorship -** At death of party, deceased party's ownership passes as part of the deceased party's estate.

**Single-Party Account With Pay-on-Death Designation -** At death of the party, ownership passes to the designated pay-on-death beneficiaries and is not part of the party's estate.

**Multiple-Party Account With Right of Survivorship and Pay-on-Death Designation -** At death of last surviving party, ownership passes to the designated pay-on-death beneficiaries and is not part of the last surviving party's estate.

**In Indiana, OWNERSHIP OF ACCOUNT AND BENEFICIARY DESIGNATION -** These rules apply to this account depending on the form of ownership and beneficiary designation, if any, specified on the account records. We make no representations as to the appropriateness or effect of the ownership and beneficiary designations, except as they determine to whom we pay the account funds.

**Individual Account -** is an account in the name of one person.

**Joint Account - With Survivorship (And Not As Tenants In Common) -** is an account in the name of two or more persons. Each of you intend that when you die the balance in the account (subject to any previous pledge to which we have agreed) will belong to the survivor(s). If two or more of you survive, you will own the balance in the account as joint tenants with survivorship and not as tenants in common.

**Joint Account - No Survivorship (As Tenants In Common) -** This is owned by two or more persons, but none of you intend (merely by opening this account) to create any right of survivorship in any other person. We encourage you to agree and tell us in writing of the percentage of the deposit contributed by each of you. This information will not, however, affect the number of signatures necessary for withdrawal.

**Revocable Trust Account/In Trust For (pursuant to the Multiple Party Account statutes in *Indiana Code* ch. 32-17-11 et. seq.) -** If two or more of you create this type of account, you own the account jointly with survivorship. Beneficiaries cannot withdraw unless: (1) all persons creating the account die, and (2) the beneficiary is then living. If two or more beneficiaries are named and survive the death of all persons creating the account, beneficiaries will own this account in equal shares, without right of survivorship. The person(s) creating this account type may: (1) change beneficiaries, (2) change account types, and (3) withdraw all or part of the account funds at any time.

**Pay-on-Death Account with LDPS (pursuant to the Transfer on Death Property Act statutes in *Indiana Code* ch. 32-17-14 et. seq.) -** If two or more of you create this type of account, you own the account jointly with survivorship. Beneficiaries cannot withdraw unless all persons creating the account die. If a named beneficiary does not survive all persons that created the account, that beneficiary's right to a transfer on death transfer belongs to that beneficiary's lineal descendants per stirpes (LDPS) who survive all persons that created the account. LDPS means that group of people that are the lineal descendants of a beneficiary who will take, in place of the beneficiary they have survived, the beneficiary's share as determined under Indiana law. In order for a lineal descendant to take in place of a beneficiary, the lineal descendant must survive the death of that beneficiary. The person(s) creating this account type may: (1) change beneficiaries, (2) change account types, and (3) withdraw all or part of the account funds at any time.

**Pay-on-Death Account No LDPS (pursuant to the Transfer on Death Property Act statutes in *Indiana Code* ch. 32-17-14 et. seq.) -** If two or more of you create this type of account, you own the account jointly with survivorship. Beneficiaries cannot withdraw unless: (1) all persons creating the account die, and (2) the beneficiary is then living. If two or more beneficiaries are named and survive the death of all persons creating the account, beneficiaries will own this account in equal shares unless otherwise designated in writing, without right of survivorship. The person(s) creating this account type may: (1) change beneficiaries, (2) change account types, and (3) withdraw all or part of the account funds at any time.

**Additional Transfer on Death Property Act Rules -** If there are multiple primary beneficiaries and a primary beneficiary does not survive all persons creating the account and does not have a substitute under the LDPS rules, the share of the nonsurviving primary beneficiary is allocated among the surviving primary beneficiaries in the proportion that their shares bear to each other. If there are no surviving primary beneficiaries and there are no substitutes for the nonsurviving primary beneficiaries under the LDPS rules, the property belongs to the surviving contingent beneficiaries in equal shares or according to the percentages or fractional shares stated in the designation. If there are multiple contingent beneficiaries and a contingent beneficiary does not survive all persons creating the account and does not have a substitute under the LDPS rules, the share of the nonsurviving contingent beneficiary is allocated among the surviving contingent beneficiaries in the proportion that their shares bear to each other. If no beneficiary survives all persons creating the account, the property belongs to the estate of the owner unless directed to a substitute beneficiary under the LDPS rules.

**In Missouri, OWNERSHIP OF ACCOUNT AND BENEFICIARY DESIGNATION -** These rules apply to this account depending on the form of ownership and beneficiary designation, if any, specified on the account records. We make no representations as to the appropriateness or effect of the ownership and beneficiary designations, except as they determine to whom we pay the account funds.

**Individual Account -** is an account in the name of one person.

**Joint Account - With Survivorship (And Not As A Tenancy By The Entirety Or As Tenants In Common) -** is an account in the name of two or more persons. Each of you intend that when you die the balance in the account (subject to any previous pledge to which we have agreed) will belong to the survivor(s). If two or more of you survive, you will own the balance in the account as joint tenants with survivorship and not as tenants in common.

**Joint Account - As Tenants In Common Without Survivorship (And Not As A Tenancy By The Entirety) -** This is owned by two or more persons, but none of you intend (merely by opening this account) to create any right of survivorship in any other person. We encourage you to agree and tell us in writing of the percentage of the deposit contributed by each of you. This information will not, however, affect the number of signatures necessary for withdrawal.

**Husband And Wife As A Tenancy By The Entirety -** is an account in the name of two persons who are husband and wife as tenants by the entirety.

© 2019 Wolters Kluwer Financial Services, Inc. All rights reserved.
TC-BRO 8/1/2019

Page 2 of 6

00073

**Revocable Trust or Pay-On-Death Account (not subject to the Nonprobate Transfers Law of Missouri)** - If two or more of you create such an account, you own the account jointly with survivorship. Beneficiaries cannot withdraw unless: (1) all persons creating the account die, and (2) the beneficiary is then living. If two or more beneficiaries are named and survive the death of all persons creating the account, such beneficiaries will own this account in equal shares, without right of survivorship. The person(s) creating either of these account types reserves the right to: (1) change beneficiaries, (2) change account types, and (3) withdraw all or part of the account funds at any time.

**Registration in Beneficiary Form** - LDPS means a class of unnamed persons who are the lineal descendants per stirpes of a beneficiary and who are to take upon surviving, in place of and with the same priority as the named individual for whom they are indicated as substitutes.

**BUSINESS, ORGANIZATION AND ASSOCIATION ACCOUNTS** - Earnings in the form of interest, dividends, or credits will be paid only on collected funds, unless otherwise provided by law or our policy. You represent that you have the authority to open and conduct business on this account on behalf of the entity. We may require the governing body of the entity opening the account to give us a separate authorization telling us who is authorized to act on its behalf. We will honor the authorization until we actually receive written notice of a change from the governing body of the entity.

**In Illinois and Missouri, STOP PAYMENTS** - Unless otherwise provided, the rules in this section cover stopping payment of items such as checks and drafts. Rules for stopping payment of other types of transfers of funds, such as consumer electronic fund transfers, may be established by law or our policy. If we have not disclosed these rules to you elsewhere, you may ask us about those rules.

We may accept an order to stop payment on any item from any one of you. You must make any stop-payment order in the manner required by law and we must receive it in time to give us a reasonable opportunity to act on it before our stop-payment cutoff time. Because stop-payment orders are handled by computers, to be effective, your stop-payment order must precisely identify the number, date, and amount of the item, and the payee. You may stop payment on any item drawn on your account whether you sign the item or not. Generally, if your stop-payment order is given to us in writing it is effective for six months. Your order will lapse after that time if you do not renew the order in writing before the end of the six-month period. If the original stop-payment order was oral your stop-payment order will lapse after 14 calendar days if you do not confirm your order in writing within that time period. We are not obligated to notify you when a stop-payment order expires.

If you stop payment on an item and we incur any damages or expenses because of the stop payment, you agree to indemnify us for those damages or expenses, including attorneys' fees. You assign to us all rights against the payee or any other holder of the item. You agree to cooperate with us in any legal actions that we may take against such persons. You should be aware that anyone holding the item may be entitled to enforce payment against you despite the stop-payment order.

Our stop-payment cutoff time is one hour after the opening of the next banking day after the banking day on which we receive the item. Additional limitations on our obligation to stop payment are provided by law (e.g., we paid the item in cash or we certified the item).

**In Florida, STOP PAYMENTS** - Unless otherwise provided, the rules in this section cover stopping payment of items such as checks and drafts. Rules for stopping payment of other types of transfers of funds, such as consumer electronic fund transfers, may be established by law or our policy. If we have not disclosed these rules to you elsewhere, you may ask us about these rules. We may accept an order to stop payment on any item from any one of you. You must make any stop-payment order in the manner required by law, it must be made in a signed and dated writing, and we must receive it in time to give us a reasonable opportunity to act on it before our stop-payment cutoff time. Because stop-payment orders are handled by computers, to be effective, your stop-payment order must precisely identify the number, date, and amount of the item, and the payee.

You may stop payment on any item drawn on your account whether you sign the item or not. Your stop-payment order is effective for six months. Your order will lapse after that time if you do not renew the order in writing before the end of the six-month period. We are not obligated to notify you when a stop-payment order expires.

If you stop payment on an item and we incur any damages or expenses because of the stop payment, you agree to indemnify us for those damages or expenses, including attorneys' fees. You assign to us all rights against the payee or any other holder of the item. You agree to cooperate with us in any legal actions that we may take against such persons. You should be aware that anyone holding the item may be entitled to enforce payment against you despite the stop-payment order.

Our stop-payment cutoff time is one hour after the opening of the next banking day after the banking day on which we receive the item. Additional limitations on our obligation to stop payment are provided by law (e.g., we paid the item in cash or we certified the item).

**In Indiana, STOP PAYMENTS** - Unless otherwise provided, the rules in this section cover stopping payment of items such as checks and drafts. Rules for stopping payment of other types of transfers of funds, such as consumer electronic fund transfers, may be established by law or our policy. If we have not disclosed these rules to you elsewhere, you may ask us about these rules.

We may accept an order to stop payment on any item from any one of you. You must make any stop-payment order in the manner required by law and we must receive it in time to give us a reasonable opportunity to act on it before our stop-payment cutoff time. Because stop-payment orders are handled by computers, to be effective, your stop-payment order must precisely identify the number, date, and amount of the item,

and the payee. You may stop payment on any item drawn on your account whether you sign the item or not. Your stop-payment order is effective for six months if it is given to us in writing or by another type of record (Generally, a "record" is information that is stored in such a way that it can be retrieved and can be heard or read and understood – you can ask us what type of stop-payment records you can give us). Your order will lapse after that time if you do not renew the order in writing before the end of the six-month period. If the original stop-payment order was oral your stop-payment order will lapse after 14 calendar days if it is not confirmed in writing or by another type of record within that time period. We are not obligated to notify you when a stop-payment order expires.

If you stop payment on an item and we incur any damages or expenses because of the stop payment, you agree to indemnify us for those damages or expenses, including attorneys' fees. You assign to us all rights against the payee or any other holder of the item. You agree to cooperate with us in any legal actions that we may take against such persons. You should be aware that anyone holding the item may be entitled to enforce payment against you despite the stop-payment order.

Our stop-payment cutoff time is one hour after the opening of the next banking day after the banking day on which we receive the item. Additional limitations on our obligation to stop payment are provided by law (e.g., we paid the item in cash or we certified the item).

**TELEPHONE TRANSFERS** - A telephone transfer of funds from this account to another account with us, if otherwise arranged for or permitted, may be made by the same persons and under the same conditions generally applicable to withdrawals made in writing. Limitations on the number of telephonic transfers from a savings account are described elsewhere.

**AMENDMENTS AND TERMINATION** - We may change any term of this agreement. Rules governing changes in interest rates are provided separately in the Truth-in-Savings disclosure or in another document. For other changes, we will give you reasonable notice in writing or by any other method permitted by law. We may also close this account at any time upon reasonable notice to you and tender of the account balance personally or by mail. Items presented for payment after the account is closed may be dishonored. When you close your account, you are responsible for leaving enough money in the account to cover any outstanding items to be paid from the account. Reasonable notice depends on the circumstances, and in some cases such as when we cannot verify your identity or we suspect fraud, it might be reasonable for us to give you notice after the change or account closure becomes effective. For instance, if we suspect fraudulent activity with respect to your account, we might immediately freeze or close your account and then give you notice. If we have notified you of a change in any term of your account and you continue to have your account after the effective date of the change, you have agreed to the new term(s).

**NOTICES** - Any written notice you give us is effective when we actually receive it, and it must be given to us according to the specific delivery instructions provided elsewhere, if any. We must receive it in time to have a reasonable opportunity to act on it. If the notice is regarding a check or other item, you must give us sufficient information to be able to identify the check or item, including the precise check or item number, amount, date and payee. Written notice we give you is effective when it is deposited in the United States Mail with proper postage and addressed to your mailing address we have on file. Notice to any of you is notice to all of you.

**STATEMENTS - Your duty to report unauthorized signatures, alterations and forgeries** - You must examine your statement of account with "reasonable promptness." If you discover (or reasonably should have discovered) any unauthorized signatures or alterations, you must promptly notify us of the relevant facts. As between you and us, if you fail to do either of these duties, you will have to either share the loss with us, or bear the loss entirely yourself (depending on whether we used ordinary care and, if not, whether we substantially contributed to the loss). The loss could be not only with respect to items on the statement but other items with unauthorized signatures or alterations by the same wrongdoer.

You agree that the time you have to examine your statement and report to us will depend on the circumstances, but will not, in any circumstance, exceed a total of 30 days from when the statement is first sent or made available to you.

You further agree that if you fail to report any unauthorized signatures, alterations or forgeries in your account within 60 days of when we first send or make the statement available, you cannot assert a claim against us on any items in that statement, and as between you and us the loss will be entirely yours. This 60-day limitation is without regard to whether we used ordinary care. The limitation in this paragraph is in addition to that contained in the first paragraph of this section.

**Your duty to report other errors or problems** - In addition to your duty to review your statements for unauthorized signatures, alterations and forgeries, you agree to examine your statement with reasonable promptness for any other error or problem - such as an encoding error or an unexpected deposit amount. Also, if you receive or we make available either your items or images of your items, you must examine them for any unauthorized or missing indorsements or any other problems. You agree that the time you have to examine your statement and items and report to us will depend on the circumstances. However, this time period shall not exceed 60 days. Failure to examine your statement and items and report any errors to us within 60 days of when we first send or make the statement available precludes you from asserting a claim against us for any errors on items identified in that statement and as between you and us the loss will be entirely yours.

**Errors relating to electronic fund transfers or substitute checks** - For information on errors relating to electronic fund transfers (e.g., on-line, mobile, debit card or ATM transactions) refer to your Electronic Fund Transfers disclosure and the sections on consumer liability and error resolution. For information on errors relating to a

© 2019 Wolters Kluwer Financial Services, Inc. All rights reserved.
TC-BRO 8/1/2019

substitute check you received, refer to your disclosure entitled Substitute Checks and Your Rights.

**Duty to notify if statement not received -** You agree to immediately notify us if you do not receive your statement by the date you normally expect to receive it. Not receiving your statement in a timely manner is a sign that there may be an issue with your account, such as possible fraud or identity theft.

**ACCOUNT TRANSFER -** This account may not be transferred or assigned without our prior written consent.

**DIRECT DEPOSITS -** If we are required for any reason to reimburse the federal government for all or any portion of a benefit payment that was directly deposited into your account, you authorize us to deduct the amount of our liability to the federal government from the account or from any other account you have with us, without prior notice and at any time, except as prohibited by law. We may also use any other legal remedy to recover the amount of our liability.

**TEMPORARY ACCOUNT AGREEMENT -** If the account documentation indicates that this is a temporary account agreement, each person who signs to open the account or has authority to make withdrawals (except as indicated to the contrary) may transact business on this account. However, we may at some time in the future restrict or prohibit further use of this account if you fail to comply with the requirements we have imposed within a reasonable time.

**SETOFF -** We may (without prior notice and when permitted by law) set off the funds in this account against any due and payable debt any of you owe us now or in the future. If this account is owned by one or more of you as individuals, we may set off any funds in the account against a due and payable debt a partnership owes us now or in the future, to the extent of your liability as a partner for the partnership debt. If your debt arises from a promissory note, then the amount of the due and payable debt will be the full amount we have demanded, as entitled under the terms of the note, and this amount may include any portion of the balance for which we have properly accelerated the due date.

This right of setoff does not apply to this account if prohibited by law. For example, the right of setoff does not apply to this account if: (a) it is an Individual Retirement Account or similar tax-deferred account, or (b) the debt is created by a consumer credit transaction under a credit card plan (but this does not affect our rights under any consensual security interest), or (c) the debtor's right of withdrawal only arises in a representative capacity. We will not be liable for the dishonor of any check when the dishonor occurs because we set off a debt against this account. You agree to hold us harmless from any claim arising as a result of our exercise of our right of setoff.

**In Illinois, Indiana and Missouri, AUTHORIZED SIGNER (Individual Accounts only) -** A single individual is the owner. The authorized signer is merely designated to conduct transactions on the owner's behalf. The owner does not give up any rights to act on the account, and the authorized signer may not in any manner affect the rights of the owner or beneficiaries, if any, other than by withdrawing funds from the account. The owner is responsible for any transactions of the authorized signer. We undertake no obligation to monitor transactions to determine that they are on the owner's behalf.

The owner may terminate the authorization at any time, and the authorization is automatically terminated by the death of the owner. However, we may continue to honor the transactions of the authorized signer until: (a) we have received written notice or have actual knowledge of the termination of authority, and (b) we have a reasonable opportunity to act on that notice or knowledge. We may refuse to accept the designation of an authorized signer.

**In Florida, CONVENIENCE ACCOUNT AGENT (Single-Party Accounts only) -** A convenience account, as defined by Florida law, means a deposit account other than a certificate of deposit, in the name of one individual, in which one or more individuals have been designated as agent with the right to make deposits to and withdraw funds from or draw checks on such account on the owner's behalf. A single individual is the owner, and the agent is merely designated to conduct transactions on the owner's behalf. The owner does not give up any rights to act on the account, and the agent may not in any manner affect the rights of the owner or beneficiaries, if any, other than by withdrawing funds from the account. The owner is responsible for any transactions of the agent. We undertake no obligation to monitor transactions to determine that they are on the owner's behalf.

The owner may terminate the agency at any time, and the agency is automatically terminated by the death of the owner. However, we may continue to honor the transactions of the agent until: (a) we have received written notice or have actual knowledge of the termination of agency, and (b) we have a reasonable opportunity to act on that notice or knowledge. We may refuse to accept the designation of a convenience account agent.

**RESTRICTIVE LEGENDS OR INDORSEMENTS -** The automated processing of the large volume of checks we receive prevents us from inspecting or looking for restrictive legends, restrictive indorsements or other special instructions on every check. For this reason, we are not required to honor any restrictive legend or indorsement or other special instruction placed on checks you write unless we have agreed in writing to the restriction or instruction. Unless we have agreed in writing, we are not responsible for any losses, claims, damages, or expenses that result from your placement of these restrictions or instructions on your checks. Examples of restrictive legends placed on checks are "must be presented within 90 days" or "not valid for more than $1,000.00." The payee's signature accompanied by the words "for deposit only" is an example of a restrictive indorsement.

**FACSIMILE SIGNATURES -** Unless you make advance arrangements with us, we have no obligation to honor facsimile signatures on your checks or other orders. If we do agree to honor items containing facsimile signatures, you authorize us, at any time, to charge you for all checks, drafts, or other orders, for the payment of money, that

are drawn on us. You give us this authority regardless of by whom or by what means the facsimile signature(s) may have been affixed so long as they resemble the facsimile signature specimen filed with us, and contain the required number of signatures for this purpose. You must notify us at once if you suspect that your facsimile signature is being or has been misused.

**CHECK PROCESSING -** We process items mechanically by relying solely on the information encoded in magnetic ink along the bottom of the items. This means that we do not individually examine all of your items to determine if the item is properly completed, signed and indorsed or to determine if it contains any information other than what is encoded in magnetic ink. You agree that we have exercised ordinary care if our automated processing is consistent with general banking practice, even though we do not inspect each item. Because we do not inspect each item, if you write a check to multiple payees, we can properly pay the check regardless of the number of indorsements unless you notify us in writing that the check requires multiple indorsements. We must receive the notice in time for us to have a reasonable opportunity to act on it, and you must tell us the precise date of the check, amount, check number and payee. We are not responsible for any unauthorized signature or alteration that would not be identified by a reasonable inspection of the item. Using an automated process helps us keep costs down for you and all account holders.

**CHECK CASHING -** We may charge a fee for anyone that does not have an account with us who is cashing a check, draft or other instrument written on your account. We may also require reasonable identification to cash such a check, draft or other instrument. We can decide what identification is reasonable under the circumstances and such identification may be documentary or physical and may include collecting a thumbprint or fingerprint.

**INDORSEMENTS -** We may accept for deposit any item payable to you or your order, even if they are not indorsed by you. We may give cash back to any one of you. We may supply any missing indorsement(s) for any item we accept for deposit or collection, and you warrant that all indorsements are genuine.

To ensure that your check or share draft is processed without delay, you must indorse it (sign it on the back) in a specific area. Your entire indorsement (whether a signature or a stamp) along with any other indorsement information (e.g. additional indorsements, ID information, driver's license number, etc.) must fall within 1½" of the "trailing edge" of a check. Indorsements must be made in blue or black ink, so that they are readable by automated check processing equipment.

As you look at the front of a check, the "trailing edge" is the left edge. When you flip the check over, be sure to keep all indorsement information within 1½" of that edge.



It is important that you confine the indorsement information to this area since the remaining blank space will be used by others in the processing of the check to place additional needed indorsements and information. You agree that you will indemnify, defend, and hold us harmless for any loss, liability, damage or expense that occurs because your indorsement, another indorsement or information you have printed on the back of the check obscures our indorsement.

These indorsement guidelines apply to both personal and business checks.

**DEATH OR INCOMPETENCE -** You agree to notify us promptly if any person with a right to withdraw funds from your account(s) dies or is adjudicated (determined by the appropriate official) incompetent. We may continue to honor your checks, items, and instructions until: (a) we know of your death or adjudication of incompetence, and (b) we have had a reasonable opportunity to act on that knowledge. You agree that we may pay or certify checks drawn on or before the date of death or adjudication of incompetence for up to ten (10) days after your death or adjudication of incompetence unless ordered to stop payment by someone claiming an interest in the account.

**FIDUCIARY ACCOUNTS -** Accounts may be opened by a person acting in a fiduciary capacity. A fiduciary is someone who is appointed to act on behalf of and for the benefit of another. We are not responsible for the actions of a fiduciary, including the misuse of funds. This account may be opened and maintained by a person or persons named as a trustee under a written trust agreement, or as executors, administrators, or conservators under court orders. You understand that by merely opening such an

© 2019 Wolters Kluwer Financial Services, Inc. All rights reserved.
TC-BRO 8/1/2019

account, we are not acting in the capacity of a trustee in connection with the trust nor do we undertake any obligation to monitor or enforce the terms of the trust or letters.

**CREDIT VERIFICATION -** You agree that we may verify credit and employment history by any necessary means, including preparation of a credit report by a credit reporting agency.

**LEGAL ACTIONS AFFECTING YOUR ACCOUNT -** If we are served with a subpoena, restraining order, writ of attachment or execution, levy, garnishment, search warrant, or similar order relating to your account (termed "legal action" in this section), we will comply with that legal action. Or, in our discretion, we may freeze the assets in the account and not allow any payments out of the account until a final court determination regarding the legal action. We may do these things even if the legal action involves less than all of you. In these cases, we will not have any liability to you if there are insufficient funds to pay your items because we have withdrawn funds from your account or in any way restricted access to your funds in accordance with the legal action. Any fees or expenses we incur in responding to any legal action (including, without limitation, attorneys' fees and our internal expenses) may be charged against your account. The list of fees applicable to your account(s) provided elsewhere may specify additional fees that we may charge for certain legal actions.

**ACCOUNT SECURITY -**

**Duty to protect account information and methods of access -** It is your responsibility to protect the account numbers and electronic access devices (e.g., an ATM card) we provide you for your account(s). Do not discuss, compare, or share information about your account number(s) with anyone unless you are willing to give them full use of your money. An account number can be used by thieves to issue an electronic debit or to encode your number on a false demand draft which looks like and functions like an authorized check. If you furnish your access device and grant actual authority to make transfers to another person (a family member or coworker, for example) who then exceeds that authority, you are liable for the transfers unless we have been notified that transfers by that person are no longer authorized.

Your account number can also be used to electronically remove money from your account, and payment can be made from your account even though you did not contact us directly and order the payment.

You must also take precaution in safeguarding your blank checks. Notify us at once if you believe your checks have been lost or stolen. As between you and us, if you are negligent in safeguarding your checks, you must bear the loss entirely yourself or share the loss with us (we may have to share some of the loss if we failed to use ordinary care and if we substantially contributed to the loss).

**Positive pay and other fraud prevention services -** Except for consumer electronic fund transfers subject to Regulation E, you agree that if we offer you services appropriate for your account to help identify and limit fraud or other unauthorized transactions against your account, and you reject those services, you will be responsible for any fraudulent or unauthorized transactions which could have been prevented by the services we offered. You will not be responsible for such transactions if we acted in bad faith or to the extent our negligence contributed to the loss. Such services include positive pay or commercially reasonable security procedures. If we offered you a commercially reasonable security procedure which you reject, you agree that you are responsible for any payment order, whether authorized or not, that we accept in compliance with an alternative security procedure that you have selected. The positive pay service can help detect and prevent check fraud and is appropriate for account holders that issue: a high volume of checks, a lot of checks to the general public, or checks for large dollar amounts.

**TELEPHONIC INSTRUCTIONS -** Unless required by law or we have agreed otherwise in writing, we are not required to act upon instructions you give us via facsimile transmission or leave by voice mail or on a telephone answering machine.

**MONITORING AND RECORDING TELEPHONE CALLS AND CONSENT TO RECEIVE COMMUNICATIONS -** Subject to federal and state law, we may monitor or record phone calls for security reasons, to maintain a record and to ensure that you receive courteous and efficient service. You consent in advance to any such recording.

To provide you with the best possible service in our ongoing business relationship for your account we may need to contact you about your account from time to time by telephone, text messaging or email. However, we first obtain your consent to contact you about your account in compliance with applicable consumer protection provisions in the federal Telephone Consumer Protection Act of 1991 (TCPA), CAN-SPAM Act and their related federal regulations and orders issued by the Federal Communications Commission (FCC).

- Your consent is limited to your account, and as authorized by applicable law and regulations.
- Your consent is voluntary and not conditioned on the purchase of any product or service from us.

With the above understandings, you authorize us to contact you regarding your account throughout its existence using any telephone numbers or email addresses that you have previously provided to us by virtue of an existing business relationship or that you may subsequently provide to us.

This consent is regardless of whether the number we use to contact you is assigned to a landline, a paging service, a cellular wireless service, a specialized mobile radio service, other radio common carrier service or any other service for which you may be charged for the call. You further authorize us to contact you through the use of voice, voice mail and text messaging, including the use of pre-recorded or artificial voice messages and an automated dialing device.

If necessary, you may change or remove any of the telephone numbers or email addresses at any time using any reasonable means to notify us.

**CLAIM OF LOSS -** If you claim a credit or refund because of a forgery, alteration, or any other unauthorized withdrawal, you agree to cooperate with us in the investigation of the loss, including giving us an affidavit containing whatever reasonable information we require concerning your account, the transaction, and the circumstances surrounding the loss. You will notify law enforcement authorities of any criminal act related to the claim of lost, missing, or stolen checks or unauthorized withdrawals. We will have a reasonable period of time to investigate the facts and circumstances surrounding any claim of loss. Unless we have acted in bad faith, we will not be liable for special or consequential damages, including loss of profits or opportunity, or for attorneys' fees incurred by you.

You agree that you will not waive any rights you have to recover your loss against anyone who is obligated to repay, insure, or otherwise reimburse you for your loss. You will pursue your rights or, at our option, assign them to us so that we may pursue them. Our liability will be reduced by the amount you recover or are entitled to recover from these other sources.

**EARLY WITHDRAWAL PENALTIES (and involuntary withdrawals) -** We may impose early withdrawal penalties on a withdrawal from a time account even if you don't initiate the withdrawal. For instance, the early withdrawal penalty may be imposed if the withdrawal is caused by our setoff against funds in the account or as a result of an attachment or other legal process. We may close your account and impose the early withdrawal penalty on the entire account balance in the event of a partial early withdrawal. See your notice of penalty for early withdrawals for additional information.

**ADDRESS OR NAME CHANGES -** You are responsible for notifying us of any change in your address or your name. Unless we agree otherwise, change of address or name must be made in writing by at least one of the account holders. Informing us of your address or name change on a check reorder form is not sufficient. We will attempt to communicate with you only by use of the most recent address you have provided to us. If provided elsewhere, we may impose a service fee if we attempt to locate you.

**RESOLVING ACCOUNT DISPUTES -** We may place an administrative hold on the funds in your account (refuse payment or withdrawal of the funds) if it becomes subject to a claim adverse to (1) your own interest; (2) others claiming an interest as survivors or beneficiaries of your account; or (3) a claim arising by operation of law. The hold may be placed for such period of time as we believe reasonably necessary to allow a legal proceeding to determine the merits of the claim or until we receive evidence satisfactory to us that the dispute has been resolved. We will not be liable for any items that are dishonored as a consequence of placing a hold on funds in your account for these reasons.

**WAIVER OF NOTICES -** To the extent permitted by law, you waive any notice of non-payment, dishonor or protest regarding any items credited to or charged against your account. For example, if you deposit an item and it is returned unpaid or we receive a notice of nonpayment, we do not have to notify you unless required by federal Regulation CC or other law.

**ACH AND WIRE TRANSFERS -** This agreement is subject to Article 4A of the Uniform Commercial Code - Fund Transfers as adopted in the state in which you have your account with us. If you originate a fund transfer and you identify by name and number a beneficiary financial institution, an intermediary financial institution or a beneficiary, we and every receiving or beneficiary financial institution may rely on the identifying number to make payment. We may rely on the number even if it identifies a financial institution, person or account other than the one named. You agree to be bound by automated clearing house association rules. These rules provide, among other things, that payments made to you, or originated by you, are provisional until final settlement is made through a Federal Reserve Bank or payment is otherwise made as provided in Article 4A-403(a) of the Uniform Commercial Code. If we do not receive such payment, we are entitled to a refund from you in the amount credited to your account and the party originating such payment will not be considered to have paid the amount so credited. Credit entries may be made by ACH. If we receive a payment order to credit an account you have with us by wire or ACH, we are not required to give you any notice of the payment order or credit.

**TRUNCATION, SUBSTITUTE CHECKS, AND OTHER CHECK IMAGES -** If you truncate an original check and create a substitute check, or other paper or electronic image of the original check, you warrant that no one will be asked to make payment on the original check, a substitute check or any other electronic or paper image, if the payment obligation relating to the original check has already been paid. You also warrant that any substitute check you create conforms to the legal requirements and generally accepted specifications for substitute checks. You agree to retain the original check in conformance with our internal policy for retaining original checks. You agree to indemnify us for any loss we may incur as a result of any truncated check transaction you initiate. We can refuse to accept substitute checks that have not previously been warranted by a bank or other financial institution in conformance with the Check 21 Act. Unless specifically stated in a separate agreement between you and us, we do not have to accept any other electronic or paper image of an original check.

**REMOTELY CREATED CHECKS -** Like any standard check or draft, a remotely created check (sometimes called a telecheck, preauthorized draft or demand draft) is a check or draft that can be used to withdraw money from an account. Unlike a typical check or draft, however, a remotely created check is not issued by the paying bank and does not contain the signature of the account owner (or a signature purported to be the signature of the account owner). In place of a signature, the check usually has a statement that the owner authorized the check or has the owner's name typed or printed on the signature line.

You warrant and agree to the following for every remotely created check we receive from you for deposit or collection: (1) you have received express and verifiable

© 2019 Wolters Kluwer Financial Services, Inc. All rights reserved.
TC-BRO 8/1/2019

authorization to create the check in the amount and to the payee that appears on the check; (2) you will maintain proof of the authorization for at least 2 years from the date of the authorization, and supply us the proof if we ask; and (3) if a check is returned you owe us the amount of the check, regardless of when the check is returned. We may take funds from your account to pay the amount you owe us, and if there are insufficient funds in your account, you still owe us the remaining balance.

**UNLAWFUL INTERNET GAMBLING NOTICE -** Restricted transactions as defined in Federal Reserve Regulation GG are prohibited from being processed through this account or relationship. Restricted transactions generally include, but are not limited to, those in which credit, electronic fund transfers, checks, or drafts are knowingly accepted by gambling businesses in connection with the participation by others in unlawful Internet gambling.

### DISPUTE RESOLUTION BY BINDING ARBITRATION -

**Claims Subject to Arbitration:** Unless you opt out of this arbitration provision in accordance with the procedure set forth below, you and we agree that any dispute or claim between us, except for claims arising from bodily injury or death, must be arbitrated if either party elects arbitration of that dispute or claim. This agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:

- claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, fraud, misrepresentation or any other statutory or common-law legal theory;
- claims that arose before this or any prior agreement (including, but not limited to, claims relating to advertising or disclosures);
- claims for mental or emotional distress or injury not arising out of bodily injury;
- claims asserted in a court of general jurisdiction against you or us, including counterclaims, cross-claims, or third-party claim, that you or we elect to arbitrate;
- claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; and
- claims that may arise after the termination of this agreement.

References to "you," and "us" in this arbitration provision include our respective parents, subsidiaries, affiliates, predecessors, successors, and assigns; our and those entities' agents and employees; and all authorized or unauthorized users or beneficiaries of your account, as well as your heirs, trustees, or other representatives. However, either party may elect arbitration of an action in small claims court seeking only individualized relief, so long as the action remains in that court and is not removed to a court of general jurisdiction. This arbitration agreement does not preclude you from bringing issues to the attention of federal, state, or local agencies. Such agencies can, if the law allows, seek relief against us on your behalf. Nor does this arbitration agreement preclude either you or we from exercising self-help remedies (including setoff), and exercising such a remedy is not a waiver of the right to invoke arbitration of any dispute. **You and we each waive the right to a trial by jury or to participate in a class action whenever either you or we elect arbitration.** This agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision. This arbitration provision shall survive termination of this agreement.

**Pre-Arbitration Notice of Disputes:** Before either you or we commence arbitration, the claimant must first send to the other a written Notice of Dispute ("Notice"). The Notice to us must be sent by certified mail to: General Counsel, Busey Bank, 100 West University Avenue, Champaign, Illinois 61820 ("Notice Address"). The Notice to you will be sent to your address on file with your account. The Notice must (i) include your name and account number; (ii) describe the nature and basis of the claim or dispute; and (iii) set forth the specific relief sought.

If you and we do not reach an agreement to resolve the claim within 30 calendar days after the Notice is received, you or we may commence an arbitration proceeding. During the arbitration, the amount of any settlement offer shall not be disclosed to the arbitrator until after the arbitrator determines the amount, if any, to which you are entitled. If you have complied with the requirements of this paragraph and the arbitrator awards you an amount of money that exceeds the value of our last written settlement to you before the appointment of the arbitrator, then we will pay you $500 in lieu of any smaller award.

In determining whether you are entitled to the minimum $500 recovery, the arbitrator shall not consider amounts offered or awarded for attorneys' fees or costs. Any disputes as to recovery of the $500 minimum recovery shall be resolved by the arbitrator, and must be raised within 14 calendar days of the arbitrator's ruling on the merits.

**Arbitration Procedure:** The arbitration will be governed by the Consumer Arbitration Rules ("AAA Rules") of the American Arbitration Association ("AAA"), as modified by this arbitration provision, and will be administered by the AAA. (If the AAA is unavailable, another arbitration provider shall be selected by the parties or by the court.) The AAA Rules are available online at www.adr.org or by writing to the Notice Address. All issues are for the arbitrator to decide, except that issues relating to the scope and enforceability of the arbitration provision or whether a dispute can or must be brought in arbitration are for the court to decide. The arbitrator may consider but shall not be bound by rulings in other arbitrations involving different customers. Unless you and we agree otherwise, any arbitration hearings will take place in the county of

your address on file with your account. If your claim is for $10,000 or less, we agree that you may choose whether the arbitration will be conducted solely on the basis of documents submitted to the arbitrator, through a telephonic hearing, or by an in-person hearing as established by the AAA Rules. If your claim exceeds $10,000, the right to a hearing will be determined by the AAA Rules. Regardless of the manner in which the arbitration is conducted, the arbitrator shall issue a reasoned written decision sufficient to explain the essential findings and conclusions on which the award is based. Except as provided below, the arbitrator can award the same damages and relief that a court can award under applicable law.

**Arbitration Fees:** If you complied with the notice requirements above, after we receive notice at the Notice Address that you have commenced arbitration, we will promptly reimburse you for your payment of the filing fee, unless your claim is for greater than $10,000 in value. (The filing fee currently is $200 but is subject to change by the arbitration provider. If you are unable to pay this fee, we will pay it directly upon receiving a written request at the Notice Address.) We also will pay all other AAA filing, administration, and arbitrator fees for that arbitration. If, however, the arbitrator finds that either the substance of your claim or the relief you seek is frivolous or brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)), then the payment of all such fees will be governed by the AAA Rules. In such case, you agree to reimburse us for all monies previously disbursed that are otherwise your obligation to pay under the AAA Rules. In addition, if you initiate an arbitration in which you seek relief valued at greater than $10,000 (either to you or to us), the payment of these fees will be governed by the AAA rules. We will pay all AAA filing, administration, and arbitrator fees for any arbitration we commence against you.

**Requirement of Individual Arbitration:** The arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. **YOU AND WE AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR OUR INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS, REPRESENTATIVE, OR PRIVATE ATTORNEY GENERAL PROCEEDING.** Further, unless both you and we agree otherwise, the arbitrator may not consolidate the claims of more than one person (except for the claims of co- or joint-account owners pertaining to that account), and may not otherwise preside over any form of a representative, class, or private attorney general proceeding. If, after exhaustion of all appeals, any of these prohibitions on non-individualized declaratory or injunctive relief; class, representative, and private attorney general claims; and consolidation is found to be unenforceable with respect to a particular claim or with respect to a particular request for relief (such as a request for injunctive relief), then that claim or request for relief shall be severed and decided by a court, and all other claims and requests for relief shall be arbitrated.

**Future Changes to Arbitration Provision:** Notwithstanding any provision in this agreement to the contrary, we agree that if we make any future change to this arbitration provision (other than a change to the Notice Address), you may reject that change by sending us written notice within 30 calendar days of the change to the Notice Address provided above. By rejecting that future change, you are agreeing that you will arbitrate any dispute between us in accordance with the language of this arbitration provision, as amended by any prior changes that you did not timely reject.

**Right to Reject Arbitration Provision:** If you do not wish to arbitrate, you have 30 calendar days to reject this arbitration provision by sending a rejection notice to the Notice Address above by certified mail ("Rejection Notice"). To be valid, a Rejection Notice must: (i) include your name, account number, and a statement that you are rejecting the arbitration provision in this agreement; and (ii) be received by us within 30 calendar days after the opening of your account or, if an arbitration provision has been added for the first time to this agreement for an existing account, within 30 calendar days after you received notice of the change in terms. If your Rejection Notice complies with these requirements, this arbitration provision will not apply to you with respect to any claims that you or we commence in litigation or arbitration after we receive your Rejection Notice. Rejecting this arbitration provision will not affect your other rights or responsibilities under this agreement. Nor will it affect any other arbitration agreements between us.

**Military Lending Act:** If you are a covered member of the armed forces or the dependent of a covered member within the meaning of the Military Lending Act and your contract with us involves an extension of consumer credit under that Act, then you are not required to arbitrate disputes.

© 2019 Wolters Kluwer Financial Services, Inc. All rights reserved.
TC-BRO 8/1/2019



100 W University Ave
Champaign IL 61820

13548701                              Date  6/30/20          Page     1
BENJA INC                             Primary Account              4766
845 MARKET ST 450A
SAN FRANCISCO CA 94117

## CHECKING ACCOUNT SUMMARY & DETAIL

| | | | |
|---|---|---|---|
| BUSINESS ANALYSIS | | Number of Enclosures | 3 |
| Account Number | 4766 | Statement Dates    6/01/20 thru  6/30/20 | |
| Previous Balance | 3,016.22 | Days in the statement period | 30 |
| 29 Deposits/Credits | 1,845,252.06 | Average Ledger | 13,684.01 |
| 87 Checks/Debits | 1,866,251.82 | Average Collected | 13,684.01 |
| Service Charge | .00 | | |
| Interest Paid | .00 | | |
| Ending Balance | 17,983.54- | | |

| | Total For This Period | Total Year-to-Date |
|---|---|---|
| Overdraft Item Fees | $70.00 | $875.00 |
| Returned Item Fees | $.00 | $35.00 |

## DEPOSITS AND OTHER CREDITS

| DATE | TRANSACTION DESCRIPTON | AMOUNT |
|---|---|---|
| 6/01 | Wire Transfer Credit<br>BODIL ARLANDER REVOCABLE TRUST<br>1/2008 CHECKING<br>32 LAGOON ROAD<br>BELVEDERE CA  94920-2319<br>RBC CAPITAL MARKETS CORPORATIO<br>60 SOUTH SIXTH STREET<br>MINNEAPOLIS,MN,55402<br>REF: BODIL ARLANDER<br>20200601MMQFMP31005470<br>20200601MMQFMPUN000383<br>06011648FT03 | 25,000.00 |
| 6/01 | guideline 401(k) AMTS:55,2<br>BENJA INCORPORATED<br>ST-M4K1G9Z7F8O6 | .02 |
| 6/01 | guideline 401(k) AMTS:55,2<br>BENJA INCORPORATED<br>ST-S8L8M8O8Z2U2 | .55 |
| 6/01 | CGUSABENJA      TRANSFER<br>ANDREW CHAPIN<br>ST-K2H1D2D3Z4C3 | 108.78 |
| 6/02 | CGUSABENJA      TRANSFER<br>ANDREW CHAPIN | 664.26 |
| 6/03 | CGUSABENJA      TRANSFER<br>ANDREW CHAPIN | 76.97 |

Case: 20-30819   Doc#21    Filed: 10/20/20    Entered: 10/20/20 17:51:40    Page 78 of 125

# CHANGE OF ADDRESS FORM

Please notify us immediately of any address changes on your accounts..

Customer Name: _____
(Account Number)

New Address: _____

(Street Address) _____ (Unit #) _____

Member FDIC

(City) _____ (State) _____ (Zip Code) _____

(Telephone Number) _____ (Social Security Number) _____

(Customer Signature) _____

**Please return this form to the address listed below or bring it to our office**

| THIS FORM WILL HELP YOU BALANCE YOUR CHECKBOOK | | |
|---|---|---|

**CHECKS or WITHDRAWALS OUTSTANDING**
Not Charged To Your Account

| Check No. | $ |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| TOTAL | $ |

ENDING BALANCE
Shown On This Statement                    $ _____

ADD (+)
Deposits, Loan Advances, Credit Memos, And    $ _____
Other Automatic Deposits Not Shown On This
Statement                    $ _____

SUBTRACT (-)
Total of Checks Outstanding, Automatic Loan    $ _____
Payments, Automatic Savings Transfers, Service    $ _____
Charges, Debit Memos And Other Automatic
Deductions Not Shown On This Statement    $ _____

BALANCE    $ _____

Current Checkbook Balance    $ _____

ADD (+)
Interest Earned From This Statement    $ _____

SUBTRACT (-)
Misc. Charges From This Statement    $ _____

NEW CHECKBOOK BALANCE
Should Agree With BALANCE Line    $ _____

| IMPORTANT INFORMATION | | |
|---|---|---|

### In Case of General Statement Errors

You must examine your statement of account with "reasonable promptness." If you discover (or reasonably should have discovered) any errors, unauthorized signatures, or alterations, you must promptly notify us of the relevant facts. You agree that the time you have to examine your statement and report to us will depend on the circumstances,but will not, in any circumstance, exceed a total of 30 days from when the statement is first sent or made available to you.

| IMPORTANT INFORMATION FOR CONSUMER ACCOUNTS | | |
|---|---|---|

### In Case of Errors or Questions About Your Electronic Transactions

Telephone or write us at the number or address listed below if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.
(1) Tell us your name and account number.
(2) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
(3) Tell us the date and the dollar amount of the suspected error.
We will investigate your complaint and will correct any error promptly.If we take more than 10 business days to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation. To qualify for this recredit, we require a written notice of the problem or complaint within 10 business days of your telephone call to us.

### In Case of Errors or Questions About Your Line of Credit or Home Equity Loan

If you think your bill is wrong, or if you need information about this loan or a transaction on this statement, please write to us at the address listed below. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, please give us the following information:
(1) Your name and account number.
(2) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
(3) The date and the dollar amount of the suspected error.
You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your questions, we cannot report you as delinquent or take any action to collect the amount you question.

### Balance Subject to Interest Rate for Line of Credit

Balance Subject to Interest Rate / Average Daily Balance - We figure the interest charge on your account by applying the periodic rate to the 'AVERAGE DAILY BALANCE' of your account (including current transactions). To get the 'AVERAGE DAILY BALANCE', we take the beginning balance of your account each day, add any new advances and subtract any payments or credits, also subtracting any unpaid finance charges. The automatic minimum payment amount is excluded when calculating the 'AVERAGE DAILY BALANCE' and 'INTEREST CHARGE'. If the account does not have sufficient funds to cover payment and another advance is made to cover minimum payment, this is also excluded from figuring the 'AVERAGE DAILY BALANCE' but is reflected in the beginning balance of the next statement cycle. This gives us the daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the 'AVERAGE DAILY BALANCE'. Written notification of any errors must be given to preserve your rights under the Truth in Lending Act. At any time the debtor may pay the aggregate balance or any portion of his/her indebtedness.

*We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.*

### Telephone Number and Address to Be Notified in the Event of Errors

Call us at 800.672.8739 or write to us at Busey Bank, Attention: Customer Care Center, P.O. Box 4028, Champaign, IL 61824. You should also call us at this phone number or write to us at this address if you believe a transfer has been made using the information from your check without your permission.

00079



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766  (Continued)

## DEPOSITS AND OTHER CREDITS

| DATE | TRANSACTION DESCRIPTON | AMOUNT |
|---|---|---|
| | ST-Q8S5P6Q4C6F6 | |
| 6/03 | Advance to ***4766 | 500,000.00 |
| | Advance from ***0865 | |
| 6/04 | CGUSABENJA        TRANSFER | 282.74 |
| | ANDREW CHAPIN | |
| | ST-G2Y2T0C4B9E4 | |
| 6/05 | Wire Transfer Credit | 1,000,000.00 |
| | E-REVSHARE CORE, LLC | |
| | C O THE SCION GROUP | |
| | 223 WALL ST | |
| | HUNTINGTON, NY 11743-2060 | |
| | INVESTMENT | |
| | 20200605I1B7032R016138 | |
| | 20200605MMQFMPUN000325 | |
| | 06051637FT03 | |
| 6/05 | CGUSABENJA        TRANSFER | 97.10 |
| | ANDREW CHAPIN | |
| | ST-T1K4A7I0R6G6 | |
| 6/08 | CGUSABENJA        TRANSFER | 332.83 |
| | ANDREW CHAPIN | |
| | ST-L2V7O9W2I8V6 | |
| 6/09 | CGUSABENJA        TRANSFER | 829.82 |
| | ANDREW CHAPIN | |
| | ST-C3R6E7K9C3Y3 | |
| 6/09 | to dda 500764766 | 55,000.00 |
| | from loan 6706744910865 | |
| 6/09 | to dda 500764766 | 250,000.00 |
| | from loan 6706744910865 | |
| 6/10 | CGUSABENJA        TRANSFER | 426.32 |
| | ANDREW CHAPIN | |
| | ST-H9Z3G9S9M4S9 | |
| 6/10 | Benja - Affordab Benja - Af | 5,000.00 |
| | ANDREW CHAPIN | |
| | ST-N6W5P7N1Y3E9 | |
| 6/11 | CGUSABENJA        TRANSFER | 411.46 |
| | ANDREW CHAPIN | |
| | ST-Z5X2Z6W2U1Y6 | |
| 6/12 | CGUSABENJA        TRANSFER | 228.30 |
| | ANDREW CHAPIN | |
| | ST-Z7K6E3A3P7S4 | |
| 6/15 | CGUSABENJA        TRANSFER | 197.32 |
| | ANDREW CHAPIN | |
| | ST-Y1X2H3Z3Y9H2 | |
| 6/16 | CGUSABENJA        TRANSFER | 757.74 |
| | ANDREW CHAPIN | |
| | ST-W9T6M3R7O2A4 | |
| 6/17 | CGUSABENJA        TRANSFER | 145.40 |
| | ANDREW CHAPIN | |



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766  (Continued)

## DEPOSITS AND OTHER CREDITS

| DATE | TRANSACTION DESCRIPTON | | AMOUNT |
|------|------------------------|--|--------|
|      | ST-H4H5J5Y4K9J5        |  |        |
| 6/18 | CGUSABENJA    TRANSFER |  | 129.36 |
|      | ANDREW CHAPIN          |  |        |
|      | ST-G1V5N7S2J2F6        |  |        |
| 6/19 | CGUSABENJA    TRANSFER |  | 194.56 |
|      | ANDREW CHAPIN          |  |        |
|      | ST-W9N7W8M5B4P5        |  |        |
| 6/19 | Benja - Affordab Benja |  | 1,750.00 |
|      | ANDREW CHAPIN          |  |        |
|      | ST-V5I2L8J2G1H5        |  |        |
| 6/22 | CGUSABENJA    TRANSFER |  | 43.12  |
|      | ANDREW CHAPIN          |  |        |
|      | ST-H6I1G9M0O4Q4        |  |        |
| 6/23 | CGUSABENJA    TRANSFER |  | 306.70 |
|      | ANDREW CHAPIN          |  |        |
|      | ST-L2C8I8C0I5V0        |  |        |
| 6/25 | CGUSABENJA    TRANSFER |  | 71.10  |
|      | ANDREW CHAPIN          |  |        |
|      | ST-C0L7X0P2U1R4        |  |        |
| 6/30 | CGUSABENJA    TRANSFER |  | 97.61  |
|      | ANDREW CHAPIN          |  |        |
|      | ST-E6W6L6R4Q0W3        |  |        |
| 6/30 | Benja - Affordab Benja - Af |  | 3,100.00 |
|      | ANDREW CHAPIN          |  |        |
|      | ST-O4X7O4I3O2E3        |  |        |

## CHECKS AND OTHER DEBITS

| DATE | TRANSACTION DESCRIPTION | | AMOUNT |
|------|-------------------------|--|--------|
| 6/01 | PAYPAL        INST XFER |  | 12.17- |
|      | ANDREW CHAPIN           |  |        |
|      | KENLESKO EBAY K         |  |        |
| 6/01 | SHOPIFY CAPITAL  R6ZIQCV35 |  | 19.31- |
|      | Andrew Chapin           |  |        |
|      | R7255254                |  |        |
| 6/01 | SHOPIFY CAPITAL  R4NB32JCY |  | 28.08- |
|      | Andrew Chapin           |  |        |
|      | R7253817                |  |        |
| 6/02 | Wire Transfer Debit     |  | 10,500.00- |
|      | Andrew Chapin Benja     |  |        |
|      | 322271627               |  |        |
|      | 555475257               |  |        |
|      | JPMORGAN CHASE BAN      |  |        |
|      | 20200602MMQFMPUN000317  |  |        |
|      | 20200602B1QGC01R056571  |  |        |
|      | 06021535FT03            |  |        |
| 6/02 | SHOPIFY CAPITAL  RB6OVINIV |  | 1.57-  |
|      | Andrew Chapin           |  |        |



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766   (Continued)

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|---|---|---|
| | R7285160 | |
| 6/02 | SHOPIFY CAPITAL  RPE6WKHNB | 9.10- |
| | Andrew Chapin | |
| | R7274537 | |
| 6/02 | SHOPIFY CAPITAL  RSS2FHH44 | 9.49- |
| | Andrew Chapin | |
| | R7283929 | |
| 6/02 | SHOPIFY CAPITAL  RL4ULHEHY | 18.90- |
| | Andrew Chapin | |
| | R7264462 | |
| 6/02 | SHOPIFY CAPITAL  R4KWI3ACS | 49.09- |
| | Andrew Chapin | |
| | R7265957 | |
| 6/02 | SHOPIFY CAPITAL  R2ICUNGUO | 66.57- |
| | Andrew Chapin | |
| | R7275952 | |
| 6/02 | GUSTO          FEE 787806 | 117.00- |
| | Benja Incorporated | |
| | 6semjoigajn | |
| 6/03 | Wire Transfer Debit | 10,000.00- |
| | Koosh Media | |
| | 321370765 | |
| | 8103786531 | |
| | AMERICAN SAVINGS B | |
| | 20200603MMQFMPUN000255 | |
| | 20200603GMQFMP01016423 | |
| | 06031424FT03 | |
| 6/03 | Wire Transfer Debit | 12,500.00- |
| | Sean C Fleming Rev Trust 5/1/0 | |
| | 026007993 | |
| | 101-WA-258641-000 | |
| | UBS AG | |
| | 20200603MMQFMPUN000259 | |
| | 20200603B1Q8052R000571 | |
| | 06031425FT03 | |
| 6/03 | Wire Transfer Debit | 102,018.25- |
| | Murphy Hoffman Company | |
| | 101000695 | |
| | 9872224221 | |
| | UMB BANK, N.A. | |
| | 20200603MMQFMPUN000256 | |
| | 20200603J1B7841C001027 | |
| | 06031425FT03 | |
| 6/03 | Wire Transfer Debit | 380,281.86- |
| | Murphy Hoffman Company | |
| | 101000695 | |
| | 9872224221 | |



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766  (Continued)

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|---|---|---|
| | UMB BANK, N.A. 20200603MMQFMPUN000257 20200603J1B7841C001028 06031425FT03 | |
| 6/03 | SHOPIFY CAPITAL  RXME4RTD4 Andrew Chapin R7294951 | 13.66- |
| 6/03 | SHOPIFY CAPITAL  RKZA6PX3L Andrew Chapin R7293612 | 27.87- |
| 6/04 | Wire Transfer Debit Internet Escrow Services Inc 021000089 31044399 CITIBANK, N.A. Reference Escrow Transaction # 20200604MMQFMPUN000089 20200604B1Q8021R020404 06041525FT03 | 11,930.05- |
| 6/04 | SHOPIFY CAPITAL  RDSPHCV7P Andrew Chapin R7303701 | 46.97- |
| 6/04 | SHOPIFY CAPITAL  RJV5CT52P Andrew Chapin R7305135 | 49.93- |
| 6/04 | WCB Warehouse    WCB Wareho BENJA INCORPORATED ST-E5M7M7L3F9M3 | 250.00- |
| 6/05 | Wire Transfer Debit Murphy Hoffman Company 101000695 9872224221 UMB BANK, N.A. Benja - INV-0517 20200605MMQFMPUN000516 20200605J1B7841C001639 06051701FT03 | 212,473.85- |
| 6/05 | Wire Transfer Debit Murphy Hoffman Company 101000695 9872224221 UMB BANK, N.A. 20200605MMQFMPUN000514 20200605J1B7841C001637 06051701FT03 | 324,805.50- |
| 6/05 | Wire Transfer Debit Murphy Hoffman Company | 462,183.93- |



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                4766  (Continued)

## CHECKS AND OTHER DEBITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|------|------------------------|--------|
|  | 101000695 | |
|  | 9872224221 | |
|  | UMB BANK, N.A. | |
|  | Benja - INV-0482 | |
|  | 20200605MMQFMPUN000515 | |
|  | 20200605J1B7841C001638 | |
|  | 06051701FT03 | |
| 6/05 | guideline 401(k) AMTS:55,2<br>BENJA INCORPORATED<br>ST-O4T6P6U4R8T9 | .57- |
| 6/05 | SHOPIFY CAPITAL  R4V2USQ7I<br>Andrew Chapin<br>R7315494 | 17.16- |
| 6/05 | SHOPIFY CAPITAL  R3D6VY2FQ<br>Andrew Chapin<br>R7313981 | 84.45- |
| 6/08 | SHOPIFY CAPITAL  RHP7JZL55<br>Andrew Chapin<br>R7324605 | 8.19- |
| 6/08 | SHOPIFY CAPITAL  RDBJQBSYN<br>Andrew Chapin<br>R7326147 | 58.47- |
| 6/08 | PAYPAL          INST XFER<br>ANDREW CHAPIN<br>BILLCORMALI | 800.00- |
| 6/09 | Wire Transfer Debit<br>Murphy Hoffman Company<br>101000695<br>9872224221<br>UMB BANK, N.A.<br>20200609MMQFMPUN000235<br>20200609J1B7841C001024<br>06091422FT03 | 255,000.00- |
| 6/09 | SHOPIFY CAPITAL  RG5EHLNQD<br>Andrew Chapin<br>R7345473 | 16.97- |
| 6/09 | SHOPIFY CAPITAL  RJSRMF5PG<br>Andrew Chapin<br>R7354960 | 18.30- |
| 6/09 | SHOPIFY CAPITAL  RSNI7UTCG<br>Andrew Chapin<br>R7336816 | 19.87- |
| 6/09 | SHOPIFY CAPITAL  RFJGP4WVH<br>Andrew Chapin<br>R7335272 | 34.45- |
| 6/09 | SHOPIFY CAPITAL  RBVTDSQSZ<br>Andrew Chapin<br>R7346921 | 49.67- |



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766  (Continued)

## CHECKS AND OTHER DEBITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|------|-------------------------|--------|
| 6/09 | SHOPIFY CAPITAL  RVVZIO26E<br>Andrew Chapin<br>R7356268 | 76.87- |
| 6/10 | SHOPIFY CAPITAL  R6WGLTEEX<br>Andrew Chapin<br>R7366323 | 75.21- |
| 6/10 | PAYPAL           INST XFER<br>ANDREW CHAPIN<br>MARTIJNKLEI EBA | 89.38- |
| 6/10 | SHOPIFY CAPITAL  R7RUIEYUD<br>Andrew Chapin<br>R7368361 | 423.13- |
| 6/10 | APPLECARD GSBANK PAYMENT<br>Andrew Chapin<br>1749626 | 3,158.95- |
| 6/10 | AMEX EPAYMENT    ACH PMT<br>Andrew Chapin<br>W4750 | 6,500.00- |
| 6/10 | CHASE CREDIT CRD EPAY<br>ANDREW J CHAPIN<br>4726092077 | 8,900.00- |
| 6/11 | SHOPIFY CAPITAL  RHQMK6SKP<br>Andrew Chapin<br>R7375301 | 20.33- |
| 6/12 | SHOPIFY CAPITAL  RVXTYS45D<br>Andrew Chapin<br>R7385992 | 35.11- |
| 6/15 | SHOPIFY CAPITAL  RRPIKU2MQ<br>Andrew Chapin<br>R7396746 | 26.78- |
| 6/15 | VZ WIRELESS VE   VZW WEBPAY<br>ANDREW *CHAPIN<br>9840064 | 534.64- |
| 6/15 | LIN XIAO LI      IAT PAYPAL<br>ANDREW CHAPIN | 2,068.99- |
| 6/15 | TO LN 6706744910865<br>FROM DDA 500764766 | 11,086.50- |
| 6/16 | Account Analysis Charge | 194.05- |
| 6/16 | SHOPIFY CAPITAL  RUMPYX7IM<br>Andrew Chapin<br>R7427659 | 18.04- |
| 6/16 | SHOPIFY CAPITAL  RVVJOZWJY<br>Andrew Chapin<br>R7417958 | 29.82- |
| 6/16 | SHOPIFY CAPITAL  RTZ3YKSKS<br>Andrew Chapin<br>R7407639 | 47.88- |
| 6/17 | Wire Transfer Debit<br>UMB Capital Finance | 20,000.00- |

Case: 20-30819   Doc# 21   Filed: 10/20/20   Entered: 10/20/20 17:51:40   Page 85 of 125
00085



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766   (Continued)

## CHECKS AND OTHER DEBITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|------|-------------------------|--------|
|      | 101000695 | |
|      | 9872215826 | |
|      | UMB BANK, N.A. | |
|      | 20200617MMQFMPUN000112 | |
| 6/17 | SHOPIFY CAPITAL  RTWRPSWHM<br>Andrew Chapin<br>R7437780 | 16.15- |
| 6/17 | WCB Warehouse    WCB Wareho<br>BENJA INCORPORATED<br>ST-V8Z6L0G5P3B7 | 250.00- |
| 6/18 | SHOPIFY CAPITAL  RWZ4OTAAP<br>Andrew Chapin<br>R7448357 | 26.18- |
| 6/18 | PAYPAL           INST XFER<br>ANDREW CHAPIN<br>BILLCORMALI | 125.00- |
| 6/19 | SHOPIFY CAPITAL  RA7RUYS64<br>Andrew Chapin<br>R7459079 | 83.99- |
| 6/19 | WCB Warehouse    WCB Wareho<br>BENJA INCORPORATED<br>ST-G4M5Y6R6V0W3 | 582.90- |
| 6/19 | WCB Warehouse    WCB Wareho<br>BENJA INCORPORATED<br>ST-O9V6E4G8M5K6 | 619.54- |
| 6/22 | GUSTO            CND 884331<br>Benja Incorporated<br>6semjok9c2t | 50.00- |
| 6/22 | SHOPIFY CAPITAL  RQGWLUSYN<br>Andrew Chapin<br>R7469780 | 78.74- |
| 6/23 | SHOPIFY CAPITAL  R6O3DPXFV<br>Andrew Chapin<br>R7500512 | 18.20- |
| 6/23 | SHOPIFY CAPITAL  R6RSELDZV<br>Andrew Chapin<br>R7480652 | 35.48- |
| 6/23 | SHOPIFY CAPITAL  REYVUKJYU<br>Andrew Chapin<br>R7491037 | 65.86- |
| 6/23 | WCB Warehouse    WCB Wareho<br>BENJA INCORPORATED<br>ST-F5M6Z2V6B2T2 | 250.00- |
| 6/24 | SHOPIFY CAPITAL  RK3VP5ASX<br>Andrew Chapin<br>R7510126 | 40.95- |
| 6/25 | SHOPIFY CAPITAL  RL36ANLSC<br>Andrew Chapin | 9.10- |



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766   (Continued)

| | CHECKS AND OTHER DEBITS | |
|---|---|---|
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** |
| | R7520344 | |
| 6/25 | VENMO            PAYMENT<br>ANDREW CHAPIN<br>3666252200 | 1,490.00- |
| 6/26 | CGUSABENJA       TRANSFER<br>ANDREW CHAPIN<br>ST-S4T4K5G1T7E7 | 15.42- |
| 6/26 | SHOPIFY CAPITAL  RFZJYVCBI<br>Andrew Chapin<br>R7530750 | 26.09- |
| 6/29 | SHOPIFY CAPITAL  RS34R7QXL<br>Andrew Chapin<br>R7541406 | 59.83- |
| 6/30 | SHOPIFY CAPITAL  RH3AOPWHV<br>Andrew Chapin<br>R7562436 | 31.64- |
| 6/30 | GUSTO            CND 944380<br>Benja Incorporated<br>6semjol1dok | 50.00- |
| 6/30 | SHOPIFY CAPITAL  RPUVPV445<br>Andrew Chapin<br>R7552116 | 53.31- |
| 6/30 | SHOPIFY CAPITAL  RTP7D627W<br>Andrew Chapin<br>R7571971 | 55.76- |
| 6/30 | GUSTO            CND 944380<br>Benja Incorporated<br>6semjol1do6 | 100.00- |
| 6/30 | GUSTO            CND 944380<br>Benja Incorporated<br>6semjol1dpi | 750.00- |
| 6/30 | GUSTO            CND 944380<br>Benja Incorporated<br>6semjol1dp3 | 800.00- |
| 6/30 | GUSTO            REM 944386<br>Benja Incorporated<br>6semjol1dms | 1,490.00- |
| 6/30 | GUSTO            TAX 944394<br>Benja Incorporated<br>6semjol1dlg | 5,814.16- |
| 6/30 | GUSTO            NET 944385<br>Benja Incorporated<br>6semjol1dk7 | 16,201.78- |
| 6/30 | Overdraft Item Charge | 70.00- |

Case: 20-30819   Doc# 21   Filed: 10/20/20   Entered: 10/20/20 17:51:40   Page 87 of
125
00087



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766  (Continued)

| CHECKS IN SERIAL NUMBER ORDER | | | | | |
|---|---|---|---|---|---|
| DATE | CHECK NO | AMOUNT | DATE | CHECK NO | AMOUNT |
| 6/16 | 5006 | 67.57 | 6/10 | 5007 | 107.24 |
| 6/12 | 5013* | 10.00 | | | |

*Indicates break in check number sequence

| DAILY BALANCE SECTION | | | | | |
|---|---|---|---|---|---|
| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
| 6/01 | 28,066.01 | 6/02 | 17,958.55 | 6/03 | 13,193.88 |
| 6/04 | 1,199.67 | 6/05 | 1,731.31 | 6/08 | 1,197.48 |
| 6/09 | 51,811.17 | 6/10 | 37,983.58 | 6/11 | 38,374.71 |
| 6/12 | 38,557.90 | 6/15 | 25,038.31 | 6/16 | 25,438.69 |
| 6/17 | 5,317.94 | 6/18 | 5,296.12 | 6/19 | 5,954.25 |
| 6/22 | 5,868.63 | 6/23 | 5,805.79 | 6/24 | 5,764.84 |
| 6/25 | 4,336.84 | 6/26 | 4,295.33 | 6/29 | 4,235.50 |
| 6/30 | 17,983.54- | | | | |



Check 5006 Amount $67.57 Date 6/16/2020



Check 5007 Amount $107.24 Date 6/10/2020



Check 5013 Amount $10.00 Date 6/12/2020



100 W University Ave
Champaign IL 61820

12344742
BENJA INC
845 MARKET ST 450A
SAN FRANCISCO CA 94117

Date  5/29/20          Page      1
Primary Account              4766

## CHECKING ACCOUNT SUMMARY & DETAIL

| | | | |
|---|---|---|---|
| BUSINESS ANALYSIS | | Number of Enclosures | 6 |
| Account Number | 4766 | Statement Dates  5/01/20 thru  5/31/20 | |
| Previous Balance | 195,406.71 | Days in the statement period | 31 |
| 24 Deposits/Credits | 965,024.70 | Average Ledger | 68,384.33 |
| 91 Checks/Debits | 1,157,415.19 | Average Collected | 68,384.33 |
| Service Charge | .00 | | |
| Interest Paid | .00 | | |
| Ending Balance | 3,016.22 | | |

| | Total For<br>This Period | Total<br>Year-to-Date |
|---|---|---|
| Overdraft Item Fees | $.00 | $805.00 |
| Returned Item Fees | $.00 | $35.00 |

## DEPOSITS AND OTHER CREDITS

| DATE | TRANSACTION DESCRIPTON | AMOUNT |
|---|---|---|
| 5/01 | CGUSABENJA        TRANSFER<br>ANDREW CHAPIN<br>ST-U9D7A0P0R4R1 | 31.91 |
| 5/05 | CGUSABENJA        TRANSFER<br>ANDREW CHAPIN<br>ST-V7H3O5J9P0Q5 | 77.42 |
| 5/06 | RAINY DAY PRINTI ACH<br>Benja Incorporated | .06 |
| 5/06 | RAINY DAY PRINTI ACH<br>Benja Incorporated | .08 |
| 5/06 | CGUSABENJA        TRANSFER<br>ANDREW CHAPIN<br>ST-Y9X1D0C8J7Y3 | 6.73 |
| 5/08 | CGUSABENJA        TRANSFER<br>ANDREW CHAPIN<br>ST-E5W6V4A3F1J1 | 32.74 |
| 5/11 | CGUSABENJA        TRANSFER<br>ANDREW CHAPIN<br>ST-Y0X3C6L2W7T7 | 82.34 |
| 5/12 | CGUSABENJA        TRANSFER<br>ANDREW CHAPIN<br>ST-R1L7U8Z0N5I6 | 209.70 |
| 5/12 | CGUSABENJA        TRANSFER<br>ANDREW CHAPIN<br>ST-W0F3M5J4E4O2 | |

## CHANGE OF ADDRESS FORM

Please notify us immediately of any address changes on your accounts..

Customer Name: _____

                                                 (Account Number)

New Address: _____

   (Street Address)                            (Unit #)

   (City)                       (State)            (Zip Code)

**Member FDIC**   (Telephone Number)                  (Social Security Number)

   (Customer Signature)

**Please return this form to the address listed below or bring it to our office**

### THIS FORM WILL HELP YOU BALANCE YOUR CHECKBOOK

| CHECKS or WITHDRAWALS OUTSTANDING Not Charged To Your Account | | |
|---|---|---|
| Check No. | $ | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| TOTAL | $ | |

ENDING BALANCE Shown On This Statement   $ _____

ADD (+)
Deposits, Loan Advances, Credit Memos, And Other Automatic Deposits Not Shown On This Statement   $ _____   $ _____

SUBTRACT (-)
Total of Checks Outstanding, Automatic Loan Payments, Automatic Savings Transfers, Service Charges, Debit Memos And Other Automatic Deductions Not Shown On This Statement   $ _____   $ _____   $ _____

BALANCE   $ _____

Current Checkbook Balance   $ _____

ADD (+)
Interest Earned From This Statement   $ _____

SUBTRACT (-)
Misc. Charges From This Statement   $ _____

NEW CHECKBOOK BALANCE
Should Agree With BALANCE Line   $ _____

### IMPORTANT INFORMATION

**In Case of General Statement Errors**

You must examine your statement of account with "reasonable promptness." If you discover (or reasonably should have discovered) any errors, unauthorized signatures, or alterations, you must promptly notify us of the relevant facts. You agree that the time you have to examine your statement and report to us will depend on the circumstances,but will not, in any circumstance, exceed a total of 30 days from when the statement is first sent or made available to you.

### IMPORTANT INFORMATION FOR CONSUMER ACCOUNTS

**In Case of Errors or Questions About Your Electronic Transactions**

Telephone or write us at the number or address listed below if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.
(1) Tell us your name and account number.
(2) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
(3) Tell us the date and the dollar amount of the suspected error.
We will investigate your complaint and will correct any error promptly.If we take more than 10 business days to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation. To qualify for this recredit, we require a written notice of the problem or complaint within 10 business days of your telephone call to us.

**In Case of Errors or Questions About Your Line of Credit or Home Equity Loan**

If you think your bill is wrong, or if you need information about this loan or a transaction on this statement, please write to us at the address listed below. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, please give us the following information:
(1) Your name and account number.
(2) Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
(3) The date and the dollar amount of the suspected error.
You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your questions, we cannot report you as delinquent or take any action to collect the amount you question.

**Balance Subject to Interest Rate for Line of Credit**

Balance Subject to Interest Rate / Average Daily Balance - We figure the interest charge on your account by applying the periodic rate to the 'AVERAGE DAILY BALANCE' of your account (including current transactions). To get the 'AVERAGE DAILY BALANCE', we take the beginning balance of your account each day, add any new advances and subtract any payments or credits, also subtracting any unpaid finance charges. The automatic minimum payment amount is excluded when calculating the 'AVERAGE DAILY BALANCE' and 'INTEREST CHARGE'. If the account does not have sufficient funds to cover payment and another advance is made to cover minimum payment, this is also excluded from figuring the 'AVERAGE DAILY BALANCE' but is reflected in the beginning balance of the next statement cycle. This gives us the daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the 'AVERAGE DAILY BALANCE'. Written notification of any errors must be given to preserve your rights under the Truth in Lending Act. At any time the debtor may pay the aggregate balance or any portion of his/her indebtedness.

*We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.*

**Telephone Number and Address to Be Notified in the Event of Errors**

Call us at 800.672.8739 or write to us at Busey Bank, Attention: Customer Care Center, P.O. Box 4028, Champaign, IL 61824. You should also call us at this phone number or write to us at this address if you believe a transfer has been made using the information from your check without your permission.

0146-STMT
00091



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766   (Continued)

## DEPOSITS AND OTHER CREDITS

| DATE | TRANSACTION DESCRIPTON | AMOUNT |
|------|------------------------|--------|
| 5/14 | CGUSABENJA     TRANSFER<br>ANDREW CHAPIN<br>ST-V1Z6M5L6X1Z0 | 144.29 |
| 5/15 | CGUSABENJA     TRANSFER<br>ANDREW CHAPIN<br>ST-Y1Q2P7N4D9H1 | 31.78 |
| 5/18 | CGUSABENJA     TRANSFER<br>ANDREW CHAPIN<br>ST-Q1T2X1F3J2Y8 | 99.72 |
| 5/19 | CGUSABENJA     TRANSFER<br>ANDREW CHAPIN<br>ST-E2D7C1S8I4K8 | 426.26 |
| 5/20 | CGUSABENJA     TRANSFER<br>ANDREW CHAPIN<br>ST-B4N2Q2A7E8A6 | 84.03 |
| 5/21 | Benja - Affordab Benja - Af<br>ANDREW CHAPIN<br>ST-W9C2J8N3K8T5 | 3,000.00 |
| 5/22 | CGUSABENJA     TRANSFER<br>ANDREW CHAPIN<br>ST-V4V8F2Q9U4U4 | 208.25 |
| 5/26 | CGUSABENJA     TRANSFER<br>ANDREW CHAPIN<br>ST-O9B9J8R0G3I1 | 97.88 |
| 5/26 | SBAD TREAS 310    MISC PAY<br>Benja Incorporated<br>166317780073000<br>RMT*CT*1663177800 200 12668 F8<br>041********\ | 149,900.00 |
| 5/27 | Wire Transfer Credit<br>MHC FINANCIAL SERVICES INC DBA<br>11120 TOMAHAWK CREEK PKWY SUIT<br>LEAWOOD, KS 662112695<br>FACTORING PURCHASE<br>MHC FINANCIAL SERVICES<br>20200527J1B7841C001627<br>20200527MMQFMPUN000319<br>05271651FT03 | 268,872.52 |
| 5/27 | CGUSABENJA     TRANSFER<br>ANDREW CHAPIN<br>ST-M1C3I9M8R6O5 | 303.27 |
| 5/27 | MHC FIN SERVICES CHKNAM<br>Benja Incorporated<br>56762 | 540,572.25 |
| 5/28 | CGUSABENJA     TRANSFER<br>ANDREW CHAPIN<br>ST-C3D0Q4V5J9X7 | 175.75 |
| 5/28 | AMZN4F5DE52Z    Marketplac<br>Benja Incorporated | 340.64 |



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766  (Continued)

| DATE | TRANSACTION DESCRIPTON | AMOUNT |
|------|------------------------|--------|
| | 55Y0Z0MOS2NZMJY | |
| 5/29 | CGUSABENJA        TRANSFER | 263.26 |
| | ANDREW CHAPIN | |
| | ST-Z9W7T5R8O4D6 | |

## DEPOSITS AND OTHER CREDITS

## CHECKS AND OTHER DEBITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|------|-------------------------|--------|
| 5/01 | Wire Transfer Debit | 144,000.00- |
| | Andrew Chapin | |
| | 322271627 | |
| | 555475257 | |
| | JPMORGAN CHASE BAN | |
| | 20200501MMQFMPUN000254 | |
| | 20200501B1QGC01R056608 | |
| | 05011340FT03 | |
| 5/01 | SHOPIFY CAPITAL  RRM6N5WYM | 5.64- |
| | Andrew Chapin | |
| | R6962604 | |
| 5/01 | SHOPIFY CAPITAL  RIVLYGTYZ | 21.55- |
| | Andrew Chapin | |
| | R6961211 | |
| 5/04 | Wire Transfer Debit | 200.00- |
| | Rainy Day Printing | |
| | 102000021 | |
| | 103683925111 | |
| | US BANK, NA | |
| | 20200504MMQFMPUN000429 | |
| | 20200504J1Q5040C001340 | |
| | 05041706FT03 | |
| 5/04 | SHOPIFY CAPITAL  RR6UA2ZSL | 16.82- |
| | Andrew Chapin | |
| | R6971590 | |
| 5/04 | PAYPAL           INST XFER | 113.42- |
| | ANDREW CHAPIN | |
| | BESTAUTHENT EBA | |
| 5/04 | GUSTO          FEE 629057 | 141.00- |
| | Benja Incorporated | |
| | 6semjog3emg | |
| 5/04 | GUSTO          REM 630913 | 237.50- |
| | Benja Incorporated | |
| | 6semjog5pbv | |
| 5/05 | Wire Transfer Debit | 2,500.00- |
| | CFOS 2GO STAFFING | |
| | 121143260 | |
| | 0101150100 | |


BUSINESS ANALYSIS                    4766   (Continued)

| CHECKS AND OTHER DEBITS | | |
|---|---|---:|
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** |
| | WESTERN ALLIANCE B 20200505MMQFMPUN000395 20200505L1LFB71C001847 05051725FT03 | |
| 5/05 | SHOPIFY CAPITAL  RWRDKDZYD Andrew Chapin R6993344 | 2.50- |
| 5/05 | SHOPIFY CAPITAL  RVWB5SBNW Andrew Chapin R6983473 | 11.21- |
| 5/05 | SHOPIFY CAPITAL  RKRDUT63D Andrew Chapin R6991951 | 18.20- |
| 5/05 | SHOPIFY CAPITAL  ROSGNXSN4 Andrew Chapin R7001455 | 33.97- |
| 5/05 | SHOPIFY CAPITAL  R6FPVKKMY Andrew Chapin R6981979 | 44.52- |
| 5/05 | PAYMENTECH      FEE AffordableJerseys 6470807 | 56.27- |
| 5/06 | SHOPIFY CAPITAL  RYSAUIT5O Andrew Chapin R7012844 | 1.23- |
| 5/06 | GUSTO          CND 636917 Benja Incorporated 6semjogc0kp | 250.00- |
| 5/07 | PAYPAL         INST XFER ANDREW CHAPIN SAYIT86 EBAY SA | 2.16- |
| 5/07 | SHOPIFY CAPITAL  RC5Q5D742 Andrew Chapin R7021722 | 7.28- |
| 5/08 | SHOPIFY CAPITAL  ROUB53ATT Andrew Chapin R7033526 | 5.84- |
| 5/08 | SHOPIFY CAPITAL  REMTFR5ZK Andrew Chapin R7032077 | 42.22- |
| 5/11 | SHOPIFY CAPITAL  RC6AKSNGA Andrew Chapin R7042453 | 8.54- |
| 5/11 | SHOPIFY CAPITAL  RWCX25WNO Andrew Chapin R7043877 | 14.57- |
| 5/11 | APPLECARD GSBANK PAYMENT Andrew Chapin | 1,134.01- |



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766  (Continued)

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|------|------------------------|--------|
| | **CHECKS AND OTHER DEBITS** | |
| | 1749626 | |
| 5/12 | SHOPIFY CAPITAL   RTZT5QBJG<br>Andrew Chapin<br>R7073189 | 8.80- |
| 5/12 | SHOPIFY CAPITAL   RT6JGRWDR<br>Andrew Chapin<br>R7071994 | 10.18- |
| 5/12 | SHOPIFY CAPITAL   RV2BIHFYR<br>Andrew Chapin<br>R7064179 | 28.23- |
| 5/12 | SHOPIFY CAPITAL   RMJN567IH<br>Andrew Chapin<br>R7062811 | 36.85- |
| 5/13 | SHOPIFY CAPITAL   RSDJZGG6S<br>Andrew Chapin<br>R7082765 | 11.28- |
| 5/13 | SHOPIFY CAPITAL   R2UPXEWI5<br>Andrew Chapin<br>R7081465 | 18.95- |
| 5/14 | SHOPIFY CAPITAL   R5YLV7CLO<br>Andrew Chapin<br>R7091509 | 9.16- |
| 5/14 | SHOPIFY CAPITAL   RAOIR3ENS<br>Andrew Chapin<br>R7092892 | 25.59- |
| 5/15 | Account Analysis Charge | 346.34- |
| 5/15 | SHOPIFY CAPITAL   REOHWOJUZ<br>Andrew Chapin<br>R7103053 | 5.62- |
| 5/15 | SHOPIFY CAPITAL   REPTKSAFM<br>Andrew Chapin<br>R7101663 | 26.18- |
| 5/18 | SHOPIFY CAPITAL   RS2US7XZ7<br>Andrew Chapin<br>R7111979 | 8.19- |
| 5/18 | SHOPIFY CAPITAL   R7ITCP4RJ<br>Andrew Chapin<br>R7113386 | 17.68- |
| 5/18 | PAYPAL            INST XFER<br>ANDREW CHAPIN<br>THETRAVYTRA | 56.00- |
| 5/18 | PAYMENTECH        CHARGEBACK<br>AffordableJerseys<br>6470807 | 72.99- |
| 5/18 | PAYPAL            INST XFER<br>ANDREW CHAPIN<br>TYLERPEDEN1 | 89.99- |
| 5/19 | SHOPIFY CAPITAL   R2CLCVRXH<br>Andrew Chapin | 10.27- |


100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766  (Continued)

| | CHECKS AND OTHER DEBITS | |
|---|---|---|
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** |
| | R7141938 | |
| 5/19 | SHOPIFY CAPITAL   RTNX2T6NC | 11.24- |
| | Andrew Chapin | |
| | R7143224 | |
| 5/19 | SHOPIFY CAPITAL   ROFKYFNXD | 22.52- |
| | Andrew Chapin | |
| | R7123927 | |
| 5/19 | SHOPIFY CAPITAL   R3A22DAJ6 | 33.01- |
| | Andrew Chapin | |
| | R7133895 | |
| 5/19 | SHOPIFY CAPITAL   RJ46LB7HR | 58.57- |
| | Andrew Chapin | |
| | R7132499 | |
| 5/20 | SHOPIFY CAPITAL   RS4UXLJEP | 14.92- |
| | Andrew Chapin | |
| | R7153201 | |
| 5/20 | SHOPIFY CAPITAL   R7C3JR2MV | 20.12- |
| | Andrew Chapin | |
| | R7151847 | |
| 5/20 | AMEX EPAYMENT     ACH PMT | 8,999.27- |
| | Andrew Chapin | |
| | W1786 | |
| 5/21 | SHOPIFY CAPITAL   RDEGYZKZU | 8.19- |
| | Andrew Chapin | |
| | R7162064 | |
| 5/21 | PAYMENTECH        CHARGEBACK | 63.00- |
| | AffordableJerseys | |
| | 6470807 | |
| 5/21 | WCB Warehouse    WCB Wareho | 250.00- |
| | BENJA INCORPORATED | |
| | ST-P8N0P3W1R4I3 | |
| 5/22 | SHOPIFY CAPITAL   RIIBBV3AR | 16.73- |
| | Andrew Chapin | |
| | R7172513 | |
| 5/22 | SHOPIFY CAPITAL   RIZFI24QF | 36.75- |
| | Andrew Chapin | |
| | R7173938 | |
| 5/26 | Wire Transfer Debit | 600.00- |
| | Morning Blitz LLC | |
| | 026009593 | |
| | 898115416717 | |
| | 921 Heron Court | |
| | Marco Island, FL | |
| | BANK OF AMERICA, N | |
| | 20200526MMQFMPUN000385 | |
| | 20200526B6B7HU4R011332 | |
| | 05261424FT03 | |
| 5/26 | Wire Transfer Debit | 1,100.00- |
| | Koosh Media LLC | |



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                4766  (Continued)

## CHECKS AND OTHER DEBITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|------|------------------------|--------|
|  | 321370765 | |
|  | 8103786531 | |
|  | AMERICAN SAVINGS B | |
|  | 20200526MMQFMPUN000386 | |
|  | 20200526GMQFMP01021050 | |
|  | 05261424FT03 | |
| 5/26 | SHOPIFY CAPITAL  R4YNZFLFY<br>Andrew Chapin<br>R7184415 | 17.30- |
| 5/26 | SHOPIFY CAPITAL  R4TE4DPAB<br>Andrew Chapin<br>R7182983 | 61.12- |
| 5/27 | Wire Transfer Debit<br>Andrew Chapin<br>322271627<br>555475257<br>JPMORGAN CHASE BAN<br>20200527MMQFMPUN000123<br>20200527B1QGC01R031842<br>05271126FT03 | 250,500.00- |
| 5/27 | SHOPIFY CAPITAL  RUJCBVNOE<br>Andrew Chapin<br>R7214810 | 5.64- |
| 5/27 | SHOPIFY CAPITAL  RRAX7ZZ3H<br>Andrew Chapin<br>R7213542 | 9.10- |
| 5/27 | SHOPIFY CAPITAL  RTW6AKAZU<br>Andrew Chapin<br>R7204053 | 9.76- |
| 5/27 | SHOPIFY CAPITAL  RPEBS4R3F<br>Andrew Chapin<br>R7205454 | 12.17- |
| 5/27 | SHOPIFY CAPITAL  RWH64DJXE<br>Andrew Chapin<br>R7224204 | 12.57- |
| 5/27 | SHOPIFY CAPITAL  RAQ67TISH<br>Andrew Chapin<br>R7222908 | 21.35- |
| 5/27 | SHOPIFY CAPITAL  RO7Q73UE7<br>Andrew Chapin<br>R7195257 | 23.27- |
| 5/27 | SHOPIFY CAPITAL  RY6VJLH6N<br>Andrew Chapin<br>R7193707 | 67.79- |
| 5/27 | AMEX EPAYMENT    ACH PMT<br>Andrew Chapin<br>W9564 | 1,338.79- |
| 5/27 | LIN XIAO LI      IAT PAYPAL<br>ANDREW CHAPIN | 3,593.68- |



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766   (Continued)

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|------|------------------------|--------|
| 5/27 | JOMBOY CORP      SALE<br>BENJA INCORPORATED | 4,000.00- |
| 5/27 | CHASE CREDIT CRD EPAY<br>ANDREW J CHAPIN<br>4703131471 | 4,412.84- |
| 5/28 | SHOPIFY CAPITAL   REAU276XE<br>Andrew Chapin<br>R7234445 | 31.09- |
| 5/28 | from dda 500764766<br>to loan 6706744910865 | 700,000.00- |
| 5/29 | Wire Transfer Debit<br>Sports Byline USA<br>122016066<br>0450009504<br>CITY NATIONAL BANK<br>20200529MMQFMPUN000295<br>20200529L2LFCK1C003994<br>05291331FT03 | 2,500.00- |
| 5/29 | GUSTO          CND 783183<br>Benja Incorporated<br>6semjoibrth | 50.00- |
| 5/29 | SHOPIFY CAPITAL   RXHOAV62S<br>Andrew Chapin<br>R7244802 | 50.19- |
| 5/29 | SHOPIFY CAPITAL   RYL5OQIML<br>Andrew Chapin<br>R7243381 | 63.52- |
| 5/29 | GUSTO          CND 783183<br>Benja Incorporated<br>6semjoibrt8 | 150.00- |
| 5/29 | GUSTO          CND 783183<br>Benja Incorporated<br>6semjoibrt9 | 150.00- |
| 5/29 | GUSTO          CND 783183<br>Benja Incorporated<br>6semjoibrta | 350.00- |
| 5/29 | GUSTO          CND 783183<br>Benja Incorporated<br>6semjoibrt7 | 400.00- |
| 5/29 | GUSTO          CND 783183<br>Benja Incorporated<br>6semjoibrtk | 800.00- |
| 5/29 | GUSTO          CND 783183<br>Benja Incorporated<br>6semjoibrtd | 850.00- |
| 5/29 | GUSTO          REM 783186<br>Benja Incorporated<br>6semjoibrt4 | 2,187.50- |



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                          4766   (Continued)

| CHECKS AND OTHER DEBITS | | |
|---|---|---|
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** |
| 5/29 | GUSTO          TAX 783187 | 6,491.07- |
| | Benja Incorporated | |
| | 6semjoibrss | |
| 5/29 | GUSTO          NET 783185 | 17,892.04- |
| | Benja Incorporated | |
| | 6semjoibrse | |

| CHECKS IN SERIAL NUMBER ORDER | | | | | |
|---|---|---|---|---|---|
| **DATE** | **CHECK NO** | **AMOUNT** | **DATE** | **CHECK NO** | **AMOUNT** |
| 5/28 | 5005 | 44.99 | 5/22 | 5008* | 107.24 |
| 5/29 | 5009 | 128.37 | 5/20 | 5011* | 134.99 |
| 5/18 | 5012 | 51.50 | 5/22 | 5014* | 12.24 |

*Indicates break in check number sequence

| DAILY BALANCE SECTION | | | | | |
|---|---|---|---|---|---|
| **DATE** | **BALANCE** | **DATE** | **BALANCE** | **DATE** | **BALANCE** |
| 5/01 | 51,411.43 | 5/04 | 50,702.69 | 5/05 | 48,113.44 |
| 5/06 | 47,869.08 | 5/07 | 47,859.64 | 5/08 | 47,844.32 |
| 5/11 | 46,769.54 | 5/12 | 46,895.18 | 5/13 | 46,928.77 |
| 5/14 | 47,038.31 | 5/15 | 46,691.95 | 5/18 | 46,495.32 |
| 5/19 | 46,785.97 | 5/20 | 37,700.70 | 5/21 | 40,379.51 |
| 5/22 | 40,414.80 | 5/26 | 188,634.26 | 5/27 | 734,375.34 |
| 5/28 | 34,815.65 | 5/29 | 3,016.22 | | |

Case: 20-30819   Doc# 21   Filed: 10/20/20   Entered: 10/20/20 17:51:40   Page 99 of
125



Check 5005 Amount $44.99 Date 5/28/2020



Check 5008 Amount $107.24 Date 5/22/2020



Check 5009 Amount $128.37 Date 5/29/2020



Check 5011 Amount $134.99 Date 5/20/2020



Check 5012 Amount $51.50 Date 5/18/2020



Check 5014 Amount $12.24 Date 5/22/2020



100 W University Ave
Champaign IL 61820

11386266                          Date  4/30/20          Page      1
BENJA INC                         Primary Account              4766
845 MARKET ST 450A
SAN FRANCISCO CA 94117

## CHECKING ACCOUNT SUMMARY & DETAIL

| BUSINESS ANALYSIS | | Number of Enclosures | 0 |
|---|---|---|---|
| Account Number | 4766 | Statement Dates  4/01/20 thru  4/30/20 | |
| Previous Balance | 11,599.47 | Days in the statement period | 30 |
| 28 Deposits/Credits | 4,290,724.02 | Average Ledger | 143,808.36 |
| 101 Checks/Debits | 4,106,916.78 | Average Collected | 143,808.36 |
| Service Charge | .00 | | |
| Interest Paid | .00 | | |
| Ending Balance | 195,406.71 | | |

| | Total For This Period | Total Year-to-Date |
|---|---|---|
| Overdraft Item Fees | $.00 | $805.00 |
| Returned Item Fees | $.00 | $35.00 |

## DEPOSITS AND OTHER CREDITS

| DATE | TRANSACTION DESCRIPTON | AMOUNT |
|---|---|---|
| 4/02 | Wire Transfer Credit<br>MHC FINANCIAL SERVICES INC DBA<br>11120 TOMAHAWK CREEK PKWY SUIT<br>LEAWOOD, KS 662112695<br>FACTORING PURCHASE<br>MHC FINANCIAL SERVICES<br>20200401J1B7841C002985<br>20200401MMQFMPUN000330<br>04011745FT01 | 414,950.54 |
| 4/03 | CGUSABENJA       TRANSFER<br>ANDREW CHAPIN<br>ST-E5B4L1W0V5J3 | 47.94 |
| 4/06 | Wire Transfer Credit<br>MHC FINANCIAL SERVICES INC DBA<br>11120 TOMAHAWK CREEK PKWY SUIT<br>LEAWOOD, KS 662112695<br>FACTORING PURCHASE<br>MHC FINANCIAL SERVICES<br>20200403J1B7841C001682<br>20200403MMQFMPUN000275<br>04031800FT01 | 1,243,604.49 |
| 4/06 | CGUSABENJA       TRANSFER<br>ANDREW CHAPIN<br>ST-Y7O8Y1D4W4H2 | 27.05 |
| 4/08 | CGUSABENJA       TRANSFER<br>ANDREW CHAPIN | |

00101

## CHANGE OF ADDRESS FORM

Please notify us immediately of any address changes on your accounts..

Customer Name: _____

(Account Number)

New Address: _____

(Street Address)      (Unit #)

_____

(City)      (State)      (Zip Code)

_____

(Telephone Number)      (Social Security Number)

Member FDIC

_____

(Customer Signature)

**Please return this form to the address listed below or bring it to our office**

### THIS FORM WILL HELP YOU BALANCE YOUR CHECKBOOK

| CHECKS or WITHDRAWALS OUTSTANDING Not Charged To Your Account | | | | |
|---|---|---|---|---|
| Check No. | $ | ENDING BALANCE Shown On This Statement | $ _____ | Current Checkbook Balance   $ _____ |
| | | ADD (+) | | ADD (+) |
| | | Deposits, Loan Advances, Credit Memos, And | $ _____ | Interest Earned From This Statement   $ _____ |
| | | Other Automatic Deposits Not Shown On This | $ _____ | |
| | | Statement | $ _____ | SUBTRACT (-) |
| | | | | Misc. Charges From This Statement   $ _____ |
| | | SUBTRACT (-) | $ _____ | |
| | | Total of Checks Outstanding, Automatic Loan | $ _____ | NEW CHECKBOOK BALANCE |
| | | Payments, Automatic Savings Transfers, Service | $ _____ | Should Agree With BALANCE Line   $ _____ |
| | | Charges, Debit Memos And Other Automatic | $ _____ | |
| | | Deductions Not Shown On This Statement | $ _____ | |
| TOTAL | $ | BALANCE | $ _____ | |

### IMPORTANT INFORMATION

**In Case of General Statement Errors**

You must examine your statement of account with "reasonable promptness." If you discover (or reasonably should have discovered) any errors, unauthorized signatures, or alterations, you must promptly notify us of the relevant facts. You agree that the time you have to examine your statement and report to us will depend on the circumstances,but will not, in any circumstance, exceed a total of 30 days from when the statement is first sent or made available to you.

### IMPORTANT INFORMATION FOR CONSUMER ACCOUNTS

**In Case of Errors or Questions About Your Electronic Transactions**

Telephone or write us at the number or address listed below if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.
  (1)  Tell us your name and account number.
  (2)  Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
  (3)  Tell us the date and the dollar amount of the suspected error.
We will investigate your complaint and will correct any error promptly.If we take more than 10 business days to do this, we will recredit your account for the amount you think is in error, so that you will have use of the money during the time it takes us to complete our investigation. To qualify for this recredit, we require a written notice of the problem or complaint within 10 business days of your telephone call to us.

**In Case of Errors or Questions About Your Line of Credit or Home Equity Loan**

If you think your bill is wrong, or if you need information about this loan or a transaction on this statement, please write to us at the address listed below. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, please give us the following information:
  (1)  Your name and account number.
  (2)  Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
  (3)  The date and the dollar amount of the suspected error.
You do not have to pay any amount in question while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. While we investigate your questions, we cannot report you as delinquent or take any action to collect the amount you question.

**Balance Subject to Interest Rate for Line of Credit**

Balance Subject to Interest Rate / Average Daily Balance - We figure the interest charge on your account by applying the periodic rate to the 'AVERAGE DAILY BALANCE' of your account (including current transactions). To get the 'AVERAGE DAILY BALANCE', we take the beginning balance of your account each day, add any new advances and subtract any payments or credits, also subtracting any unpaid finance charges. The automatic minimum payment amount is excluded when calculating the 'AVERAGE DAILY BALANCE' and 'INTEREST CHARGE'. If the account does not have sufficient funds to cover payment and another advance is made to cover minimum payment, this is also excluded for figuring the 'AVERAGE DAILY BALANCE' but is reflected in the beginning balance of the next statement cycle. This gives us the daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the 'AVERAGE DAILY BALANCE'. Written notification of any errors must be given to preserve your rights under the Truth in Lending Act. At any time the debtor may pay the aggregate balance or any portion of his/her indebtedness.

*We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.*

**Telephone Number and Address to Be Notified in the Event of Errors**

Call us at 800.672.8739 or write to us at Busey Bank, Attention: Customer Care Center, P.O. Box 4028, Champaign, IL 61824. You should also call us at this phone number or write to us at this address if you believe a transfer has been made using the information from your check without your permission.

I46-STMT

00102



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766  (Continued)

## DEPOSITS AND OTHER CREDITS

| DATE | TRANSACTION DESCRIPTON | AMOUNT |
|------|------------------------|--------|
|      | ST-M7W9W8G2D4P9 | |
| 4/09 | CGUSABENJA       TRANSFER | 55.09 |
|      | ANDREW CHAPIN | |
|      | ST-O8X9K3N4W2R8 | |
| 4/10 | Wire Transfer Credit | 322,963.00 |
|      | MHC FINANCIAL SERVICES, INC. | |
|      | MHC FINANCIAL SERVICES INC DBA | |
|      | 11120 TOMAHAWK CREEK PKWY SUIT | |
|      | LEAWOOD, KS 662112695 | |
|      | ACCOUNT NAME: BENJA INCORPORAT | |
|      | 20200410J1B7841C000516 | |
|      | 20200410MMQFMPUN000166 | |
|      | 04101427FT03 | |
| 4/10 | CGUSABENJA       TRANSFER | 103.12 |
|      | ANDREW CHAPIN | |
|      | ST-X2P9A0K6K2J7 | |
| 4/13 | CGUSABENJA       TRANSFER | 68.97 |
|      | ANDREW CHAPIN | |
|      | ST-W0I1B0P6N1A8 | |
| 4/14 | CGUSABENJA       TRANSFER | 111.86 |
|      | ANDREW CHAPIN | |
|      | ST-C2E2S0K5G0W4 | |
| 4/16 | CGUSABENJA       TRANSFER | 31.91 |
|      | ANDREW CHAPIN | |
|      | ST-J9Z0N0B0N0H3 | |
| 4/17 | CGUSABENJA       TRANSFER | 6.66 |
|      | ANDREW CHAPIN | |
|      | ST-Y0E8Y8F5Q7T1 | |
| 4/17 | PAYPAL           TRANSFER | 100.00 |
|      | ANDREW CHAPIN | |
|      | 1008631391114 | |
| 4/17 | ANDREW GLUCK     SENDER | 10,000.00 |
|      | 463303580 | |
| 4/20 | CGUSABENJA       TRANSFER | 61.50 |
|      | ANDREW CHAPIN | |
|      | ST-P0J3W1N5D1P0 | |
| 4/20 | to dda 500764766 | 400,000.00 |
|      | from ln 6706744910865 | |
| 4/21 | Wire Transfer Credit | 200,000.00 |
|      | DISTRIBUTION MANAGEMENT, INC. | |
|      | 5 RESEARCH PARK DR | |
|      | SAINT CHARLES,MO,63304 | |
|      | 20200421L3LF151C003794 | |
|      | 20200421MMQFMPUN000254 | |
|      | 04211701FT03 | |
| 4/21 | CGUSABENJA       TRANSFER | 262.32 |
|      | ANDREW CHAPIN | |
|      | ST-O7S1K5F7J9F8 | |

Case: 20-30819   Doc# 21   Filed: 10/20/20   Entered: 10/20/20 17:51:40   Page 103 of
125
00103



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766  (Continued)

## DEPOSITS AND OTHER CREDITS

| DATE | TRANSACTION DESCRIPTON | AMOUNT |
|---|---|---|
| 4/21 | SBAD TREAS 310      MISC PAY<br>Benja Incorporated<br>EIDG:3600140295<br>NTE*PMT*EIDG:3600140295\ | 6,000.00 |
| 4/23 | CGUSABENJA        TRANSFER<br>ANDREW CHAPIN<br>ST-B1F0S3Z0C9P1 | 138.84 |
| 4/24 | CGUSABENJA        TRANSFER<br>ANDREW CHAPIN<br>ST-S7B5Z4A0M0H6 | 187.05 |
| 4/27 | CGUSABENJA        TRANSFER<br>ANDREW CHAPIN<br>ST-U8L8T5D4T2R2 | 67.76 |
| 4/28 | CGUSABENJA        TRANSFER<br>ANDREW CHAPIN<br>ST-O0A7I7F4P0P2 | 55.62 |
| 4/29 | Wire Transfer Credit<br>MHC FINANCIAL SERVICES, INC.<br>MHC FINANCIAL SERVICES INC DBA<br>11120 TOMAHAWK CREEK PKWY SUIT<br>LEAWOOD, KS 662112695<br>ACCOUNT NAME: BENJA INCORPORAT<br>20200429J1B7841C001317<br>20200429MMQFMPUN000356<br>04291639FT03 | 994,774.76 |
| 4/29 | CGUSABENJA        TRANSFER<br>ANDREW CHAPIN<br>ST-V6G0S5H2S4Q3 | 33.59 |
| 4/30 | Wire Transfer Credit<br>MHC FINANCIAL SERVICES, INC.<br>MHC FINANCIAL SERVICES INC DBA<br>11120 TOMAHAWK CREEK PKWY SUIT<br>LEAWOOD, KS 662112695<br>ACCOUNT NAME: BENJA INCORPORAT<br>20200430J1B7841C000733<br>20200430MMQFMPUN000198<br>04301138FT03 | 696,970.23 |
| 4/30 | CGUSABENJA        TRANSFER<br>ANDREW CHAPIN<br>ST-O2E7B5D4U6O4 | 5.19 |
| 4/30 | PAYMENTECH        CHARGEBACK<br>AffordableJerseys<br>6470807 | 75.06 |

## CHECKS AND OTHER DEBITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|---|---|---|

Case: 20-30819   Doc# 21   Filed: 10/20/20   Entered: 10/20/20 17:51:40   Page 104 of
125



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766  (Continued)

## CHECKS AND OTHER DEBITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|------|-------------------------|--------|
| 4/01 | SHOPIFY CAPITAL  R64TJL6EE<br>Andrew Chapin<br>R6669278 | 59.11- |
| 4/01 | PAYPAL         INST XFER<br>ANDREW CHAPIN<br>JERSEYSTORE | 420.00- |
| 4/02 | Wire Transfer Debit<br>Taco Corp<br>265270413<br>20001214039<br>IBERIABANK<br>20200402MMQFMPUN000061<br>20200402MMQFMP9H000273<br>04021018FT01 | 350,000.00- |
| 4/02 | SHOPIFY CAPITAL  ROP72W4VP<br>Andrew Chapin<br>R6678837 | 17.21- |
| 4/02 | GUSTO         REM 521595<br>Benja Incorporated<br>6semjodiq7s | 50.00- |
| 4/02 | GUSTO         CND 521587<br>Benja Incorporated<br>6semjodiq8i | 100.00- |
| 4/02 | GUSTO         TAX 521606<br>Benja Incorporated<br>6semjodiq75 | 101.89- |
| 4/02 | GUSTO         FEE 520375<br>Benja Incorporated<br>6semjodfebr | 105.00- |
| 4/02 | GUSTO         CND 521587<br>Benja Incorporated<br>6semjodiq8s | 300.00- |
| 4/02 | GUSTO         NET 521594<br>Benja Incorporated<br>6semjodiq6d | 570.93- |
| 4/03 | Wire Transfer Debit<br>KEMA Partners LLC<br>021000021<br>606768692<br>JPMORGAN CHASE BAN<br>20200403MMQFMPUN000052<br>20200403B1QGC01R017533<br>04030914FT01 | 50,000.00- |
| 4/03 | SHOPIFY CAPITAL  RX4EW4OTJ<br>Andrew Chapin<br>R6689748 | 8.54- |
| 4/03 | SHOPIFY CAPITAL  RMYANBU3L<br>Andrew Chapin | 40.56- |



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766  (Continued)

## CHECKS AND OTHER DEBITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|------|------------------------|--------|
|      | R6688428 | |
| 4/03 | PAYMENTECH        FEE | 138.95- |
|      | AffordableJerseys | |
|      | 6470807 | |
| 4/03 | AMEX EPAYMENT    ACH PMT | 3,201.25- |
|      | Andrew Chapin | |
|      | W4154 | |
| 4/06 | Wire Transfer Debit | 100,000.00- |
|      | Andrew Chapin | |
|      | 322271627 | |
|      | 555475257 | |
|      | JPMORGAN CHASE BAN | |
|      | 20200406MMQFMPUN000032 | |
|      | 20200406B1QGC01R018097 | |
|      | 04060928FT03 | |
| 4/06 | Wire Transfer Debit | 600,000.00- |
|      | Taco Corp of America | |
|      | 265270413 | |
|      | 20001214039 | |
|      | IBERIABANK | |
|      | 20200406MMQFMPUN000033 | |
|      | 20200406MMQFMP9H000284 | |
|      | 04060929FT03 | |
| 4/06 | SHOPIFY CAPITAL  R7ZTBQ6R5 | 4.79- |
|      | Andrew Chapin | |
|      | R6699452 | |
| 4/06 | VZ WIRELESS VE   VZW WEBPAY | 672.59- |
|      | ANDREW *CHAPIN | |
|      | 5165198 | |
| 4/06 | CHASE CREDIT CRD EPAY | 1,234.80- |
|      | ANDREW J CHAPIN | |
|      | 4621558942 | |
| 4/07 | SHOPIFY CAPITAL  RNJWCDUZG | 18.03- |
|      | Andrew Chapin | |
|      | R6717418 | |
| 4/07 | SHOPIFY CAPITAL  RANYWFALH | 18.59- |
|      | Andrew Chapin | |
|      | R6707965 | |
| 4/07 | WCB Warehouse    WCB Wareho | 480.64- |
|      | BENJA INCORPORATED | |
|      | ST-C6Y7K9M6H8V6 | |
| 4/07 | PAYPAL           INST XFER | 1,111.27- |
|      | ANDREW CHAPIN | |
|      | ALEXFREEDMA EBA | |
| 4/08 | SHOPIFY CAPITAL  RR4MQL5JH | 3.86- |
|      | Andrew Chapin | |
|      | R6737042 | |
| 4/08 | SHOPIFY CAPITAL  RTJLEJUJ6 | 43.68- |
|      | Andrew Chapin | |

Case: 20-30819   Doc# 21   Filed: 10/20/20   Entered: 10/20/20 17:51:40   Page 106 of
125
00106



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766   (Continued)

| CHECKS AND OTHER DEBITS | | |
|---|---|---|
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** |
| | R6735755 | |
| 4/08 | to loan 6706744910865 | 450,000.00- |
| | from dda 500764766 | |
| 4/09 | SHOPIFY CAPITAL  R7NVYAWIU | 9.75- |
| | Andrew Chapin | |
| | R6746547 | |
| 4/09 | SHOPIFY CAPITAL  RMFPDTCYT | 23.72- |
| | Andrew Chapin | |
| | R6745236 | |
| 4/10 | Wire Transfer Debit | 100,000.00- |
| | Andrew Chapin | |
| | 322271627 | |
| | 555475257 | |
| | JPMORGAN CHASE BAN | |
| | 20200410MMQFMPUN000180 | |
| | 20200410B1QGC01R032183 | |
| | 04101405FT03 | |
| 4/10 | SHOPIFY CAPITAL  RBNF33WE4 | 8.19- |
| | Andrew Chapin | |
| | R6754933 | |
| 4/10 | SHOPIFY CAPITAL  R5CK4YRHB | 18.22- |
| | Andrew Chapin | |
| | R6756274 | |
| 4/13 | Wire Transfer Debit | 7,100.00- |
| | Fenwick & West | |
| | 026009593 | |
| | 1484401104 | |
| | BANK OF AMERICA, N | |
| | 20200413MMQFMPUN000036 | |
| | 20200413B6B7HU3R002651 | |
| | 04130912FT03 | |
| 4/13 | Wire Transfer Debit | 250,000.00- |
| | Taco Corp of America | |
| | 265270413 | |
| | 20001214039 | |
| | IBERIABANK | |
| | 20200413MMQFMPUN000037 | |
| | 20200413MMQFMP9H000197 | |
| | 04130912FT03 | |
| 4/13 | SHOPIFY CAPITAL  RYZGDWHL2 | 7.81- |
| | Andrew Chapin | |
| | R6764705 | |
| 4/13 | SHOPIFY CAPITAL  R2QPXBOOI | 12.23- |
| | Andrew Chapin | |
| | R6766051 | |
| 4/14 | SHOPIFY CAPITAL  R5L2AQJ4X | 1.36- |
| | Andrew Chapin | |
| | R6775914 | |



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                4766  (Continued)

## CHECKS AND OTHER DEBITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|------|------------------------|--------|
| 4/14 | SHOPIFY CAPITAL  RPRGLTPBH<br>Andrew Chapin<br>R6785151 | 6.15- |
| 4/14 | SHOPIFY CAPITAL  RGSRI3P3A<br>Andrew Chapin<br>R6793699 | 12.30- |
| 4/14 | SHOPIFY CAPITAL  RTXYUMJZX<br>Andrew Chapin<br>R6792494 | 23.49- |
| 4/14 | GUSTO           CND 555619<br>Benja Incorporated<br>6semjoeds55 | 50.00- |
| 4/14 | PAYMENTECH      CHARGEBACK<br>AffordableJerseys<br>6470807 | 75.06- |
| 4/14 | PAYPAL          INST XFER<br>ANDREW CHAPIN<br>STEINERSPOR EBA | 147.00- |
| 4/14 | WCB Warehouse    WCB Wareho<br>BENJA INCORPORATED<br>ST-I4Z5V4O3Y3O4 | 250.00- |
| 4/14 | GUSTO           CND 555619<br>Benja Incorporated<br>6semjoeds3i | 400.00- |
| 4/14 | GUSTO           CND 555619<br>Benja Incorporated<br>6semjoeds49 | 650.00- |
| 4/14 | AMEX EPAYMENT    ACH PMT<br>Andrew Chapin<br>W6968 | 9,000.00- |
| 4/15 | Account Analysis Charge | 332.52- |
| 4/15 | PAYPAL          INST XFER<br>ANDREW CHAPIN<br>PJ721 | 41.99- |
| 4/16 | SHOPIFY CAPITAL  RGFQWO3IV<br>Andrew Chapin<br>R6812720 | 5.64- |
| 4/16 | SHOPIFY CAPITAL  R4XAOLOSG<br>Andrew Chapin<br>R6811377 | 24.92- |
| 4/16 | APPLECARD GSBANK PAYMENT<br>Andrew Chapin<br>1749626 | 1,336.71- |
| 4/17 | SHOPIFY CAPITAL  RZAYTZTYP<br>Andrew Chapin<br>R6823115 | 1.22- |
| 4/17 | SHOPIFY CAPITAL  RHDTNVIW3<br>Andrew Chapin | 35.38- |



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766  (Continued)

## CHECKS AND OTHER DEBITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|------|--------------------------|--------|
| | R6821632 | |
| 4/17 | PAYPAL          INST XFER<br>ANDREW CHAPIN<br>THOMASBARBI | 55.00- |
| 4/20 | Wire Transfer Debit<br>Andrew Chapin<br>322271627<br>555475257<br>JPMORGAN CHASE BAN<br>20200420MMQFMPUN000285<br>20200420B1QGC01R063780<br>04201554FT03 | 100,000.00- |
| 4/20 | SHOPIFY CAPITAL  RQNSADQG7<br>Andrew Chapin<br>R6833834 | 10.82- |
| 4/20 | SHOPIFY CAPITAL  R6ENGTIPG<br>Andrew Chapin<br>R6832349 | 58.81- |
| 4/21 | Wire Transfer Debit<br>Taco Corp of America<br>265270413<br>20001214039<br>IBERIABANK<br>20200421MMQFMPUN000261<br>20200421MMQFMP9H000845<br>04211516FT03 | 350,000.00- |
| 4/21 | SHOPIFY CAPITAL  RH4OCW5ER<br>Andrew Chapin<br>R6854362 | 11.28- |
| 4/21 | SHOPIFY CAPITAL  RGS465RSV<br>Andrew Chapin<br>R6863817 | 17.19- |
| 4/21 | SHOPIFY CAPITAL  RUIV6OLLW<br>Andrew Chapin<br>R6844403 | 17.88- |
| 4/21 | SHOPIFY CAPITAL  R3APRBEFB<br>Andrew Chapin<br>R6852901 | 25.10- |
| 4/22 | Wire Transfer Debit<br>Koosh Media LLC<br>321370765<br>8103786531<br>AMERICAN SAVINGS B<br>20200422MMQFMPUN000017<br>20200422GMQFMP01004587<br>04220915FT03 | 4,000.00- |
| 4/22 | Wire Transfer Debit<br>Taco Corp of America | 150,000.00- |



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766  (Continued)

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|------|------------------------|--------|
| | 265270413 | |
| | 20001214039 | |
| | IBERIABANK | |
| | 20200422MMQFMPUN000016 | |
| | 20200422MMQFMP9H000209 | |
| | 04220915FT03 | |
| 4/22 | VENMO          PAYMENT<br>ANDREW CHAPIN<br>3379376019 | 706.00- |
| 4/23 | SHOPIFY CAPITAL  RNHWSW655<br>Andrew Chapin<br>R6882378 | 9.10- |
| 4/23 | SHOPIFY CAPITAL  RJHC6HFHG<br>Andrew Chapin<br>R6883777 | 24.60- |
| 4/23 | GUSTO          CND 589409<br>Benja Incorporated<br>6semjof7efh | 50.00- |
| 4/23 | PAYPAL         INST XFER<br>ANDREW CHAPIN<br>FURRYPAL EBAY F | 170.25- |
| 4/23 | APPLECARD GSBANK PAYMENT<br>Andrew Chapin<br>1749626 | 384.43- |
| 4/23 | AMEX EPAYMENT    ACH PMT<br>Andrew Chapin<br>W8840 | 6,250.00- |
| 4/24 | SHOPIFY CAPITAL  RHROD3XNG<br>Andrew Chapin<br>R6892419 | 26.84- |
| 4/24 | SHOPIFY CAPITAL  RQSBYQQOI<br>Andrew Chapin<br>R6893816 | 33.02- |
| 4/27 | SHOPIFY CAPITAL  RNLUNOKHW<br>Andrew Chapin<br>R6902528 | 8.78- |
| 4/27 | SHOPIFY CAPITAL  RO4ZPIVYH<br>Andrew Chapin<br>R6903941 | 11.97- |
| 4/27 | VENMO          PAYMENT<br>ANDREW CHAPIN<br>3390259925 | 2,000.00- |
| 4/27 | CHASE CREDIT CRD EPAY<br>ANDREW J CHAPIN<br>4651188106 | 3,048.26- |
| 4/28 | SHOPIFY CAPITAL  RAKS3DJJG<br>Andrew Chapin<br>R6931462 | 9.49- |



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766  (Continued)

| CHECKS AND OTHER DEBITS | | |
|---|---|---|
| **DATE** | **TRANSACTION DESCRIPTION** | **AMOUNT** |
| 4/28 | SHOPIFY CAPITAL  RN4RUUU7B<br>Andrew Chapin<br>R6914127 | 9.84- |
| 4/28 | SHOPIFY CAPITAL  R34HUTHPL<br>Andrew Chapin<br>R6922251 | 18.38- |
| 4/28 | GUSTO          CND 599561<br>Benja Incorporated<br>6semjoffner | 50.00- |
| 4/28 | GUSTO          CND 599561<br>Benja Incorporated<br>6semjoffndr | 100.00- |
| 4/28 | GUSTO          CND 599561<br>Benja Incorporated<br>6semjoffnee | 150.00- |
| 4/28 | GUSTO          CND 599561<br>Benja Incorporated<br>6semjoffncl | 200.00- |
| 4/28 | GUSTO          CND 599561<br>Benja Incorporated<br>6semjoffnct | 200.00- |
| 4/28 | WCB Warehouse    WCB Wareho<br>BENJA INCORPORATED<br>ST-J7K6J3A8V8G0 | 250.00- |
| 4/28 | GUSTO          CND 599561<br>Benja Incorporated<br>6semjoffndc | 300.00- |
| 4/28 | GUSTO          CND 599563<br>Benja Incorporated<br>6semjoffnf9 | 500.00- |
| 4/28 | to ln 6706744910865<br>from dda 500764766 | 5,909.74- |
| 4/28 | to ln 6706744910865<br>from dda 500764766 | 12,035.38- |
| 4/29 | Wire Transfer Debit<br>Taco Corp of America<br>265270413<br>20001214039<br>IBERIABANK<br>20200429MMQFMPUN000415<br>20200429MMQFMP9H001432<br>04291642FT03 | 1,000,000.00- |
| 4/29 | SHOPIFY CAPITAL  R7JJDFZ7C<br>Andrew Chapin<br>R6942475 | 5.93- |
| 4/29 | SHOPIFY CAPITAL  RBVZ3BZHK<br>Andrew Chapin<br>R6941126 | 27.36- |

Case: 20-30819   Doc# 21   Filed: 10/20/20   Entered: 10/20/20 17:51:40   Page 111 of
125



100 W University Ave
Champaign IL 61820

BUSINESS ANALYSIS                    4766   (Continued)

## CHECKS AND OTHER DEBITS

| DATE | TRANSACTION DESCRIPTION | AMOUNT |
|------|------------------------|--------|
| 4/29 | AMEX EPAYMENT   ACH PMT<br>Andrew Chapin<br>W6272 | 1,547.65- |
| 4/30 | Wire Transfer Debit<br>Taco Corp of America<br>265270413<br>20001214039<br>IBERIABANK<br>Close out<br>20200430MMQFMPUN000131<br>20200430MMQFMP9H000768<br>04301156FT03 | 515,027.24- |
| 4/30 | SHOPIFY CAPITAL  R3J4C37ZY<br>Andrew Chapin<br>R6952301 | .96- |
| 4/30 | SHOPIFY CAPITAL  RFTVIYDOD<br>Andrew Chapin<br>R6950966 | 34.57- |
| 4/30 | GUSTO          REM 619626<br>Benja Incorporated<br>6semjofqu60 | 950.00- |
| 4/30 | GUSTO          TAX 619632<br>Benja Incorporated<br>6semjofqu5h | 6,503.53- |
| 4/30 | GUSTO          NET 619622<br>Benja Incorporated<br>6semjofqu4k | 17,892.03- |

## DAILY BALANCE SECTION

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|------|---------|------|---------|------|---------|
| 4/01 | 11,120.36 | 4/02 | 74,825.87 | 4/03 | 21,484.51 |
| 4/06 | 563,203.87 | 4/07 | 561,575.34 | 4/08 | 111,549.27 |
| 4/09 | 111,570.89 | 4/10 | 334,610.60 | 4/13 | 77,559.53 |
| 4/14 | 67,056.03 | 4/15 | 66,681.52 | 4/16 | 65,346.16 |
| 4/17 | 75,361.22 | 4/20 | 375,353.09 | 4/21 | 231,543.96 |
| 4/22 | 76,837.96 | 4/23 | 70,088.42 | 4/24 | 70,215.61 |
| 4/27 | 65,214.36 | 4/28 | 45,537.15 | 4/29 | 38,764.56 |
| 4/30 | 195,406.71 | | | | |

# EXHIBIT G

**Benja Incorporated Company Capitalization**
Updated: August 2020

| Round | Founder / Advisor | Incubation | Angel | XRC | Seed | Seed 2 | Seed 3 | Investment | Total Shares | Ownership (current) | Ownership (full issue) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Share Price** | $0.01 | $2.22 | $6.67 | $26.67 | $33.35 | $60.00 | $133.33 | | 150,000 | (current) | (full issue) |
| **Valuation Cap** | $1,150.00 | $333,500.00 | $1,000,000.00 | $4,000,000.00 | $5,002,000.00 | $9,000,000.00 | $20,000,000.00 | | | | |
| | | | | | | | | | | | |
| **Founders, Employees, Advisors** | | | | | | | | | | | |
| Andrew J. Chapin | 30,000 | | | | | | | $ 230.00 | 30,000 | 23.3% | 20.0% |
| Thomas L. Goode | 26,000 | | | | | | | $ 199.33 | 26,000 | 20.2% | 17.3% |
| Morgan Reilly | 4,000 | | | | | | | $ 30.67 | 4,000 | 3.1% | 2.7% |
| Jessica Jordan | 863 | | | | | | | $ 6.62 | 863 | 0.7% | 0.6% |
| Court Cunningham | 287 | | | | | | | $ 2.20 | 287 | 0.2% | 0.2% |
| Roy Erez | 575 | | | | | | | $ 4.41 | 575 | 0.4% | 0.4% |
| Mark Coleman | 575 | | | | | | | $ 4.41 | 575 | 0.4% | 0.4% |
| *Reserved for Stock Option Pool* | | | | | | | | $ - | 7,500 | | 5.0% |
| | | | | | | | | | | | |
| **Investors** | | | | | | | | | | | |
| VegasTechFund | | | 448 | | 575 | 3,258 | | $ 217,640.33 | 4,281 | 3.3% | 2.9% |
| Blue Startups | | 6,900 | | | 1,150 | | | $ 53,689.67 | 8,050 | 6.3% | 5.4% |
| Moosylvania | | | 15,000 | | | | | $ 100,000.00 | 15,000 | 11.7% | 10.0% |
| Nick Foppe Syndicate | | | | | 4,600 | 16,667 | | $ 1,153,394.67 | 21,267 | 16.5% | 14.2% |
| XRC | | | | 2,156 | 9,000 | | | $ 125,000.00 | 11,156 | 8.7% | 7.4% |
| Scott Sklar | | | | | | 1,278 | | $ 100,000.00 | 1,278 | 1.0% | 0.9% |
| Polly Wong | | | | | | 1,278 | | $ 100,000.00 | 1,278 | 1.0% | 0.9% |
| Bo Arlander | | | | | | 1,278 | 188 | $ 125,000.00 | 1,466 | 1.1% | 1.0% |
| Rick Hoskins | | | | | | 1,278 | | $ 100,000.00 | 1,278 | 1.0% | 0.9% |
| Tom Peters | | | | | | 639 | | $ 50,000.00 | 639 | 0.5% | 0.4% |
| Derek Mattson | | | | | | 639 | | $ 50,000.00 | 639 | 0.5% | 0.4% |
| *Reserved for Future Investment* | | | | | | | | $ - | *15,147* | | 10.1% |

# EXHIBIT H

Form **1120**

Department of the Treasury
Internal Revenue Service

# U.S. Corporation Income Tax Return

For calendar year 2018 or tax year beginning **57** , 2018, ending **Dec 31** , 20 **18**

▶ Go to *www.irs.gov/Form1120* for instructions and the latest information.

OMB No. 1545-0123

**2018**

| A Check if: | | |
|---|---|---|
| **1a** Consolidated return (attach Form 851) . . | ☐ | **TYPE OR PRINT** |
| **b** Life/nonlife consolidated return . . | ☐ | |
| **2** Personal holding co. (attach Sch. PH) . | ☐ | |
| **3** Personal service corp. (see instructions) . | ☐ | |
| **4** Schedule M-3 attached | ☐ | |

| | |
|---|---|
| Name **Benja Incorporated** | B Employer identification number **2890** |
| Number, street, and room or suite no. If a P.O. box, see instructions. **845 Market Street, 450A** | C Date incorporated **3/25/2014** |
| City or town, state or province, country, and ZIP or foreign postal code **San Francisco, CA 94117** | D Total assets (see instructions) $ **2,978,541** 53 |

E Check if: **(1)** ☐ Initial return **(2)** ☐ Final return **(3)** ☐ Name change **(4)** ☐ Address change

| | | | | |
|---|---|---|---|---|
| **Income** | **1a** Gross receipts or sales . . . . . . . . . | **1a** 6,284,518 04 | | |
| | **b** Returns and allowances . . . . . . . . | **1b** 0 00 | | |
| | **c** Balance. Subtract line 1b from line 1a . . . . . . . . | | **1c** | 6,284,518 04 |
| | **2** Cost of goods sold (attach Form 1125-A) . . . . | | **2** | 4,408,790 96 |
| | **3** Gross profit. Subtract line 2 from line 1c . . . . | | **3** | 1,875,727 08 |
| | **4** Dividends and inclusions (Schedule C, line 23, column (a)) . | | **4** | |
| | **5** Interest . . . . . . . . . . . . . . . | | **5** | |
| | **6** Gross rents . . . . . . . . . . . . . | | **6** | |
| | **7** Gross royalties . . . . . . . . . . . . | | **7** | |
| | **8** Capital gain net income (attach Schedule D (Form 1120)) . | | **8** | |
| | **9** Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) . | | **9** | |
| | **10** Other income (see instructions—attach statement) . . . | | **10** | |
| | **11** **Total income.** Add lines 3 through 10 . . . . . ▶ | | **11** | 1,875,727 08 |
| **Deductions (See instructions for limitations on deductions.)** | **12** Compensation of officers (see instructions—attach Form 1125-E) . ▶ | | **12** | |
| | **13** Salaries and wages (less employment credits) . . . | | **13** | 348,191 03 |
| | **14** Repairs and maintenance . . . . . . . . | | **14** | |
| | **15** Bad debts . . . . . . . . . . . . . | | **15** | |
| | **16** Rents . . . . . . . . . . . . . . | | **16** | 35,000 00 |
| | **17** Taxes and licenses . . . . . . . . . . | | **17** | |
| | **18** Interest (see instructions) . . . . . . . . | | **18** | |
| | **19** Charitable contributions . . . . . . . . . | | **19** | |
| | **20** Depreciation from Form 4562 not claimed on Form 1125-A or elsewhere on return (attach Form 4562) . | | **20** | |
| | **21** Depletion . . . . . . . . . . . . . | | **21** | |
| | **22** Advertising . . . . . . . . . . . . . | | **22** | |
| | **23** Pension, profit-sharing, etc., plans . . . . . . | | **23** | |
| | **24** Employee benefit programs . . . . . . . . | | **24** | |
| | **25** Reserved for future use . . . . . . . . . | | **25** | |
| | **26** Other deductions (attach statement) . . . . . . | | **26** | |
| | **27** **Total deductions.** Add lines 12 through 26 . . . ▶ | | **27** | 383,191 03 |
| | **28** Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11. | | **28** | 1,492,536 05 |
| | **29a** Net operating loss deduction (see instructions) . . . | **29a** | | |
| | **b** Special deductions (Schedule C, line 24, column (c)) . . | **29b** | | |
| | **c** Add lines 29a and 29b . . . . . . . . . | | **29c** | 0 00 |
| **Tax, Refundable Credits, and Payments** | **30** **Taxable income.** Subtract line 29c from line 28. See instructions | | **30** | 1,492,536 05 |
| | **31** Total tax (Schedule J, Part I, line 11) . . . . . | | **31** | 313,432 57 |
| | **32** 2018 net 965 tax liability paid (Schedule J, Part II, line 12) . | | **32** | |
| | **33** Total payments, credits, and section 965 net tax liability (Schedule J, Part III, line 23) . | | **33** | 300,000 00 |
| | **34** Estimated tax penalty. See instructions. Check if Form 2220 is attached . . . . ▶ ☐ | | **34** | |
| | **35** **Amount owed.** If line 33 is smaller than the total of lines 31, 32, and 34, enter amount owed . | | **35** | 13,432 57 |
| | **36** **Overpayment.** If line 33 is larger than the total of lines 31, 32, and 34, enter amount overpaid | | **36** | |
| | **37** Enter amount from line 36 you want: **Credited to 2019 estimated tax** ▶ Refunded ▶ | | **37** | |

| **Sign Here** | Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge. | |
|---|---|---|
| | ▶ *(signature)* Signature of officer | 1/10/2019 Date | ▶ President & CEO Title | May the IRS discuss this return with the preparer shown below? See instructions. ☑ Yes ☐ No |

| **Paid Preparer Use Only** | Print/Type preparer's name **Tom Dunn, CPA** | Preparer's signature *(signature)* | Date **1/9/2019** | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|---|
| | Firm's name ▶ **Numbrstudio Financial Group LLC** | | | Firm's EIN ▶ | |
| | Firm's address ▶ **845 Market Street, 450A, San Francisco, CA 94103** | | | Phone no. **(415) 367-1513** | |

For Paperwork Reduction Act Notice, see separate instructions. Cat. No. 11450Q Form **1120** (2018)

**Schedule J**      **Tax Computation and Payment** (see instructions)

**Part I—Tax Computation**

| | | | | |
|---|---|---|---:|---:|
| 1 | Check if the corporation is a member of a controlled group (attach Schedule O (Form 1120)). See instructions ▶ ☐ | | | |
| 2 | Income tax. See instructions | 2 | 313,432 | 57 |
| 3 | Base erosion minimum tax (attach Form 8991) | 3 | | |
| 4 | Add lines 2 and 3 | 4 | 313,432 | 57 |
| 5a | Foreign tax credit (attach Form 1118) | 5a | | |
| b | Credit from Form 8834 (see instructions) | 5b | | |
| c | General business credit (attach Form 3800) | 5c | | |
| d | Credit for prior year minimum tax (attach Form 8827) | 5d | | |
| e | Bond credits from Form 8912 | 5e | | |
| 6 | **Total credits.** Add lines 5a through 5e | 6 | 0 | 00 |
| 7 | Subtract line 6 from line 4 | 7 | 313,432 | 57 |
| 8 | Personal holding company tax (attach Schedule PH (Form 1120)) | 8 | | |
| 9a | Recapture of investment credit (attach Form 4255) | 9a | | |
| b | Recapture of low-income housing credit (attach Form 8611) | 9b | | |
| c | Interest due under the look-back method—completed long-term contracts (attach Form 8697) | 9c | | |
| d | Interest due under the look-back method—income forecast method (attach Form 8866) | 9d | | |
| e | Alternative tax on qualifying shipping activities (attach Form 8902) | 9e | | |
| f | Other (see instructions—attach statement) | 9f | | |
| 10 | **Total.** Add lines 9a through 9f | 10 | 0 | 00 |
| 11 | **Total tax.** Add lines 7, 8, and 10. Enter here and on page 1, line 31 | 11 | 313,432 | 57 |

**Part II—Section 965 Payments** (see instructions)

| | | | | |
|---|---|---|---:|---:|
| 12 | 2018 net 965 tax liability paid from Form 965-B, Part II, column (k), line 2. Enter here and on page 1, line 32 | 12 | | |

**Part III—Payments, Refundable Credits, and Section 965 Net Tax Liability**

| | | | | |
|---|---|---|---:|---:|
| 13 | 2017 overpayment credited to 2018 | 13 | 0 | 00 |
| 14 | 2018 estimated tax payments | 14 | 300,000 | 00 |
| 15 | 2018 refund applied for on Form 4466 | 15 | ( | ) |
| 16 | Combine lines 13, 14, and 15 | 16 | 300,000 | 00 |
| 17 | Tax deposited with Form 7004 | 17 | | |
| 18 | Withholding (see instructions) | 18 | | |
| 19 | **Total payments.** Add lines 16, 17, and 18 | 19 | 300,000 | 00 |
| 20 | Refundable credits from: | | | |
| a | Form 2439 | 20a | | |
| b | Form 4136 | 20b | | |
| c | Form 8827, line 8c | 20c | | |
| d | Other (attach statement—see instructions) | 20d | | |
| 21 | **Total credits.** Add lines 20a through 20d | 21 | 0 | 00 |
| 22 | 2018 net 965 tax liability from Form 965-B, Part I, column (d), line 2. See instructions | 22 | | |
| 23 | **Total payments, credits, and section 965 net tax liability.** Add lines 19, 21, and 22. Enter here and on page 1, line 33 | 23 | 300,000 | 00 |

Form **1120** (2018)

| Schedule K | Other Information (see instructions) | | | Yes | No |
|---|---|---|---|---|---|

**1** Check accounting method: **a** ☐ Cash **b** ☑ Accrual **c** ☐ Other (specify) ▶ _____

**2** See the instructions and enter the:

**a** Business activity code no. ▶         **541519**

**b** Business activity ▶ **Software Development**

**c** Product or service ▶ **Software**

**3** Is the corporation a subsidiary in an affiliated group or a parent-subsidiary controlled group? . . . . . . .    | | ✔

If "Yes," enter name and EIN of the parent corporation ▶ _____

**4** At the end of the tax year:

**a** Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of the corporation's stock entitled to vote? If "Yes," complete Part I of Schedule G (Form 1120) (attach Schedule G) . . . . . . . | | ✔

**b** Did any individual or estate own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of the corporation's stock entitled to vote? If "Yes," complete Part II of Schedule G (Form 1120) (attach Schedule G) . | | ✔

**5** At the end of the tax year, did the corporation:

**a** Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation not included on **Form 851,** Affiliations Schedule? For rules of constructive ownership, see instructions. | | ✔

If "Yes," complete (i) through (iv) below.

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Incorporation | (iv) Percentage Owned in Voting Stock |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**b** Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. | | ✔

If "Yes," complete (i) through (iv) below.

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Country of Organization | (iv) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**6** During this tax year, did the corporation pay dividends (other than stock dividends and distributions in exchange for stock) in excess of the corporation's current and accumulated earnings and profits? See sections 301 and 316 . . . . . . . | | ✔

If "Yes," file **Form 5452,** Corporate Report of Nondividend Distributions. See the instructions for Form 5452.

If this is a consolidated return, answer here for the parent corporation and on Form 851 for each subsidiary.

**7** At any time during the tax year, did one foreign person own, directly or indirectly, at least 25% of the total voting power of all classes of the corporation's stock entitled to vote or at least 25% of the total value of all classes of the corporation's stock? . | | ✔

For rules of attribution, see section 318. If "Yes," enter:

**(a)** Percentage owned ▶ _____ and **(b)** Owner's country ▶ _____

**(c)** The corporation may have to file **Form 5472,** Information Return of a 25% Foreign-Owned U.S. Corporation or a Foreign Corporation Engaged in a U.S. Trade or Business. Enter the number of Forms 5472 attached ▶ _____

**8** Check this box if the corporation issued publicly offered debt instruments with original issue discount . . . . . ▶ ☐

If checked, the corporation may have to file **Form 8281,** Information Return for Publicly Offered Original Issue Discount Instruments.

**9** Enter the amount of tax-exempt interest received or accrued during the tax year ▶ $ _____

**10** Enter the number of shareholders at the end of the tax year (if 100 or fewer) ▶ _____

**11** If the corporation has an NOL for the tax year and is electing to forego the carryback period, check here (see instructions) ▶ ☐

If the corporation is filing a consolidated return, the statement required by Regulations section 1.1502-21(b)(3) must be attached or the election will not be valid.

**12** Enter the available NOL carryover from prior tax years (do not reduce it by any deduction reported on page 1, line 29a.) . . . . . . . . . . . . . . . . . . . . . . ▶ $ _____

Case: 20-30819   Doc# 21   Filed: 10/20/20   Entered: 10/20/20 17:51:40   Page 118 of 125

00118

| Schedule K | Other Information *(continued from page 4)* | | Yes | No |
|---|---|---|---|---|

| | | | Yes | No |
|---|---|---|:---:|:---:|
| 13 | Are the corporation's total receipts (page 1, line 1a, plus lines 4 through 10) for the tax year **and** its total assets at the end of the tax year less than $250,000? . . . . . . . . . . . . . . . . | | | ✔ |
| | If "Yes," the corporation is not required to complete Schedules L, M-1, and M-2. Instead, enter the total amount of cash distributions and the book value of property distributions (other than cash) made during the tax year ▶ $ _____ | | | |
| 14 | Is the corporation required to file Schedule UTP (Form 1120), Uncertain Tax Position Statement? See instructions . . . . | | | ✔ |
| | If "Yes," complete and attach Schedule UTP. | | | |
| 15a | Did the corporation make any payments in 2018 that would require it to file Form(s) 1099? . . . . . . . . | | | ✔ |
| b | If "Yes," did or will the corporation file required Forms 1099? . . . . . . . . . . . . . . | | | ✔ |
| 16 | During this tax year, did the corporation have an 80% or more change in ownership, including a change due to redemption of its own stock? . . . . . . . . . . . . . . . . . . . . . . . . . . | | | ✔ |
| 17 | During or subsequent to this tax year, but before the filing of this return, did the corporation dispose of more than 65% (by value) of its assets in a taxable, non-taxable, or tax deferred transaction? . . . . . . . . . . . . . . | | | ✔ |
| 18 | Did the corporation receive assets in a section 351 transfer in which any of the transferred assets had a fair market basis or fair market value of more than $1 million? . . . . . . . . . . . . . . . . . . . . | | | ✔ |
| 19 | During the corporation's tax year, did the corporation make any payments that would require it to file Forms 1042 and 1042-S under chapter 3 (sections 1441 through 1464) or chapter 4 (sections 1471 through 1474) of the Code? . . . . . | | | ✔ |
| 20 | Is the corporation operating on a cooperative basis?. . . . . . . . . . . . . . . . . . . | | | ✔ |
| 21 | During the tax year, did the corporation pay or accrue any interest or royalty for which the deduction is not allowed under section 267A? See instructions . . . . . . . . . . . . . . . . . . . . . . . . | | | ✔ |
| | If "Yes," enter the total amount of the disallowed deductions ▶ $ _____ | | | |
| 22 | Does the corporation have gross receipts of at least $500 million in any of the 3 preceding tax years? (See sections 59A(e)(2) and (3)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | ✔ |
| | If "Yes," complete and attach Form 8991. | | | |
| 23 | Did the corporation have an election under section 163(j) for any real property trade or business or any farming business in effect during the tax year? See instructions . . . . . . . . . . . . . . . . . . . . | | | ✔ |
| 24 | Does the corporation satisfy **one** of the following conditions and the corporation does not own a pass-through entity with current year, or prior year carryover, excess business interest expense? See instructions . . . . . . . . | | | ✔ |
| a | The corporation's aggregate average annual gross receipts (determined under section 448(c)) for the 3 tax years preceding the current tax year do not exceed $25 million, and the corporation is not a tax shelter, or | | | |
| b | The corporation only has business interest expense from (1) an electing real property trade or business, (2) an electing farming business, or (3) certain utility businesses under section 163(j)(7). | | | |
| | If "No," complete and attach Form 8990. | | | |
| 25 | Is the corporation attaching Form 8996 to certify as a Qualified Opportunity Fund? . . . . . . . . . . | | | ✔ |
| | If "Yes," enter amount from Form 8996, line 13 . . . . . ▶ $ | | | |

Case: 20-30819   Doc# 21   Filed: 10/20/20   Entered: 10/20/20 17:51:40   Page 119 of 125

00119

| Schedule L | Balance Sheets per Books | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|---|
| | **Assets** | **(a)** | **(b)** | **(c)** | **(d)** |
| 1 | Cash | | 104,870.00 | | 1,047,195.13 |
| 2a | Trade notes and accounts receivable | 682,185.48 | | 1,931,346.40 | |
| b | Less allowance for bad debts | ( ) | 682,185.48 | ( ) | 2,978,541.53 |
| 3 | Inventories | | | | |
| 4 | U.S. government obligations | | | | |
| 5 | Tax-exempt securities (see instructions) | | | | |
| 6 | Other current assets (attach statement) | | | | |
| 7 | Loans to shareholders | | | | |
| 8 | Mortgage and real estate loans | | | | |
| 9 | Other investments (attach statement) | | | | |
| 10a | Buildings and other depreciable assets | | | | |
| b | Less accumulated depreciation | ( ) | | ( ) | |
| 11a | Depletable assets | | | | |
| b | Less accumulated depletion | ( ) | | ( ) | |
| 12 | Land (net of any amortization) | | | | |
| 13a | Intangible assets (amortizable only) | | | | |
| b | Less accumulated amortization | ( ) | | ( ) | |
| 14 | Other assets (attach statement) | | | | |
| 15 | Total assets | | 787,055.48 | | 2,978,541.53 |
| | **Liabilities and Shareholders' Equity** | | | | |
| 16 | Accounts payable | | 0.00 | | 323,950.00 |
| 17 | Mortgages, notes, bonds payable in less than 1 year | | | | |
| 18 | Other current liabilities (attach statement) | | | | |
| 19 | Loans from shareholders | | | | |
| 20 | Mortgages, notes, bonds payable in 1 year or more | | | | |
| 21 | Other liabilities (attach statement) | | | | |
| 22 | Capital stock: **a** Preferred stock | | | | |
| | **b** Common stock | 1,125,000.00 | 1,125,000.00 | 1,500,000.00 | 1,500,000.00 |
| 23 | Additional paid-in capital | | | | |
| 24 | Retained earnings—Appropriated (attach statement) | | | | |
| 25 | Retained earnings—Unappropriated | | (337,944.52) | | 1,478,541.53 |
| 26 | Adjustments to shareholders' equity (attach statement) | | | | |
| 27 | Less cost of treasury stock | | ( ) | | ( ) |
| 28 | Total liabilities and shareholders' equity | | 787,055.48 | | 2,978,541.53 |

| Schedule M-1 | Reconciliation of Income (Loss) per Books With Income per Return |
|---|---|

**Note:** The corporation may be required to file Schedule M-3. See instructions.

| | | | | | |
|---|---|---|---|---|---|
| 1 | Net income (loss) per books | 1,179,103.48 | 7 | Income recorded on books this year not included on this return (itemize): | |
| 2 | Federal income tax per books | 313,432.57 | | Tax-exempt interest $ _____ | |
| 3 | Excess of capital losses over capital gains | | | ------------------- | |
| 4 | Income subject to tax not recorded on books this year (itemize): _____ | | | | |
| | ------------------- | | 8 | Deductions on this return not charged against book income this year (itemize): | |
| 5 | Expenses recorded on books this year not deducted on this return (itemize): | | a | Depreciation . . $ _____ | |
| a | Depreciation . . . $ _____ | | b | Charitable contributions $ _____ | |
| b | Charitable contributions . $ _____ | | | | |
| c | Travel and entertainment . $ _____ | | 9 | Add lines 7 and 8 . . . . . . | |
| 6 | Add lines 1 through 5 . . . . . . | 1,492,536.05 | 10 | Income (page 1, line 28)—line 6 less line 9 | 1,492,536.05 |

| Schedule M-2 | Analysis of Unappropriated Retained Earnings per Books (Line 25, Schedule L) |
|---|---|

| | | | | | |
|---|---|---|---|---|---|
| 1 | Balance at beginning of year | | 5 | Distributions: **a** Cash . . . . . | |
| 2 | Net income (loss) per books | | | **b** Stock . . . . | |
| 3 | Other increases (itemize): _____ | | | **c** Property . . . | |
| | ------------------- | | 6 | Other decreases (itemize): _____ | |
| | ------------------- | | 7 | Add lines 5 and 6 . . . . . . | |
| 4 | Add lines 1, 2, and 3 . . . . . . | | 8 | Balance at end of year (line 4 less line 7) | |

# EXHIBIT I

00121

| | |
|---|---|
| **From:** | joe alouf <joe.alouf@gmail.com> |
| **Sent:** | Friday, October 16, 2020 1:42 PM |
| **To:** | Jerry Switzer; Michael Campbell |
| **Subject:** | 2018 tax returns, Benja |
| **Attachments:** | Benja tax return-c.pdf |

**EXTERNAL EMAIL**   **joe.alouf@gmail.com**

Please see below

---------- Forwarded message ---------
From: **Jennifer Li Thornton** <li@numbrstudio.com>
Date: Fri, Oct 16, 2020 at 11:37 AM
Subject: Re: 2018 tax returns, Benja
To: joe alouf <joe.alouf@gmail.com>

Hi Joe,

Just reviewed the file you sent, I am never aware of this tax return and never know the person named Tom Dunn, CPA; NumbrStudio is just myself working in the business and one bookkeeper contractor named Collette Cleaves who help me with bookkeeping on few clients.
Also, NumbrStudio doesn't file tax returns, we refer to a separate local CPA firm to handle all the tax filings for our clients, their business name is FlexTax consulting Group.

Based on the tax return and fairly to believe this is fraud tax return that Benja created.

Let me know if you need additional info regarding this matter.

Jennifer

Sent from my iPhone


On Oct 16, 2020, at 11:22 AM, joe alouf <joe.alouf@gmail.com> wrote:


Hi Jennifer,

Just to confirm, I am sending you a copy of the 2018 tax returns Andrew provided to the Bank as part of obtaining the loan.  Per our conversation, please review and provide your observations as to what is filled out as the "tax preparer" information.

Thank you

Joe

--
Joe Alouf

415-395-6867

 [Alouf](#)


--
Drafted using predictive text. Please excuse the typos
..

# CERTIFICATE OF SERVICE

I, the undersigned, declare that I am employed in the County of Los Angeles. I am over the age of 18 years and not a party to the within entitled action. My business address is 2049 Century Park East, Suite 2900, Los Angeles, California 90067.

A true and correct copy of the foregoing document entitled (specify): **DECLARATION OF JOE ALOUF IN SUPPORT OF CREDITOR BUSEY BANK'S (MOTION FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE OR, IN THE ALTERNATIVE, FOR CONVERSION OF CASE TO CHAPTER 7 OF THE BANKRUPTCY CODE** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:**
Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On October 20, 2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒    Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>:** On October 20, 2020, I served the document by placing a true copy thereof in a sealed envelope with postage thereon fully prepaid, in the United States Mail at Los Angeles, California, to all parties entitled to receive regularly mailed notices, addressed as follows:

☒    Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>**
Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on October 20, 2020, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

VIA OVERNIGHT MAIL
Hon. Dennis Montali
U.S. Bankruptcy Judge
Mail Box 36099
450 Golden Gate Avenue
San Francisco, CA 94102

☒    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 20, 2020 | Cindy Cripe | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

# ATTACHMENT TO SERVICE LIST

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**

Jared A. Day on behalf of U.S. Trustee Office of the U.S. Trustee / SF jared.a.day@usdoj.gov
ankey.to@usdoj.gov

Mark K. Slater on behalf of Debtor Benja Incorporated mslater@slaterhersey.com
amoses@slaterherscy.com

Office of the U.S. Trustee / SF USTPRegion17.SF.ECF@usdoj.gov

Paul E. Manasian on behalf of Debtor Benja Incorporated manasian@mrlawsf.com
gradl@mrlawsf.com

Randye B. Soref on behalf of Creditor Busey Bank rsoref@polsinelli.com

Tanya Behnam on behalf of Creditor Busey Bank tbehnam@polsinelli.com
tanyabehnam@gmail.com

2. **SERVED BY UNITED STATES MAIL**:

| Debtor Benja Incorporated 26 Cragmont Avenue San Francisco, CA 94116 | Debtor's Attorney Paul E. Manasian, Esq. Law Offices of Paul E. Manasian 1310 65th Street Emeryville, CA 94608 | |
|---|---|---|

3. **SERVED BY EMAIL**

*Jared.A.Day@usdoj.gov*
Jared A. Day
U.S. Department of Justice
Office of the U.S. Trustee, Region 17
300 Booth Street, Suite 3009
Reno, NV 89509

75152510.1