Steven Soulios, Esq. (pro hac vice pending)
Ruta Soulios & Stratis LLP
211 East 43rd Street
New York, New York 10017
Telephone: (212) 997-4500
Facsimile: (212) 768-0649

Law Offices of Tyler Cesar
4590 MacArthur Boulevard, Suite 500
Newport Beach, CA 92660
(213) 324-1934

Attorneys for XRC FUND III and
XRC GROWTH FUND I, L.P.

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>**BENJA INCORPORATED,**<br><br>Debtor. | Case No. 20-30819<br><br>Chapter 11<br><br>Judge Dennis Montali<br><br>**CREDITORS XRC GROWTH FUND I, L.P.'S AND XRC FUND III, LLC'S JOINDER TO BUSEY BANK'S MOTION FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE OR, IN THE ALTERNATIVE, FOR CONVERSION OF CASE TO CHAPTER 7 OF THE BANKRUPTCY CODE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: October 26, 2020<br>Time: 1:30 p.m.<br>Place: Hearing to be conducted by telephone via CourtCall. |

Creditors XRC Fund III LLC and XRC Growth Fund I, L.P. (collectively "XRC") hereby files this joinder ("XRC Joinder") to the motion of creditor Busey Bank (the "Bank") for an order for the appointment of a Chapter 11 Trustee (the "Motion") for the Debtor Benja Incorporated ("Benja" or the "Debtor") and its estate, or alternatively, for conversion of the Debtor's case to a case under Chapter 7 of the Bankruptcy Code (the "Motion") and respectfully sets forth as follows:

**STATEMENT OF RELEVANT FACTS AND JOINDER IN THE MOTION**

1. XRC joins in and adopts the assertions, allegations, factual statements, legal arguments, and authorities asserted and raised by the Bank in the Motion solely for the purpose of seeking the same relief. XRC hereby reserves the right to present additional facts, arguments and authorities in connection with the hearing on the Motion.

2. In addition to the facts articulated in the Motion XRC's claims against Benja arise from three "simple agreements for future equity" (the "XRC Safes") whereby XRC invested a total of $625,000 in Benja, as follows:

    (i) A SAFE dated December 9, 2016 in the amount of $50,000[1];
    (ii) A SAFE dated December 9, 2016 in the amount of $75,000[2];
    (iii) A SAFE dated September 2, 2020 in the amount of $500,000 (the "September 2, 2020 Safe");

Copies of the XRC Safes are attached hereto as Exhibits 1, 2 and 3, respectively. Andrew Chapin executed the XRC Safes in his capacity as President and CEO of Benja (Chapin and Benja are collectively referred to as the "Debtor Parties").

3. On or about July 24, 2020, Chapin emailed Pano Anthos, the Managing Director of XRC, and stated "See our Benja investor update for Q2 '20 ("Q2 2020 Investor Update") in PDF. A great quarter, exceeding targets across the board, that sets the scene for an even better Q3." *See* Exhibit 4 hereto. That statement by Chapin was knowingly false. In the Q2 2020 Investor Update,

---

[1] This Safe was executed between XRC and EPHE, Corp., a predecessor to Benja.

[2] This Safe was executed between XRC and EPHE, Corp., a predecessor to Benja.

attached hereto as Exhibit 5, the Debtor Parties made the following material representations which were knowingly false and fraudulent:

- "the story of 2019 was scale, highlighted but the launch of new distribution deals with Tik Tok and Spotify";
- "We logged a $2.1m revenue month in March (295% increase year over year) and shared the expectation that we would be able to grow through this. We did."
- "we totaled more than $7m in top-line revenue in Q2 2020, up 12.8% from Q1 2020 and up 280% from the same period in 2019"
- "At the end of Q2, Benja held $2.7m in cash on hand and $5.5m in Accounts Receivable for Total Assets of $8.2m, up from $4.05m in Total Assets for the same period in 2019."

4. All of the foregoing financial reportings and statements made by the Debtor Parties in the Q2 2020 Investor Update were knowingly and materially false. In addition to the statements made in the Q2 2020 Investor Update, included therein was a spreadsheet that purported to reflect Benja's revenues and earnings before interest, taxes, depreciation, and amortization("EBITDA") for the second quarter of 2020 ("Q2 2020 Spreadsheet"). According to the Q2 2020 Spreadsheet Benja had revenues of $2,238,578.67, $2,333,264.77 and $2,501,036.56, for the months of April, May and June of 2020, respectively, and EBITDA of $382,319.56, $353,005.92 and $431,861.33 for those same three months. *See* Exhibit 5, p. 3.

5. The representations concerning Benja's earnings and EBITDA set forth in the Q2 2020 Spreadsheet were materially false and fraudulent, and, together with the statements in the Q2 2020 Investor Update, were provided to XRC in order to induce it to make a $500,000 follow on investment in Benja on September 2, 2020.

6. Prior to XRC's investment of $500,000 in the September 2, 2020 Safe the Debtor Parties further provided XRC with certain income statements for 2018, 2019 and 2020 (collectively the "Income Statements") that purported to reflect the total revenue, operating income and net income for Benja during those periods. Copies of the Income Statements are attached hereto as

3
JOINDER TO MOTION FOR AN ORDER FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE

Exhibits 6, 7 and 8, respectively. The 2020 Income Statement indicated the following "year to date" figures for Benja as of July 31, 2020:

| Total Revenue | Operating Income | Net Income |
|---|---|---|
| $16,042,408 | $3,750,039 | $2,234,018 |

7. The factual statements and representations concerning Benja's earnings, operating income and net income set forth in the Income Statements were materially false and fraudulent, and were further provided to XRC in order to induce it to make the aforementioned $500,000 follow on investment in Benja on September 2, 2020.

8. In or about August, 2020, Chapin solicited XRC for a follow on investment in connection with a "$1m bridge" Benja was selling. On or about August 26, 2020 Chapin emailed Anthos and attached a document entitled "Benja Growth Initiative and Bridge Raise," stating in the email:

> "Write-up on recent performance and the growth initiatives we want to undertake with this $1m bridge amount. Would love your thoughts. AJC"

A copy of Chapin's email dated August 26, 2020, and the attached Benja Growth Initiative and Bridge Raise are attached as Exhibits 9 and 10, respectively.

9. In the Benja Growth Initiative and Bridge Raise the Debtor Parties made material representations about Benja's past and (then) current financial performance, as follows:

**Performance Summary**

|  | 2017 Actual | 2018 Actual | 2019 Actual | 2020 Actual + Forecast |
|---|---|---|---|---|
| Revenue | $2.12m | $6.28m | $13.47m | $31.29m |
| EBITDA | (0.02m) | $1.49m | $2.95m | $3.71m |
| GMV | $36m | $119m | $259m | $570m |

10. The representations concerning Benja's financial performance of Benja set forth in the Benja Growth Initiative and Bridge Raise were knowingly and materially false.

11. On or about September 2, 2020, Chapin emailed Kirsten Horning, a principal at XRC, falsely representing that Benja was on the verge of executing an agreement with Tik Tok, and further falsely indicating that Benja could only do so once it secured XRC's $500,000 investment. Chapin wrote as follows:

> Kirsten,
>
> Are you the one setting the wire?
>
> Can you please let me know as soon as you send? We're eager to sign the engagement with Tik Tok - and every minute counts - but can only do so once we confirm it's on the way.
>
> Best,
>
> **Andrew J. Chapin**
> Co-Founder & CEO
> Benja Incorporated

A copy of Chapin's September 2, 2020 email is attached hereto as Exhibit 11.

12. There was no prospective "engagement with Tik Tok" that required XRC's investment. Chapin fraudulently misrepresented that fact to induce XRC to invest $500,000.

13. Based upon the fraudulent misrepresentations set forth in Q2 2020 Update, the Q2 2020 Spreadsheet, the Income Statements, the Benja Growth Initiative and Bridge Raise, and the September 2, 2020 email from Chapin, among others, XRC was induced to and did in fact invest $500,000 in Benja on September 2, 2020.

14. The September 2, 2020 Safe (as well as each SAFE) contained a representation by Benja as follows:

> To its knowledge, the Company is not in violation of (i) its current certificate of incorporation or bylaws, (ii) any material statute, rule or regulation applicable to the Company or (iii) *any material debt or contract to which the Company is a party or by which it is bound, where, in each case, such violation or default, individually,*

5

*or together with all such violations or defaults, could reasonably be expected to have a material adverse effect on the Company.*

This representation by Benja and Chapin was knowingly and materially false and fraudulent, and proffered with the intention to induce XRC to go forward with a $500,000 investment in Benja.

15. For the reasons set forth in the Motion, and based upon the above facts (and those set forth in the exhibits hereto) XRC respectfully joins in the Bank's Motion to appoint a Chapter 11 Trustee, with the following qualification. Due to the preliminary stage of this bankruptcy case XRC respectfully submits that the prudent and preferred course of action at this time is to appoint a Chapter 11 Trustee, as opposed to converting the case to one under Chapter 7, so that an evaluation can be made by such trustee as to whether any aspects of the Debtor's business is legitimate and salvageable.

October 26, 2020

        Respectfully submitted,

        /s/ Steven Soulios

        Steven Soulios, Esq. (pro hac vice pending)
        Ruta Soulios & Stratis LLP
        211 East 43rd Street, 24th Floor
        New York, New York 10017
        Telephone:    (212) 997-4500
        Facsimile:    (212) 768-0649

        Law Offices of Tyler Cesar
        4590 MacArthur Boulevard, Suite 500
        Newport Beach, CA 92660
        (213) 324-1934

        Attorneys for XRC FUND III and
        XRC GROWTH FUND I, L.P.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

7

JOINDER TO MOTION FOR AN ORDER FOR APPOINTMENT OF A CHAPTER 11 TRUSTEE