Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
Kimberly S. Fineman (184433)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Tel. (415) 616-0466
Fax (415) 398-2820
jhayes@fhlawllp.com

Attorneys for Chapter 7 Trustee
A. Kyle Everett

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>BENJA INCORPORATED,<br><br>    Debtor. | Case No. 20-30819-DM<br><br>Chapter 7<br><br>**CHAPTER 7 TRUSTEE'S MOTION TO APPROVE COMPROMISE OF CONTROVERSY WITH BUERCK PARTIES**<br><br>[No Hearing Unless Requested; Notice and Opportunity for Hearing Filed Pursuant to B.L.R. 9014-1(b)(3)] |

    A. Kyle Everett, Chapter 7 Trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Benja Incorporated (the "Debtor"), hereby moves (the "Motion"), pursuant to section 105(a), Bankruptcy Rule 9019(a), and B.L.R. 9014-1(b)(3)[1] for entry of an order approving the settlement agreement (the "Settlement Agreement") reached between the Trustee, on the one hand, and Brett T. Buerck, a Florida resident ("Mr. Buerck"), Taco Corporation of America, a

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, and "B.L.R." references are to the Bankruptcy Local Rules for the Northern District of California. "ECF" references are to the docket in the above-captioned bankruptcy case.

Florida corporation ("TCA"), BB Lending, LLC, a Nevada limited liability company ("BB Lending"), and EPA Endeavors III, LLC, a Florida limited liability company ("EPA III") (together Mr. Buerck, TCA, BB Lending, and EPA III are collectively herein referred to as the "Buerck Parties"), on the other hand. The Settlement Agreement resolves avoidable transfer claims held by the Estate and asserted by the Trustee against certain of the Buerck Parties (the "Avoidance Claims") in return for a settlement payment of $1,500,000 (the "Settlement Payment") by the Buerck Parties and the waiver of all claims by the Buerck Parties, individually and collectively, against the Estate, as well as a waiver of the Estate's claims against the Buerck Parties. Payment of the $1,500,000 shall be made within fourteen days after the latter of (i) the date the Order becomes final, and (ii) the receipt by Mr. Buerck of IRS Forms W-9 for the Estate. In addition, the secured claim filed by BB Lending, in the sum of no less than $750,000, will be withdrawn. The Motion is supported by the points and authorities set forth below, the concurrently filed Notice and Opportunity for Hearing, the supporting Declaration of A. Kyle Everett (the "Everett Declaration"), and the related proof of service.

## I. BACKGROUND

The Debtor was ostensibly an e-commerce advertising startup founded by Andrew Chapin ("Mr. Chapin") in 2014. In 2015, some of the Buerck Parties invested $345,750 for 18,400 shares in the Debtor (the "Buerck Equity Interest"). The Trustee contends that, as further consideration under the initial subscription agreement, Mr. Buerck was appointed to the Debtor's Board of Directors for a five-year term; Mr. Buerck disputes that he was ever appointed to the Debtor's Board of Directors. *Id*. at ¶¶ 4(a), 10, and 14.

In addition to the Buerck Equity Interest, some of the Buerck Parties also extended loans to the Debtor at the request of Mr. Chapin. Between June 14, 2016 and July 21, 2017, some of the Buerck Parties loaned a total of $305,000 to the Debtor (the "Buerck Loans"). Between November 17, 2016 and October 27, 2017, the Debtor made approximately seven payments totaling $180,000 (the "Additional Cash Payments") to some of the Buerck Parties ostensibly in repayment of the Buerck Loans. *Id*. at ¶ 4(b).

In 2016, Mr. Chapin offered to have the Debtor repurchase the Buerck Equity Interest. The Debtor agreed to buy back the Buerck Equity Interest on or about June 2, 2017, which was later amended on or about February 15, 2019, pursuant to a Share Purchase Agreement that provided for the Debtor to buy back the Buerck Equity Interest for $4,682,099.99 (the "Share Repurchase Price"). In February 2020, Mr. Buerck and Mr. Chapin agreed there would be 5% interest on any unpaid balance of the Share Repurchase Price, accruing from June 4, 2019 until paid in full. *Id.* at ¶ 4(c).

Between July 19, 2019 and April 30, 2020, the Debtor made ten payments to the Buerck Parties totaling $4,865,027.24 on account of the Share Repurchase Agreement. *Id.* at ¶ 4(d).

In September 2020, on behalf of the Debtor, Mr. Chapin requested an additional loan from Mr. Buerck. On September 25, 2020, BB Lending wired $600,000 as a loan to the Debtor (the "BB Loan"). *Id.* at ¶ 4(e).

The Debtor filed a voluntary Chapter 11 case on October 15, 2020. ECF No. 1. The Court granted a motion by creditor Busey Bank to appoint a Chapter 11 trustee in this bankruptcy case on October 26, 2020. ECF Nos. 19 and 26. A. Kyle Everett was appointed as the Chapter 11 Trustee on November 3, 2020. ECF No. 45.

On or about November 23, 2020, Mr. Chapin was arrested and charged in federal court with multiple counts of fraud in connection with a multi-million-dollar scheme to deceive the Debtor's investors and creditors (the "Criminal Case"). Everett Declaration at ¶ 5.

On January 15, 2021, Mr. Everett, then acting as the Chapter 11 Trustee, moved to covert the case to Chapter 7. ECF No. 67. On January 29, 2021, this bankruptcy case was converted to Chapter 7 and Mr. Everett was appointed as Chapter 7 Trustee. ECF Nos. 85 and 86.

On April 8, 2021, BB Lending filed a proof of claim in the amount of $750,000 on account of the BB Loan, including $600,000 as principal and $150,000 as the financing fee plus interest, plus additional interest, attorneys' fees and costs (the "BB Lending Claim") on account of the eve-of-bankruptcy loan made by BB Lending to the Debtor. The BB Lending Claim asserts the debt is secured by "all of Debtor's accounts receivable" pursuant to BB Lending's loan agreement with the Debtor dated September 25, 2020. Everett Declaration at ¶ 7.

On June 16, 2021, Mr. Chapin pled guilty to multiple charges in the Criminal Case. *Id*. at ¶ 8.

In October 2021, the Trustee sent the Buerck Parties a draft complaint that sought to recover the Avoidance Claims under Bankruptcy Code §§ 547(b), 548(a), 550(a) and California Civil Code §3439.01 *et seq*. *Id*. at ¶ 9. The Buerck Parties denied the allegations supporting the Avoidance Claims and asserted defenses to collection under Florida state law. *Id*. at ¶ 10.

On October 28, 2021, the parties agreed to try to resolve their disputes regarding the Avoidance Claims through mediation. That mediation occurred on Tuesday, December 21, 2021, through JAMS and before the Honorable Randall J. Newsome (Ret.). *Id*. at ¶ 11. Through the mediation, the parties reached a settlement and executed the Settlement Agreement memorializing their agreement. *Id*. at ¶ 12. An authentic copy of the Settlement Agreement, dated December 21, 2021, is attached as **Exhibit A** to the Everett Declaration.

## II. SETTLEMENT AGREEMENT TERMS

As set forth more fully in the Settlement Agreement,[2] the key terms of the settlement between the Trustee and the Buerck Parties, which is conditioned upon this Court's approval, are as follows:

- **Settlement Payment**. The Buerck Parties will pay the total sum of $1,500,000, paid in full within fourteen days after the latter of (i) the date the Order becomes final, and (ii) the receipt by Buerck of IRS Forms W-9 for the Estate.

- **Withdrawal of BB Lending Claim**. The BB Lending Claim in the sum of $750,000, as set forth above, will be withdrawn.

- **No Claims by Buerck Parties Against the Bankruptcy Estate**. The Buerck Parties, individually and collectively, agree that they waive any claim against the Estate.

- **Mutual Release**. The Estate and the Buerck Parties mutually release each other from all claims and obligation except those under the Settlement Agreement.

---

[2] If there is a discrepancy between this Motion and the Settlement Agreement, the Settlement Agreement shall control.

- **No admission of liability**. Nothing in the Settlement Agreement shall constitute or be construed as an admission of liability on behalf of the Trustee or the Buerck Parties.

### III. LEGAL ARGUMENT

By this Motion, the Trustee seeks approval of the Settlement Agreement pursuant to Bankruptcy Code § 105(a), B.L.R. 9014-1(b)(3), and Bankruptcy Rule 9019(a), which provides:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.

"The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986); *cert. den. sub nom Martin v. Robinson*, 479 U.S. 854 (1986). The bankruptcy court has great latitude in approving compromise agreements. *Woodson v. Fireman's Fund Insurance Co.* (*In re Woodson*), 839 F.2d 610, 620 (9th Cir. 1988). However, the court's discretion is not unlimited. The court may approve a compromise only if it is "fair and equitable." *A & C Properties* at 1381. In approving a proposed compromise in bankruptcy proceedings, the court must consider:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* at 1381 (citations omitted).

"It is not necessary to satisfy each of these factors provided that the factors as a whole favor approving the settlement." *In re Pacific Gas & Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004). The Court's role in considering a proposed compromise is "to canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Id.* at 417 citing *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496-97 (Bankr. S.D.N.Y. 1991). Although the Trustee bears the burden of persuasion, "a court generally gives deference to a trustee's business judgment in deciding whether to settle a matter." *Goodwin v. Mickey*

*Thompson Entm't. Group, Inc.* (*In re Mickey Thompson Entm't Group, Inc.),* 292 B.R. 415, 420 (9th Cir. BAP 2003).

For the reasons stated below, the Trustee believes in his reasonable business judgment that the Settlement Agreement fulfills the *A & C Properties* factors. Everett Declaration at ¶ 13. As set forth below, the most significant of the *A & C Properties* factors supporting approval of the settlement is the difficulties to be encountered in collection, because the Buerck Parties established that the principal litigation targets (Mr. Buerck and TCA) are essentially judgment proof. In addition, the expense, inconvenience, and delay that would be created absent approval of the Settlement Agreement, as well as the paramount interest of creditors strongly favor approval of the Settlement Agreement.

### A. Probability of Success

The Trustee's probability of establishing liability on his claims against the Buerck Parties is high, and thus this factor does not favor approval of the Settlement Agreement. The evidence strongly supports the avoidance of some of transfers as received via actual fraud under a Ponzi scheme orchestrated by Mr. Chapin, who pled guilty to crimes related to his fraud in operating the Debtor and deceiving investors and lenders with fabricated accounts receivable and financial statements. Everett Declaration at ¶ 14. Case law provides a presumption of actual fraud when, as here, there is a criminal plea establishing the elements of a Ponzi scheme and when the transfers were made in the course of such Ponzi scheme. *Santa Barbara Capital Mgmt v. Neilson* (*In re Slatkin*), 525 F.3d 805, 814 (9thCir. 2008); *see Kasolas v. Nicholson (In re Fox Ortega Enterprises, Inc.),* 631 B.R. 425 (Bankr. N.D. Cal. 2021). Despite this presumption, the Trustee still bears the burden of establishing that the transfers made to the Buerck Parties were part of a Ponzi scheme orchestrated by Mr. Chapin. *Fox Ortega* at 449-50, 456.

The Trustee believes some of the transfers could also be avoided as preferences to insiders under Bankruptcy Code section 547(b)(4)(B), pursuant to which payments made to insiders within one year of the Petition Date may be avoided if made (i) for the benefit of a creditor, (ii) on account of an antecedent debt, and (iii) while the debtor was insolvent. The Trustee contends that the Buerck Parties qualify as "insiders" on account of Mr. Buerck's position as a Board

Member of the Debtor. Mr. Buerck, however, disputes that he was ever a Board Member of the Debtor, noting that he is not listed as a Board Member in any of the Debtor's corporate filings. Even if Mr. Buerck were not found to be a statutory insider of the Debtor by virtue of his appointment to the Board, the Trustee believes that he would succeed in establishing that Mr. Buerck was a non-statutory insider who was not dealing with the Debtor at arms' length. Mr. Buerck disputes this argument, and the Court would make a factual determination regarding whether the Debtor and Mr. Buerck engaged in the Benja business transactions at arms' length. A potential weakness in the Trustee's insider preference claims is that the bulk of the payments at issue were made to TCA, and not to Mr. Buerck. The Buerck Parties would argue that TCA was not an "insider," in which case the transfers would be outside the 90-day window applicable to non-insiders. The Trustee would seek to establish that TCA was either a transferee against whom the transfers are recoverable under section 550, or that it was the alter ego of Mr. Buerck. Alter ego claims are very fact intensive and, by nature, difficult to establish. Everett Declaration at ¶ 14.

In contrast to the Avoidance Claims discussed above, as to which the Trustee believes he would readily establish liability under one or more theories, the Trustee believes the Buerck Parties have stronger defenses to the much smaller Additional Cash Payments (*i.e.* $180,000), in that these transfers appear to have been payments on antecedent loans made by the Buerck Parties to the Debtor. *Id.* at ¶ 15. If the Additional Cash Payments were payments on account of pre-exiting loans, then the Buerck Parties might argue the affirmative defense of being "a person who took in good faith and for a reasonably equivalent value...." Cal. Civ. Code § 3439.08(a); *see also* 11 U.S.C. § 548(c) ("takes for value and in good faith"). The Trustee would dispute this defense.

On balance, the Trustee believes that his probability of establishing liability on his claims against the Buerck Parties, in at least the amount of $4,865,027.24, is strong. Thus, this factor does not favor approval of the Settlement Agreement. Everett Declaration at ¶ 16.

### B. Difficulty of Collection

The difficulty of collection element weighs heavily in favor of approval of the Settlement Agreement. Mr. Buerck, on behalf of himself and TCA, has provided evidence in support of strong defenses to collection of a judgment against them. Mr. Buerck is a Florida resident whose primary asset, his home, is protected by Florida's unlimited homestead exemption, as attested to by Mr. Buerck in a signed declaration setting forth the facts establishing the applicability of this exemption. Everett Declaration at ¶ 17; Fla. Const., Article X, § 4; *see also Havoco of Am. v. Hill*, 790 So. 2d 1018 (Fla. 2001). Mr. Buerck also established via sworn testimony that his wages are exempt from attachment under Florida's head of household laws, as interpreted by case law. Everett Declaration at *id.*; Fla. Stat. § 222.11(2)(b). Finally, Mr. Buerck asserts that he holds most of his assets as tenants by the entireties with his wife, which, Mr. Buerck has asserted, prevents such assets from being used to satisfy the obligations of one of the spouses under Florida law. *See Meyer v. Faust*, 83 So. 2d 847 (Fla. 1955).

To be successful against the other Buerck Parties, the Trustee would have to prevail in claims of alter ego between them and, even then, would face additional difficulties in collection. In addition, the assets available for collection by parties other than Mr. Buerck are unclear. For example, although the Trustee is informed and believes that TCA owns real property located near Mr. Buerck's homestead property, online sources suggest that this TCA-owned property has a current value of approximately $500,000. Even assuming, *arguendo*, that the TCA-owned property is at present unencumbered, the value of the property is significantly less than the amount of the payment under the Settlement Agreement. In addition, to establish liability of TCA for transfers ultimately made to Mr. Buerck, the Trustee would have to establish that TCA is the alter ego of Mr. Buerck. If the Trustee succeeded in establishing alter ego and getting a judgment against TCA, there is nothing preventing TCA from in the meantime encumbering or transferring the real property between now, entry of judgment, and the Trustee's efforts to collect on the judgment. For these reasons, the Trustee anticipates significant difficulties in collecting from the Buerck Parties, who appear to be effectively judgment proof. Everett Declaration at ¶ 17.

### C. Complexity of Litigation, Expense, Inconvenience, and Delay

This factor strongly favors approval of the Settlement Agreement. The Trustee estimates that it would require at least $250,000 in attorneys' fees and costs to reach a judgment against the Buerck Parties on account of the Avoidance Claims. The Estate would then have to incur additional fees and costs to pursue collection against the Buerck Parties. For the reasons set forth above, it is highly unlikely that the Estate would recover much, if any, of the full $5,045,027.24 represented by the Avoidance Claims. In addition, any recovery would come at a significant cost, inconvenience, and delay to the Estate. Everett Declaration at ¶ 18.

### D. Paramount Interest of Creditors

This factor strongly favors settlement. The Settlement Payment alone represents a significant recovery on account of the Avoidance Claims—approximately 30%—without incurring the anticipated substantial costs to the Estate if these claims were to be litigated and the high risk that a judgment would be uncollectible. In addition, the withdrawal of the $750,000 BB Lending Claim is also significant consideration provided for the benefit of the Estate. *Id*. at ¶ 19.

In summary, the Trustee submits the Settlement Agreement is fair and equitable, within the range of reasonableness, and, in the Trustee's reasonable business judgment, in the best interest of the Estate. *Id.* at ¶ 13.

## IV. WAIVER OF RULE 6004(h) AND RELATED STAY PROVISIONS

The Trustee requests that the order approving compromise provide: "This Order is effective upon entry, and the stay otherwise imposed by Rule 62(a) of the Federal Rules of Civil Procedure and/or Bankruptcy Rule 6004(h) shall not apply." The Settlement Agreement provides for wavier of these stay provisions.

## V. CONCLUSION

For the reasons stated above, the Trustee requests entry of an order granting his Motion and approving the Settlement Agreement, which is attached as **Exhibit A** to the concurrently filed and supporting Everett Declaration.

Dated: January 5, 2022

**FINESTONE HAYES LLP**

By: *Jennifer C. Hayes*
Jennifer C. Hayes, on behalf of A. Kyle Everett, solely in his capacity as Chapter 7 Trustee of the Benja bankruptcy estate