Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
Kimberly S. Fineman (184433)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, 20thFloor
San Francisco, California 94104
Tel. (415) 616-0466
Fax (415) 398-2820
jhayes@fhlawllp.com

Attorneys for Chapter 7 Trustee
A. Kyle Everett

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 20-30819 DM |
| BENJA INCORPORATED, | Chapter 7 |
| Debtor. | **DECLARATION OF CHAPTER 7 TRUSTEE A. KYLE EVERETT IN SUPPORT OF CHAPTER 7 TRUSTEE'S MOTION TO APPROVE COMPROMISE OF CONTROVERSY WITH BUERCK PARTIES** |
| | [No Hearing Unless Requested; Notice and Opportunity for Hearing Filed Pursuant to B.L.R. 9014-1(b)(3)] |

I, A. Kyle Everett, declare as follows:

1.      I am the duly appointed Chapter 7 Trustee of the bankruptcy estate (the "Estate") of Benja Incorporated (the "Debtor") in the above-captioned case (the "Bankruptcy Case").  I was appointed as the Chapter 11 Trustee in the Bankruptcy Case on November 3, 2020. On January 29, 2021, the Bankruptcy Case was converted to Chapter 7 and I was appointed as Chapter 7 Trustee.

1    2.    All statements in this declaration are based on my own personal knowledge and

2    observation, or upon information and belief based upon my review of the court and business

3    records in this case.  If called to testify on this matter, I could and would competently testify to

4    the matters set forth in this Declaration.

5    3.    I make this declaration in support of the concurrently filed Chapter 7 Trustee's

6    Motion to Approve Compromise of Controversy with the Buerck Parties (the "Motion"). The

7    Motion seeks entry of an order approving the settlement agreement (the "Settlement

8    Agreement") reached between myself as Trustee, on the one hand, and Brett T. Buerck, a Florida

9    resident ("Mr. Buerck"), Taco Corporation of America, a Florida corporation ("TCA"), BB

10   Lending, LLC, a Nevada limited liability company ("BB Lending"), and EPA Endeavors III,

11   LLC, a Florida limited liability company ("EPA III") (together Buerck, TCA, BB Lending, and

12   EPA III are collectively referred to as the "Buerck Parties"), on the other hand.  The Settlement

13   Agreement, an authentic copy of which is attached to this declaration as **Exhibit A**, resolves

14   avoidable transfer claims I asserted on behalf of the Estate against certain of the Buerck Parties

15   (the "Avoidance Claims") in return for a settlement payment of $1,500,000 (the "Settlement

16   Payment") by the Buerck Parties and the waiver of all claims by the Buerck Parties, individually

17   and collectively, against the Estate, as well as the estate's waiver of claims against the Buerck

18   Parties.  In addition, BB Lending's claim against the estate in the approximate sum of $750,000

19   shall be withdrawn.

20   4.    The recitals in the Settlement Agreement provide as follows, which I am informed

21   and believe to be true:

22        a.   In 2015, some of the Buerck Parties invested $345,750 for 18,400 shares in

23             the Debtor (the "Buerck Equity Interest").

24        b.   In addition to the Buerck Equity Interest, some of the Buerck Parties also

25             extended loans to the Debtor at the request of Andrew Chapin ("Mr. Chapin").

26             Between June 14, 2016 and July 21, 2017, some of the Buerck Parties loaned

27             a total of $305,000 to the Debtor (the "Buerck Loans"). Between November

28

Case: 20-30819   Doc# 103-1   Filed: 01/06/22   Entered: 01/06/22 13:56:36   Page 2
of 16

1  17, 2016 and October 27, 2017, the Debtor made approximately seven

2  payments totaling $180,000 to some of the Buerck Parties ostensibly in

3  repayment of the Buerck Loans.

4  c.  In 2016, Mr. Chapin offered to have the Debtor repurchase the Buerck Equity

5  Interest. The Debtor agreed to buy back the Buerck Equity Interest on or about

6  June 2, 2017, which was later amended on or about February 15, 2019,

7  pursuant to a Share Purchase Agreement that provided for the Debtor to buy

8  back the Buerck Equity Interest for $4,682,099.99 (the "Share Repurchase

9  Price"). In February 2020, Mr. Buerck and Mr. Chapin agreed there would be

10  5% interest on any unpaid balance of the Share Repurchase Price, accruing

11  from June 4, 2019 until paid in full.

12  d.  Between July 19, 2019 and April 30, 2020, the Debtor made ten payments to

13  the Buerck Parties totaling $4,865,027.24 on account of the Share Repurchase

14  Agreement.

15  e.  In September 2020, on behalf of the Debtor, Mr. Chapin requested an

16  additional loan from Buerck. On September 25, 2020, BB Lending wired

17  $600,000 as a loan to the Debtor (the "BB Loan").

18  5.  I am informed and believe that, on November 23, 2020, Mr. Chapin was arrested

19  and charged in federal court with multiple counts of fraud in connection with a multi-million-

20  dollar scheme to deceive the Debtor's investors and creditors (the "Criminal Case").

21  6.  Shortly after the filing of the Criminal Case, the Bankruptcy Case was converted

22  to Chapter 7 as noted above.

23  7.  I am informed and believe that, on April 8, 2021, BB Lending filed a proof of

24  claim in the amount of $750,000 on account of the BB Loan, including $600,000 as principal

25  and $150,000 as the financing fee plus interest, plus additional interest, attorneys' fees and costs

26  (the "BB Lending Claim"). The BB Lending Claim asserts the debt is secured by "all of Debtor's

27

28

accounts receivable" pursuant to BB Lending's loan agreement with the Debtor dated September 25, 2020.

8. I am informed and believe that, on or about June 16, 2021, Mr. Chapin pled guilty to all charges in the Criminal Case.

9. In October 2021, I caused to be presented to the Buerck Parties a draft complaint that sought to recover the Avoidance Claims and received by some of the Buerck Parties were avoidable under Bankruptcy Code §§ 547(b), 548(a), 550(a) and California Civil Code §3439.01 *et seq*.

10. Mr. Buerck and TCA denied the allegations supporting the Avoidance Claims and asserted defenses to collection under Florida state law. In addition, Mr. Buerck disputed whether he was allegedly appointed to the Debtor's Board of Directors for a five-year term, allegedly as further consideration under the initial subscription agreement.

11. On October 28, 2021, the parties agreed to try to resolve their disputes regarding the Avoidance Claims through mediation. That mediation occurred on Tuesday, December 21, 2021, through JAMS and before the Honorable Randall J. Newsome (Ret.).

12. Through the mediation, the parties reached a settlement and executed the Settlement Agreement memorializing their agreement.

13. I believe that the Settlement Agreement is fair and equitable, within the range of reasonableness in accordance with the requirements of *In re A & C Properties*, 784 F.2d 1377 (9th Cir. 1986), and, in my reasonable business judgment, is in the best interest of the Estate.

14. **Probability of Success.** The probability of establishing liability on the Estate's claims against the Buerck Parties is high, and thus this factor does not favor approval of the Settlement Agreement. I am informed and believe that the evidence strongly supports the avoidance of some of the transfers received via actual fraud under a Ponzi scheme orchestrated by Mr. Chapin, who I am informed and believe pled guilty to crimes related to his fraud in operating the Debtor and deceiving investors and lenders with fabricated accounts receivable and financial statements. I contend that the Buerck Parties qualify as "insiders" on account of

1 Mr. Buerck's position as a Board Member of the Debtor. I am informed and believe, however,

2 that Mr. Buerck disputes that he was ever a Board Member of the Debtor, noting that he is not

3 listed as a Board Member in any of the Debtor's corporate filings. Even if Mr. Buerck were not

4 found to be a statutory insider of the Debtor by virtue of his appointment to the Board, I believe

5 that I would succeed in establishing that Mr. Buerck was a non-statutory insider who was not

6 dealing with the Debtor at arms' length. I further believe that Mr. Buerck would dispute this

7 argument. A potential weakness in my insider preference claims is that the bulk of the payments

8 at issue were made to TCA, and not to Mr. Buerck. The Buerck Parties would likely argue that

9 TCA was not an "insider," in which case the transfers would be outside the 90-day window for

10 recovery of non-insider preferences. I would seek to establish that TCA was either a transferee

11 or that it was the alter ego of Mr. Buerck. I am informed and believe alter ego claims are very

12 fact intensive and, by nature, difficult to establish.

13     15.     In contrast to the payments totaling $4,865,027.24, as to which I believe that I

14 would readily establish liability under one or more theories, I am informed and believe that the

15 Buerck Parties have stronger defenses to the much smaller additional cash payments (totaling

16 approximately $180,000), in that these transfers appear to have been payments on antecedent

17 loans made by the Buerck Parties to the Debtor. If the $180,000 were payments on account of

18 pre-exiting loans, then the Buerck Parties might argue the affirmative defense of being "a person

19 who took in good faith and for a reasonably equivalent value...." I expect that I would dispute

20 this defense.

21     16.     On balance, I believe that my probability of establishing liability on my claims

22 against the Buerck Parties, particularly as to the payments totaling $4,865,027.24, is strong.

23 Thus, this factor does not favor approval of the Settlement Agreement.

24     17.     **Difficulty of Collection.** I believe that the difficulty of collection element weighs

25 heavily in favor of approval of the Settlement Agreement. Mr. Buerck, on behalf of himself and

26 TCA, provided evidence in support of strong defenses to collection of a judgment against them.

27 Mr. Buerck provided sworn testimony that he is a Florida resident and his primary asset, his

28

home, is protected by Florida's unlimited homestead exemption. Mr. Buerck also stated via sworn testimony that his wages are exempt from attachment under Florida's head of household laws, as interpreted by case law. *Id.* Finally, I am informed and believe that Mr. Buerck asserts that he holds most of his assets as tenants by the entireties with his wife, which, Mr. Buerck has asserted, prevents such assets from being used to satisfy the obligations of one of the spouses under Florida law. To be successful against the other Buerck Parties, I would have to prevail in claims of alter ego between them and, even then, I am informed and believe that I would face additional difficulties in collection. In addition, the assets available for collection by parties other than Mr. Buerck are unclear. Although I am informed and believe that TCA owns real property located near Mr. Buerck's homestead property, online sources suggest that this TCA-owned property has a current value of approximately $500,000. Even assuming, *arguendo*, that the TCA-owned property is at present unencumbered, the value of the property is significantly less than the amount of the payment under the Settlement Agreement. In addition, to establish liability of TCA for transfers ultimately made to Mr. Buerck, I would have to establish that TCA is the alter ego of Mr. Buerck. If I succeeded in establishing alter ego and getting a judgment against TCA, I am informed and believe that there is nothing preventing TCA from in the meantime encumbering or transferring the real property between now, entry of judgment, and my efforts to collect on the judgment on behalf of the bankruptcy estate. For these reasons, I anticipate significant difficulties in collecting from the Buerck Parties, who appear to be effectively judgment proof.

18. **Complexity of Litigation, Expense, Inconvenience, and Delay.** I believe that this factor strongly favors approval of the Settlement Agreement. I estimate that it would require at least $250,000 in attorneys' fees and costs to reach a judgment against the Buerck Parties on account of the Avoidance Claims. The Estate would then have to incur additional fees and costs to pursue collection against the Buerck Parties. For the reasons set forth above, it is highly unlikely that the Estate would recover much, if any, of the full $5,045,027.24 represented by the

1  Avoidance Claims.  In addition, any recovery would come at a significant cost, inconvenience,

2  and delay to the Estate.

3          19.      **Paramount Interest of Creditors.**  I believe that this factor strongly favors

4  settlement.  The Settlement Payment alone represents a significant recovery on account of the

5  Avoidance Claims—approximately 30%—without incurring the anticipated substantial costs to

6  the Estate if these claims were to be litigated and the high risk that a judgment would be

7  uncollectible.  In addition, I am informed and believe that the withdrawal of the $750,000 BB

8  Lending Claim is also significant consideration provided for the benefit of the Estate.

9

10         I declare under penalty of perjury under the laws of the United States, that the foregoing

11  is true and correct.  Executed in San Francisco County, California on January 6, 2022.

12

13                                            *A. Kyle Everett*

14                                            A. Kyle Everett, Solely in my Capacity as
                                              Chapter 7 Trustee of the Benja Incorporated

15                                            Bankruptcy Estate

16

17

18

19

20

21

22

23

24

25

26

27

28

EVERETT DECLARATION IN SUPPORT OF 9019 MOTION                                            7

# Exhibit A

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into on the last date set forth on the signature pages below ("Execution Date"), by and between Kyle Everett, in his capacity as the Chapter 7 Trustee for the bankruptcy estate (the "Bankruptcy Estate") of Benja Incorporated ("Trustee") on the one hand, Brett T. Buerck ("Buerck"), Taco Corporation of America ("TCA"), BB Lending, LLC ("BB Lending"), EPA Endeavors III, LLC ("EPA III") on the other hand (Buerck, TCA, BB Lending, and EPA III are collectively referred to herein as the "Buerck Parties"). For purposes of this Agreement, Trustee and the Buerck Parties may be referred to individually as a "Party" and collectively as the "Parties."

## RECITALS

A.   Benja Incorporated aka EPHE Corporation ("Benja") was ostensibly an e-commerce advertising startup founded by Andrew Chapin ("Chapin") in 2014.

B.   In 2015, some of the Buerck Parties invested $345,750 for 18,400 shares in Benja (the "Buerck Equity Interest").

C.   In addition to the Buerck Equity Interest, some of the Buerck Parties also extended loans to Benja at the request of Chapin. Between June 14, 2016 and July 21, 2017, some of the Buerck Parties loaned a total of $305,000 to Benja (the "Buerck Loans"). Between November 17, 2016 and October 27, 2017, Benja made approximately seven payments totaling $180,000 (the "Additional Cash Payments") to the some of the Buerck Parties ostensibly in repayment of the Loans.

D.   In 2016, Chapin offered to have Benja repurchase the Buerck Equity Interest. Benja agreed to buy back the Buerck Equity Interest on or about June 2, 2017, which was later amended on or about February 15, 2019, pursuant to a Share Purchase Agreement that provided for Benja to buy back the Buerck Equity Interest for $4,682,099.99 (the "Share Repurchase Price"). In February 2020, Buerck and Chapin agreed there would be 5% interest on any unpaid balance of the Share Repurchase Price, accruing from June 4, 2019 until paid in full.

E.   Between July 19, 2019 and April 30, 2020, Benja made ten payments to the Buerck Parties totaling $4,865,027.24 (the "Fraudulent Transfers") on account of the Share Repurchase Agreement.

F.   In September 2020, on behalf of Benja, Chapin requested an additional loan from Buerck. On September 25, 2020, BB Lending wired $600,000 as a loan to Benja (the "BB Loan").

G.   Benja filed a voluntary Chapter 11 case on October 15, 2020 (the "Bankruptcy Case") in the Bankruptcy Court for the Northern District of California ("Bankruptcy Court"), Case No. 20-30819 (the "Bankruptcy Estate"). The Bankruptcy Court granted a motion by creditor Busey Bank to appoint a Chapter 11 trustee in the Bankruptcy Case on October 26, 2020. Kyle Everett was appointed as the Chapter 11 Trustee in the Bankruptcy Case on November 3, 2020.

1

H. On November 23, 2020, Chapin was arrested and charged in federal court with multiple counts of fraud in connection with a multi-million-dollar scheme to deceive investors and creditors of Benja (the "Criminal Case").

I. On January 15, 2021, Mr. Everett moved to convert the case to Chapter 7. An order converting the bankruptcy case to Chapter 7 was entered on January 29, 2021. Mr. Everett was appointed as Chapter 7 Trustee.

J. On April 8, 2021, BB Lending filed a proof of claim in the amount of $750,000 on account of the BB Loan, including $600,000 as principal and $150,000 as the financing fee plus interest, plus additional interest, attorneys' fees and costs (the "BB Lending Claim"). The BB Lending Claim asserts the debt is secured by "all of Debtor's accounts receivable" pursuant to BB Lending's loan agreement with Benja dated September 25, 2020.

K. On June 16, 2021, Chapin pled guilty to all charges in the Criminal Case.

L. In October 2021, Trustee asserted that the Buerck Parties had received avoidable fraudulent transfers and additional cash payments from Benja (the "Avoidance Claims").

M. Buerck has denied Trustee's allegations regarding the avoidability of the transfers to him.

N. On October 28, 2021, the Parties agreed to try to resolve their disputes through mediation. That mediation occurred on Tuesday, December 21, 2021, through JAMS and before the Honorable Randall J. Newsome (Ret.).

O. Through the mediation, the Parties reached a settlement and by virtue of this Agreement, the Parties desire to fully and completely resolve this dispute in good faith, and to settle all claims, defenses, and/or counterclaims that were asserted or that could have been asserted in the Draft Complaint and were asserted in the BB Lending Claim.

## AGREEMENT

NOW, THEREFORE, in consideration of the promises and the mutual covenants of the Parties stated in this Agreement, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1. **Bankruptcy Court Approval**. This Agreement is subject to the approval of, and is of no force or effect until approved by, the Bankruptcy Court. In connection with obtaining approval of the Bankruptcy Court, within 30 business days of the full execution of this Agreement, Trustee shall file a motion under Rule 9019 of the Federal Rules of Bankruptcy Procedure and provide notice of that motion, as required by Rule 2002 of the Federal Rules of Bankruptcy Procedure. All Parties agree to cooperate, as required, in obtaining approval of such motion. This Agreement shall become effective on the date the order of the Bankruptcy Court approving this Agreement ("Order") becomes final (the "Effective Date"). The Parties hereto agree to a waiver

2

of the 14-day stay as set forth in Bankruptcy Rule 6004 with respect to the effectiveness of the Order.

2. **Terms**. As full and final settlement of the Avoidance Claims, including without limitation all claims that were asserted or which could have been asserted in the Draft Complaint, and the BB Lending Claim, the Parties agree as follows:

2.1. **Settlement Payment**. The Buerck Parties will pay to Trustee the total sum of $1,500,000.00 (the "Settlement Payment"). The Settlement Payment will be made within 14 days after the latter of (i) the date the Order becomes final, and (ii) the receipt by Buerck of IRS Forms W-9 for the Bankruptcy Estate. The Settlement Payment shall be made by check payable to "Kyle Everett, Chapter 7 Trustee for Benja Incorporated" and shall be delivered to Finestone Hayes LLP, located at 456 Montgomery Street, 20th Floor, San Francisco, California 94104.

2.2 **Withdrawal of BB Lending Claim**. The BB Lending Claim will be withdrawn within 14 days after the Order becomes final.

2.3 **No Claims by Buerck Parties Against the Bankruptcy Estate**. The Buerck Parties, individually and collectively, agree that they waive any claim against the Bankruptcy Estate.

3. **Release by Trustee.** Except as otherwise set forth in this Agreement, in consideration of the promises, covenants and agreements set forth herein and for other good and valuable consideration, Trustee, and his affiliates, successors and/or assigns, on behalf of the Bankruptcy Estate ("Plaintiff Releasor") hereby waives, remises, releases, acquits, satisfies, and forever discharges the Buerck Parties, the Buerck Parties' professionals, including but not limited to his attorneys and accountants, as well as their agents, representatives, predecessors, successors, spouses, and assigns (the "Buerck Released Parties") of and from all manner of action and actions, cause and causes of action, suits, debts, sums of money, accounts, covenants, contracts, controversies, agreements, promises, trespasses, damages, judgments, executions, claims, and demands whatsoever, in law or in equity, with the exception of the Parties' obligations under this Agreement.

4. **Release by the Buerck Parties**. Except as otherwise set forth in this Agreement, in consideration of the promises, covenants and agreements set forth herein and for other good and valuable consideration, the Buerck Parties, and their affiliates, successors, and/or assigns hereby waive, remise, release, acquit, satisfy, and forever discharge Trustee, Trustee's professionals, including but not limited to his attorneys and accountants, and the Bankruptcy Estate, as well as their agents, representatives, predecessors, successors, spouses, and assigns (the "Estate Released Parties"), of and from all manner of action and actions, cause and causes of action, suits, debts, sums of money, accounts, covenants, contracts, controversies, agreements, promises, trespasses, damages, judgments, executions, claims, and demands whatsoever, in law or in equity (collectively "Released Claims"), with the exception of the Parties' obligations under this Agreement.

Case: 20-30819    Doc# 103-1    Filed: 01/06/22    Entered: 01/06/22 13:56:36    Page 11 of 16

5.  **Release of Unknown Claims.** The Parties specifically waive and relinquish all rights and benefits afforded by Section 1542 of the California Civil Code, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Parties' waiver of all rights and benefits afforded by Section 1542 is done with their understanding and acknowledgement of the significance of such a specific waiver of Section 1542. Notwithstanding the provisions of Section 1542, and for the purpose of implementing a full and complete release and discharge of each and all the Parties hereto, the Parties expressly acknowledge that this Agreement is intended to include in its effect (without limitation) all claims the Parties know or suspects to exist in their respective favor, and all claims the Parties do not know or suspect to exist in their respective favor at the time each Party executes this Agreement, which contemplates the extinguishment of any such claims. This waiver also applies to any other relevant re-codification or similar laws implemented hereafter substantially covering the subject matter of Section 1542.

6.  **Representations and Warranties.** The Buerck Parties represent and warrant to Trustee that they are not aware of any third party or organization claiming to have or having any interest in the claims and causes of action resolved by this Agreement and that they are the sole owner and holder of the claims released herein and are authorized to execute this Agreement on behalf of the Buerck Parties. Additionally, the Buerck Parties represent and warrant to Trustee that they have not assigned, hypothecated, or otherwise transferred any interest in the claims and causes of action resolved by this Agreement. The Buerck Parties further represent and warrant to Trustee that they are not aware of any third party or organization which has asserted or may assert a claim or lien against the proceeds of the settlement memorialized by this Agreement. Trustee represents and warrants that he is authorized to release all claims held by the bankruptcy estate, including any claim that Benja Incorporated or EPHE Corporation may have had prior to commencement of the bankruptcy proceedings.

7.  **No Admission of Liability.** Nothing in this Agreement shall constitute or be construed as an admission of liability on behalf of Trustee or the Buerck Parties, or their respective agents, affiliates, assigns, parents, successors, subsidiaries, and/or successors, or an admission as to the validity of the allegations in the Lawsuit. It is also understood and agreed to by the Parties that this Agreement does not constitute an order or finding of any violation of law related to fraudulent, manipulative, or deceptive conduct.

8.  **Voluntary Agreement/Attorney Representation.** The Parties represent that in the execution and negotiation of this Agreement, they are represented by counsel of their choice and that said attorneys advised their respective clients with respect to the advisability of making the settlement and release provided herein and of executing this Agreement; or if they are not represented by counsel, that they had the opportunity to consult legal counsel of their own selection

4

and the decision not to be represented by counsel is a decision that the Parties have freely made. The Parties further represent and warrant that they are fully aware of the terms contained in this Agreement, made any desired changes, and have voluntarily and without coercion, duress, or undue influence of any kind, entered into this Agreement and the documents executed in connection with this Agreement.

9.  **No Third-Party Beneficiaries.**  There are no third-party beneficiaries to this Agreement, and no claims are released other those expressly identified herein.

10.  **Entire Agreement**.  This Agreement constitutes the sole and entire agreement between the Parties and supersedes all prior and contemporaneous statements, promises, understandings or agreements, whether written or oral.

11.  **Amendments**.  This Agreement may be amended, modified or altered at any time upon the approval of the Parties; however, any such amendment must be in writing and signed by all Parties in order for such amendment to be of any force and effect.

12.  **Partial Invalidity**.  In the event that any provision of this Agreement is declared by any court of competent jurisdiction or any administrative judge to be void or otherwise invalid, all of the other terms, conditions and provisions of this Agreement shall remain in full force and effect to the same extent as if that part declared void or invalid had never been incorporated in the Agreement and in such form, the remainder of the Agreement shall continue to be binding upon the Parties.

13.  **Survival**.  All representations and warranties contained herein shall survive the execution and delivery of this Agreement, and the execution and delivery of any other document or instrument referred to herein.

14.  **Applicable Law**.  This Agreement shall be subject to and governed by the laws of the State of California, without regard to conflict of law rules.

15.  **Attorneys' Fees and Costs**. In the event of a dispute regarding this Agreement and/or its terms, the prevailing party in such dispute is entitled to reasonable attorneys' fees and costs, upon approval of same by the Bankruptcy Court.  Unless otherwise provided in this Agreement, each of the Parties has agreed to bear his or its own attorneys' fees and costs with respect to the Lawsuit, and all claims made therein, and the preparation of any and all documents necessary to enter into this Agreement.

16.  **Counterparts**. This Agreement may be signed and executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one Agreement.  Delivery of an executed counterpart of a signature page of this Agreement by facsimile or email shall be effective as delivery of an originally executed counterpart of this Agreement.

17.  **No Adverse Construction.**  The Parties acknowledge that this Agreement has been prepared by each of them through counsel.  In the event any part of this Agreement is found to be

5

ambiguous, such ambiguity shall not be construed against any Party.

18. **Agreement is Not Evidence**. This Agreement shall not be used as evidence in any proceeding other than one to enforce this Agreement, or one seeking damages arising from a breach of this Agreement.

19. **Authority**. The Parties represent and warrant to each other that each is the sole and lawful owner of all right, title, and interest in and to every claim and other matter which each releases in this Agreement. In the event that such representation is false, and any such claim or matter is asserted against either Party by anyone who is the assignee or transferee of such a claim or matter, then the Party who assigned or transferred such claim or matter shall fully indemnify, defend, and hold harmless the Party against whom such claim or matter is asserted and its successors from and against such claim or matter.

20. **Further Assurances**. The Parties shall perform such further acts and things and execute and deliver such additional agreements, powers and instruments, as may reasonably be required or reasonably deem advisable to carry into effect the purposes of this Agreement.

21. **Jury Waiver**. TO THE FULLEST EXTENT PERMITTED UNDER CALIFORNIA LAW, THE PARTIES HEREBY IRREVOCABLY WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT.

22. **Choice of Forum; Personal Jurisdiction**. Subsequent to the Effective Date, the Parties agree that any claim or dispute between them regarding the enforcement or interpretation of this Agreement must be resolved by the Bankruptcy Court. The Parties expressly submit to the personal jurisdiction of the Bankruptcy Court for the purpose of litigating all such claims and disputes and consent to entry of final judgment by the Bankruptcy Court with respect to this Agreement and all related matters.

**[THE REMAINDER OF THIS PAGE INTENTIONALLY BLANK. SIGNATURE PAGE(S) TO FOLLOW.]**

BY SIGNING BELOW, THE PARTIES ACKNOWLEDGE THAT THEY HAVE READ AND UNDERSTAND THE TERMS OF THIS AGREEMENT AND EXPRESSLY CONSENT THERETO.

The Parties have executed this Agreement as of the date set forth below.

DATED: 12/21/21

BENJA INCORPORATED

By: _____
Name: Kyle Everett
Title: Chapter 7 Trustee

DATED: 12/21

_____
Brett T. Buerck

DATED: 12/21

Taco Corporation of America, Inc.

By: _____
Name: Brett T. Buerck
Title: President

DATED: 12/21

BB Lending, LLC

By: _____
Name: Brett T. Buerck
Title: Manager

DATED: 12/21

EPA Endeavors III, LLC

By: _____
Name: Brett T. Buerck
Title: Manager

7

**APPROVED AS TO FORM**:

DATED: 12/21/21

Finestone Hayes LLP

By: _Jennifer C. Hays_
Name: Jennifer C. Hayes, Attorneys for the
Chapter 7 Trustee

DATED: 12/21/21

Michelson Law Group

By: _Randy Michelson_
Name: Randy Michelson, Attorneys for the
Buerck Parties

8