**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re<br><br>BENJA INCORPORATED,<br><br>      Debtor. | Case No. 20-30819 DM<br>Chapter 7<br><br>**NOTICE AND OPPORTUNITY FOR HEARING ON CHAPTER 7 TRUSTEE'S MOTION TO APPROVE COMPROMISE OF CONTROVERSY WITH BUERCK PARTIES**<br><br>[No Hearing Unless Requested; Filed Pursuant to B.L.R. 9014-1(b)(3)] |

**TO THE DEBTOR, CREDITORS, THE OFFICE OF THE UNITED STATES TRUSTEE, AND PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that A. Kyle Everett, Chapter 7 Trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Benja Incorporated (the "Debtor"), has filed a Motion to Approve Compromise of Controversy with Buerck Parties (the "Motion"), pursuant to Bankruptcy Code section 105, Bankruptcy Rule 9019(a), and Local Bankruptcy Rule 9014-1(b)(3). The Motion requests entry of an order approving the settlement agreement (the "Settlement Agreement") reached between the Trustee, on the one hand, and Brett T. Buerck, a Florida resident ("Mr. Buerck"), Taco Corporation of America, a Florida corporation ("TCA"), BB Lending, LLC, a Nevada limited liability company ("BB Lending"), and EPA Endeavors III, LLC, a Florida limited liability company ("EPA III") (together Mr. Buerck, TCA, BB Lending, and EPA III are collectively herein referred to as the "Buerck Parties"), on the other hand. This notice summarizes the dispute, the terms of the proposed compromise, and the procedure for filing an objection, if any.

The Settlement Agreement resolves avoidable transfer claims held by the Estate and asserted by the Trustee against certain of the Buerck Parties (the "Avoidance Claims") in return for a settlement payment of $1,500,000 (the "Settlement Payment") by the Buerck Parties and the waiver of all claims by the Buerck Parties, individually and collectively, against the Estate, as well as a waiver of the Estate's claims against the Buerck Parties. Payment of the $1,500,000 shall be made within fourteen days after the latter of (i) the date the Order becomes final, and (ii) the receipt by Mr. Buerck of IRS Forms W-9 for the Estate. In addition, the secured claim filed by BB Lending, in the sum of no less than $750,000, will be withdrawn. The Motion is supported by the points and authorities set forth therein and summarized below, this Notice and Opportunity for Hearing, the supporting Declaration of A. Kyle Everett (the "Everett Declaration"), and the proof of service. Anyone who would like a copy of the Motion and/or the Everett Declaration should contact Jennifer C. Hayes to request a copy: (41) 616-0466; jhayes@fhlawllp.com.

**BACKGROUND**
The Debtor was ostensibly an e-commerce advertising startup founded by Andrew Chapin ("Mr. Chapin") in 2014. In 2015, some of the Buerck Parties invested $345,750 for 18,400 shares in the Debtor (the "Buerck Equity Interest"). The Trustee contends that, as further consideration under the initial subscription agreement, Mr. Buerck was appointed to the Debtor's Board of Directors for a five-year term; Mr. Buerck disputes that he was ever appointed to the Debtor's Board of Directors.

In addition to the Buerck Equity Interest, some of the Buerck Parties also extended loans to the Debtor at the request of Mr. Chapin. Between June 14, 2016 and July 21, 2017, some of the Buerck Parties loaned a total of $305,000 to the Debtor (the "Buerck Loans"). Between November 17, 2016 and October 27, 2017, the Debtor made approximately seven payments totaling $180,000 (the "Additional Cash Payments") to some of the Buerck Parties ostensibly in repayment of the Buerck Loans.

In 2016, Mr. Chapin offered to have the Debtor repurchase the Buerck Equity Interest. The Debtor agreed to buy back the Buerck Equity Interest on or about June 2, 2017, which was later amended on or about February 15, 2019, pursuant to a Share Purchase Agreement that provided for the Debtor to buy back the Buerck Equity Interest for $4,682,099.99 (the "Share Repurchase Price"). In February 2020, Mr. Buerck and Mr. Chapin agreed there would be 5% interest on any unpaid balance of the Share Repurchase Price, accruing from June 4, 2019 until paid in full. Between July 19, 2019 and April 30, 2020, the Debtor made ten payments to the Buerck Parties totaling $4,865,027.24 on account of the Share Repurchase Agreement.

In September 2020, on behalf of the Debtor, Mr. Chapin requested an additional loan from Mr. Buerck. On September 25, 2020, BB Lending wired $600,000 as a loan to the Debtor (the "BB Loan").

Shortly after receiving the BB Loan, the Debtor filed this bankruptcy case October 15, 2020.

On or about November 23, 2020, Mr. Chapin was arrested and charged in federal court with multiple counts of fraud in connection with a multi-million-dollar scheme to deceive the Debtor's investors and creditors (the "Criminal Case").

On April 8, 2021, BB Lending filed a proof of claim in the amount of $750,000 on account of the BB Loan, including $600,000 as principal and $150,000 as the financing fee plus interest, plus additional interest, attorneys' fees and costs (the "BB Lending Claim"). The BB Lending Claim asserts the debt is secured by "all of Debtor's accounts receivable" pursuant to BB Lending's loan agreement with the Debtor dated September 25, 2020.

On June 16, 2021, Mr. Chapin pled guilty to multiple charges in the Criminal Case.

In October 2021, the Trustee sent the Buerck Parties a draft complaint which sought to recover the Avoidance Claims under Bankruptcy Code §§ 547(b), 548(a), 550(a) and California Civil Code §3439.01 et seq. The Buerck Parties denied the allegations supporting the Avoidance Claims and asserted defenses to collection under Florida state law.

On October 28, 2021, the parties agreed to try to resolve their disputes regarding the Avoidance Claims through mediation. That mediation occurred on Tuesday, December 21, 2021, through JAMS and before the Honorable Randall J. Newsome (Ret.). Through the mediation, the parties reached a settlement and executed the Settlement Agreement memorializing their agreement.

**SETTLEMENT**
As set forth more fully in the Settlement Agreement,[1] the key terms of the settlement between the Trustee and the Buerck Parties, which is conditioned upon this Court's approval, are as follows:
- *Settlement Payment*. The Buerck Parties will pay the total sum of $1,500,000, paid in full within fourteen days after the latter of (i) the date the Order becomes final, and (ii) the receipt by Mr. Buerck of IRS Forms W-9 for the Estate.

---

[1] If there is a discrepancy between the Motion and the Settlement Agreement, the Settlement Agreement shall control.

- *Withdrawal of BB Lending Claim*. The BB Lending Claim in the sum of $750,000, as set forth above, will be withdrawn.
- *No Claims by Buerck Parties Against the Bankruptcy Estate*. The Buerck Parties, individually and collectively, agree that they waive any claim against the Estate.
- *Mutual Release.* The Estate and the Buerck Parties mutually release each other from all claims and obligation except those under the Settlement Agreement.
- *No admission of liability.* Nothing in the Settlement Agreement shall constitute or be construed as an admission of liability on behalf of the Trustee or the Buerck Parties.

An authentic copy of the Settlement Agreement is attached as Exhibit A to the Everett Declaration.

## STANDARD FOR APPROVAL OF A COMPROMISE

The Trustee believes that the settlement described above is in the best interest of the Estate and meets the standards of *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986); *cert. den. sub nom Martin v. Robinson*, 479 U.S. 854 (1986). Approval or rejection of the compromise is within the court's discretion. In considering the approval of the proposed compromise, the court must take into account the following factors:

(1) The probability of success in the litigation;
(2) The difficulty, if any, to be encountered in collection;
(3) The complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it; and
(4) The paramount interest of the creditors and a proper deference to their reasonable views.

**Probably of Success**

The Trustee's probability of establishing liability on his claims against the Buerck Parties is high, and thus this factor does not favor approval of the settlement. The evidence strongly supports the avoidance of some of the transfers received via actual fraud under a Ponzi scheme orchestrated by Mr. Chapin, who pled guilty to crimes related to his fraud in operating the Debtor and deceiving investors and lenders with fabricated accounts receivable and financial statements. Case law provides a presumption of actual fraud when, as here, there is a criminal plea establishing the elements of a Ponzi scheme and when the transfers were made in the course of such Ponzi scheme. Despite this presumption, the Trustee still bears the burden of establishing that the transfers made to the Buerck Parties were part of a Ponzi scheme orchestrated by Mr. Chapin.

The Trustee believes several of the transfers could also be avoided as preferences to insiders under Bankruptcy Code section 547(b)(4)(B), pursuant to which payments made to insiders within one year of the Petition Date may be avoided if made (i) for the benefit of a creditor, (ii) on account of an antecedent debt, and (iii) while the debtor was insolvent. The Trustee contends that the Buerck Parties qualify as "insiders" on account of Mr. Buerck's position as a Board Member of the Debtor, and on account of Mr. Buerck's relationships to the other Buerck Parties. Mr. Buerck, however, disputes that he was ever a Board Member of the Debtor, noting that he is not listed as a Board Member in any of the Debtor's corporate filings. Even if Mr. Buerck were not found to be a statutory insider of the Debtor by virtue of his alleged appointment to the Board, the Trustee believes that he would succeed in establishing that Mr. Buerck was a non-statutory insider who was not dealing with the Debtor at arms' length. Mr. Buerck disputes this argument. A potential weakness in the Trustee's insider preference claims is that the bulk of the payments at issue were made to TCA, and not to Mr. Buerck. The Buerck Parties argue that TCA was not an "insider," in which case the transfers would be outside the 90-day window applicable to non-insiders. The Trustee would seek to establish that TCA was either a transferee with liability under Bankruptcy Code section 550 or that it was the alter ego of Mr. Buerck. Alter ego claims are very fact intensive and, by nature, difficult to establish.

In contrast to the Avoidance Claims discussed above, as to which the Trustee believes he would readily establish liability under one or more theories, the Trustee believes the Buerck Parties have stronger defenses to the much smaller Additional Cash Payments (*i.e.* $180,000), in that these transfers appear to have been payments on

-3-

antecedent loans made by the Buerck Parties to the Debtor. If the Additional Cash Payments were payments on account of pre-exiting loans, then the Buerck Parties might argue the affirmative defense of being "a person who took in good faith and for a reasonably equivalent value...." The Trustee would dispute this defense.

On balance, the Trustee believes that his probability of establishing liability on his claims against the Buerck Parties, at least in the amount of $4,865,027.24, is strong. Thus, this factor does not favor approval of the Settlement Agreement.

**Difficulty in Collection**
The difficulty of collection element weighs heavily in favor of approval of the Settlement Agreement. Mr. Buerck, on behalf of himself and TCA, has provided evidence in support of strong defenses to collection of a judgment against them. Mr. Buerck is a Florida resident and his primary asset, his home, is protected by Florida's unlimited homestead exemption, as attested to by Mr. Buerck in a signed declaration setting forth the facts establishing the applicability of this exemption. Mr. Buerck also established via sworn testimony that his wages are exempt from attachment under Florida's head of household laws, as interpreted by case law. Finally, Mr. Buerck asserts that he holds most of his assets as tenants by the entireties with his wife, which, Mr. Buerck has asserted, prevents such assets from being used to satisfy the obligations of one of the spouses under Florida law. To be successful against the other Buerck Parties, the Trustee would have to prevail in claims of alter ego between them and, even then, would face additional difficulties in collection. In addition, the assets available for collection by parties other than Mr. Buerck are unclear. Although the Trustee is informed and believes that TCA owns real property located near Mr. Buerck's homestead property, online sources suggest that this TCA-owned property has a current value of approximately $500,000. Even assuming, *arguendo*, that the TCA-owned property is at present unencumbered, the value of the property is significantly less than the amount of the payment under the Settlement Agreement. In addition, to establish liability of TCA for transfers ultimately made to Mr. Buerck, the Trustee would have to establish that TCA is the alter ego of Mr. Buerck. If the Trustee succeeded in establishing alter ago and getting a judgment against TCA, there is nothing preventing TCA from in the meantime encumbering or transferring the real property between now, entry of judgment, and the Trustee's efforts to collect on the judgment. For these reasons, the Trustee anticipates significant difficulties in collecting from the Buerck Parties, who appear to be effectively judgment proof.

**Complexity, Expense, and Delay**
This factor strongly favors approval of the Settlement Agreement. The Trustee estimates that it would require at least $250,000 in attorneys' fees and costs to reach a judgment against the Buerck Parties on account of the Avoidance Claims. The Estate would then have to incur additional fees and costs to pursue collection against the Buerck Parties. For the reasons set forth above, it is highly unlikely that the Estate would recover much, if any, of the full $5,045,027.24 represented by the Avoidance Claims. In addition, any recovery would come at a significant cost, inconvenience, and delay to the Estate.

**Paramount Interest of Creditors**
This factor strongly favors settlement. The Settlement Payment alone represents a significant recovery on account of the Avoidance Claims—approximately 30%—without incurring the anticipated substantial costs to the Estate if these claims were to be litigated and the high risk that a judgment would be uncollectible. In addition, the withdrawal of the $750,000 BB Lending Claim is also significant consideration provided for the benefit of the Estate.

In summary, the Trustee submits the Settlement Agreement is fair and equitable, within the range of reasonableness, and, in the Trustee's reasonable business judgment, in the best interest of the Estate.

**WAIVER OF RULE 6004(h) AND RELATED STAY PROVISIONS**

The Motion also requests that the order granting the Motion provide: "This Order is effective upon entry, and the stay otherwise imposed by Rule 62(a) of the Federal Rules of Civil Procedure and/or Bankruptcy Rule 6004(h) shall not apply."

**PLEASE TAKE FURTHER NOTICE** that Local Rule 9014-1 of United States Bankruptcy Court for the Northern District of California prescribes the procedures to be followed with respect to any objection to the proposed settlement or any request for hearing thereon.

> Any objection to the requested relief, or a request for hearing on the matter, must be filed and served upon the initiating party within 21 days of mailing the notice;
>
> Any objection or request for a hearing must be accompanied by any declarations or memoranda of law any requesting party wishes to present in support of its position;
>
> If there is no timely objection to the requested relief or a request for hearing, the court may enter an order granting the relief by default.
>
> In the event of a timely objection or request for hearing, the initiating party will give at least seven days written notice of the hearing to the objecting or requesting party, and to any trustee or committee appointed in the case.

PLEASE TAKE FURTHER NOTICE that all interested parties should consult the Bankruptcy Court's website at http://canb.uscourts.gov for information about the Bankruptcy Court's operations during the COVID-19 pandemic. The Bankruptcy Court's website provides information regarding how to arrange a telephonic or video appearance. If you have question regarding how to appear at a court hearing, you may contact the Bankruptcy Court by calling 888-821-7606 or by using the Live Chat feature on the Bankruptcy Court's website.

PLEASE TAKE FURTHER NOTICE that as of January 1, 2005, electronic filing became mandatory in the United States Bankruptcy Court for the Northern District of California. Those persons who may wish to object but are not qualified to filed documents electronically with the Bankruptcy Court should check with the Bankruptcy Court's website (www.canb.uscourts.gov) for guidance.

Dated: January 6, 2022                      FINESTONE HAYES LLP

*Jennifer C. Hayes*
Jennifer C. Hayes
Attorneys for A. Kyle Everett, solely in his capacity as Chapter 7 Trustee of the Benja Incorporated bankruptcy estate

Jennifer C. Hayes (197252)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Tel. (415) 616-0466
Fax (415) 398-2820
jhayes@fhlawllp.com