Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Tel. (415) 616-0466
Fax (415) 398-2820
sfinestone@fhlawllp.com

Attorneys for Chapter 7 Trustee,
Kyle Everett

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>BENJA INCORPORATED,<br><br>    Debtor. | Case No. 20-30819-DM<br><br>Chapter 7<br><br>**FIRST INTERIM FEE APPLICATION OF COUNSEL FOR THE CHAPTER 7 TRUSTEE**<br><br>Date: September 30, 2022<br>Time: 10:30 a.m.<br>Ctrm: Tele/videoconference<br><br>*Please check www.canb.uscourts.gov for information regarding the Court's operations due to the COVID-19 pandemic.* |

Finestone Hayes LLP ("Applicant"), attorneys of record for Kyle Everett, Chapter 7 Trustee of the above-captioned bankruptcy estate, files its First Interim Fee Application for compensation and expense reimbursement and in support thereof represents as follows:

## I.

## INTRODUCTION

1.　**Debtor:** Benja Incorporated ("Benja" or the "Debtor") is a Delaware Corporation that filed for Chapter 11 bankruptcy relief on October 15, 2020 (the "Petition Date").

2.　**Appointment of Trustee**: The Trustee was appointed as the Chapter 11 trustee on November 3, 2020. The Chapter 11 case was converted to Chapter 7 on January 29, 2021,

1. and the Trustee was appointed as Chapter 7 Trustee.

2. 3. **Counsel Employment:** On November 18, 2020, the Court entered an Order Authorizing Employment of Counsel (Finestone Hayes LLP) authorizing Applicant to serve as the Trustee's counsel in the Chapter 11 bankruptcy estate (ECF 59). On September 7, 2022, the Court entered an order authorizing the employment of Trustee's counsel in the Chapter 7 bankruptcy case, retroactive to the date of conversion from Chapter 11 to Chapter 7. (ECF 115, 117).

4. **Prior Compensation:** None. This is Applicant's first application for fees and expenses, as to which Applicant seeks approval on an interim basis.

5. **Current Compensation:** During the course of representing the Trustee for the period of December 3, 2020, through August 24, 2022, Applicant performed the services described in this Application and in the time summaries attached to the supporting Declaration of Jennifer C. Hayes. Applicant also incurred the actual and necessary expenses itemized in the billing and expense summary attached to the supporting Declaration of Jennifer C. Hayes. Applicant has incurred fees to date totaling no less than $480,000 over the last two years; however, Applicant currently seeks interim fees of $313,777.50, primarily for services related to prosecution of the estate's litigation claims against Brett Buerck, entitles related to Mr. Buerck, and MHC Financial Services Inc. ("MHC"), as well as expenses totaling $7,563.87. The categories set forth in this Fee Application are limited to those relating to services provided in the prosecution of those claims.

6. **Compliance with Guidelines:** Applicant is in compliance with the Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees (the "Guidelines"). Lexis searches and expenses for which compensation are sought are charged at cost to the Applicant. The hourly rates charged by Applicant generally are no less favorable than those rates charged for non-court appointed services.

7. **2016 Compensation Statement:** Applicant has not agreed to share any compensation awarded with any other person and the source of any award authorized will be estate funds.

8.      **Project Billing:** In order to comply with the Court's guidelines regarding project billing, Applicant created categories for project billing purposes, which are identified on Applicant's time summaries attached to the Declaration. Applicant seeks fees in this First Interim Fee Application primarily related to services provided with respect to the Estate's claims against Brett Buerck and MHC, and the categories that relate to those claims are as follows: (i) 2004-Buerck; (ii) 2004-MHC; (iii) AP-Buerck; (iv) AP-MHC; (v) Complaint-MHC; (vi) Discovery MHC-ESI; (vii) Discovery-BB; (viii) Discovery-MHC; (ix) Mediation; (x) Motion-Buerck; (xi) Motion-MHC; (xii) Preference; and (xiii) Settlement.[1] The categories are highlighted in the time summaries submitted with the Application. As to categories for which Applicant seeks compensation, and which are in excess of the $20,000 category-limits generally established by the Guidelines, Applicant asserts that further breakdown of such categories is impracticable, in light of the extensive services required in connection with the prosecution of the estate's valuable and complex litigation claims against Mr. Buerck and MHC.

9.      **Funds on Hand:** Funds on hand as of September 6, 2022 total approximately $1,602,000. Other accrued expenses of administration include the commission of the Trustee, which is as set forth in the Trustee's concurrently filed fee application. It is feasible to make an interim payment to the Trustee and to Applicant, given the funds on hand and given that the expenses of administration are first-priority claims pursuant to 11 U.S.C. § 503(b)(2).

## II.

## BACKGROUND

Benja was a San Francisco-based e-commerce startup company founded by Andrew Chapin, who served as Benja's CEO from its founding until at least September 2020. Benja held itself out as a successful company that had agreements with various retailers such as Backcountry, Columbia Sportswear, Fanatics, New Balance, Nike, Patagonia, and Zappos, to drive consumer traffic to purchase goods from the retailers, with Benja ostensibly to be

---

[1] Categories for which Applicant does not currently seek fees on an interim basis include the following: (1) 2004; (2) 2004-Goode; (3) 341; (4) Admin; (5) Adv Proceeding; (6) Assets; (7) Claims; (8) Creditor Issues; (9) Discovery; (10) Employment; (11) Investigation; (12) Lit-Peters; (13) Litigation; (14) Motion; (15) Relief from Stay; and (16) UST.

compensated based on the number of impressions by consumers of Benja's advertising. Chapin falsely represented to creditors and investors that Benja generated millions of dollars in revenue and had large contracts with numerous well-known national companies to place advertisements for their excess inventory. In a plea agreement in his criminal case, Chapin admitted that Benja had no such contracts with or revenue from these companies. Chapin also admitted to forging contracts, fabricating or altering documents that reflected revenue, using falsified documents, impersonating corporate representatives, or causing their impersonation, to create the appearance of business relationships and profitmaking opportunities that did not exist in order to obtain additional financing.

Chapin sought out loans and investors for Benja, from which Chapin obtained funds to use for his personal expenses and benefit, to pay obligations that arose from earlier fraudulent transactions, and to conceal Benja's ongoing fraud. Other than *de minimis* legitimate business transactions, Chapin operated Benja as a fraudulent scheme wherein Benja made payments to creditors and earlier investors from the proceeds of later, fraudulently obtained loans and investments, rather than from profits of the putative underlying business venture. This pattern of using new money from later fraudulent transactions to fund the fulfillment of earlier obligations constitutes a Ponzi scheme. Benja's payments to creditors and investors, including Mr. Buerck, related entities, and MHC, were pursuant to a Ponzi scheme and not related to any legitimate business transaction, because in fact no such legitimate profitmaking business existed.

Benja incurred obligations for the purpose of acquiring funds necessary for the continuation of the fraud. Benja made transfers to creditors and investors with the purpose of concealing the ongoing fraud, to lull investors, creditors, and customers into a false sense that Benja was a legitimate business, to cause lenders and investors to continue to send money to Benja, and to prevent the Defendants and other lenders and investors from commencing legal action and/or complaining to law enforcement authorities.

The estate's principal assets are litigation claims against creditors and investors. Thus far, the Trustee has settled the estate's claims against Brett Buerck and related parties for $1,500,000, which settlement was approved by the Court (ECF 108), and which settlement

sums have been paid to the estate. The Trustee has prevailed in his motion for partial summary judgment against MHC for the avoidance and recovery of preferential transfers totaling approximately $3.1 million. (Adv. Proc. 21-3036, ECF 37). The Trustee still retains fraudulent transfer related claims against MHC as part the remaining complaint. The Trustee and MHC are attempting to set up a mediation to see if a resolution is possible.

To reiterate, Applicant has incurred fees to date totaling no less than $480,000 over the last two years; however, Applicant currently seeks interim fees primarily for services related to prosecution of the estate's litigation claims against Mr. Buerck and MHC. The categories set forth are limited to those relating to services provided in the prosecution of those claims.

## III.

## SERVICES RENDERED

**A.    2004 - Buerck**

Applicant drafted 2004 applications directed at an entity related to Mr. Buerck, called Taco Corporation of America ("Taco Corporation"), and for Mr. Buerck. Applicant communicated with opposing counsel regarding document productions and witness appearances for Mr. Buerck and Taco Corporation, and communicated with the Trustee regarding same. In connection with the document production component of the 2004 examination, Applicant reviewed, analyzed, and revised the draft stipulation for protective order and protective order, and communicated with opposing counsel regarding same. Applicant reviewed and analyzed documents in preparation for Mr. Buerck's 2004 examination. Applicant also reviewed and analyzed documents produced by Mr. Buerck, as well as Mr. Buerck's objections and privilege log. The examination ultimately did not proceed as the Trustee drafted a complaint based upon the documents obtained and then mediated the dispute with Mr. Buerck.

In performing the above services, Applicant spent 29.8 hours and believes $11,358 in fees is reasonable compensation therefor.

**B.    2004 - MHC**

Applicant drafted a 2004 application directed at MHC and communicated with counsel

for MHC regarding same. Applicant reviewed communications from the Court regarding the need to revise the order on the MHC application and Applicant revised same. Applicant communicated with creditors regarding the status of the MHC 2004 application, which was of particular interest to creditors, given the size of the estate's claims against MHC. Applicant communicated with MHC's counsel and creditors regarding MHC's document productions. Applicant also communicated with MHC's counsel and creditors' counsel regarding the scheduling of the 2004 examination of MHC, as creditor representatives attended the examination. Applicant reviewed and analyzed MHC's document production and prepared for its 2004 examination of MHC. Following the 2004 examination of MHC, Applicant communicated with creditors' counsel regarding the examination and MHC's testimony. Applicant also communicated with counsel for MHC regarding a potential 2004 examination of Andrew Chapin, and communicated with Mr. Chapin's criminal counsel re same.

In performing the above services, Applicant spent 32.5 hours and believes $17,489 in fees is reasonable compensation therefor.

### C. **AP- Buerck**

The time in this category generally relates to the research and development of theories of recovery against Mr. Buerck and related entity Taco Corporation, review of documents related thereto, legal research, and the drafting of an extensive and detailed complaint, which ultimately was not filed, because the parties successfully engaged in pre-litigation mediation. Specifically, the services provided in this category are described in the accompanying detailed billing records, and are summarized as follows:

Applicant drafted correspondence directed at Mr. Buerck's company Taco Corporation regarding a requested litigation hold. Applicant reviewed information and documents received from a former employee regarding Bitcoin and a loan to Benja from Mr. Buerck and/or his related entities. Applicant researched and analyzed the estate's possible litigation claims against Mr. Buerck and Taco Corporation. Applicant reviewed and analyzed documents produced by the Securities and Exchange Commission ("SEC") and their relevance to the estate's claims against Mr. Buerck and Taco Corporation. Applicant drafted a memorandum

regarding the estate's potential claims against Mr. Buerck and Taco Corporation.

In connection with the estate's evaluation of possible claims against Mr. Buerck and related entities, Applicant prepared for a meeting with, and met with, Mr. Chapin and his counsel. Applicant evaluated and analyzed the details of the business relationship and transfers between Mr. Buerck and Benja/Mr. Chapin. Applicant continued drafting a memorandum regarding the estate's possible claims and theories of recovery and, in connection with same, reviewed numerous documents.

Applicant drafted an extensive and detailed complaint against Mr. Buerck and Taco Corporation and conducted legal research in connection with same. Applicant undertook multiple revisions of the draft complaint and communicated with the Trustee regarding same. Applicant also communicated with the opposing counsel regarding same and regarding counsel's request to delay in the filing of the complaint to afford the parties time to try and settle the dispute prior to the commencement of litigation.

In performing the above services, Applicant spent 66 hours and believes $27,960.50 in fees is reasonable compensation therefor.[2]

**D.**    **AP- MHC**

Similar to the AP-Buerck category, the services provided by Applicant in the AP-MHC category generally relate to Applicant's review of documents, legal research, development of claims, and drafting of the complaint against MHC. Specifically, the services provided in this category are described in the accompanying detailed billing records, and are summarized as follows:

One of the issues repeatedly raised by MHC to the estate's preference claims was an argument that MHC had a first priority security interests against the Debtor's accounts receivable. This argument was based in part on MHC's contention that Busey Bank's first

---

[2] As to categories for which Applicant seeks compensation, and which are in excess of the Guidelines for the Northern District of California, which generally limit categories to $20,000, Applicant asserts that further breakdown of such categories is impracticable, in light of the extensive services required in connection with the prosecution of the estate's valuable and complex litigation claims against Mr. Buerck and MHC.

priority blanket lien against the Debtor's assets had been reconveyed. Applicant reviewed and analyzed Busey Bank's loan documents and communicated with Busey Bank and the Trustee re same. Applicant investigated the background facts regarding MHC's loan and events occurring around the time of same, including another potential lender's refusal to fund a loan to Benja.

Applicant researched, analyzed, and evaluated various theories of recovery against MHC and communicated with the estate's largest creditor, Busey Bank, regarding same. Applicant drafted a demand letter directed at MHC and communicated with the Trustee and MHC regarding same. Applicant communicated with MHC and the Trustee regarding MHC's response to the Trustee's demand letter and MHC's counteroffer. Applicant researched MHC's known and anticipated defenses and communicated with the Trustee regarding same. Applicant communicated with MHC's counsel regarding the discovery conference scheduled in the adversary proceeding and drafted a joint discovery plan. Applicant communicated with the Trustee and counsel for MHC regarding the draft discovery plan. Applicant communicated with the Trustee regarding the initial status conference in the MHC adversary proceeding.

Applicant reviewed and analyzed subpoenas issues by MHC to numerous third parties and communicated with the affected third parties regarding same.

Applicant communicated with the Trustee regarding the estate's litigation claims and case strategy, and communicated with the estate's creditors regarding status of the Trustee's claims against MHC.

Applicant drafted status conference statements and communicated with the Trustee regarding possible additional claims against MHC. Applicant evaluated MHC's extensive affirmative defenses to the Trustee's complaint. In connection with the Trustee's motion for partial summary judgment (discussed in more detail, *infra*), Applicant reviewed and analyzed MHC's opposition brief and evidentiary objections, and conducted legal research in connection with the Trustee's reply brief. Applicant also drafted objections to MHC's evidence in opposition to the Trustee's motion for partial summary judgment. Applicant prepared for the hearing on the Trustee's motion for summary judgment and communicated with estate creditors regarding the hearing.

Following the hearing on summary judgment, Applicant evaluated next steps in the litigation and communicated with the Trustee and opposing counsel re same.

In performing the above services, Applicant spent 100.30 hours and believes $48,667.50 in fees is reasonable compensation therefor.[3]

E. **Complaint - MHC**

This category primarily concerns some of Applicant's background research regarding the estate's claims against MHC, as well as drafting, reviewing, and revising the Trustee's complaint against MHC. Applicant also communicated with counsel for MHC regarding service of the summons and complaint, as well as MHC's answer to the complaint. In addition, Applicant drafted the Trustee's initial disclosures, reviewed MHC's initial disclosures, and analyzed MHC's answer to the Trustee's complaint.

In performing the above services, Applicant spent 24.1 hours and believes $12,598.50 in fees is reasonable compensation therefor.

F. **Discovery (Disc) MHC- ESI**

A significant issue in the Trustee's adversary proceeding against MHC was extensive electronically stored information and documents from and concerning Benja, which were (and are) in the Trustee's possession. MHC insisted such documents were relevant to its defense to the Trustee's complaint. Based on MHC's extensive and unwavering ESI discovery demands, the estate incurred considerable expense related to discovery. Applicant spent considerable time interacting with the separately retained ESI discovery service. Despite their considerable volume, the ESI ultimately did not lead to a successful defense by MHC to the Trustee's preference claim. The Trustee attempted to have his motion for partial summary judgment heard without MHC undertaking extensive discovery and ESI document review, but MHC prevailed in its efforts to conduct discovery prior to the hearing on summary judgment of the Trustee's preference claims. The extensive services provided by Applicant related to ESI issues are detailed in more particularity in the concurrently filed time records.

---

[3] See supra, footnote 2.

In performing the above services, Applicant spent 115.6 hours and believes $50,872.50 in fees is reasonable compensation therefor.[4]

### G. Discovery - BB

Applicant reviewed and analyzed numerous documents obtained from the SEC, in connection with preparation for the 2004 examinations of Mr. Buerck and Taco Corporation, as well as reviewed and analyzed documents received from Mr. Buerck. These documents were part of the SEC's independent investigation of Benja and Mr. Chapin and included various communications between Mr. Chapin and Mr. Buerck.

In performing the above services, Applicant spent 23.2 hours and believes $7,936.00 in fees is reasonable compensation therefor.

### H. Discovery - MHC

Applicant drafted, reviewed, revised, and propounded written discovery and drafted reviewed, and responded to MHC's written discovery. Applicant communicated with counsel for MHC regarding same and a stipulated protective order, which Applicant drafted, reviewed, and revised. Applicant communicated with Benja's investors regarding document subpoenas served by MHC on same. Applicant met and conferred with counsel for MHC regarding discovery disputes and drafted as well as responded to correspondence re same. Applicant drafted a letter to Chambers regarding the parties' discovery dispute and reviewed and analyzed MHC's response to same. Applicant identified and analyzed the facts in dispute in the MHC adversary proceeding, based on MHC's discovery responses and answer to the complaint. Applicant analyzed outstanding productions issues based on MHC's Requests for Production. Applicant communicated with the Trustee regarding various MHC discovery issues. Applicant identified the most problematic discovery requests by MHC in preparation for a continued status conference. Applicant evaluated whether factual issues in dispute could be further narrowed, based on MHC's responses to the Trustee's Requests for Admission. Applicant evaluated and analyzed third party productions to the estate, for review and production to

---

[4] See supra, footnote 2.

MHC. Applicant drafted and revised discovery trackers, for purposes of analysis of discovery issues.

In performing the above services, Applicant spent 94 hours and believes $43,279.50 in fees is reasonable compensation therefor.[5]

**I.     Mediation**

The estate's claims against Mr. Buerck and Taco Corporation were submitted to pre-litigation mediation, by agreement of the parties. This category primarily relates to that mediation.

Applicant communicated with JAMS regarding the mediation, including regarding the brief, mediation fees, and procedures. Applicant conducted legal research in connection with the Trustee's mediation brief and drafted same. Applicant communicated with opposing counsel and the mediator regarding the mediation, as well as had separate pre-mediation discussions with the mediator. Applicant reviewed and evaluated information from opposing counsel in connection with the mediation. Applicant communicated with the Trustee regarding the mediation brief and reviewed and revised same. Applicant reviewed and analyzed the Buerck parties' mediation statement in preparation for the mediation, and conducted further legal research regarding exemptions claimed by Mr. Buerck under Florida law. Applicant drafted a settlement agreement in advance of the mediation, prepared for, and attended the mediation, which resulted in a $1,500,000 settlement that was later approved by the Court upon notice to creditors.

In performing the above services, Applicant spent 69.2 hours and believes $32,256.00 in fees is reasonable compensation therefor.[6]

**J.     Motion-Buerck**

Following the Trustee's successful mediation with Mr. Buerck and Taco Corporation, Applicant drafted, reviewed, revised, and successfully prosecuted a motion for approval of compromise of controversy, and drafted the pleadings related thereto, including the supporting

---

[5] See supra, footnote 2.
[6] See supra, footnote 2.

declaration, notice, and order. Applicant also communicated with counsel for the Buerck parties regarding same, and regarding their comments on the drafts. The motion was granted, which resulted in a $1,500,000 settlement payment being made to the estate.

In performing the above services, Applicant spent 28.2 hours and believes $13,005.00 in fees is reasonable compensation therefor.

**K.** **Motion- MHC**

This category relates to the Trustee's motion for partial summary judgment on the estate's preference claims against MHC. This was an extensively briefed and hard-fought motion as it involved MHC's receipt of pre-petition transfers of approximately $3.1 million. MHC raised a number of defenses to the motion, which Applicant thoroughly researched and briefed.

In performing the services related to the Trustee's motion for partial summary judgment, which was granted in its entirety, and which resulted in an order in favor of the estate determining that preferential payments in the sum of $3,083,036.21 are avoidable and recoverable to the estate, Applicant spent 88.8 hours and believes $42,693.00 in fees is reasonable compensation therefor.

**L.** **Preference**

This category includes research and drafting performed in connection with preference claims that does not neatly fit into other categories. This includes researching and drafting a memorandum regarding substantive consolidation, reviewing a letter from MHC regarding the settlement demand for avoidance claims, and communications regarding the response to MHC's letter asserting a defense to preference claims.

In performing the above services, Applicant spent 2.1 hours and believes $742.50 in fees is reasonable compensation therefor.

**M.** **Settlement**

This category primarily relates to the settlement demand made by Applicant on behalf of the Trustee to the Buerck parties and to the negotiation of the schedule for the mediation between the Trustee and the Buerck parties and the related mediation agreement. This category

also relates to the discussions between the Applicant and counsel for the Buerck parties regarding the deadline for payment of the settlement sum and the parties' differing interpretations of same.

In performing the above services, Applicant spent 8.6 hours and believes $4,557.00 in fees is reasonable compensation therefor.

## IV. REIMBURSEABLE EXPENSES

Applicant seeks reimbursement of expenses in this Application totaling $7,563.87 for expenses incurred related to Court Call, deposition/ 2004 examination costs, Federal Express, filing fees, online computer research through LEXIS, travel, photocopies, postage, subpoena service fees, and transcripts. All expenses are billed at Applicant's costs. Applicant charges .20 per page for any printing/copying.

## V. ESTABLISHMENT OF FEES AND EXPENSES

"A compensation award based on a reasonable hourly rate multiplied by the number of hours actually and reasonably expended is presumptively a reasonable fee." *In re Manoa Finance Company*, 853 F.2d. 687 (9th Cir. 1988). Establishing a reasonable hourly rate requires consideration of market rates in the relevant community which are, in turn, at least partly a function of the type of services rendered and the lawyer's experience, skill and reputation. Applicant's services in this matter were performed by partners Stephen D. Finestone, Jennifer C. Hayes and associates/contract attorneys Amy Leitner, Johnson Lee, Kimberly Fineman, and Ryan A. Witthans. The hourly rates for Mr. Finestone and Ms. Hayes during the First Interim Application period were $525-$560 and the hourly rates for the associate and contract attorneys ranted from $350-$450.[7]

## VI. CONCLUSION AND PRAYER

In performing the services described above from December 3, 2020, through August 24, 2022, Applicant spent 682.9 hours performing services for the Trustee related to the Buerck and MHC litigation and incurred billable fees of $313,777.50. Applicant presently seeks interim

---

[7] Applicant's current hourly rates for partners is $600 and $400-$475 for associates and contract attorneys.

Case: 20-30819    Doc# 120    Filed: 09/09/22    Entered: 09/09/22 15:10:27    Page 13 of 14

allowance and payment of those fees as its reasonable compensation for its services, calculated on the basis of the hours and hourly rates listed in the billing records attached to the Declaration.

In performing its services during the same time period, Applicant incurred actual and necessary expenses of $7,563.87, as itemized in the attached expense itemization.

Applicant submits that these efforts are properly compensable pursuant to *In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir. 1985). Fees incurred in preparing this Fee Application are not included, as the fees were incurred after the Fee Application period; however, the fees for this Application will be included in a subsequent request and the total fees incurred in drafting Applicant's Fee Applications in this case will not exceed five percent of the total amount of such Fee Applications.

Based on the foregoing, Finestone Hayes LLP requests that this Court authorize allowance of fees and costs as follows:

1. Allow interim compensation for fees in the sum of $313,777.50 plus expense reimbursement in the sum of $7,563.87 for total interim compensation of $321,341.37 for the specified services rendered by Applicant for the period from December 3, 2020 through August 24, 2022.

2. Authorize the Trustee to disburse to Finestone Hayes LLP the sum of $321,341.37 representing those amounts noted in Paragraph 1 above.

3. Grant such other and further relief as may be appropriate under the circumstances.

Dated: September 9, 2022  FINESTONE HAYES LLP

/s/ Jennifer C Hayes
Jennifer C. Hayes
Attorneys for Kyle Everett, Chapter 7 Trustee