Stephen D. Finestone (SBN 125675)
Jennifer C. Hayes (SBN 197252)
Ryan A. Witthans (SBN 301432)
FINESTONE HAYES LLP
456 Montgomery St., 20th Floor
San Francisco, California 94104
Telephone No.: 415.414.0466
Fax No.: 415.398.2830
sfinestone@fhlawllp.com
jhayes@fhlawllp.com

Attorneys for Kyle Everett,
Trustee in Bankruptcy and Plaintiff

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>BENJA INCORPORATED, aka EPHE CORPORATION,<br><br>    Debtor. | Case No. 20-30819 DM<br>Chapter 7<br>Hon. Dennis Montali |
| KYLE EVERETT,<br>TRUSTEE IN BANKRUPTCY,<br><br>    Plaintiff,<br><br>v.<br><br>DANIEL IAN WEINER,<br><br>    Defendant. | Adversary Proceeding No.<br><br>**COMPLAINT FOR AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS; AIDING AND ABETTING FRAUD; VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200 et seq.; ACCOUNTING; TURNOVER; DISALLOWANCE OF ANY CLAIM TO BE FILED; AND DECLARATORY RELIEF** |

    1.    Plaintiff Kyle Everett, Trustee in Bankruptcy ("Plaintiff" or the "Trustee") of the estate of Benja Incorporated ("Benja" or the "Debtor"), aka EPHE Corporation ("EPHE"), files this adversary proceeding against Defendant Daniel Ian Weiner ("Defendant" or "Weiner"), and in support thereof alleges as follows:

    2.    Benja is a Delaware corporation that filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code on October 15, 2020 (the "Petition Date").

//

3. The Trustee was appointed as the Chapter 11 trustee on November 3, 2020. The Chapter 11 case was converted to Chapter 7 on January 29, 2021, and the Trustee was appointed as the Chapter 7 trustee.

## INTRODUCTION AND SUMMARY OF COMPLAINT

4. This adversary proceeding seeks the avoidance and recovery of transfers from Benja to Defendant and significant damages as a direct result of Defendant's participation in, conscious disregard of, and/or willful ignorance to their role in a fraudulent scheme that defrauded Benja's creditors and investors to obtain funds used for the personal expenses and benefit of its Chief Executive Officer ("CEO"), Andrew J. Chapin ("Chapin"), and Defendant himself.

5. Together with Chapin, Defendant intentionally defrauded Benja's creditors and investors, or knew or should have known that his conduct aided and abetted Chapin in perpetuating the fraudulent scheme in order to induce existing and prospective creditors and investors to provide Benja with additional funds necessary for the continuation of the fraud where no legitimate profitmaking business existed.

6. Plaintiff is informed and believes that Benja was a San Francisco-based e-commerce startup company founded by Chapin, who served as Benja's CEO from its founding until at least September 2020.

7. Plaintiff is informed and believes that EPHE, Chapin Labs, Affordable Jerseys, Coverage Gear, were all subsidiaries or affiliates of Benja, and/or were all owned and controlled by Chapin and operated in concert with uniformity of interest and as parts of Chapin's fraudulent scheme.

8. Plaintiff is informed and believes that Benja held itself out as a successful company that had agreements with various retailers such as Backcountry, Columbia Sportswear, Fanatics, New Balance, Nike, Patagonia, and Zappos, to drive consumer traffic to purchase goods from the retailers, with Benja ostensibly to be compensated based on the number of impressions by consumers of Benja's advertising.

9. Plaintiff is informed and believes that Defendant affirmatively participated in fraud against Benja's existing and prospective creditors and investors by impersonating representatives of

the companies with which Benja claimed to have business relationships, made materially false and fraudulent representations, and concealed material facts to induce creditors to extend loans to, and investors to invest in Benja.

10. Plaintiff is informed and believes that Defendant impersonated representatives of the companies with which Benja claimed to have business relationship repeatedly over the course of Defendant's employment at Benja and by Chapin's various ventures, at Chapin's request, and Defendant received payments from Chapin and/or Benja, in addition to his wages or salary, for his assistance in the fraud.

11. Plaintiff is informed and believes that Chapin falsely represented to creditors and investors that Benja generated millions of dollars in revenue and had large contracts with numerous well-known national companies to place advertisements for their excess inventory. Plaintiff is informed and believes that, in a plea agreement in his criminal case, Chapin admitted that Benja had no such contracts with or revenue from these companies. Plaintiff is further informed and believes that Chapin also admitted to forging contracts, fabricating or altering documents that reflected revenue, using falsified documents, impersonating corporate representatives, or causing their impersonation, to create the appearance of business relationships and profitmaking opportunities that did not exist in order to obtain additional financing.

12. Plaintiff is informed and believes that Chapin sought out loans and investment for Benja, from which Chapin obtained funds to use for his personal expenses and benefit, to pay obligations that arose from earlier fraudulent transactions, to pay Defendant for his assistance in perpetuating the fraudulent scheme, and to conceal Benja's ongoing fraud.

13. Plaintiff is informed and believes that, at all relevant times, and other than de minimis legitimate business transactions, Chapin operated Benja as a fraudulent scheme wherein Benja made payments to creditors and earlier investors from the proceeds of later, fraudulently-obtained loans and investments, rather than from profits of the putative underlying business venture. This pattern of using new money from later fraudulent transactions to fund the fulfillment of earlier obligations constitutes a Ponzi scheme. Because in fact no legitimate profitmaking business existed, the

payments made to Defendant could have only been made with funds supplied by the fraudulent scheme's creditors and investors.

14. Plaintiff is informed and believes that the transfer of Benja's property to Defendant was made as part of Benja's fraud, with the actual intent to hinder, delay, or defraud Benja's creditors. Plaintiff is informed and believes that Chapin caused the transfer of Benja's property to Defendant for his part in aiding and abetting the fraud by impersonating corporate representatives, making materially false and fraudulent representations, and concealing material facts to corroborate Chapin's misrepresentations about Benja's business and induce creditors and investors to provide Benja with new funds necessary for the continuation of the fraudulent scheme.

15. Plaintiff requests that this Court grant relief avoiding and recovering transfers in an amount according to proof, but totaling no less than $96,731.89, identified as the "Fraudulent Transfers" below, pursuant to 11 U.S.C. §§ 544, 548, 550 and California Civil Code § 3439.04 et seq. Plaintiff seeks judgment against Defendant for aiding and abetting fraud, and violation of California Business and Professions Code §§ 17200 et seq. Plaintiff seeks an accounting of the Fraudulent Transfers and turnover of property of the Debtor's bankruptcy estate. Plaintiff seeks the disallowance of Defendant's claim(s) under 11 U.S.C. § 502(d). Plaintiff also seeks relief declaring that Benja was operated as a Ponzi scheme.

**JURISDICTION AND VENUE**

16. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 151, 157(a), 157(b)(2) and 1334, and under Rule 5011-1 of the Bankruptcy Local Rules for the Northern District of California.

17. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (F), (H), and (O).

18. This Court is the proper venue for this adversary proceeding pursuant to 28 U.S.C. § 1409(a), because the Debtor's Chapter 7 case is pending in this judicial district.

19. Plaintiff consents to entry of a final order and/or judgment by this Court.

//

//

## PARTIES

20. Plaintiff is the duly appointed Chapter 7 trustee for the bankruptcy estate of Benja. The Trustee is duly authorized and empowered to pursue any and all claims of the Debtor's estate.

21. Plaintiff is informed and believes that Defendant is an individual residing in Rhode Island at 238 Mill Cove Road, Warwick, RI 02889.

## FACTUAL ALLEGATIONS

22. Plaintiff is informed and believes that Chapin and Defendant began a business relationship in or about March 2015, when Chapin hired Defendant as a producer on the "I'm Sure You're Busy" (working title) podcast.

23. Defendant's and Chapin's relationship developed into one of trust and confidence, which led to other professional opportunities for Defendant to work for Chapin's various ventures, including positions at EPHE, Chapin Labs, Affordable Jerseys, Coverage Sports, and Benja.

24. From at least November 2018 to in or about September 2020, Defendant was a Project Manager at Benja.

25. Plaintiff is informed and believes that, in 2018, Defendant received at least $57,500, purportedly as wages from Benja.

26. Plaintiff is informed and believes that, in 2020, Defendant received nonemployee compensation of at least $5,000 from Benja.

27. Plaintiff is informed and believes that, in Chapin's absence from Benja, Chapin directed existing and prospective creditors and investors to contact Defendant.

28. In December 2019, Chapin introduced Defendant to Brett Buerck ("Buerck"), an early investor who was seeking to have Benja buy out his stake in the company in an amount in excess of $4 million, and described Defendant as "boots on the ground and working to ensure smooth operations re: these financing activities." Chapin explained to Defendant that Buerck's "share sale is related to the close of these [financing] items."

29. In or about March and April 2020, Chapin was seeking an investment from a New York venture capital firm, which required reference calls with some of Benja's customers as part of its due diligence. Chapin provided the contact information purportedly for a senior manager at

Fanatics named Wade Tonkin ("Tonkin"). A representative of the investor spoke on the phone with whom he thought was Tonkin, and "Tonkin" gave Benja a positive reference. However, in reality, Chapin arranged for Defendant to impersonate Tonkin, and no representative of Fanatics participated on the call with the investor.

30. On April 22, 2020, Chapin e-mailed Defendant a "Fanatics Dossier" to prepare Defendant to impersonate Tonkin on a call with the investor. The e-mail contained information about Tonkin's position at Fanatics as well as fictitious information that Chapin wanted Defendant, pretending to be Tonkin, to communicate to the investor.

31. Plaintiff is informed and believes that, on the basis of Chapin's and Defendant's fraudulent statements and deceptions, the New York venture capital firm entered into an investment agreement with Benja, and it advanced $1 million to Benja on or about June 4, 2020. The agreement provided, among other things, that the investor would be entitled to share in Benja's revenue and a grant of warrants to purchase Benja's common stock. Chapin immediately used the money to pay back, in part, an earlier Benja creditor MHC Financial Services, Inc. ("MHC").

32. In connection with a factoring services agreement between Benja and MHC, which provided Benja with millions of dollars in funding that Chapin used, in large part, to "buy out" Buerck's shares in Benja, Chapin provided MHC with fraudulent invoices from Nike, Fanatics, Backcountry, and Patagonia. Plaintiff is informed and believes that, in July 2020, an employee from MHC contacted a senior manager at Fanatics to see if the approximately $1.5 million in invoices that Chapin claimed Benja had with Fanatics were real, and forwarded an e-mail supposedly between Chapin and Tonkin on April 3, 2020. In this purported April 3, 2020 e-mail, Defendant, pretending to be Tonkin, confirmed a Benja invoice. In the July 2020 exchange, the real Tonkin informed MHC that he did not write the April 3, 2020 e-mail and that the supposed contract between Benja and Fanatics that Chapin provided to MHC was "[t]otally fraudulent."

33. Defendant's participation in impersonating Tonkin, purportedly as a reference at Fanatics to corroborate Chapin's false and fraudulent representations and concealment of material facts, was persistent and ongoing. On July 27, 2020, Chapin arranged to have Defendant impersonate Tonkin again on another call with a Benja creditor or investor the following day, and

e-mailed Defendant another Fanatics "dossier" to prepare Defendant for the call. On July 28, 2020, prior to the call in which Defendant posed as Tonkin, Chapin and Defendant exchanged text messages in which Chapin provided Defendant with directions to impersonate Tonkin, and falsified documents to reference, including giving Defendant a fake e-mail address for "Tonkin" that Chapin created should creditors or investors need to follow up. Following the July 28, 2020 call in which Defendant pretended to be Tonkin, Defendant texted Chapin, "Uhhh every couple months huh?"

34. Plaintiff is informed and believes that Benja's creditors would not have extended it credit and its investors would not have invested funds in Benja had they known the truth and were aware of Chapin's and Defendant's fraud.

35. Defendant understood that Chapin would pay him for his assistance in perpetrating the fraud on Benja's investors and creditors. In text messages on July 27, 2020, when Chapin arranged for Defendant to impersonate Tonkin on a call the following day, Defendant acknowledged, "also 11k incumming" [sic]. Following the July 28, 2020 call, Chapin texted Defendant, "appreciate you" and "when $14k."

36. Defendant intentionally and voluntarily aided and abetted Chapin's fraud on Benja's existing and prospective creditors and investors for his own pecuniary gain. Following the July 28, 2020 call where Defendant pretended to be Tonkin, Defendant emphasized to Chapin via text messages: "good sh*t man" and "i'd follow you into nam" [sic]. (Expletive edited.)

37. Plaintiff is informed and believes that, including salary or wages, Defendant received the transfers of Benja's property from Benja's property from Benja or through Chapin's for Defendant's role in defrauding Benja's existing and prospective creditors and investors, in an amount according to proof, but totaling no less than $96,731.89 (collectively, the "Fraudulent Transfers").

38. Plaintiff is informed and believes that Benja and/or Chapin transferred Benja's property from Benja or through Chapin's accounts at Bank of America and Wells Fargo Bank, as follows:

| Date | Source | Amount |
|---|---|---|
| Tax Year 2018 (W-2) | Benja | $57,500.00 |
| 1/29/18 | BofA x4786 | $4,500 |
| 3/5/18 | Wells Fargo x7177 | $3,087.30 |
| 3/9/18 | Wells Fargo x7177 | $1,440.90 |
| 4/3/18 | Wells Fargo x7177 | $4,203.00 |
| 5/25/18 | Wells Fargo x8325 | $1,000.00 |
| 10/30/18 | Wells Fargo x7177 | $5,000.00 |
| Tax Year 2020 (1099-NEC) | Benja | $5,000.00 |
| | **Total:** | $81,731.20 |

39. Plaintiff is informed and believes that, at some point, Chapin changed his methods for paying Defendant for his assistance in perpetrating the fraudulent scheme, including by making a Venmo payment of $1,000.69 to Defendant on January 6, 2020.

40. Plaintiff is informed and believes that Chapin also paid Defendant in the form of cryptocurrency, including the $14,000.00 payment for Defendant's role in impersonating Tonkin on the July 28, 2020 call with Benja's creditor or investor. Following the July 28, 2020 call, Defendant provided Chapin with his crypto wallet address at 38Z8n8mmo8toG4tcbke5yxo5che1JA6EVB for payment and joked about padding his "sats" (or satoshis, a unit of Bitcoin).

**FIRST CLAIM FOR RELIEF**
**Avoidance of Actual Intent Fraudulent Transfers**
**11 U.S.C. § 548(a)(1)(A)**

41. Plaintiff realleges each and every allegation set forth above, and incorporates them by reference.

42. The Debtor presently has one or more creditors whose claim arose either before or after the Fraudulent Transfers to Defendant.

43. The Debtor made the Fraudulent Transfers to Defendant within two years before the Petition Date.

44. The Fraudulent Transfers were transfers of an interest of the Debtor in property, and were made with actual intent to hinder, delay, or defraud any entity to which the Debtor was indebted or became indebted on or after the date the transfer(s) was made. *See Hayes v. Palm Seedlings Partners-A (In re Agric. Research & Tech. Grp., Inc.)*, 916 F.2d 528, 535 (9th Cir. 1990) ("[T]he

debtor's actual intent to hinder, delay or defraud its creditors may be inferred from the mere existence of a Ponzi scheme … that knowledge that a transaction will operate to the detriment of creditors is sufficient for actual intent") (internal citations omitted).

45. Defendant is the party for whose benefit the Fraudulent Transfers were made, and such transfers are avoidable under 11 U.S.C. §§ 544, 548, 550 and California Civil Code § 3439.04 et seq.

46. The aggregate amount of the Fraudulent Transfers may be in excess of the above-stated amount, and Plaintiff seeks avoidance and recovery of any and all additional transfers made as a part of the scheme.

Based on the foregoing, Plaintiff requests judgment as set forth below.

## SECOND CLAIM FOR RELIEF
### Avoidance of Actual Intent Fraudulent Transfers
### 11 U.S.C. § 544(b), California Civil Code § 3439.04(a)(1) et seq.

47. Plaintiff realleges each and every allegation set forth above, and incorporates them by reference.

48. The Debtor presently has one or more creditors whose claim arose either before or after the Fraudulent Transfers to Defendant.

49. Defendant incurred the Fraudulent Transfers as detailed above.

50. The Debtor made the Fraudulent Transfers to Defendant within four years before the Petition Date.

51. The Fraudulent Transfers were transfers of an interest of the Debtor in property, and were made with actual intent to hinder, delay, or defraud any entity to which the Debtor was indebted or became indebted on or after the date the transfer(s) was made. *See Hayes v. Palm Seedlings Partners-A (In re Agric. Research & Tech. Grp., Inc.)*, 916 F.2d 528, 535 (9th Cir. 1990) ("[T]he debtor's actual intent to hinder, delay or defraud its creditors may be inferred from the mere existence of a Ponzi scheme … that knowledge that a transaction will operate to the detriment of creditors is sufficient for actual intent") (internal citations omitted).

52. Defendant is the party for whose benefit the Fraudulent Transfers were made, and such transfers are avoidable under 11 U.S.C. §§ 544, 548, 550 and California Civil Code § 3439.04 et seq.

53. The aggregate amount of the Fraudulent Transfers may be in excess of the above-stated amount, and Plaintiff seeks avoidance and recovery of any and all additional transfers made as a part of the scheme.

Based on the foregoing, Plaintiff requests judgment as set forth below.

### THIRD CLAIM FOR RELIEF
**Avoidance of Constructive Fraudulent Transfers**
**11 U.S.C. § 548(a)(1)(B)**

54. Plaintiff realleges each and every allegation set forth above, and incorporates them by reference.

55. The Debtor presently has one or more creditors whose claim arose either before or after the Fraudulent Transfers to Defendant.

56. The Debtor made the Fraudulent Transfers to Defendant within two years before the Petition Date and the Fraudulent Transfers were transfers of an interest of the Debtor in property.

57. The Debtor received less than a reasonably equivalent value in exchange for the Fraudulent Transfers.

58. The Debtor made the Fraudulent Transfers at a time when the Debtor (a) was insolvent on the date(s) that the Fraudulent Transfers were made, or became insolvent as a result of the Fraudulent Transfers; (b) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; (c) intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured; or (d) made the Fraudulent Transfers to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

59. Defendant is the party for whose benefit the Fraudulent Transfers were made, and such transfers are avoidable under 11 U.S.C. §§ 544, 548, 550 and California Civil Code § 3439.04 et seq.

60. The aggregate amount of the Fraudulent Transfers may be in excess of the above-stated amount, and Plaintiff seeks avoidance and recovery of any and all additional transfers made as a part of the scheme.

Based on the foregoing, Plaintiff requests judgment as set forth below

**FOURTH CLAIM FOR RELIEF**
**Avoidance of Constructive Fraudulent Transfers**
**11 U.S.C. § 544(b), California Civil Code § 3439.04(a)(2) et seq.**

61. Plaintiff realleges each and every allegation set forth above, and incorporates them by reference.

62. The Debtor presently has one or more creditors whose claim arose either before or after the Fraudulent Transfers to Defendant.

63. The Debtor made the Fraudulent Transfers to Defendant within four years before the Petition Date and the Fraudulent Transfers were transfers of an interest of the Debtor in property.

64. The Debtor received less than a reasonably equivalent value in exchange for the Fraudulent Transfers.

65. The Debtor made the Fraudulent Transfers at a time when the Debtor (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or (b) intended to incur, or believed or reasonably should have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as they became due.

66. Defendant is the party for whose benefit the Fraudulent Transfers were made, and such transfers are avoidable under 11 U.S.C. §§ 544, 548, 550 and California Civil Code § 3439.04 et seq.

67. The aggregate amount of the Fraudulent Transfers may be in excess of the above-stated amount, and Plaintiff seeks avoidance and recovery of any and all additional transfers made as a part of the scheme.

Based on the foregoing, Plaintiff requests judgment as set forth below.

## FIFTH CLAIM FOR RELIEF
### Liability of Transferee of Avoided Transfers
### 11 U.S.C. § 550(a)

68. Plaintiff realleges each and every allegation set forth above, and incorporates them by reference.

69. To the extent that the Fraudulent Transfers are avoided under 11 U.S.C. §§ 544 or 548, Plaintiff may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (a) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (b) any immediate or mediate transferee of such initial transferee.

70. Defendant is the party for whose benefit the Fraudulent Transfers were made, and such transfers are avoidable under 11 U.S.C. §§ 544, 548, 550 and California Civil Code § 3439.04 et seq.

Based on the foregoing, Plaintiff requests judgment as set forth below.

## SIXTH CLAIM FOR RELIEF
### Aiding and Abetting Fraud

71. Plaintiff realleges each and every allegation set forth above, and incorporates them by reference.

72. Defendant knew that a fraud was being and/or going to be committed by Chapin against Benja and its creditors and investors;

73. Defendant gave substantial assistance or encouragement to Chapin in committing the fraud; and

74. Defendant's conduct was a substantial factor in causing harm to Benja and its creditors and investors.

Based on the foregoing, Plaintiff requests judgment as set forth below.

## SEVENTH CLAIM FOR RELIEF
### Violation of California Business and Professions Code §§ 17200 et seq.

75. Plaintiff realleges each and every allegation set forth above, and incorporates them by reference.

76. California Business and Professions Code § 17200 prohibits unfair competition, meaning any unlawful, unfair, or fraudulent business act or practice.

77. As described above, Chapin and Defendant participated in and perpetuated a Ponzi or similar fraudulent scheme by engaging in acts that include, but are not limited to making false and fraudulent representations to Benja's existing and prospective investors and concealing material facts about Benja's finances to induce these parties to provide Benja additional funds, to pay obligations that arose from earlier fraudulent transactions and for Chapin's and Defendant's own benefit, and to continue and conceal the fraud.

78. Defendant aided and abetted the perpetuation of the Ponzi scheme by impersonating representatives of the companies with which Benja claimed to have business relationships, made materially false and fraudulent representations, and concealed material facts to corroborate Chapin's fraud and induce creditors and investors to provide Benja with additional funds. Such acts are *per se* fraudulent business practices.

79. Each and every separate act in violation of these statutory provisions constitutes a separate unlawful or unfair "business act or practice" of Business and Professions Code §§ 17200 et seq.

Based on the foregoing, Plaintiff requests judgment as set forth below.

**EIGHTH CLAIM FOR RELIEF**
**Accounting**

80. Plaintiff realleges each and every allegation set forth above, and incorporates them by reference.

81. Plaintiff is currently unaware of the full extent or amount of all payments and transfers made by the Debtor to or for the benefit of Defendant during the four-year period before the Petition Date. The Trustee is entitled to an accounting of all transfers of the Debtor's property to Defendant during that time period.

82. To the extent that the accounting establishes that there are transfers to Defendant additional to the amounts specified above, Plaintiff seeks to avoid and recover the transfers under 11 U.S.C. §§ 544, 548, 550 and California Civil Code § 3439.04 et seq.

Based on the foregoing, Plaintiff requests judgment as set forth below.

### NINTH CLAIM FOR RELIEF
### Turnover

83. Plaintiff realleges each and every allegation set forth above, and incorporates them by reference.

84. Plaintiff is informed and alleges that Defendant is in possession, custody, or control of property of the Debtor's bankruptcy estate, the full extent or amount of which is currently unknown to Plaintiff.

85. The property described in the preceding paragraph is property of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 541, and the Trustee is entitled to turnover and immediate possession of the property under 11 U.S.C. § 542. Defendant has not turned over any property to the Trustee.

Based on the foregoing, Plaintiff requests judgment as set forth below.

### TENTH CLAIM FOR RELIEF
### Disallowance of Claim
### 11 U.S.C. § 502(d)

86. Plaintiff realleges each and every allegation set forth above, and incorporates them by reference.

87. Plaintiff objects to any claim or claims which Defendant has filed or may file or has asserted or may assert in this bankruptcy case unless Defendant has paid the amount, or turned over any such property, for which Defendant is liable under 11 U.S.C. § 550.

Based on the foregoing, Plaintiff requests judgment as set forth below.

### ELEVENTH CLAIM FOR RELIEF
### Declaratory Relief

88. Plaintiff realleges each and every allegation set forth above, and incorporates them by reference.

89. Plaintiff alleges that Benja was operated as a Ponzi scheme.

90. To the extent Defendant disputes this contention, an actual controversy exists between Plaintiff and Defendant concerning whether Benja was operated as a Ponzi scheme.

91. Plaintiff desires a judicial determination and declaration of whether Benja was operated as a Ponzi scheme. Such a judicial determination is necessary and appropriate to the extent a controversy exists between Plaintiff and Defendant.

Based on the foregoing, Plaintiff requests judgment as set forth below.

**REQUEST FOR RELIEF**

Based on the foregoing, Plaintiff respectfully requests that the Court enter judgment, as follows:

    A. For judgment avoiding the Fraudulent Transfers to Defendant under 11 U.S.C. § 548(a)(1)(A).

    B. For judgment avoiding the Fraudulent Transfers to Defendant under 11 U.S.C. § 544(b) and California Civil Code 3439.04(a)(1).

    C. For judgment avoiding the Fraudulent Transfers to Defendant under 11 U.S.C. § 548(a)(1)(B).

    D. For judgment avoiding the Fraudulent Transfers to Defendant under 11 U.S.C. § 544(b) and California Civil Code 3439.04(a)(2).

    E. For judgment permitting the Trustee to recover the property transferred or the value of the avoided transfers in an amount to be proven at trial under 11 U.S.C. § 550(a).

    F. For judgment against Defendant for aiding and abetting fraud, awarding Plaintiff compensatory damages in an amount to be proven at trial, interest on that amount, and punitive damages pursuant to California Code of Civil Procedure § 3294.

    G. For judgment against Defendant for violation of California Business and Professions Code §§ 17200 et seq., awarding Plaintiff all remedies and penalties authorized by statute, including, without limitation, restitution, disgorgement, and other penalties for each illegal or fraudulent business act or practice, and attorneys' fees pursuant to statute and the Court's equitable powers, in an amount according to proof.

H. For judgment directing Defendant to account for all transfers made by Debtor, directly or through Chapin, during the four years before the Petition Date.

I. For judgment directing Defendant to turnover to the Trustee all property of the Debtor's bankruptcy estate in Defendant's possession, custody, or control.

J. For judgment against Defendant disallowing any and all of his claims in the estate until and unless Defendant has returned the avoidable transfers set forth above to the estate, and subordinating any and all such claims.

K. For declaratory judgment that Benja was operated as a Ponzi scheme with the actual intent to hinder, delay, or defraud its creditors and investors.

L. For reasonable attorneys' fees and costs of suit as allowed by law.

M. For pre-judgment and post-judgment interest as allowed by law.

N. For such other and further relief as the Court deems just and proper.

Dated: October 14, 2022        FINESTONE HAYES LLP

By: *Jennifer C. Hayes*
Jennifer C. Hayes
Attorneys for Kyle Everett, Trustee in Bankruptcy and Plaintiff