Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
Kimberly S. Fineman (184433)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Tel. (415) 616-0466
Fax (415) 398-2820
jhayes@fhlawllp.com

Attorneys for Chapter 7 Trustee
Kyle Everett

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 20-30819-DM |
| BENJA INCORPORATED, | Chapter 7 |
| Debtor. | **DECLARATION OF KYLE EVERETT IN SUPPORT OF CHAPTER 7 TRUSTEE'S MOTION TO APPROVE COMPROMISE OF CONTROVERSY WITH THOMAS PETERS** |
| | [No Hearing Unless Requested; Notice and Opportunity for Hearing Filed Pursuant to B.L.R. 9014-1(b)(3)] |

I, Kyle Everett, declare as follows:

1.    I am the duly appointed Chapter 7 Trustee of the bankruptcy estate (the "Estate") of Benja Incorporated (the "Debtor") in the above-captioned case (the "Bankruptcy Case"). I was appointed as the Chapter 11 Trustee in the Bankruptcy Case on November 3, 2020. On January 29, 2021, the Bankruptcy Case was converted to Chapter 7 and I was appointed as Chapter 7 Trustee.

2.    All statements in this declaration are based on my own personal knowledge and observation, or upon information and belief based upon my review of the court and records in

Case: 20-30819    Doc# 145-1    Filed: 02/03/23    Entered: 02/03/23 15:54:01    Page 1 of 12

1 | this case. If called to testify on this matter, I could and would competently testify to the matters
2 | set forth in this Declaration.

3 |     3.     I make this declaration in support of the concurrently filed Chapter 7 Trustee's
4 | Motion to Approve Compromise of Controversy with Thomas Peters (the "Motion"). The
5 | Motion seeks entry of an order approving the settlement agreement (the "Settlement Agreement")
6 | reached between myself as Trustee and Thomas Peters. The Settlement Agreement, an authentic
7 | copy of which is attached to this declaration as **Exhibit A**, resolves avoidable transfer claims I
8 | asserted on behalf of the Estate against Thomas Peters pursuant to the terms set forth in the
9 | Settlement Agreement.

10 |     4.     The recitals in the Settlement Agreement provide as follows, which I am informed
11 | and believe to be true:

12 |     a.   The Debtor was ostensibly an e-commerce advertising startup founded by
13 | Andrew Chapin ("Mr. Chapin") in 2014. Plaintiff is informed and believes
14 | that Peters was an investor in Benja pursuant to a Simple Agreement for
15 | Future Equity (the "2019 SAFE") entered into on or about December 16,
16 | 2019, in the amount of $50,000 for the right to certain shares of Benja's capital
17 | stock. On or about September 14, 2020, Benja entered into a Simple
18 | Agreement for Future Equity (the "2020 SAFE") with Peters, pursuant to
19 | which Peters purchased the right to certain shares of Benja's capital stock for
20 | $500,000. Plaintiff is informed and believes that on or about September 18,
21 | 2020, Peters made a wire transfer to Benja in the amount of $250,000 pursuant
22 | to the 2020 SAFE. In a text message sent on September 17, 2020, Defendant
23 | explained that he would send the balance of the $500,000 investment after he
24 | converted other securities to cash.

25 |     b.   On September 22, 2020, Chapin e-mailed Defendant the following: "Given
26 | how much has changed in a material way, we will offer an opportunity to un-
27 | wind your [2020] SAFE agreement, repurchasing for the full value that has
28 | been sent ($250,000.00)."

Case: 20-30819    Doc# 145-1    Filed: 02/03/23    Entered: 02/03/23 15:54:01    Page 2 of 12

1    c.   Chapin personally went to the bank (Chase Bank) and caused Benja to transfer

2         the sum of $250,000 and additional amounts to Chapin's personal account at

3         JPMorgan Chase Bank, N.A., on or about September 25, 2020, and then

4         immediately wired $250,000 from Chapin's account to Defendant's account

5         at US Bank/RBC Capital Markets (the "Transfer").

6    5.    For the reasons stated below, I believe in my reasonable business judgment that

7    the Settlement Agreement fulfills the *A & C Properties* factors set forth in the accompanying

8    Motion.

9    6.    **Probability of Success**.  The probability of my establishing liability on the

10   bankruptcy estate's claims against Mr. Peters is high, and thus this factor does not favor approval

11   of the Settlement Agreement.  The evidence strongly supports the avoidance of the entirety of

12   the $250,000 transfer from Benja to Mr. Peters, which was within the 90-day preference period,

13   and which enabled Mr. Peters to receive more than he would otherwise.   I assert that, because

14   Mr. Peters' preference liability is clear, I would win on summary judgment on the Estate's

15   preference claim, and thus, would not need to incur the expense of establishing the Estate's

16   fraudulent transfer claims.  Because the probability of success is high this factor does not favor

17   approval of the Settlement Agreement.

18   7.    **Difficulty of Collection.**  The difficulty of collection element, on the other hand,

19   weighs strongly in favor of approval of the Settlement Agreement.  Mr. Peters has provided

20   evidence in support of a likely inability to pay a $250,000 judgment against him.  Mr. Peters

21   provided various financial statements, indicating significant financial problems, including large

22   debts to creditors who have priority over the estate's claims.  For this reason, I anticipate I would

23   have significant difficulties in collecting from Mr. Peters, who appears to be unlikely to a pay a

24   $250,000 judgment, except possibly out of future wages, which may be garnished by one or more

25   creditors.

26   8.    **Complexity of Litigation, Expense, Inconvenience, and Delay.**  This factor also

27   strongly favors approval of the Settlement Agreement.  Although the litigation is not complex, I

28   estimate that it would require no less than $50,000 in attorneys' fees and costs to reach a judgment

against Mr. Peters on account of the Estate's preference claim. The Estate would then have to incur additional fees and costs to pursue collection against Mr. Peters. For the reasons set forth above, it is highly unlikely that the Estate would recover much, if any, of the full $250,000 represented by the Transfer. In addition, any recovery would come at a material expense, inconvenience, and delay to the Estate.

9. **Paramount Interest of Creditors.** Finally, the paramount interest of creditors strongly favors settlement. The settlement Payments totaling $160,000 would represent a significant recovery on account of the Avoidance Claims—approximately 64%—without incurring the additional fees and costs to the Estate if these claims were to be litigated and the high risk that a judgment would be uncollectible. I have explained the terms of the settlement to the large creditors in the case, including an explanation of the collection issues noted above. I am informed and believe that these creditors are in support of the proposed settlement.

10. In summary, I submit the Settlement Agreement is fair and equitable, within the range of reasonableness, and, in my reasonable business judgment as the Trustee, in the best interest of the Estate.

I declare under penalty of perjury under the laws of the United States, that the foregoing is true and correct. Executed in Fresno County, California on February 3, 2023.

*Kyle Everett*

Kyle Everett, Solely in my Capacity as Chapter 7 Trustee of the Benja Incorporated Bankruptcy Estate

# Exhibit A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into on the last date set forth on the signature pages below ("Execution Date"), by and between Kyle Everett, in his capacity as the Chapter 7 Trustee for the bankruptcy estate (the "Bankruptcy Estate") of Benja Incorporated ("Trustee" or the "Plaintiff") on the one hand, and Thomas B. Peters ("Peters" or "Defendant") on the other hand. For purposes of this Agreement, Trustee and Peters may be referred to individually as a "Party" and together as the "Parties."

## RECITALS

A. Benja Incorporated, aka EPHE Corporation, a Delaware corporation, was ostensibly an e-commerce advertising startup founded by Andrew Chapin ("Chapin") in 2014.

B. Plaintiff is informed and believes that Peters was an investor in Benja pursuant to a Simple Agreement for Future Equity (the "2019 SAFE") entered into on or about December 16, 2019, in the amount of $50,000 for the right to certain shares of Benja's capital stock.

C. On or about September 14, 2020, Benja entered into a Simple Agreement for Future Equity (the "2020 SAFE") with Peters, pursuant to which Peters purchased the right to certain shares of Benja's capital stock for $500,000. Plaintiff is informed and believes that on or about September 18, 2020, Peters made a wire transfer to Benja in the amount of $250,000 pursuant to the 2020 SAFE. In a text message sent on September 17, 2020, Defendant explained that he would send the balance of the $500,000 investment after he converted other securities to cash.

D. On September 22, 2020, Chapin e-mailed Defendant the following: "Given how much has changed in a material way, we will offer an opportunity to un-wind your [2020] SAFE agreement, repurchasing for the full value that has been sent ($250,000.00)."

E. Plaintiff is informed and believes that Chapin personally went to the bank (Chase Bank) and caused Benja to transfer the sum of $250,000 and additional amounts to Chapin's personal account at JPMorgan Chase Bank, N.A., on or about September 25, 2020, and then immediately wired $250,000 from Chapin's account to Defendant's account at US Bank/RBC Capital Markets (the "Transfer").

F. Benja filed a voluntary Chapter 11 case on October 15, 2020 (the "Bankruptcy Case") in the Bankruptcy Court for the Northern District of California ("Bankruptcy Court"), Case No. 20-30819 (the "Bankruptcy Estate"). The Bankruptcy Court granted a motion by creditor Busey Bank to appoint a Chapter 11 trustee in the Bankruptcy Case on October 26, 2020. Kyle Everett was appointed as the Chapter 11 Trustee in the Bankruptcy Case on November 3, 2020.

G. On January 15, 2021, the Trustee moved to convert the case to Chapter 7. An order converting the bankruptcy case to Chapter 7 was entered on January 29, 2021. Mr. Everett was appointed as Chapter 7 Trustee.

H. On November 13, 2021, the Trustee filed an adversary proceeding complaint against

1

DocuSign Envelope ID: 16521A81-B193-4A18-BF9D-C19E290AA857

Peters, Adv. Proc. No. 21-03060 (the "Adversary Proceeding"). On March 7, 2022, the Trustee filed an amended complaint in the Adversary Proceeding (the "Amended Complaint") seeking to avoid and recover the Transfer. Through the Amended Complaint, the Trustee asserts that the Transfer is recoverable as preferential pursuant to Section 547 and as avoidable pursuant to Section 548.

I.  On February 15, 2022 and March 30, 2022, Peters filed an answer to, respectively, the complaint and the amended complaint, denying the Trustee's allegations.

J.  The Parties have since reached a settlement and by virtue of this Agreement, the Parties desire to fully and completely resolve this dispute in good faith, and to settle all claims, defenses, and/or counterclaims that were asserted or that could have been asserted by and between the Parties.

**AGREEMENT**

In consideration of the promises and the mutual covenants of the Parties stated in this Agreement, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.  **Bankruptcy Court Approval**. This Agreement is subject to the approval of, and is of no force or effect until approved by, the Bankruptcy Court. In connection with obtaining approval of the Bankruptcy Court, within 30 business days of the full execution of this Agreement, Trustee shall file a motion under Rule 9019 of the Federal Rules of Bankruptcy Procedure and provide notice of that motion, as required by Rule 2002 of the Federal Rules of Bankruptcy Procedure. All Parties agree to cooperate, as required, in obtaining approval of such motion. This Agreement shall become effective on the date the order of the Bankruptcy Court approving this Agreement ("Order") becomes final (the "Effective Date"). The Parties hereto agree to a waiver of the 14-day stay as set forth in Bankruptcy Rule 6004 with respect to the effectiveness of the Order.

2.  **Terms**. In full and final settlement of the claims alleged in the Amended Complaint, including without limitation all claims that were asserted or which could have been asserted in the Amended Complaint, the Parties agree as follows:

> 2.1. **Settlement Payments**. Peters will pay to the Trustee the total sum of $160,000 (the "Settlement Payments") according to the following schedule: (a) $15,000 within 15 days after the entry of the Order; (b) $15,000 by no later than June 30, 2023; and (c) $130,000 by no later than July 31, 2024. The Settlement Payments shall be made by check payable to "Kyle Everett, Chapter 7 Trustee for Benja Incorporated" and shall be delivered to Finestone Hayes LLP, located at 456 Montgomery Street, 20th Floor, San Francisco, California 94104, or such other address as the Trustee may designate in writing. Upon receipt of the Settlement Payments (i.e. $160,000) the Trustee and Peters shall file in the Adversary Proceeding a stipulated request to dismiss the Adversary Proceeding with prejudice, with each Party to bear its own fees and costs.

> 2.2 **Reporting Requirements**. Until Peters has fully satisfied his obligations under this

2

DocuSign Envelope ID: 16521A81-B193-4A18-BF9D-C19E290AA857

Agreement, Peters shall file his federal and state tax returns by the deadline or extended deadline for doing so and, within ten days of filing, shall provide to the Trustee unredacted, signed copies of such tax returns (together, the "Tax Returns"). The Tax Returns shall be delivered to the Trustee by electronic copy (keveretti@dsiconsulting.com) or by delivery to the Trustee at Development Specialists, Inc., 150 Post Street, Suite 400, San Francisco, CA 94108. In addition to the Tax Returns, Peters shall provide a personal financial statement (the "Financial Statement") within 45 days after the conclusion of every year, beginning with the year ending on December 31, 2022 and continuing until the Settlement Payments are completed. The Financial Statements shall be signed by Peters under penalty of perjury. The Trustee shall keep the information provided in connection with these Reporting Requirements and shall not disclose them except if required in order to fulfill his duties as a trustee or in response to an Order of a Court.

2.3 **Default**. Upon default of any payment due under this Agreement (a "Payment Default"), the Trustee shall provide Peters notice of such default, via an email to Peters at tbp8000@gmail.com and to Peters' counsel, Michael St. James at Michael@stjames-law.com. If the Payment Default is not fully cured within fifteen calendar days of delivery of the notice of default, the Trustee may obtain a judgment in the Adversary Proceeding in the sum of $250,000 plus interest accrued from the Execution Date at the federal judgment rate, less credit for any payments made prior to default, by lodging a proposed judgment along with a declaration by the Trustee or his counsel establishing the uncured default and the amount of the judgment.

2.4 **No Claim by Peters Against the Bankruptcy Estate**. Peters agrees that he waives any claim against the Bankruptcy Estate.

3. **Release by Trustee.** Except as otherwise set forth in this Agreement, in consideration of the promises, covenants and agreements set forth herein and for other good and valuable consideration, Trustee, and his affiliates, successors and/or assigns, on behalf of the Bankruptcy Estate ("Plaintiff Releasor") hereby waives, remises, releases, acquits, satisfies, and forever discharges Peters, Peters' professionals, including but not limited to his attorneys and accountants, as well as his agents, representatives, predecessors, successors, spouses, and assigns of and from all manner of action and actions, cause and causes of action, suits, debts, sums of money, accounts, covenants, contracts, controversies, agreements, promises, trespasses, damages, judgments, executions, claims, and demands whatsoever, in law or in equity, with the exception of the Parties' obligations under this Agreement.

4. **Release by Peters**. Except as otherwise set forth in this Agreement, in consideration of the promises, covenants and agreements set forth herein and for other good and valuable consideration, Peters and his affiliates, successors, and/or assigns hereby waive, remise, release, acquit, satisfy, and forever discharge Trustee, Trustee's professionals, including but not limited to his attorneys and accountants, and the Bankruptcy Estate, as well as their agents, representatives, predecessors, successors, spouses, and assigns of and from all manner of action and actions, cause and causes of action, suits, debts, sums of money, accounts, covenants, contracts, controversies, agreements, promises, trespasses, damages, judgments, executions, claims, and demands

Case: 20-30819   Doc# 145-1   Filed: 02/03/23   Entered: 02/03/23 15:54:01   Page 8 of 12

whatsoever, in law or in equity, with the exception of the Parties' obligations under this Agreement.

5. **Release of Unknown Claims.** The Parties specifically waive and relinquish all rights and benefits afforded by Section 1542 of the California Civil Code, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Parties' waiver of all rights and benefits afforded by Section 1542 is done with their understanding and acknowledgement of the significance of such a specific waiver of Section 1542. Notwithstanding the provisions of Section 1542, and for the purpose of implementing a full and complete release and discharge of each and all the Parties hereto, the Parties expressly acknowledge that this Agreement is intended to include in its effect (without limitation) all claims the Parties know or suspects to exist in their respective favor, and all claims the Parties do not know or suspect to exist in their respective favor at the time each Party executes this Agreement, which contemplates the extinguishment of any such claims. This waiver also applies to any other relevant re-codification or similar laws implemented hereafter substantially covering the subject matter of Section 1542.

6. **Exclusion of Chapin From Releases**. Nothing in this Agreement, including without limitation the foregoing Releases, shall effect the release, modification or limitation of any claims that any of the Parties have against Andrew Chapin.

7. **Representations and Warranties**. Peters represents and warrants to Trustee that he is not aware of any third party or organization claiming to have or having any interest in the claims resolved by this Agreement and that he is the sole owner and holder of the claims released herein and is authorized to execute this Agreement on his own behalf. Additionally, Peters represents and warrants to Trustee that he has not assigned, hypothecated, or otherwise transferred any interest in the claims and causes of action resolved by this Agreement. Peters further represents and warrants to Trustee that he is not aware of any third party or organization which has asserted or may assert a claim or lien against the proceeds of the settlement memorialized by this Agreement. Peters further represents and warrants that the personal financial information he provided to the Trustee during the case was materially accurate. Trustee represents and warrants that he is authorized to release all claims held by the bankruptcy estate, including any claim that Benja Incorporated or EPHE Corporation may have had prior to commencement of the bankruptcy proceedings.

8. **No Admission of Liability**. Nothing in this Agreement shall constitute or be construed as an admission of liability on behalf of Trustee or Peters, or their respective agents, affiliates, assigns, parents, successors, subsidiaries, and/or successors, or an admission as to the validity of the allegations in the Lawsuit. It is also understood and agreed to by the Parties that this Agreement does not constitute an order or finding of any violation of law related to fraudulent, manipulative, or deceptive conduct.

4

DocuSign Envelope ID: 16521A81-B193-4A18-BF9D-C19E290AA857

9. **Voluntary Agreement/Attorney Representation**. The Parties represent that in the execution and negotiation of this Agreement, they are represented by counsel of their choice and that said attorneys advised their respective clients with respect to the advisability of making the settlement and release provided herein and of executing this Agreement; or if they are not represented by counsel, that they had the opportunity to consult legal counsel of their own selection and the decision not to be represented by counsel is a decision that the Parties have freely made. The Parties further represent and warrant that they are fully aware of the terms contained in this Agreement, made any desired changes, and have voluntarily and without coercion, duress, or undue influence of any kind, entered into this Agreement and the documents executed in connection with this Agreement.

10. **No Third-Party Beneficiaries.** There are no third-party beneficiaries to this Agreement, and no claims are released other those expressly identified herein.

11. **Entire Agreement**. This Agreement constitutes the sole and entire agreement between the Parties and supersedes all prior and contemporaneous statements, promises, understandings or agreements, whether written or oral.

12. **Amendments**. This Agreement may be amended, modified or altered at any time upon the approval of the Parties; however, any such amendment must be in writing and signed by all Parties in order for such amendment to be of any force and effect.

13. **Partial Invalidity**. In the event that any provision of this Agreement is declared by any court of competent jurisdiction or any administrative judge to be void or otherwise invalid, all of the other terms, conditions and provisions of this Agreement shall remain in full force and effect to the same extent as if that part declared void or invalid had never been incorporated in the Agreement and in such form, the remainder of the Agreement shall continue to be binding upon the Parties.

14. **Survival**. All representations and warranties contained herein shall survive the execution and delivery of this Agreement, and the execution and delivery of any other document or instrument referred to herein.

15. **Applicable Law**. This Agreement shall be subject to and governed by the laws of the State of California, without regard to conflict of law rules.

16. **Attorneys' Fees and Costs**. In the event of a dispute regarding this Agreement and/or its terms, or the enforcement of this Agreement, including any post-default collection, the prevailing party in such dispute is entitled to reasonable attorneys' fees and costs. Unless otherwise provided in this Agreement, each of the Parties has agreed to bear his or its own attorneys' fees and costs with respect to the Lawsuit, and all claims made therein, and the preparation of any and all documents necessary to enter into this Agreement.

17. **Counterparts**. This Agreement may be signed and executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute

one Agreement.  Delivery of an executed counterpart of a signature page of this Agreement by facsimile or email shall be effective as delivery of an originally executed counterpart of this Agreement.

18.  **No Adverse Construction.**  The Parties acknowledge that this Agreement has been prepared by each of them through counsel.  In the event any part of this Agreement is found to be ambiguous, such ambiguity shall not be construed against any Party.

19.  **Agreement is Not Evidence**.  This Agreement shall not be used as evidence in any proceeding other than one to enforce this Agreement, or one seeking damages arising from a breach of this Agreement.

20.  **Authority**.  The Parties represent and warrant to each other that each is the sole and lawful owner of all right, title, and interest in and to every claim and other matter which each releases in this Agreement.  In the event that such representation is false, and any such claim or matter is asserted against either Party by anyone who is the assignee or transferee of such a claim or matter, then the Party who assigned or transferred such claim or matter shall fully indemnify, defend, and hold harmless the Party against whom such claim or matter is asserted and its successors from and against such claim or matter.

21.  **Further Assurances**. The Parties shall perform such further acts and things and execute and deliver such additional agreements, powers and instruments, as may reasonably be required or reasonably deem advisable to carry into effect the purposes of this Agreement.

22.  **Jury Waiver**. TO THE FULLEST EXTENT PERMITTED UNDER CALIFORNIA LAW, THE PARTIES HEREBY IRREVOCABLY WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT.

23.  **Choice of Forum; Personal Jurisdiction**.  Subsequent to the Effective Date, the Parties agree that any claim or dispute between them regarding the enforcement or interpretation of this Agreement must be resolved by the Bankruptcy Court.  The Parties expressly submit to the personal jurisdiction of the Bankruptcy Court for the purpose of litigating all such claims and disputes and consent to entry of final judgment by the Bankruptcy Court with respect to this Agreement and all related matters.

**BY SIGNING BELOW, THE PARTIES ACKNOWLEDGE THAT THEY HAVE READ AND UNDERSTAND THE TERMS OF THIS AGREEMENT AND EXPRESSLY CONSENT THERETO.**

The Parties have executed this Agreement as of the date set forth below.

DATED: _____1/31/2023_____          BENJA INCORPORATED

6

By: _____
DocuSigned by:
Kyle Everett
6CE32AEE77F94A4...

Name: Kyle Everett
Title: Chapter 7 Trustee

DATED: 1/31/23

_____
Thomas B. Peters

**APPROVED AS TO FORM:**

DATED: 1-31-23

Finestone Hayes LLP

By: _Stephen D. Finestone_
Name: Stephen D. Finestone, Attorneys for
the            Chapter 7 Trustee

DATED: 1-31-23

St. James Law, P.C.

By: _____
Name: Michael St. James, Attorneys for
Thomas B. Peters

7