Stephen D. Finestone (Cal. Bar No. 125675)
Jennifer C. Hayes (Cal. Bar No. 197252)
Ryan A. Witthans (Cal. Bar No. 301432)
FINESTONE HAYES LLP
456 Montgomery Street, Floor 20
San Francisco, CA 94104
Tel.:   (415) 481-5481
Fax:   (415) 398-2820
Email: sfinestone@fhlawllp.com
Email: jhayes@fhlawllp.com
Email: rwitthans@fhlawllp.com

Attorneys for A. Kyle Everett,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re BENJA INCORPORATED, *aka* EPHE CORPORATION,<br><br>　　　Debtor. | Case No. 20-30819-DM<br>Chapter 7<br>Hon. Dennis Montali<br><br>**CHAPTER 7 TRUSTEE'S MOTION TO APPROVE COMPROMISE OF CONTROVERSY WITH DANIEL IAN WEINER**<br><br><u>Hearing</u>:<br>*No hearing requested. Noticed pursuant to B.L.R. 9014-1(b)(3).*[1]<br><br>*Please visit www.canb.uscourts.gov for information regarding the Court's operations due to the COVID-19 pandemic.* |

　　　A. Kyle Everett (the "Trustee"), the duly appointed Chapter 7 trustee of the bankruptcy estate of the above-captioned debtor ("Benja"), hereby submits this motion (the "Motion") pursuant to § 105(a), Bankruptcy Rule 9019(a), and B.L.R. 9014-1(b)(3) for entry of an order

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure and "B.L.R." references are to the Bankruptcy Local Rules for the Northern District of California.

MOTION TO COMPROMISE CONTROVERSY　　　　　　　　　　　　　　　　　　　　　　　　　1

approving the settlement agreement (the "Settlement Agreement") reached between the Trustee and Daniel Ian Weiner ("Mr. Weiner"). This Motion is supported by the concurrently filed declaration of A. Kyle Everett ("Everett Decl.") and notice of opportunity for hearing.

## I. BACKGROUND

### A. Procedural Background

Benja is a Delaware corporation that filed a voluntary petition for Chapter 11 bankruptcy relief on October 15, 2020. BK 1.[2] The Trustee was appointed as the Chapter 11 trustee on November 3, 2020. BK 45. The case was converted to Chapter 7 on January 29, 2020, and the Trustee was appointed as the Chapter 7 trustee. BK 85, 86.

The Trustee filed an adversary proceeding complaint (the "Complaint") against Mr. Weiner on October 14, 2022. AP 1. Mr. Weiner filed his answer on December 19, 2022. AP 6.

### B. Factual Background

Benja was ostensibly an e-commerce and digital advertising company. Everett Decl. at ¶ 3. Andrew Chapin ("Mr. Chapin") served as Benja's chief executive officer from its founding until at least September 2020. *Id.*

Mr. Chapin entered into a criminal plea agreement in which he admitted to bank fraud, wire fraud, and securities fraud. *Id.* at ¶ 4.[3] The charges generally arose from, among other things, false statements and omissions about Benja's revenue, accounts receivable, and commercial dealings that were made to Benja's creditors, investors, and prospective investors to induce payments and/or investments. *Id.*

Mr. Weiner performed work for, and for the benefit of, Benja and Mr. Chapin beginning on or about January 15, 2018. *Id.* at ¶ 5. The Trustee's Complaint alleges, among other things, that (1) on multiple occasions between about April through July 2020, Mr. Weiner assisted Mr. Chapin's fraudulent scheme by impersonating representatives of companies with which Benja falsely claimed to have business relationships; (2) during this time, Mr. Weiner made materially

---

[2] "BK" references are to the docket in the main bankruptcy case and "AP" references are to the docket in Adv. Proc. No. 22-3018, *Kyle Everett v. Daniel Ian Weiner*.

[3] *Plea Agreement*, N.D. Cal. No. CR 21-00217-MMC, ECF 42.

MOTION TO COMPROMISE CONTROVERSY 2

false and fraudulent representations to creditors, investors, and prospective investors; (3) investors paid over $10 million to Benja following the date of Mr. Weiner's first impersonation, and at least some of these payments were induced in part by Mr. Weiner's fraud; and (4) Mr. Weiner received compensation specifically for these impersonation actions, as well as in the course of his employment generally. *Id.* Mr. Weiner disputes these allegations. *Id.*

The Complaint states claims for avoidance of fraudulent transfers, aiding and abetting fraud, violation of California Business and Professions Code §§ 17200 *et seq.*, and disallowance of claim, among other claims for relief. AP 1. Without admitting or determining any fault or liability whatsoever, the parties entered into the Settlement Agreement to settle all claims for relief between them. Everett Decl. at ¶ 6.

## II. SETTLEMENT AGREEMENT TERMS

As set forth more fully in the Settlement Agreement,[4] the key terms of the settlement reached between the Trustee and Mr. Weiner, which is conditioned upon this Court's approval, are as follows:

1. **Payment.** Mr. Weiner's payment of $13,200 to the bankruptcy estate of Benja.
2. **Effectiveness.** The effectiveness of the Settlement Agreement is subject to, and conditioned upon, the final approval of the Court. The Trustee shall move for such approval once payment is received from Mr. Weiner. If the Court does not approve the Settlement Agreement, the Trustee shall keep $2,500 of Mr. Weiner's payment as nonrefundable. Once the Settlement Agreement is finally approved by the Court, the Trustee will voluntarily dismiss the adversary proceeding against Mr. Weiner.
3. **Mutual release.** The parties mutually release their claims against one another, including a waiver pursuant to Cal. Civ. Code § 1542. For the avoidance of doubt, nothing in the Settlement Agreement releases or impairs the Trustee's duties as set

---

[4] A true and correct copy of the Settlement Agreement is attached as Attachment 1 to the concurrently filed declaration of A. Kyle Everett. To the extent that there is any conflict between the terms of the Settlement Agreement and the description of those terms set forth in this Motion, the former shall control.

MOTION TO COMPROMISE CONTROVERSY 3

forth in section 4.N.9 of the Handbook for Chapter 7 Trustees published by the U.S. Department of Justice (version dated March 24, 2023). Furthermore, nothing in the Settlement Agreement impairs or prevents the Trustee from communicating with governmental agencies, regulatory authorities, and/or third parties about this adversary proceeding and the Trustee's allegations therein, whether or not the Trustee's claims are released.

4. **Waiver of Mr. Weiner's claim in bankruptcy case.** Mr. Weiner waives his right to file a proof of claim or otherwise assert any right to payment in Benja's bankruptcy case.

The Trustee has received Mr. Weiner's payment pursuant to the terms set forth in the Settlement Agreement. Everett Decl. at ¶ 7.

### III. LEGAL ARGUMENT

By way of this Motion, the Trustee seeks approval of the compromise pursuant to § 105(a) and Bankruptcy Rule 9019(a), which provides, "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

"The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380–81 (9th Cir. 1986); *cert. den. sub nom Martin v. Robinson*, 479 U.S. 854 (1986). Bankruptcy courts have great latitude in approving compromise agreements. *Woodson v. Fireman's Fund Insurance Co.* (*In re Woodson*), 839 F.2d 610, 620 (9th Cir. 1988). However, a court's discretion is not unlimited. A compromise may be approved only if it is "fair and equitable." *A & C Properties* at 1381. In approving a proposed compromise in bankruptcy proceedings, a court must consider:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* at 1381 (citations omitted).

"It is not necessary to satisfy each of these factors provided that the factors as a whole favor approving the settlement." *In re Pacific Gas & Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004). A court's role in considering a proposed compromise is "to canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Id.* at 417 (citing *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496-97 (Bankr. S.D.N.Y. 1991)). Although the Trustee bears the burden of persuasion, "a court generally gives deference to a trustee's business judgment in deciding whether to settle a matter." *Goodwin v. Mickey Thompson Entm't. Group, Inc.* (*In re Mickey Thompson Entm't Group, Inc.*), 292 B.R. 415, 420 (9th Cir. BAP 2003).

For the reasons stated below, the Trustee believes in his reasonable business judgment that the Settlement Agreement is fair and equitable and that it fulfills the *A & C Properties* factors. Everett Decl. at ¶ 8.

A. Probability of Success

The Trustee's probability of establishing liability against Mr. Weiner is high, and thus this factor does not favor approval of the Settlement Agreement. *Id.* at ¶ 9. However, this factor is offset by the other factors discussed below. *Id.* It is useful to break down the anticipated liability into three portions:

1. **Payments made to Mr. Weiner specifically for his impersonation of purported customers of Benja.** The Trustee is confident that he would succeed in obtaining a judgment for avoidance of these payments. *Id.* The evidence strongly supports the avoidance of the transfers as actual fraud under a Ponzi scheme orchestrated by Mr. Chapin, who pled guilty to crimes related to his fraud in operating Benja and deceiving investors and lenders with fabricated accounts receivable and financial statements. *Id.* Case law provides a presumption of actual fraud when, as here, there is a criminal plea establishing the elements of a Ponzi scheme and the transfers were made in furtherance of such scheme. *Santa Barbara Capital Mgmt. v. Neilson (In re Slatkin)*, 525 F.3d 805, 814 (9th Cir. 2008). *See Kasolas v. Nicholson (In re Fox Ortega Enters.)*, 631 B.R. 425 (Bankr. N.D. Cal. 2021). Despite this presumption, the

MOTION TO COMPROMISE CONTROVERSY 5

Trustee still bears the burden of establishing that the transfers were part of a Ponzi scheme. *Fox Ortega*, 631 B.R. at 449–50, 456. The Trustee also believes that these payments would be avoided as constructive transfers because the Debtor received less than a reasonably equivalent value in exchange for the payments and the Debtor (1) was insolvent when the payments were made; (2) was engaged in business with unreasonably small capital; (3) intended to incur, or believed that the it would incur, debts beyond its ability to pay; and/or (4) made the payments to an insider under an employment contract and not in the ordinary course of business. Everett Decl. at ¶ 9. *See* § 548(a)(1)(B); Cal. Civ. Code § 3439.04(a)(2).

2. **Mr. Weiner's entire salary.** Mr. Weiner performed work beginning on or about January 15, 2018. Everett Decl. at ¶ 9. In contrast to the avoidance claims discussed above, as to which the Trustee believes he would readily establish liability under one or more theories, Mr. Weiner may have viable arguments against the avoidance of his entire salary. *Id.* These may include arguments that (1) Mr. Weiner's work prior to his impersonation of purported customers was not done in furtherance of a fraudulent scheme; and (2) Benja received reasonably equivalent value in exchange for the salary paid to Mr. Weiner. *Id.* While the Trustee would dispute these arguments, they demonstrate a risk that a court might not find Mr. Weiner liable for avoidance of his entire salary. *Id.*

3. **Damages for aiding and abetting fraud.** The Trustee is confident that a court would be persuaded by the evidence that (1) Mr. Weiner assisted Mr. Chapin's fraudulent scheme by impersonating representatives of purported customers of Benja; (2) Mr. Weiner made materially false and fraudulent representations to creditors, investors, and prospective investors; and (3) investors paid over $10 million to Benja following the date of Mr. Weiner's first impersonation. *Id.* However, Mr. Weiner may present arguments in his defense such as (1) he was unaware of the full extent of the fraud being committed by Mr. Chapin; and (2) his conduct was not a substantial factor in causing harm to Benja and its creditors and investors. *Id.* While the Trustee would

dispute these arguments, there is a risk that a court might not find Mr. Weiner liable for fraud damages (or may only find him liable for a small portion of the total damages sought). *Id.*

B. <u>Difficulty of Collection</u>

The difficulty of collection element weighs heavily in favor of approving the Settlement Agreement. *Id.* at ¶ 10. Mr. Weiner has provided, and the Trustee has obtained, financial statements and other information evidencing Mr. Weiner's assets, income, and general financial situation. *Id.* Mr. Weiner is a Rhode Island resident. *Id.* While Mr. Weiner owns his home, his equity is limited and would likely be entirely protected by Rhode Island's homestead exemption laws. *Id.* Furthermore, it is unlikely that garnishment of his wages would result in a meaningful recovery to the bankruptcy estate. *Id.* For these reasons, the Trustee anticipates significant difficulties in collecting from Mr. Weiner, who appears to be effectively judgment proof. *Id.*

C. <u>Complexity of Litigation, Expense, Inconvenience, and Delay</u>

This factor weighs strongly in favor of approval of the Settlement Agreement. *Id.* at ¶ 11. While the payments made to Mr. Weiner for his impersonation of purported customers could likely be avoided on a motion for summary judgment, these transfers represent a fairly small amount (as low as approximately $8,500), which amount would be significantly offset by the cost of bringing such a motion. *Id.* The Trustee's remaining claims are based upon facts that are disputed by Mr. Weiner. *Id.* Litigation of these claims would require the bankruptcy estate to incur substantial fees and costs to conduct discovery and put on a trial. *Id.* Moreover, the Trustee's claim for aiding and abetting fraud is likely to require expert witness testimony to establish damages, further increasing the fees and costs to the bankruptcy estate. *Id.* For the reasons set forth above, even if the Trustee were to receive a large judgment against Mr. Weiner, it is highly unlikely that the estate could recover on that judgment in an amount sufficient to offset the significant cost, inconvenience, and delay of litigation. *Id.*

D. <u>Paramount Interest of Creditors</u>

This factor weighs heavily in favor of approval of the Settlement Agreement. *Id.* at ¶ 12. Mr. Weiner's payment pursuant to the Settlement Agreement represents a significant recovery on

the Trustee's claims without incurring the substantial anticipated costs to the bankruptcy estate if these claims were to be litigated, the risk that the Trustee would not prevail on his claims, and the high risk that a judgment would be uncollectible. *Id.*

IV. **CONCLUSION**

In summary, the Trustee submits that the Settlement Agreement is fair and equitable, is within the range of reasonableness, and, in the Trustee's reasonable business judgment, is in the best interests of the bankruptcy estate and its creditors. *Id.* at ¶ 13. For the reasons stated above, the Trustee requests entry of an order granting this Motion and approving the Settlement Agreement.

Dated May 30, 2023　　　　　　　　　　　　FINESTONE HAYES LLP

　　　　　　　　　　　　　　　　　　　　　*/s/ Ryan A. Witthans*
　　　　　　　　　　　　　　　　　　　　　Ryan A. Witthans
　　　　　　　　　　　　　　　　　　　　　Attorneys for A. Kyle Everett,
　　　　　　　　　　　　　　　　　　　　　Chapter 7 Trustee