Stephen D. Finestone (Cal. Bar No. 125675)
Jennifer C. Hayes (Cal. Bar No. 197252)
Ryan A. Witthans (Cal. Bar No. 301432)
FINESTONE HAYES LLP
456 Montgomery Street, Floor 20
San Francisco, CA 94104
Tel.:  (415) 481-5481
Fax:  (415) 398-2820
Email: sfinestone@fhlawllp.com
Email: jhayes@fhlawllp.com
Email: rwitthans@fhlawllp.com

Attorneys for A. Kyle Everett,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re BENJA INCORPORATED, *aka* EPHE CORPORATION,<br><br>　　　　Debtor. | Case No. 20-30819-DM<br>Chapter 7<br>Hon. Dennis Montali<br><br>**DECLARATION OF A. KYLE EVERETT IN SUPPORT OF CHAPTER 7 TRUSTEE'S MOTION TO APPROVE COMPROMISE OF CONTROVERSY WITH DANIEL IAN WEINER**<br><br><u>Hearing:</u><br>*No hearing requested. Noticed pursuant to B.L.R. 9014-1(b)(3).* |

I, A. Kyle Everett, declare as follows:

1.　　I am the duly appointed Chapter 7 trustee of the bankruptcy estate of the above-captioned debtor. I have personal knowledge of the facts set forth below, except those stated on information and belief, and as to those facts, I am informed and believe they are true. If called upon to testify as a witness, I could and would competently testify to these facts.

2.　　I make this declaration in support of the concurrently filed *Chapter 7 Trustee's Motion to Approve Compromise of Controversy with Daniel Ian Weiner*. This declaration uses

EVERETT DECLARATION　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　1

the same defined terms set forth in that Motion. A true and correct copy of the Settlement Agreement referenced in the Motion is attached to this declaration as **Attachment 1**.

3. I am informed and believe that Benja was ostensibly an e-commerce and digital advertising company, and that Mr. Chapin served as Benja's chief executive officer from its founding until at least September 2020.

4. Mr. Chapin entered into a criminal plea agreement in which he admitted to bank fraud, wire fraud, and securities fraud. I am informed and believe that the charges generally arose from, among other things, false statements and omissions about Benja's revenue, accounts receivable, and commercial dealings that were made to Benja's creditors, investors, and prospective investors to induce payments and/or investments.

5. I am informed and believe that Mr. Weiner performed work for, and for the benefit of, Benja and Mr. Chapin beginning on or about January 15, 2018. The Complaint alleges, among other things, that (1) on multiple occasions between about April through July 2020, Mr. Weiner assisted Mr. Chapin's fraudulent scheme by impersonating representatives of companies with which Benja falsely claimed to have business relationships; (2) during this time, Mr. Weiner made materially false and fraudulent representations to creditors, investors, and prospective investors; (3) investors paid over $10 million to Benja following the date of Mr. Weiner's first impersonation, and at least some of these payments were induced in part by Mr. Weiner's fraud; and (4) Mr. Weiner received compensation specifically for these impersonation actions, as well as in the course of his employment generally. Mr. Weiner disputes these allegations.

6. Without admitting or determining any fault or liability whatsoever, the parties entered into the Settlement Agreement to settle all claims for relief between them.

7. I have received Mr. Weiner's payment pursuant to the terms set forth in the Settlement Agreement.

8. For the reasons stated below, I believe in my reasonable business judgment that the Settlement Agreement is fair and equitable and that it fulfills the *A & C Properties* factors.

9. <u>Probability of Success.</u> I am informed and believe that the probability of establishing liability against Mr. Weiner is high, and thus this factor does not favor approval of the Settlement Agreement. However, I am informed and believe that this factor is offset by the other factors discussed below. It is useful to break down the anticipated liability into three portions:

    a. **Payments made to Mr. Weiner specifically for his impersonation of purported customers of Benja.** I am confident that I would succeed in obtaining a judgment for avoidance of these payments. I am informed and believe that the evidence strongly supports the avoidance of the transfers as actual fraud under a Ponzi scheme orchestrated by Mr. Chapin, who pled guilty to crimes related to his fraud in operating Benja and deceiving investors and lenders with fabricated accounts receivable and financial statements. I am further informed and believe that case law provides a presumption of actual fraud when, as here, there is a criminal plea establishing the elements of a Ponzi scheme and the transfers were made in furtherance of such scheme. I also believe that these payments would be avoided as constructive transfers because the Debtor received less than a reasonably equivalent value in exchange for the payments and the Debtor (1) was insolvent when the payments were made; (2) was engaged in business with unreasonably small capital; (3) intended to incur, or believed that the it would incur, debts beyond its ability to pay; and/or (4) made the payments to an insider under an employment contract and not in the ordinary course of business.

    b. **Mr. Weiner's entire salary.** I am informed and believe that Mr. Weiner performed work beginning on or about January 15, 2018. In contrast to the avoidance claims discussed above, as to which I believe liability would readily be established under one or more theories, I am informed and believe that Mr. Weiner may have viable arguments against the avoidance of his entire salary. These may include arguments that (1) Mr. Weiner's work prior

to his impersonation of purported customers was not done in furtherance of a fraudulent scheme; and (2) Benja received reasonably equivalent value in exchange for the salary paid to Mr. Weiner. While I would dispute these arguments, I am informed and believe they demonstrate a risk that a court might not find Mr. Weiner liable for avoidance of his entire salary.

    c. **Damages for aiding and abetting fraud.** I am confident that a court would be persuaded by the evidence that (1) Mr. Weiner assisted Mr. Chapin's fraudulent scheme by impersonating representatives of purported customers of Benja; (2) Mr. Weiner made materially false and fraudulent representations to creditors, investors, and prospective investors; and (3) investors paid over $10 million to Benja following the date of Mr. Weiner's first impersonation. However, I am informed and believe that Mr. Weiner may present arguments in his defense such as (1) he was unaware of the full extent of the fraud being committed by Mr. Chapin; and (2) his conduct was not a substantial factor in causing harm to Benja and its creditors and investors. While I would dispute these arguments, I recognize the risk that a court might not find Mr. Weiner liable for fraud damages (or may only find him liable for a small portion of the total damages sought).

10. <u>Difficulty of Collection.</u> I am informed and believe that the difficulty of collection element weighs heavily in favor of approving the Settlement Agreement. Mr. Weiner has provided, and I have obtained, financial statements and other information evidencing Mr. Weiner's assets, income, and general financial situation. I am informed and believe that Mr. Weiner is a Rhode Island resident, and that while he owns his home, his equity is limited and would likely be entirely protected by Rhode Island's homestead exemption laws. I am further informed and believe that it is unlikely that garnishment of his wages would result in a meaningful recovery to the bankruptcy estate. For these reasons, I anticipate significant difficulties in collecting from Mr. Weiner, who appears to be effectively judgment proof.

11. <u>Complexity of Litigation, Expense, Inconvenience, and Delay.</u> I am informed and believe that this factor weighs strongly in favor of approval of the Settlement Agreement. I am informed and believe that, while the payments made to Mr. Weiner for his impersonation of purported customers could likely be avoided on a motion for summary judgment, these transfers represent a fairly small amount (as low as approximately $8,500), which amount would be significantly offset by the cost of bringing such a motion. I am informed and believe that the remaining claims are based upon facts that are disputed by Mr. Weiner. I am informed and believe that litigation of these claims would require the bankruptcy estate to incur substantial fees and costs to conduct discovery and put on a trial. I am further informed and believe that the claim for aiding and abetting fraud is likely to require expert witness testimony to establish damages, further increasing the fees and costs to the bankruptcy estate. For the reasons set forth above, even if I was to receive a large judgment against Mr. Weiner, I believe it is highly unlikely that the estate could recover on that judgment in an amount sufficient to offset the significant cost, inconvenience, and delay of litigation.

12. <u>Paramount Interest of Creditors.</u> I am informed that this factor weighs heavily in favor of approval of the Settlement Agreement. I am informed that Mr. Weiner's payment pursuant to the Settlement Agreement represents a significant recovery on the Complaint without incurring the substantial anticipated costs to the bankruptcy estate if these claims were to be litigated, the risk that I would not prevail on his claims, and the high risk that a judgment would be uncollectible.

13. In summary, I am informed and believe that the Settlement Agreement is fair and equitable, is within the range of reasonableness, and, in my reasonable business judgment, is in the best interests of the bankruptcy estate and its creditors.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 30, 2023.

                                                          /s/ A. Kyle Everett
                                                         A. Kyle Everett