DocuSign Envelope ID: F72952FE-E2A3-4763-937B-7EEB003E3C43

Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
Kimberly S. Fineman (184433)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Tel. (415) 616-0466
Fax (415) 398-2820
jhayes@fhlawllp.com

Attorneys for Chapter 7 Trustee
Kyle Everett

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>BENJA INCORPORATED,<br><br>    Debtor. | Case No. 20-30819-DM<br><br>Chapter 7<br><br>**SUPPLEMENTAL DECLARATION OF KYLE EVERETT IN SUPPORT OF CHAPTER 7 TRUSTEE'S MOTION TO APPROVE COMPROMISE OF CONTROVERSY WITH MHC FINANCIAL SERVICES, LLC**<br><br>[No Hearing Unless Requested; Notice and Opportunity for Hearing Filed Pursuant to B.L.R. 9014-1(b)(3)] |

I, Kyle Everett, declare as follows:

    1.    I am the duly appointed Chapter 7 Trustee of the bankruptcy estate (the "Estate") of Benja Incorporated (the "Debtor") in the above-captioned case (the "Bankruptcy Case"). I was appointed as the Chapter 11 Trustee in the Bankruptcy Case on or about November 3, 2020. On or about January 29, 2021, the Bankruptcy Case was converted to Chapter 7 and I was appointed as Chapter 7 Trustee (the "Trustee"). All statements in this Supplemental Declaration are based on my own personal knowledge and observation, or upon

SUPP. EVERETT DECL. ISO MOTION TO APPROVE COMPROMISE

1

1. information and belief based upon my review of the court and business records in this case. If called to testify on this matter, I could and would competently testify to the matters set forth in this Supplemental Declaration.

2. I make this Supplemental Declaration in support of the Motion to Approve Compromise of Controversy with the MHC Financial Services, LLC and related pleadings (ECF 170, 170-1, 171, collectively, the "Motion"). The Motion seeks entry of an order approving the settlement agreement (the "Settlement Agreement") reached between myself as Trustee, on the one hand, and MHC Financial Services, LLC, formerly known as MHC Financial Services, Inc. ("MHC"), on the other hand (together the Trustee and MHC are defined as the "Parties").

3. The Moving Papers state that "applying the same assumptions regarding the total amount of the Bankruptcy Estate's assets and liabilities shows that, under the net payment and withdrawal-of-claim approach, general unsecured creditors are estimated to receive .38% more on their claims than if MHC paid the gross amount to the Bankruptcy Estate and did not withdraw its Proof of Claim." This statement contained an inadvertent math error of the *estimated* recovery to creditors. The correct statement should be: "applying the same assumptions regarding the total amount of the Bankruptcy Estate's assets and liabilities shows that, under the net payment and withdrawal-of-claim approach, general unsecured creditors are estimated to receive 1.97% less on their claims than if MHC paid the gross amount to the Bankruptcy Estate and did not withdraw its Proof of Claim." Other than as modified above, the Moving Papers remain unchanged. This modification to the Moving Papers does not change my conclusion, in my reasonable business judgment, that the Settlement Agreement fulfills the *A & C Properties* factors set forth in *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986); *cert. den. sub nom Martin v. Robinson*, 479 U.S. 854 (1986) and should be approved. I reaffirm each of the A&C Properties factors set forth in my originally-filed declaration (ECF 170-1, the "Declaration") and supplement them as follows: Regardless of whether creditors obtain slightly more or slightly less under the Settlement Agreement versus a litigated resolution in which MHC pays money to the bankruptcy estate, files a claim

SUPP. EVERETT DECL. ISO MOTION TO APPROVE COMPROMISE  2

Case: 20-30819   Doc# 175   Filed: 08/14/23   Entered: 08/14/23 17:43:56   Page 2 of 4

for the amount paid, and receives a pro-rata distribution from the estate, the Settlement Agreement is far preferable economically to the estate than a litigated resolution. I base this conclusion on the facts set forth in my Declaration and further state:

    a. Litigating the Alleged Fraudulent Transfer Claims[1] would be highly fact intensive and, therefore, quite costly to the estate. I estimate that it would require at least $300,000 in attorneys' fees and costs to reach a judgment against MHC on account of the Alleged Fraudulent Transfer Claims.

    b. The probability of success on the Alleged Fraudulent Transfer Claims is far from clear. I contend that the evidence strongly supports the avoidance of some of transfers as received via actual fraud under a Ponzi scheme orchestrated by Mr. Chapin, who pled guilty to crimes related to his fraud in operating the Debtor and deceiving investors and lenders with fabricated accounts receivable and financial statements. I am informed and believe that case law provides a presumption of actual fraud when, as here, there is a criminal plea establishing the elements of a Ponzi scheme and when the transfers were made in the course of such Ponzi scheme. Despite this presumption, however, I still bear the burden of establishing that the transfers made to MHC were part of a Ponzi scheme orchestrated by Mr. Chapin, which MHC strenuously disputes and I expect would vigorously litigate.

    c. Achieving a litigated judgment against MHC would come at significant inconvenience, delay, and risk to the Estate.

    d. Absent a settlement, I anticipate that MHC would appeal the Partial Summary Judgment Order, which found in favor of the Estate on the Alleged Preference Claims. Although I am confident that the Estate would prevail on appeal, defending the Partial Summary Judgment Order on appeal

---

[1] Defined terms not defined herein shall have the meaning ascribed to them in my originally-filed declaration. ECF 170-1.

SUPP. EVERETT DECL. ISO MOTION TO APPROVE COMPROMISE

would be expensive and time consuming, and would add an estimated one to three years of delay or more, depending on whether the expected appeal ended with the Bankruptcy Appellate Panel, or went to the Ninth Circuit Court of Appeals after the BAP, and depending on whether the appellate court(s) remanded any issues to the Bankruptcy Court.

    e.  The Settlement Payment alone, albeit netted from a gross payment to a net payment, which requires the Parties to make educated assumptions about the estate's assets and liabilities, represents a full recovery on account of the Estate's Alleged Preference Claims and an estimated 50% recovery on the Estate's Alleged Fraudulent Transfer Claims—without incurring the anticipated substantial costs to the Estate if these claims were to be litigated. A key part of the netting of MHC's payment into the Estate against the Estate's obligation to MHC under section 502(h) is the withdrawal of the MHC Claim, and waiver of MHC's creditor rights against the Estate, including MHC's appeal rights as to the Partial Summary Judgment Order.

4.    In summary, the estimate provided in the Motion of the gross equivalent of the net $2,400,000 Million settlement was simply that, *i.e.* an estimate. In my reasonable business judgment, the Settlement Agreement is a significantly better alternative to further litigation, is fair and equitable, is within the range of reasonableness, and is in the best interest of the Estate.

I declare under penalty of perjury under the laws of the United States, that the foregoing is true and correct. Executed in Sonoma County, California on August 14, 2023.



Kyle Everett, Solely in my Capacity as Chapter 7 Trustee of the Benja Incorporated Bankruptcy Estate

SUPP. EVERETT DECL. ISO MOTION TO APPROVE COMPROMISE