Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Tel. (415) 616-0466
Fax (415) 398-2820
sfinestone@fhlawllp.com

Attorneys for Chapter 7 Trustee,
Kyle Everett

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>BENJA INCORPORATED,<br><br>    Debtor. | Case No. 20-30819-DM<br><br>Chapter 7<br><br>**SECOND INTERIM FEE APPLICATION OF COUNSEL FOR THE CHAPTER 7 TRUSTEE**<br><br>Date: October 6, 2023<br>Time: 10:30 a.m.<br>Ctrm: Tele/videoconference |

    Finestone Hayes LLP ("Applicant"), attorneys of record for Kyle Everett, Chapter 7 Trustee of the above-captioned bankruptcy estate, files its Second Interim Fee Application for compensation and expense reimbursement and in support thereof represents as follows:

**I.**

**INTRODUCTION**

    **1.**     **Debtor:** Benja Incorporated ("Benja" or the "Debtor") is a Delaware Corporation that filed for Chapter 11 bankruptcy relief on October 15, 2020 (the "Petition Date").

    **2.**     **Appointment of Trustee**: The Trustee was appointed as the Chapter 11 trustee on November 3, 2020. The Chapter 11 case was converted to Chapter 7 on January 29, 2021, and the Trustee was appointed as Chapter 7 Trustee.

    **3.**     **Counsel Employment:** On November 18, 2020, the Court entered an Order

Authorizing Employment of Counsel (Finestone Hayes LLP) authorizing Applicant to serve as the Trustee's counsel in the Chapter 11 bankruptcy estate (ECF 59). On September 7, 2022, the Court entered an order authorizing the employment of Trustee's counsel in the Chapter 7 bankruptcy case, retroactive to the date of conversion from Chapter 11 to Chapter 7. (ECF 115, 117).

4. **Prior Compensation:** On September 30, 2022, the Court entered an order approving Applicant First Interim Fee Application in the sum of $313,777.50 in fees and $7,563.87 in expenses (ECF 133). Applicant has been paid in full on its First Interim Fee Application. The $313,777.50 in fees paid to Applicant was approximately 65% of the total fees[1] incurred by Applicant as of August 24, 2022.

5. **Current Compensation:** During the course of representing the Trustee for the period of December 3, 2020[2] through August 31, 2023, Applicant performed the services described in this Application, for which it currently seeks compensation, and in the time summaries attached to the Declaration of Jennifer C. Hayes in support of the Second Interim Fee Application. Applicant also incurred the actual and necessary expenses itemized in the billing and expense summary attached to the Declaration of Jennifer C. Hayes in Support of the Second Interim Fee Application. Applicant has incurred fees to date totaling no less than $685,000 over the last three years and ten months; however, Applicant currently seeks second interim fees of $154,043,[3] primarily for services related to prosecution of the estate's litigation claims against third parties, including MHC Financial Services, LLC ("MHC"), Tom Peters, and Daniel Weiner, as well as expenses totaling $2,069.10. The categories set forth in this Fee

---

[1] Total fees in Applicant's first invoice were $479,937.50.

[2] In this Second Interim Fee Application, Applicant seeks fees from the prior invoice period on the Tom Peters litigation matter, which has since settled. The prior invoice, first filed as Exhibit A to the Hayes Declaration in Support of the First Interim Fee Application (ECF 120-1), is refiled as Exhibit A to the Hayes Declaration in support of the Second Interim Fee Application, and the time entries as to which Applicant seeks interim court approval are highlighted in yellow.

[3] Total fees in Applicant's second invoice are $204,853.50.

Application are limited to those relating to services provided in the investigation of claims against third parties, and the prosecution of the estate's claims against MHC, Mr. Peters, and Mr. Weiner. The fees incurred by Applicant for the lawsuit against and settlement with Mr. Peters are primarily in the pre-bill worksheet attached as Exhibit A to the Hayes Declaration in support of the First Interim Fee Application, and refiled as Exhibit A to the Second Interim Fee Application, with the time entries as to which Applicant seeks second interim approval highlighted in yellow. The fees incurred by Applicant in connection with the other litigation claims and settlements are primarily in the pre-bill worksheet attached as Exhibit B to the Hayes Declaration in support of the Second Interim Fee Application. Where Applicant seeks interim payment of only certain entries in a given category in Exhibit B, Applicant has highlighted those entries in yellow.

6. **Compliance with Guidelines:** Except as otherwise expressly stated, Applicant is in compliance with the Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees (the "Guidelines"). Lexis searches and expenses for which compensation are sought are charged at cost to the Applicant. The hourly rates charged by Applicant generally are no less favorable than those rates charged for non-court appointed services, and in fact are materially lower than Applicant's current hourly rates.

7. **2016 Compensation Statement:** Applicant has not agreed to share any compensation awarded with any other person and the source of any award authorized will be estate funds.

8. **Project Billing:** In order to comply with the Court's guidelines regarding project billing, Applicant created categories for project billing purposes, which are identified on Applicant's time summaries attached to the Declaration. Applicant seeks fees in this Second Interim Fee Application primarily related to services provided with respect to the Estate's claims against MHC, and the categories that relate to those claims are as follows: (i) 2004; (ii) Admin; (iii) Adv Proceeding; (iv) AP-MHC; (v) Complaint; (vi) Creditor Issues; (vii) Discovery; (viii) Investigation; (ix) Lit-Peters; (x) Litigation; (xi) Mediation; (xii) Motion-MHC; (xiii) Motion-4; (xiv) Settlement; and (xv) Tax. The categories are highlighted in the time summaries submitted

with the Application. As to categories for which Applicant seeks compensation, and which are in excess of the $20,000 category-limits generally established by the Guidelines, Applicant asserts that further breakdown of such categories is impracticable, in light of the extensive services required in connection with the prosecution of the estate's valuable and complex litigation claims against MHC and Mr. Peters, and the estate's litigation claim against Mr. Weiner.

9. **Funds on Hand:** Funds on hand as of September 15, 2023 total in excess of $2,400,000. Other accrued expenses of administration include the commission of the Trustee. It is feasible to make a second interim payment to the Applicant, given the funds on hand and given that the expenses of administration are first-priority claims pursuant to 11 U.S.C. § 503(b)(2).

## II.

## BACKGROUND

Benja was a San Francisco-based e-commerce startup company founded by Andrew Chapin, who served as Benja's CEO from its founding until at least September 2020. Benja held itself out as a successful company that had agreements with various retailers such as Backcountry, Columbia Sportswear, Fanatics, New Balance, Nike, Patagonia, and Zappos, to drive consumer traffic to purchase goods from the retailers, with Benja ostensibly to be compensated based on the number of impressions by consumers of Benja's advertising. Chapin falsely represented to creditors and investors that Benja generated millions of dollars in revenue and had large contracts with numerous well-known national companies to place advertisements for their excess inventory. In a plea agreement in his criminal case, Chapin admitted that Benja had no such contracts with or revenue from these companies. Chapin also admitted to forging contracts, fabricating or altering documents that reflected revenue, using falsified documents, impersonating corporate representatives, or causing their impersonation, to create the appearance of business relationships and profitmaking opportunities that did not exist in order to obtain additional financing.

Chapin sought out loans and investors for Benja, from which Chapin obtained funds to use for his personal expenses and benefit, to pay obligations that arose from earlier fraudulent transactions, and to conceal Benja's ongoing fraud. Other than *de minimis* legitimate business transactions, Chapin operated Benja as a fraudulent scheme wherein Benja made payments to creditors and earlier investors from the proceeds of later, fraudulently obtained loans and investments, rather than from profits of the putative underlying business venture. This pattern of using new money from later fraudulent transactions to fund the fulfillment of earlier obligations constitutes a Ponzi scheme. Benja's payments to creditors and investors, including Mr. Buerck, related entities, and MHC, were pursuant to a Ponzi scheme and not related to any legitimate business transaction, because in fact no such legitimate profitmaking business existed.

Benja incurred obligations for the purpose of acquiring funds necessary for the continuation of the fraud. Benja made transfers to creditors and investors with the purpose of concealing the ongoing fraud, to lull investors, creditors, and customers into a false sense that Benja was a legitimate business, to cause lenders and investors to continue to send money to Benja, and to prevent the Defendants and other lenders and investors from commencing legal action and/or complaining to law enforcement authorities.

The estate's principal assets are litigation claims against creditors and investors, all but one of which has been settled. Thus far, the Trustee has settled the estate's claims against Brett Buerck and related parties for $1,500,000, plus waiver of their claims, which settlement was approved by the Court (ECF 108), and which settlement sums have been paid to the estate. The Trustee has also settled the estate's claims against Mr. Peters for $160,000 (ECF 150) plus waiver of his claim. Of this sum, $30,000 has been paid and $130,000 is due to be paid on July 31, 2024. The Trustee has also settled the estate's claims against MHC for $2,400,000, plus waiver of its claim, which settlement was approved by the Court. (ECF 180). Payment of the $2,400,000 is due within fourteen days of the Court's order approving the MHC settlement becoming final. (*Id.*) Finally, the Trustee has settled the estate's claims against Daniel Weiner, a former employee, for $13,200 and waiver of any claim by Mr. Weiner against the bankruptcy estate. (ECF 162). Mr. Weiner has paid his settlement payment in full.

To reiterate, Applicant has incurred fees to date totaling no less than $685,000 over the last three years and ten months; however, Applicant currently seeks second interim fees primarily for services related to prosecution of the estate's litigation claims against MHC, Mr. Peters, and Mr. Weiner. The categories and time entries set forth below are limited to those relating to services provided in the prosecution of those claims.[4]

## III.

## SERVICES RENDERED

**A.     2004- Exhibit A to the Hayes Declaration (December 3, 2020- August 24, 2022)**

Applicant drafted a 2004 application with respect to Mr. Peters and the estate's litigation claims against him and communicated with the Trustee and with counsel for Mr. Peters re same. Applicant also communicated with Mr. Peters' counsel regarding Mr. Peters' document production, and Applicant reviewed estate documents in advance of receiving Mr. Peters' document production. Applicant produced documents to Mr. Peters and reviewed documents in advance of Mr. Peters' 2004 examination.

In performing these services, Applicant spent 6.6 hours and believes $3,465 in fees is reasonable compensation therefor. The time entries related to these services are highlighted in yellow in Exhibit A to the accompanying Hayes Declaration, given that not all the time entries in the category are included in this Second Interim Fee Application.

**B.     Admin- Exhibit B to the Hayes Declaration (August 25-2022-August 31, 2023)**

Applicant conferred with the Trustee regarding litigation targets and discovery issues. Applicant communicated with Mr. Peters regarding his first and second settlement payment owing and communicated with the Trustee re same. Applicant communicated regarding the MHC 9019 motion.

---

[4] As to categories for which Applicant seeks compensation, and which are in excess of the Guidelines for the Northern District of California, which generally limit categories to $20,000, Applicant asserts that further breakdown of such categories is impracticable, in light of the extensive services required in connection with the prosecution of the estate's valuable and complex litigation claims against MHC.

In performing the above services, Applicant spent 2.2 hours and believes $1,232 in fees is reasonable compensation therefor. The time entries related to these services are highlighted in yellow in Exhibit B to the accompanying Hayes Declaration, given that not all the time entries in the category are included in this Second Interim Fee Application.

C. **Adv Proceeding – Exhibit A to the Hayes Declaration (December 3, 2020- August 24, 2022)**

This category contains time related to Applicant's services regarding the estate's various litigation matters against Mr. Peters, MHC, and Mr. Weiner. The services provided by Applicant include legal research regarding the Peters claims, drafting the complaint against Mr. Peters, drafting opposition to the Rule 12(b) motion to dismiss filed by Mr. Peters, reviewing and analyzing Mr. Peters' reply brief, and communicating with Mr. Peters' counsel and the Trustee regarding Mr. Peters' claims of impecuniousness.

In performing the above services, Applicant spent 24.40 hours and believes $9,516.50 in fees is reasonable compensation therefor.

D. **Adv Proceeding – Exhibit B to the Hayes Declaration (August 25-2022-August 31, 2023)**

This category contains time related to Applicant's services regarding the estate's various litigation matters against Mr. Peters, MHC, and Mr. Weiner, as well as tolling agreements against other potential litigation targets. Applicant communicated with the Trustee regarding the Peters settlement and analyzed potential litigation claims against additional potential defendants. Applicant communicated with Mr. Weiner and his counsel regarding the estate's claims against him, document and discovery issues, settlement proposals, and extending the time for Mr. Weiner to respond to the Trustee's complaint. Applicant analyzed and evaluated deficiencies in Mr. Weiner's document production and communicated with Mr. Weiner re same. Applicant drafted correspondence to Mr. Weiner and met and conferred with him regarding discovery deficiencies. Applicant investigated and researched additional potential theories of liability and damages with respect to the estate's claims against Mr. Weiner. Applicant communicated with Mr. Weiner's counsel regarding the Rule 26 discovery

conference and Mr. Weiner's renewed interest in settlement. Applicant drafted the Trustee's initial disclosures and communicated with the Trustee re same. Applicant engaged in protracted and fitful settlement discussions with Mr. Weiner, who would alternate between an aggressive litigation posture and expressing interest in settlement. Ultimately, the Trustee succeeded in settling with Mr. Weiner, and Applicant drafted the settlement agreement and appeared at status conferences.

In performing the above services, Applicant spent 53.70 hours and believes $21,532.00 in fees is reasonable compensation therefor.[5]

E. **AP– MHC; Exhibit B to the Hayes Declaration (August 25-2022-August 31, 2023)**

This category contains time related to Applicant's services regarding the estate's litigation against MHC. Applicant drafted a status conference statement and communicated with opposing counsel re same. Applicant communicated with the BDRP mediator regarding the mediation and communicated with Chambers re same and regarding continuing the status conference until after mediation. Applicant drafted the estate's mediation brief and had numerous communications regarding mediation scheduling and continuing status conferences.

In performing the above services, Applicant spent 5.6 hours and believes $3,134.50 in fees is reasonable compensation therefor. The services for which Applicant seeks interim compensation are highlighted in yellow, given that not all the time entries in the category are included in this Second Interim Fee Application.

F. **Complaint - Exhibit B to the Hayes Declaration (August 25-2022-August 31, 2023)**

This category contains time related to Applicant's services regarding the estate's potential claims against insiders, anticipated defenses thereto, and drafting the complaint against Mr. Weiner.

In performing the above services, Applicant spent 9.2 hours and believes $3,734.50 in fees is reasonable compensation therefor. The services for which Applicant seeks interim compensation are highlighted in yellow, given that not all the time entries in the category are

---

[5] See footnote 4, supra.

included in this Second Interim Fee Application.

G. **Creditor Issues - Exhibit B to the Hayes Declaration (August 25-2022-August 31, 2023)**

This category contains time regarding communications with counsel for Busey Bank, regarding the status of the Trustee's settlement efforts with MHC and regarding the tax issues being analyzed in connection with the MHC settlement discussions.

In performing the above services, Applicant spent 2.7 hours and believes $1,512.00 in fees is reasonable compensation therefor. The services for which Applicant seeks interim compensation are highlighted in yellow, given that not all the time entries in the category are included in this Second Interim Fee Application.

H. **Discovery – Exhibit A to the Hayes Declaration (December 3, 2020- August 24, 2022)**

This category contains time related to discovery with respect to the estate's claims against Mr. Peters, including document review and production in advance of the 2004 examination of Mr. Peters.

In performing the above services, Applicant spent 10.5 hours and believes $5,512.50 in fees is reasonable compensation therefor. The services for which Applicant seeks interim compensation are highlighted in yellow, given that not all the time entries in the category are included in this Second Interim Fee Application.

I. **Investigation - Exhibit B to the Hayes Declaration (August 25-2022-August 31, 2023)**

This category contains time related to the factual development of the estate's claims against Mr. Weiner, including reviewing extensive documents to determine the level of Mr. Weiner's alleged participation in the Ponzi scheme fraud, and researching anticipated factual defenses.

In performing the above services, Applicant spent 29.9 hours and believes $13,086.50 in fees is reasonable compensation therefor. The services for which Applicant seeks interim compensation are highlighted in yellow, given that not all the time entries in the category are

included in this Second Interim Fee Application.

**J.    Lit-Peters; Exhibit A to the Hayes Declaration (December 3, 2020- August 24, 2022); AND Exhibit B to the Hayes Declaration (August 25-2022-August 31, 2023)**

The "Lit-Peters" category pertains to the litigation against Tom Peters, which resulted in settlement. Services provided by the Applicant include revising the complaint, communicating with Mr. Peters' counsel regarding stipulating to amend the complaint, and drafting the first amended complaint and the stipulation re same. Applicant also responded to discovery from Mr. Peters and drafted written discovery to be served on Mr. Peters. Applicant communicated with Mr. Peters' counsel and the Trustee regarding mediation and trial scheduling, discovery issues, and settlement. Applicant evaluated Mr. Peters' settlement offer and communicated with the Trustee and counsel for Mr. Peters re same. Applicant and Mr. Peters engaged in settlement discussions and counteroffers, and Applicant communicated with Trustee re same. Applicant drafted the settlement agreement and communicated with the Trustee and opposing counsel re same. After receiving a revised settlement proposal from Mr. Peters, Applicant discussed same with the Trustee and counsel for Mr. Peters, then communicating the Trustee's intention to place the matter back on the Court's calendar, due to the breakdown in settlement discussions. Ultimately, the litigation settled a second time, and the settlement agreement was approved by the Court.

In performing the above services, Applicant spent 32.80 (22.7 in Exhibit A; 10.2 in Exhibit B) hours and believes $15,078 in fees ($9,366 in Exhibit A and $5,712 in Exhibit B) is reasonable compensation therefor. The services for which Applicant seeks interim compensation are highlighted in yellow, given that not all the time entries in the category are included in this Second Interim Fee Application.

**K.    Litigation- – Exhibit A to the Hayes Declaration (December 3, 2020- August 24, 2022)**

This category contains time related to the research and development of claims against Mr. Peters and pre-litigation communications with counsel for Mr. Peters regarding the estate's and reviewed and analyzed Mr. Peters' motion to dismiss the complaint. Applicant prepared

for and participated in status conferences, evaluated litigation strategy, and communicated with the Trustee re same.

In performing the above services, Applicant spent 30.1 hours and believes $15,763 in fees is reasonable compensation therefor. The services for which Applicant seeks interim compensation are highlighted in yellow, given that not all the time entries in the category are included in this Second Interim Fee Application.

**L.      Litigation – Exhibit B to the Hayes Declaration (August 25-2022-August 31, 2023)**

This category contains time related to the research and development of litigation claims and strategy, and discussions and drafting of various tolling agreements against multiple possible litigation targets (fiduciaries, employees, officers, and directors). This category also contains discussions and analysis re the estate's claims against Mr. Weiner and communications with the Trustee re same.

In performing the above services, Applicant spent 10.9 hours and believes $6,104 in fees is reasonable compensation therefor. The services for which Applicant seeks interim compensation are highlighted in yellow, given that not all the time entries in the category are included in this Second Interim Fee Application.

**M.      Mediation – Exhibit B to the Hayes Declaration (August 25-2022-August 31, 2023)**

This category concerns Applicant's mediation discussions with MHC, including scheduling, the stipulation to BDRP, and multiple communications regarding multiple changes in the mediation date. Applicant revised the MHC mediation brief and communicated with Trustee re same. Prior to the mediation, Applicant communicated with MHC's counsel regarding pre-mediation issues to review and analyze, and engaged in legal research re same. Applicant prepared for and participated in mediation with MHC, as well as engaged in post-mediation settlement discussions.

In performing the above services, Applicant spent 33.2 hours and believes $18,592.00 in fees is reasonable compensation therefor.

**N.      Motion– Exhibit B to the Hayes Declaration (August 25-2022-August 31, 2023)**

This category concerns analysis of the service parties for the notice of the MHC 9019

motion and the errata to same.

In performing the above services, Applicant spent 1.1 hours and believes $423.50 in fees is reasonable compensation therefor.

**O.    Motion– MHC; Exhibit B to the Hayes Declaration (August 25-2022-August 31, 2023)**

This category concerns review and revision of the 9019 motion regarding the MHC settlement, drafting the Trustee's declaration in support of same, and communicating with the Trustee re same. Applicant also drafted an errata to the 9019 motion and a supplemental declaration of the Trustee in support of same, and communicated with counsel for MHC and with the Trustee re same. Applicant also drafted the request for entry of order by default approving the motion, as well as the supporting declaration and order approving the motion.

In performing the above services, Applicant spent 7.4 hours and believes $4,144.00 in fees is reasonable compensation therefor.

**P.    Motion 4– Exhibit B to the Hayes Declaration (August 25-2022-August 31, 2023)**

This category concerns drafting the 9019 motion with Mr. Peters, as well as the supporting declaration and notice. Applicant also drafted the request for entry of order by default, supporting declaration, and the order approving same. This category also contains time related to the drafting, review, and revision of the MHC 9019 motion.

In performing the above services, Applicant spent 7.2 hours and believes $4,032.00 in fees is reasonable compensation therefor.

**Q.    Settlement– Exhibit B to the Hayes Declaration (August 25-2022-August 31, 2023)**

This category concerns services provided by Applicant related to the Peters settlement and the MHC settlement. Largely, this category contains Applicant's time relating to the month's long mediation efforts between the Trustee and MHC, which started with a BDRP mediation in January 2023 and continued until the parties' ultimately reached a settlement approximately six months later. During that time, the parties engaged in extensive and protracted analyses and discussions regarding settlement, which ultimately resulted in a settlement in the sum of $2,400,000 and withdrawal of MHC's multi-million dollar claim

12
Case: 20-30819    Doc# 181    Filed: 09/15/23    Entered: 09/15/23 12:18:56    Page 12 of 15

against the estate. This category also contains some of Applicant's services related to the Weiner settlement, including the drafting of the 9019 motion to approve the Trustee's settlement with Mr. Weiner. This category also contains Applicant's drafting of the MHC settlement agreement and 9019 motion in support of same. Applicant also communicated with Mr. Peters regarding his request for extension of time to pay his second settlement payment and the consequences for delay in payment of same.

In performing the above services, Applicant spent 39.5 hours and believes $20,125.00 in fees is reasonable compensation therefor.

**R.   Tax– Exhibit B to the Hayes Declaration (August 25-2022-August 31, 2023)**

This category concerns services provided by Applicant related to potential tax issues to the estate in connection with the MHC settlement, as to which Applicant engaged in months-long discussions with the Trustee and MHC.

In performing the above services, Applicant spent 12.6 hours and believes $7,056.00 in fees is reasonable compensation therefor.

## IV. REIMBURSEABLE EXPENSES

Applicant seeks reimbursement of expenses in this Application totaling $2,069.10 for expenses incurred related to postage and service expenses, filing fees, online computer research through LEXIS, and photocopies. All expenses are billed at Applicant's costs. Applicant charges .20 per page for any printing/copying.

## V. ESTABLISHMENT OF FEES AND EXPENSES

"A compensation award based on a reasonable hourly rate multiplied by the number of hours actually and reasonably expended is presumptively a reasonable fee." *In re Manoa Finance Company*, 853 F.2d. 687 (9th Cir. 1988). Establishing a reasonable hourly rate requires consideration of market rates in the relevant community which are, in turn, at least partly a function of the type of services rendered and the lawyer's experience, skill and reputation. Applicant's services in this matter were performed by partners Stephen D. Finestone, Jennifer C. Hayes and associates/contract attorneys Amy Leitner, Johnson Lee, Kimberly Fineman, and Ryan A. Witthans (now a partner). The hourly rates for Mr. Finestone and Ms. Hayes during the

Second Interim Application period were $525-$560 and the hourly rates for the associate and contract attorneys ranged from $350-$450.[6]

## VI. CONCLUSION AND PRAYER

In performing the services described above from December 3, 2020, through August 31, 2023, Applicant spent 319.6 hours performing services for the Trustee related to various litigation matters and incurred billable fees of $154,043. Applicant presently seeks interim allowance and payment of those fees as its reasonable compensation for its services, calculated on the basis of the hours and hourly rates listed in the billing records attached to the Declaration.

In performing its services during the same time period, Applicant incurred actual and necessary expenses of $2,069.10, as itemized in the attached expense itemization.

Applicant submits that these efforts are properly compensable pursuant to *In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir. 1985). Fees incurred in preparing this Fee Application are not included, as the fees were incurred after the Fee Application period; however, the fees for this Application will be included in a subsequent request and the total fees incurred in drafting Applicant's Fee Applications in this case will not exceed five percent of the total amount of such Fee Applications.

Based on the foregoing, Finestone Hayes LLP requests that this Court authorize allowance of fees and costs as follows:

1. Allow second interim compensation for fees in the sum of $154,043 plus expense reimbursement in the sum of $2,069.10 for total interim compensation of $156,112.10 for the specified services rendered by Applicant for the period from December 3, 2020 through August 31, 2023.

2. Authorize the Trustee to disburse to Finestone Hayes LLP the sum of $156,112.10 representing those amounts noted in Paragraph 1 above.

3. Grant such other and further relief as may be appropriate under the circumstances.

---

[6] Applicant's current hourly rates for senior partners is $610 and $400-$495 for the Firm's other attorneys.

SECOND INTERIM FEE APPLICATION

Dated: September 15, 2023						FINESTONE HAYES LLP

/s/ Jennifer C Hayes
Jennifer C. Hayes
Attorneys for Kyle Everett, Chapter 7 Trustee