1  Stephen D. Finestone (125675)
   Jennifer C. Hayes (197252)
2  FINESTONE HAYES LLP
   456 Montgomery Street, 20th Floor
3  San Francisco, California 94104
   Tel. (415) 616-0466
4  Fax (415) 398-2820
   jhayes@fhlawllp.com
5

6  Attorneys for Chapter 7 Trustee
   Kyle Everett
7

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

11  In re                                    Case No. 20-30819-DM

12  BENJA INCORPORATED,                      Chapter 7

13      Debtor.                              **CHAPTER 7 TRUSTEE'S MOTION
                                             TO APPROVE COMPROMISE OF
14                                           CONTROVERSY WITH
                                             SECURITIES AND EXCHANGE
15                                           COMMISSION**

16                                           Date:  February 23, 2024
                                             Time: 10:00 a.m.
17                                           Ctrm: Video/Tele Conference

18

19
         Kyle Everett, Chapter 7 Trustee (the "Trustee") of the bankruptcy estate (the "Estate") of
20
   Benja Incorporated (the "Debtor"), files this motion (the "Motion"), pursuant to section 105(a),
21
   Bankruptcy Rule 9019(a), and B.L.R. 9014-1(b)(2)[1] for entry of an order approving the
22
   settlement (the "Settlement") reached between the Trustee, on the one hand, and the Securities
23
   and Exchange Commission (the "SEC"), on the other hand.  The Settlement resolves the proof
24
   of claim filed by the SEC on behalf of investors for securities law violations, by providing for
25

26
   [1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11
27  U.S.C. §§ 101–1532. "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy
   Procedure, and "B.L.R." references are to the Bankruptcy Local Rules for the Northern District
28  of California. "ECF" references are to the docket in the above-captioned bankruptcy case.

Case: 20-30819   Doc# 193   Filed: 01/17/24   Entered: 01/17/24 14:38:41   Page 1 of 9

recommended withdrawal of that claim, in exchange for the Trustee's treatment of investor claims *pari passu* with non-investor claims, notwithstanding section 510(b) and the subordination provisions in the investors' agreements with Benja Incorporated. This settlement would not take effect until the later of the occurrence of the following two events: (1) entry of an order approving the settlement; and (2) SEC's actual withdrawal of its proof of claim. Absent the occurrence of both events, and unless and until the occurrence of both events, this settlement will not take effect.

## I.    BACKGROUND

Benja Incorporated aka EPHE Corporation ("Benja" or the "Debtor") was ostensibly an e-commerce advertising startup founded by Andrew Chapin ("Chapin") in 2014.

On October 15, 2020, Mr. Chapin caused the Debtor to file a Chapter 11 bankruptcy case (the "Bankruptcy Case"). ECF No. 1. The Court granted a motion to appoint a Chapter 11 trustee in the Bankruptcy Case on October 26, 2020. ECF Nos. 19 and 26. Mr. Everett was appointed as the Chapter 11 Trustee on November 3, 2020. ECF No. 45.

On or about November 23, 2020, Mr. Chapin was arrested and charged in federal court with multiple counts of fraud in connection with a multi-million-dollar scheme to deceive the Debtor's investors and creditors (the "Criminal Case").

On January 15, 2021, Mr. Everett, then acting as the Chapter 11 Trustee, moved to convert the case to Chapter 7. ECF No. 67. On January 29, 2021, the Bankruptcy Case was converted to Chapter 7 and Mr. Everett was appointed as Chapter 7 Trustee. ECF Nos. 85 and 86.

On June 16, 2021, Mr. Chapin pled guilty to bank fraud, wire fraud, and securities fraud (the "Plea Agreement"). The Plea Agreement provides, *inter alia*, as follows:

> During the relevant time period (June 2019 through September 2020), I looked for additional investors and credit lines for Benja. I told creditors and prospective investors that Benja generated $6,200,000 and $13,200,000 in revenue in 2018 and 2019, respectively, and had signed large contracts with numerous well-known companies including Nike, Fanatics, Patagonia, and Backcountry, to place advertisements for their excess inventory. In truth, I knew that my representations to creditors and investors were false, as I had fabricated Benja's revenue and did not have contracts with any of these companies.

To perpetuate the fraud scheme, beginning in June of 2019 and continuing until August of 2019, I made a series of false statements to Busey Bank to secure lines of credit totaling $5,000,000. For example, on June 24, 2019, I applied for a $1,000,000 line of credit for Benja with Busey Bank. I provided financial statements, a balance sheet, incorporation documents, and tax information in support of the application. I designated Benja's assets as collateral for the loan and submitted a July 2019 Aged Receivables Report listing $2,027,290 in receivables, including $1,600,000 in current receivables from Nike, Patagonia, Backcountry, and Fanatics. In truth, I falsified the aged receivables report, as I knew Benja did not have contracts with Nike, Patagonia, Backcountry, or Fanatics. In truth, I received an advance on my line of credit from Busey Bank and used most of the money to pay off other creditors and investors, to pay my personal credit cards, and transferred funds to my crypto-currency exchange account.

The non-governmental claims bar date was April 9, 2021. (ECF 88). The claims filed in the case, which were all timely filed, are as follows:

| Claim No. | Creditor | Claim Amount/Type | Basis |
|---|---|---|---|
| 1 | Busey | $5,035,580[2] | Note |
| 2, 3 (duplicates)[3] | E-RevShare | $1,218,968 | Revenue Participation Purchase Agmt |
| 4, 5 | Priority Tax Claims | $970 (MA), $10,450 (IRS) | |
| 6 | XRC Growth Fund I | $500,000 | SAFE |
| 7 | XRC Fund III | $125,000 | SAFE |
| 8 | Skar Family Trust | $50,000 | SAFE |
| 9 | Mike Birkel | $212,500 | SAFE |
| 10 | Benjamin Lamb | $25,000 | SAFE |
| 11 | Jonathan Lamb | $25,000 | SAFE |
| 12 | Michael Bower | $25,000 | SAFE |
| 13 | Sean Fleming | $385,000 | SAFE |
| 14 | Nick Foppe | $70,000 | SAFE |
| 15 | Rick Hoskins | $100,000 | Stock Purchase Agreement |
| 16 | David Hughes | $25,000 | SAFE |
| 17 | Kaveri Investment | $100,000 | SAFE |
| 18 | Ryba | $25,000 | SAFE |
| 19 | Daniel Schulman | $10,000 | SAFE |

[2] Filed as secured, which the Trustee disputes because the assets in the estate are avoidable transfer litigation claims to which the lien does not attach. This motion does not purport to address or seek resolution of this issue, which will be addressed separately.
[3] The Trustee will separately address this duplicate claim issue.

Case: 20-30819   Doc# 193   Filed: 01/17/24   Entered: 01/17/24 14:38:41   Page 3 of 9

| 20 | Polly Wong | $150,000 | SAFE |
|---|---|---|---|
| 21 | Priority Tax Claim | $20,284 | |
| 22 | Fenwick | $72,898 | Legal fees |
| 23 | Priority Tax Claim | Unknown | |
| 24 | Priority Tax Claim | $1,656 | |
| 25 | Priority UST Claim | $650 | |
| 26 | Admin Tax Claim | $800 | |
| 27 | Bodil Arlander Revocable Trust | $150,000 | SAFE |
| 28 | SEC | No less than $2,635,000 | Violations of federal securities laws |
| 29 | BB Lending | Claim withdrawn | |
| 30 | Moosylvania (Foppe) | $100,016 | Stock |
| 31[4] | Morgan Reilly | $28,751 | Wages - $7,500 claimed as priority |

The SEC's Claim in the sum of $2,635,000 is based on its complaint filed prepetition against the Debtor and Andrew Chapin in federal district court. (Claim No. 28, Everett Declaration at ¶5, Exhibit A). A copy of the complaint underlying the SEC's claim is attached as Exhibit B to the accompanying Everett Declaration. (Everett Declaration at ¶5, Exhibit B).

The investors' claims totaling approximately $2,077,516 are based on stock, including stock purchase agreements and SAFE agreements (simple agreement for future equity). Some or all of the SAFE agreements contain language about distribution priority, specifying that the SAFE should be treated as preferred stock and is expressly subordinate to indebtedness and creditors of the Debtor. *E.g.*, Claim No. 8, Everett Declaration at ¶6, Exhibit C, ¶1(d)).

## II. SETTLEMENT

The settlement terms are simple. The Trustee and the SEC have agreed that, subject to entry of a final order approving their settlement, the SEC will recommend withdrawal of its proof of claim in exchange for treatment of the claims filed by the investors as timely filed general unsecured claims, pursuant to 11 U.S.C. § 727(a)(2), pari passu with timely filed general

---

[4] Claim No. 32 filed in September 2022 as a section 502(d) claim by MHC Financial Services has been withdrawn pursuant to a court approved settlement agreement.

Case: 20-30819   Doc# 193   Filed: 01/17/24   Entered: 01/17/24 14:38:41   Page 4 of 9

unsecured claims filed by creditors who were not investors, but rather who lent money to the Debtor. This settlement would not take effect until the later of the occurrence of the following two events: (1) entry of an order approving the settlement; and (2) SEC's actual withdrawal of its proof of claim. Absent the occurrence of both events, and unless and until the occurrence of both events, this settlement will not take effect. Although simple, the Trustee anticipates that creditors Busey and E-Rev Share/Empowerment may oppose the settlement.

## III.    LEGAL ARGUMENT

By this Motion, the Trustee seeks approval of the Settlement Agreement pursuant to Bankruptcy Code § 105(a), B.L.R. 9014-1(b)(3), and Bankruptcy Rule 9019(a), which provides:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.

"The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986); *cert. den. sub nom Martin v. Robinson*, 479 U.S. 854 (1986). The bankruptcy court has great latitude in approving compromise agreements. *Woodson v. Fireman's Fund Insurance Co.* (*In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988). However, the court's discretion is not unlimited. The court may approve a compromise only if it is "fair and equitable." *A & C Properties* at 1381. In approving a proposed compromise in bankruptcy proceedings, the court must consider:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* at 1381 (citations omitted).

"It is not necessary to satisfy each of these factors provided that the factors as a whole favor approving the settlement." *In re Pacific Gas & Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004). The Court's role in considering a proposed compromise is "to canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Id.* at

Case: 20-30819   Doc# 193   Filed: 01/17/24   Entered: 01/17/24 14:38:41   Page 5 of 9

417 citing *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496-97 (Bankr. S.D.N.Y. 1991).  Although the Trustee bears the burden of persuasion, "a court generally gives deference to a trustee's business judgment in deciding whether to settle a matter."  *Goodwin v. Mickey Thompson Entm't. Group, Inc.* (*In re Mickey Thompson Entm't Group, Inc.*), 292 B.R. 415, 420 (9th Cir. BAP 2003).

For the reasons stated below, the Trustee believes in his reasonable business judgment that the Settlement Agreement fulfills the *A & C Properties* factors.  Everett Declaration at ¶¶8-13.  As set forth below, the most significant of the *A & C Properties* factors supporting approval of the settlement are the uncertainty and significant expense, inconvenience, and delay that would be created absent approval of the Settlement Agreement, as well as the paramount interest of creditors strongly favor approval of the Settlement Agreement.

## A.  Probability of Success

For the reasons set forth below, the Trustee believes that his probability of subordinating *both* the claims of the SEC and the claims of the investors is not strong.  Everett Declaration at ¶9.

As to the investors' claims, the Trustee believes that, absent the SEC's timely filed claim, the investor claims would be subordinated to creditor claims pursuant to section 510(b), because they are for damages arising from the purchase of securities.  *E.g.*, *Liquidating Trust Comm. of the Del Biaggio Liquidating Trust v. Freeman (In re Del Biaggio)*, 834 F.3d 1003, (9th Cir. 2016); *Kurtin v. Ehrenberg (In re Elieff)*, 637 B.R. 612 (9th Cir. BAP 2022).  Everett Declaration, ¶9(a).

However, section 510(b) does not provide the full answer, given the SEC's timely filed proof of claim, which is based on the SEC's claims alleged in its lawsuit against Benja and Chapin.  (Everett Declaration, ¶5, Exhibit A).  The complaint seeks, *inter alia*, disgorgement of ill-gotten gains or unjust enrichment.  (Everett Declaration, ¶5, Exhibit B).

Although not reduced to judgment in the SEC's prepetition lawsuit filed against the Debtor in District Court, the SEC's claim is deemed allowed in the Benja bankruptcy case in the amount filed (i.e. no less than $2,635,000). 11 U.S.C. § 502(a).

The priority of payment of the SEC's claim is determined by 11 U.S.C. § 726(a). The waterfall of funds will be as follows under section 726(a):[5] (1) administrative expenses (11 U.S.C. § 726(a)(1)); (2) timely filed general unsecured claims (11 U.S.C. § 726(a)(2)); (3) untimely filed general unsecured claims (11 U.S.C. § 726(a)(3) (none); and (4) subordinated penalty claims (U.S.C. § 726(a)(4)).

The question is whether the SEC's claim is a timely filed general unsecured claim entitled to payment under 11 U.S.C. § 726(a)(2) or whether the SEC's claim is a subordinated penalty claim entitled to payment under 11 U.S.C. § 726(a)(4).

Although the answer is not entirely clear, and there is no binding case on the issue, the case law more strongly supports a determination that the SEC's claim should be classified under § 726(a)(2) rather than treated as a subordinated penalty claim under § 726(a)(4).

Section 726(a)(4) provides as follows:

> Distribution of property of the estate: (a)(4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim;

Section 726(a)(4) has been interpreted to apply to claims that are not compensation for actual pecuniary loss. *Texas Am. Oil Corp. v. United States Dep't of Energy*, 44 F.3d 1557 (Fed. Cir. 1995). Unjust enrichment and disgorgement claims have been interpreted to be damages that are not compensation for actual pecuniary loss. E.g., *U.S. CFTC v. Am. Bullion Exch. ABEX, Corp.*, 2011 LEXIS 161088 at *10 (C.D. Cal. March 11, 2011); *Solis v. Courturier*, 2009 U.S. Dist. LEXIS 51888 (E.D. Cal. June 19, 2009). If 726(a)(4) were to apply to the SEC's claim for disgorgement/unjust enrichment, then the SEC's claim is subordinated under 726(a)(4).

However, where, as here, the SEC's damages for unjust enrichment and disgorgement are tied to the actual pecuniary loss of the investors, such claim should not be classified as a

---

[5] This motion assumes that the Trustee will succeed in reclassifying Busey's secured claim as a timely filed general unsecured claim. The Court need not decide this issue to rule on the Trustee's compromise motion.

subordinated penalty claim, because it is more in the nature of compensation for actual pecuniary loss than a penalty. *See Liu v. SEC*, 140 S.Ct. 1936 (2020) (disgorgement "that does not exceed a wrongdoers net profits and is awarded for victims is *equitable* relief permissible under §78u(d)(5).")*; see also Arizona v. Ott (In re Ott)*, 218 B.R. 118 (W.D. Wash. 1998) (holding Arizona's disgorgement judgment had 726(a)(4) payment status *because [unlike here] it was not tied to any particular loss*).

### B. Difficulty of Collection

This factor does not apply.

### C. Complexity of Litigation, Expense, Inconvenience, and Delay

This factor strongly favors approval of the settlement. Everett Declaration, ¶11. Absent a settlement with the SEC, the Trustee will face litigation with the SEC and, likely, the investors. (*Id.*) The Trustee would need to object to the claim filed by the SEC to seek to subordinate it, which the SEC would oppose. The Trustee would similarly need to object to the investors' claims as subordinated claims, which the SEC and the investors are expected to oppose.

This is a Ponzi scheme case. All creditors of the Debtor were stolen from, whether they lent money in the usual sense, or whether they thought they were investing in the company. In this context, and given that the SEC had filed a lawsuit for disgorgement against the Debtor prepetition, and liquidated that claim in the bankruptcy case by filing its proof of claim, and given that the SEC has agreed to withdraw its claim, which has apparent section 726(a)(2) status, as explained above, in exchange for treatment of investors as section 726(a)(2) creditors, the settled result is a result that the Trustee in his reasonable business judgment believes is the path of least complexity, least expense, and least delay in resolution of the claims issues in this case. Everett Declaration, ¶11.

### D. Paramount Interest of Creditors

This factor also favors settlement. Everett Declaration, ¶12. This is a Ponzi scheme case. All creditors were stolen from, whether they lent money in the usual sense, or whether they thought they were investing in the company. It is not in the interest of creditors for the Trustee to cause the bankruptcy estate to incur significant administrative expense to litigate subordination arguments with the SEC and investors, with an uncertain outcome. In this context, and given

Case: 20-30819   Doc# 193   Filed: 01/17/24   Entered: 01/17/24 14:38:41   Page 8 of 9

1    that the SEC had filed a lawsuit for disgorgement against the Debtor prepetition, and liquidated

2    that claim in the bankruptcy case by filing its proof of claim, and given that the SEC has agreed

3    to withdraw its claim, which has apparent section 726(a)(2) payment status, as explained above,

4    in exchange for treatment of investors as creditors entitled to payment status under section

5    726(a)(2), the settled result is a result that the Trustee believes in his reasonable business

6    judgment is in the paramount interest of creditors (in the broadest sense).

7    **IV.    CONCLUSION**

8    For the reasons stated above, the Trustee requests entry of an order granting his Motion

9    and approving the settlement by and between the Trustee and the SEC.

10

11    Dated: January 17, 2024             **FINESTONE HAYES LLP**

12

13

14                                       By: *Jennifer C. Hayes*

                                      Jennifer C. Hayes, on behalf of Kyle Everett,

15                                       solely in his capacity as Chapter 7 Trustee of

                                      the Benja bankruptcy estate

16

17

18

19

20

21

22

23

24

25

26

27

28

Case: 20-30819    Doc# 193    Filed: 01/17/24    Entered: 01/17/24 14:38:41    Page 9 of 9