Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
Kimberly S. Fineman (184433)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Tel. (415) 209-5027
kfineman@fhlawllp.com

Attorneys for Chapter 7 Trustee
Kyle Everett

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>BENJA INCORPORATED,<br><br>Debtor. | Case No. 20-30819-DM<br><br>Chapter 7<br><br>**CHAPTER 7 TRUSTEE'S MOTION TO APPROVE COMPROMISE OF CONTROVERSY WITH JOMBOY CORP.**<br><br>[No Hearing Unless Requested; Notice and Opportunity for Hearing Filed Pursuant to B.L.R. 9014-1(b)(3)] |

Kyle Everett, Chapter 7 Trustee ("Trustee") of the bankruptcy estate (the "Bankruptcy Estate") of Benja Incorporated ("Benja" or the "Debtor"), files this motion (the "Motion"), pursuant to section 105(a), Bankruptcy Rule 9019(a), and B.L.R. 9014-1(b)(3) [1] for entry of an order approving the settlement agreement (the "Settlement Agreement") reached between Trustee, on the one hand, and Jomboy Corp. dba Jomboy Media ("Jomboy"), on the other hand.

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, and "B.L.R." references are to the Bankruptcy Local Rules for the Northern District of California. "ECF" references are to the docket in the above-captioned bankruptcy case.

1

The Settlement Agreement resolves avoidable transfer claims asserted by Trustee against Jomboy in return for a net settlement payment of $200,000. All potential claims between the Bankruptcy Estate and Jomboy are also released, except those arising from the Settlement Agreement. Payment of the $200,000 will be made in installments, with the first installment of not less than $50,000 payable within 10 days of the entry of a final order approval this Motion and the final installment to be received before the end of calendar year. The Settlement Agreement is subject to, and conditioned upon, Bankruptcy Court approval. The Motion is supported by the points and authorities set forth below, the concurrently filed Notice and Opportunity for Hearing, the supporting Declaration of Kyle Everett (the "Everett Declaration"), and the related proof of service.

## I. BACKGROUND

Benja was ostensibly an e-commerce advertising startup founded by Andrew Chapin ("Chapin") in 2014. Trustee alleges Benja was used by Chapin as a Ponzi scheme to defraud investors for his own personal gain. Everett Declaration, ¶ 4-5.

Jomboy is a multimedia sports and entertainment company started by James O'Brien in 2017. Everett Declaration, ¶ 6.

On October 15, 2020, Chapin caused the Debtor to file a Chapter 11 bankruptcy case (the "Bankruptcy Case"). ECF No. 1. The Court granted a motion to appoint a Chapter 11 trustee in the Bankruptcy Case on October 26, 2020. ECF Nos. 19 and 26. Trustee was appointed as the Chapter 11 Trustee on November 3, 2020. ECF No. 45.

On or about November 23, 2020, Chapin was arrested and charged in federal court with multiple counts of fraud in connection with a multi-million-dollar scheme to deceive the Debtor's investors and creditors. Everett Declaration, ¶8.

On January 15, 2021, Trustee, then acting as the Chapter 11 Trustee, moved to convert the case to Chapter 7. ECF No. 67. On January 29, 2021, the Bankruptcy Case was converted to Chapter 7 and Trustee was appointed as Chapter 7 Trustee. ECF Nos. 85 and 86.

2

On June 16, 2021, Chapin pled guilty to bank fraud, wire fraud, and securities fraud. Everett Declaration, ¶ 10.

As further detailed in the concurrently filed Everett Declaration, Trustee alleges that between June and October 2018, Chapin purported to invest in Jomboy using accounts he also used for Benja, from funds allegedly sourced from Benja's investors (the "Transfers"). Everett Declaration, ¶ 11. Trustee estimates the current value of the Transfers arising from this investment would be between $310,000 and $340,000. Everett Declaration, ¶ 14. Trustee further alleges that Chapin purported to have Jomboy repurchase his investment in Jomboy post-petition in December 2020. Everett Declaration, ¶ 12. Accordingly, Trustee has informally asserted several claims against Jomboy to avoid and recover the Transfers and avoid the repurchase transaction pursuant to sections 548, 549 and 550 of the Bankruptcy Code. Everett Declaration, ¶ 13.

Jomboy vigorously denies the claims asserted. Jomboy insists it did not know nor should have known that Benja's assets were purportedly used to fund Chapin's investment; and that any transactions with Chapin were arm's length transactions made in good faith for value. Trustee and Jomboy entered into extensive negotiations regarding the asserted claims and potential defenses.

On October 5, 2022, Trustee and Jomboy entered into a tolling agreement regarding potential claims by the Bankruptcy Estate against Jomboy. ECF No. 135. The parties subsequently further extended the tolling agreement to continue their negotiations. ECF Nos. 154 and 187.

On November 30, 2023, Trustee and Jomboy filed a stipulation to participate in the Bankruptcy Dispute Resolution Program ("BDRP") for the Northern District of California. ECF No. 189. On December 18, 2023, the parties participated in a BDRP mediation (the "Mediation"). The parties reached a settlement at the Mediation, which was memorialized by the Settlement Agreement dated January 9, 2024.

3

## II. SETTLEMENT AGREEMENT TERMS

The key terms of the Settlement Agreement, which is subject to this Court's approval, are as follows[2]:

- **Settlement Payment**. Jomboy will pay to Trustee the total sum of $200,000 (the "**Settlement Payment**"), as follows:

    ➤ $50,000, within 10 calendar days of the Effective Date, and

    ➤ The $150,000 balance paid, at Jomboy's option, in three (3) or four (4) installments of not less than $37,500 each due within ninety (90) days of the prior payment due date (with the first installment due ninety (90) days from the date the initial payment set forth above is due), provided that any remaining balance of the Settlement Payment must be paid in full and received by Trustee by no later than 11:59 p.m. prevailing Pacific Time on December 31, 2024.

    Each installment of the Settlement Payment shall be made by wire transfer.

- **Mutual Release**. The Bankruptcy Estate and Jomboy mutually release each other from all claims and obligations except those under the Settlement Agreement.

- **No admission of liability**. Nothing in the Settlement Agreement shall constitute or be construed as an admission of liability.

- **Settlement Agreement Conditioned Upon Bankruptcy Court Approval**. The Settlement Agreement is conditioned upon the approval of the Bankruptcy Court. The Parties agree to a waiver of the 14-day stay as set forth in Bankruptcy Rule 6004 with respect to the effectiveness of the Order.

## III. LEGAL ARGUMENT

By this Motion, Trustee seeks approval of the Settlement Agreement pursuant to Bankruptcy Code section 105(a), B.L.R. 9014-1(b)(3), and Bankruptcy Rule 9019(a), which provides:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.

---

[2] If there is a discrepancy between this Motion and the Settlement Agreement, the Settlement Agreement shall control.

4

"The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986); *cert. den. sub nom Martin v. Robinson*, 479 U.S. 854 (1986). The bankruptcy court has great latitude in approving compromise agreements. *Woodson v. Fireman's Fund Insurance Co.* (*In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988). However, the court's discretion is not unlimited. The court may approve a compromise only if it is "fair and equitable." *A & C Properties* at 1381. In approving a proposed compromise in bankruptcy proceedings, the court must consider:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* at 1381 (citations omitted).

"It is not necessary to satisfy each of these factors provided that the factors as a whole favor approving the settlement." *In re Pacific Gas & Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004). The Court's role in considering a proposed compromise is "to canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Id.* at 417 citing *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496-97 (Bankr. S.D.N.Y. 1991). Although Trustee bears the burden of persuasion, "a court generally gives deference to a trustee's business judgment in deciding whether to settle a matter." *Goodwin v. Mickey Thompson Entm't. Group, Inc.* (*In re Mickey Thompson Entm't Group, Inc.),* 292 B.R. 415, 420 (9th Cir. BAP 2003).

For the reasons stated below, Trustee believes in his reasonable business judgment that the Settlement Agreement fulfills the *A & C Properties* factors. Everett Declaration, ¶ 20. As set forth below, the most significant of the *A & C Properties* factors supporting approval of the settlement are the uncertainty of litigation and significant expense, inconvenience, and delay in collection that would be created absent approval of the Settlement Agreement.

5

### A. Probability of Success

Trustee's probability of establishing the potential claims against Jomboy is moderately high, but not without potential risk. Trustee is confident the Transfers to Jomboy are easily traceable to funds received in the bank accounts used by Benja as investments in Benja. The only inflow of funds to the bank accounts at issue was from Benja investors. However, the bank accounts used by Benja were, at the time of the Transfers, in Chapin's name. Further, the investment made by Chapin was not for shares in Jomboy, but for a right to purchase future shares, which further complicates the value of the investment and whether the estate can recover the same. To recover the investment, Trustee would have to establish: (1) the rights arising from the investment belong to the Bankruptcy Estate and not Chapin, (2) the Bankruptcy Estate should recover more than the initial cash amount used to invest, but rather the value of the investment, (3) the repurchase of the investment is avoidable under either Bankruptcy or California state law and (4) one of the triggering events for the issuance of shares has, in fact, occurred.

This is a substantial burden of proof to meet, even with the overwhelming evidence that Chapin used Benja as a Ponzi scheme. Case law provides a presumption of actual fraud when, as here, there is a criminal plea establishing the elements of a Ponzi scheme and when the transfers were made in the course of such Ponzi scheme. *Santa Barbara Capital Mgmt v. Neilson (In re Slatkin)*, 525 F.3d 805, 814 (9th Cir. 2008); *see Kasolas v. Nicholson (In re Fox Ortega Enterprises, Inc.),* 631 B.R. 425 (Bankr. N.D. Cal. 2021). Despite this presumption, however, Trustee still bears the burden of establishing that the transfers made to Jomboy were part of any Ponzi scheme orchestrated by Chapin. *Fox Ortega* at 449-50, 456. The recovery of the Transfers is not the typical type of transfer avoided in a Ponzi scheme case. Jomboy isn't an investor in Benja who received a later partial payout at the expense of other creditors. In fact, Jomboy isn't a creditor of the Bankruptcy Estate at all. Absent settlement, both factual and legal issues would be at issue. Thus, this factor favors approval of the Settlement Agreement.

6

**B. Difficulty of Collection**

The difficulty of collection element also weighs in favor of approving the Settlement Agreement. Although the liquidity of Jomboy's shares might be challenging, there is no evidence to suggest that Jomboy would be unable to pay a monetary judgment against it in the range of maximum values estimated by Trustee. Jomboy is a Delaware corporation with its headquarters and principal assets in New York City metropolitan area. To collect on any judgment entered by this Court, Trustee would have to domesticate the judgment, which would require additional costs and delay in recovery for the Bankruptcy Estate.

**C. Complexity of Litigation, Expense, Inconvenience, and Delay**

This factor weighs slightly in favor of approval of the Settlement Agreement. Trustee believes this matter could be immediately set for trial, without the need for further discovery by Trustee. Although there are both legal and factual disputes, Trustee believes the facts presented are relatively straight forward. Trustee estimates that it would require at least $50,000 in attorneys' fees and costs, and at least 6 months, to reach a judgment against Jomboy on the potential claims. Jomboy estimates that its vigorous defense of the alleged claims would result in substantially more delay and significantly more costs to the Bankruptcy Estate if this matter were brought to trial. In return for a discount on the larger potential litigation recovery, the Bankruptcy Estate avoids significant additional expense and will receive an immediate payment of $50,000, with the balance in measured installments before the year's end.

**D. Paramount Interest of Creditors**

Trustee believes the paramount interest of creditors factor is neutral. Any recovery from Jomboy, whether through the Settlement Agreement or through an ultimate judgment, would directly benefit the Bankruptcy Estate. Jomboy has no current claim against the Bankruptcy Estate and, under the Settlement Agreement, would further release all potential claims against the Bankruptcy Estate. While the recovery might be greater if the matter was litigated, there would also be substantial offsetting costs to such litigation. Rather than incur at least $50,000 in attorneys' fees in costs to pursue the claims, the Settlement Agreement results in the Bankruptcy

7

Estate's realization of $200,000 in unencumbered funds without the need for the costs and uncertainty of litigation.

In summary, Trustee submits the Settlement Agreement is fair and equitable, within the range of reasonableness, and, in Trustee's reasonable business judgment, in the best interest of the Estate.

### IV. WAIVER OF RULE 6004(h) AND RELATED STAY PROVISIONS

In accordance with the Settlement Agreement, Trustee requests that the order approving compromise provide: "This Order is effective upon entry, and the stay otherwise imposed by Rule 62(a) of the Federal Rules of Civil Procedure and/or Bankruptcy Rule 6004(h) shall not apply." The Settlement Agreement provides for wavier of these stay provisions.

### V. CONCLUSION

For the reasons stated above, Trustee requests entry of an order granting his Motion and approving the Settlement Agreement.

Dated: January 22, 2024  **FINESTONE HAYES LLP**

By: /s/ Kimberly S. Fineman

Kimberly S. Fineman
Attorneys for Chapter 7 Trustee Kyle Everett

8