Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
Kimberly S. Fineman (184433)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Tel. (415) 209-5027
Fax (415) 398-2820
kfineman@fhlawllp.com

Attorneys for Chapter 7 Trustee
Kyle Everett

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>BENJA INCORPORATED,<br><br>    Debtor. | Case No. 20-30819-DM<br><br>Chapter 7<br><br>**DECLARATION OF KYLE EVERETT IN SUPPORT OF CHAPTER 7 TRUSTEE'S MOTION TO APPROVE COMPROMISE OF CONTROVERSY WITH JOMBOY CORP.**<br><br>[No Hearing Unless Requested; Notice and Opportunity for Hearing Filed Pursuant to B.L.R. 9014-1(b)(3)] |

I, Kyle Everett, declare as follows:

    1.    I am the duly appointed Chapter 7 Trustee ('Trustee") of the bankruptcy estate (the "Bankruptcy Estate") of Benja Incorporated (the "Debtor") in the above-captioned case (the "Bankruptcy Case").

    2.    All statements in this declaration are based on my own personal knowledge and observation, or upon information and belief based upon my review of the court and business records in this case. Some information noted below was also derived from my review of documents produced by Jomboy Corp. in response to a third-party document subpoena my

counsel issued dated July 14, 2022. That production is subject to a protective order issued by the Bankruptcy Court on August 15, 2022 (the "Protective Order") [ECF No. 114.] If called to testify on this matter, I could and would competently testify to the matters set forth in this Declaration.

3. I make this Declaration in support of the concurrently filed *Chapter 7 Trustee's Motion to Approve Compromise of Controversy with Jomboy Corp.* (the "Motion"). The Motion seeks entry of an order approving the settlement agreement (the "Settlement Agreement") reached between myself as Trustee, on the one hand, and Jomboy Corp. dba Jomboy Media ("Jomboy"), on the other hand (together Trustee and Jomboy are defined as the "Parties"). The Settlement Agreement, an authentic copy of which is attached as **Exhibit A**, resolves avoidable transfer claims held by the Bankruptcy Estate and asserted against Jomboy in return for a net settlement payment of $200,000 from Jomboy.

4. Benja was ostensibly an e-commerce advertising startup founded by Andrew Chapin ("Chapin") in 2014.

5. At all relevant times, and other than *de minimis* legitimate business transactions, Chapin operated Benja as a Ponzi scheme to defraud investors for his own personal gain.

6. I am informed and believe, Jomboy is a multimedia sports and entertainment company started by James O'Brien in 2017.

7. On October 15, 2020, Chapin caused the Debtor to file a Chapter 11 bankruptcy case (the "Bankruptcy Case"). The Court granted a motion to appoint a Chapter 11 trustee in the Bankruptcy Case on October 26, 2020. I was appointed as the Chapter 11 trustee on November 3, 2020.

8. On or about November 23, 2020, Chapin was arrested and charged in federal court with multiple counts of fraud in connection with a multi-million-dollar scheme to deceive the Debtor's investors and creditors.

9. The Chapter 11 case was converted to Chapter 7 on January 29, 2021, and I was appointed as the Chapter 7 trustee.

10. On June 16, 2021, Chapin pled guilty to bank fraud, wire fraud, and securities fraud.

11. I am informed and believe that between June and October 2018, Chapin purported to invest in Jomboy using accounts he also used for Benja, from funds sourced from Benja's investors (the "Transfers").

12. I am informed and believe Chapin purported to have Jomboy repurchase his investment in Jomboy post-petition in December 2020.

13. Based upon my investigation, I believe the Bankruptcy Estate has potential claims against Jomboy to avoid and recover the Transfers and avoid the repurchase transaction pursuant to sections 548, 549 and 550 of the Bankruptcy Code.

14. Based upon my investigation, I believe the current value of this investment arising from the Transfers would be between $310,000 and $340,000.

15. Jomboy vigorously denies the claims asserted. Jomboy insists it did not know nor should have known that Benja's assets were purportedly used to fund Chapin's investment; and that any transactions with Chapin were arm's length transactions made in good faith for value. I entered into extensive negotiations with Jomboy regarding the asserted claims and potential defenses.

16. On October 5, 2022, the Parties entered into a tolling agreement regarding potential claims by the Bankruptcy Estate against Jomboy. The Parties subsequently further extended the tolling agreement to continue their negotiations.

17. On November 30, 2023, the Parties filed a stipulation to participate in the Bankruptcy Dispute Resolution Program ("BDRP") for the Northern District of California. ECF No. 189. On December 18, 2023, the Parties participated in a BDRP mediation (the "Mediation"). The Parties reached a settlement at the Mediation, which was memorialized by the Settlement Agreement dated January 9, 2024.

18. <u>Settlement Agreement</u>. As set forth more fully in the Settlement Agreement,[1] the key terms of the settlement, which is subject to this Court's approval, are as follows:

---

[1] If there is a discrepancy between this Declaration and the Settlement Agreement, the Settlement Agreement shall control.

- Settlement Payment. Jomboy will pay to Trustee the total sum of $200,000 (the "Settlement Payment"), as follows:
    - $50,000, within 10 calendar days of the Effective Date, and
    - The $150,000 balance paid, at Jomboy's option, in three (3) or four (4) installments of not less than $37,500 each due within ninety (90) days of the prior payment due date (with the first installment due ninety (90) days from the date the initial payment set forth above is due), provided that any remaining balance of the Settlement Payment must be paid in full and received by Trustee by no later than 11:59 p.m. prevailing Pacific Time on December 31, 2024.

  Each installment of the Settlement Payment shall be made by wire transfer.

- Mutual Release. The Bankruptcy Estate and Jomboy mutually release each other from all claims and obligations except those under the Settlement Agreement.

- No admission of liability. Nothing in the Settlement Agreement shall constitute or be construed as an admission of liability.

- Settlement Agreement Conditioned Upon Bankruptcy Court Approval. The Settlement Agreement is conditioned upon the approval of the Bankruptcy Court. The Parties agree to a waiver of the 14-day stay as set forth in Bankruptcy Rule 6004 with respect to the effectiveness of the Order.

19. By the Motion, and in my capacity as Trustee of the Benja bankruptcy estate, I seek approval of the Settlement Agreement.

20. For the reasons stated below, I believe in my reasonable business judgment that the Settlement Agreement fulfills the *A & C Properties* factors set forth in *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986); *cert. den. sub nom Martin v. Robinson*, 479 U.S. 854 (1986). As set forth below, the most significant of the *A & C Properties* factors supporting approval of the settlement are the uncertainty of litigation and significant expense, inconvenience, and delay in collection that would be created absent approval of the Settlement Agreement.

21. Probability of Success. I believe the potential claims against Jomboy are strong, but not without potential risk. I am confident the Transfers are easily traceable to funds received in the bank accounts used by Benja as investments in Benja. The only inflow of funds to the

bank accounts at issue was from Benja investors. However, the bank accounts used by Benja were, at the time of the Transfers, in Chapin's name.

22. Further, the investment made by Chapin was not for shares in Jomboy, but for a right to purchase future shares, which further complicates the value of the investment and whether the estate can recover the same.

23. To recover those sums, however, I would have to establish each of the following in litigation against Jomboy: (1) the rights arising from the investment belong to the Bankruptcy Estate and not Chapin, (2) the Bankruptcy Estate should recover more than the initial cash amount used to invest, but rather the value of the investment, (3) the repurchase of the investment is avoidable under either Bankruptcy or California state law and (4) one of the triggering events for the issuance of shares has, in fact, occurred.

24. This is a substantial burden of proof to meet, even with the overwhelming evidence that Chapin used Benja as a Ponzi scheme. I am informed and believe that case law provides a presumption of actual fraud when, as here, there is a criminal plea establishing the elements of a Ponzi scheme and when the transfers were made in the course of such Ponzi scheme. Despite this presumption, however, I still bear the burden of establishing that the Transfers made to Jomboy were part of a Ponzi scheme orchestrated by Chapin, which Jomboy strenuously disputes. I recognize the recovery of the Transfers is not the typical type of transfer avoided in a Ponzi scheme case. Jomboy isn't an investor in Benja who received a later partial payout at the expense of other creditors. In fact, Jomboy isn't a creditor of the Bankruptcy Estate at all.

25. Absent settlement, both factual and legal issues would be at issue. Although I believe the potential claims are strong, each factual and legal issue presented increases the potential risk to the Bankruptcy Estate in litigating the claims. For this reason, I believe the probability of success factor favors approval of the Settlement Agreement.

26. <u>Difficulty of Collection:</u> I believe the difficulty of collection element also weighs in favor of approving the Settlement Agreement.

27. Although the liquidity of Jomboy's shares might be challenging, there is no evidence to suggest that Jomboy would be unable to pay a monetary judgment against it in the range of maximum values I have estimated.

28. Jomboy is a Delaware corporation with its headquarters and principal assets in New York City metropolitan area. To collect on any judgment entered by this Court, I would have to domesticate the judgment, which would require additional costs and delay in recovery for the Bankruptcy Estate.

29. <u>Complexity of Litigation, Expense, Inconvenience, and Delay</u>. I am informed by my counsel and believe this matter could be immediately set for trial, without the need for further discovery on behalf of the Bankruptcy Estate. Although there are both legal and factual disputes, I believe the facts presented are relatively straight forward. I estimate that it would require at least $50,000 in attorneys' fees and costs, and at least 6 months, to reach a judgment against Jomboy on the Potential Claims.

30. Jomboy estimates that its vigorous defense of the alleged claims would result in substantially more delay and significantly more costs to the Bankruptcy Estate if this matter were brought to trial. The only discovery thus far between the parties has been by my counsel. I recognize that, in the event an Adversary Proceeding would be required, Jomboy would have its own discovery requests which would result in additional costs and delay to the Bankruptcy Estate. Given the Protective Order and sensitive nature of Jomboy's business operations, Jomboy may also file several pre-trial motions regarding the evidence to be presented.

31. In return for a discount in the larger potential litigation recovery, the Bankruptcy Estate avoids significant additional expense and will receive an immediate payment of $50,000, with the balance in measured installments before the year's end.

32. In light of each of these factors, I believe the complexity of litigation, expense, inconvenience, and delay factor weighs slightly in favor of approval of the Settlement Agreement.

33. <u>Paramount Interest of Creditors.</u> I believe the paramount interest of creditors factor is neutral. Any recovery from Jomboy, whether through the Settlement Agreement or

through an ultimate judgment, would directly benefit the Bankruptcy Estate. Jomboy has no current claim against the Bankruptcy Estate and, under the Settlement Agreement, would further release all potential claims against the Bankruptcy Estate. While the recovery might be greater if the matter was litigated, there would also be substantial offsetting costs to such litigation. Rather than incur at least $50,000 in attorneys' fees in costs to pursue the claims, the Settlement Agreement results in the Bankruptcy Estate's realization of $200,000 in unencumbered funds without the need for the costs and uncertainty of litigation.

34. Taken together, in summary, I submit that the Settlement Agreement is fair and equitable, within the range of reasonableness, and, in my reasonable business judgment as Trustee, in the best interest of the Bankruptcy Estate.

I declare under penalty of perjury under the laws of the United States, that the foregoing is true and correct. Executed in San Francisco County, California on January 22, 2024.

_____
Kyle Everett, Solely in my Capacity as Chapter 7 Trustee of the Benja Incorporated Bankruptcy Estate

7

# Exhibit A

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("**Agreement**") is made and entered into on the last date set forth on the signature pages below ("**Execution Date**"), by and between Kyle Everett, in his capacity as the Chapter 7 Trustee ("**Trustee**") for the bankruptcy estate (the "**Bankruptcy Estate**") of Benja Incorporated in the one hand, and Jomboy Corp., a Delaware corporation, on the other hand ("**Jomboy**"). For purposes of this Agreement, Trustee and Jomboy may be referred to individually as a "**Party**" and collectively as the "**Parties**."

## RECITALS

A. Benja Incorporated aka EPHE Corporation ("**Benja**" or the "**Debtor**") was ostensibly an e-commerce advertising startup founded by Andrew Chapin ("**Chapin**") in 2014. Trustee alleges Benja was used by Chapin as Ponzi scheme to defraud investors for his own personal gain.

B. Jomboy is a multimedia sports and entertainment company started by James O'Brien in 2017.

C. On October 15, 2020, the Debtor to file a Chapter 11 bankruptcy case in the Northern District of California (the "**Court**"), which was assigned Case No. 20-30819 (the "**Bankruptcy Case**"). Doc. No. 1. The Court granted a motion to appoint a Chapter 11 trustee in the Bankruptcy Case on October 26, 2020. Doc Nos. 19 and 26. Trustee was appointed as the Chapter 11 Trustee on November 3, 2020. Doc. No. 45.

D. On January 15, 2021, Trustee, then acting as the Chapter 11 Trustee, moved to convert the case to Chapter 7. Doc No. 67. On January 29, 2021, the Bankruptcy Case was converted to Chapter 7 and Mr. Everett was appointed as Chapter 7 Trustee. Doc. Nos. 85 and 86.

E. Trustee has asserted certain claims on behalf of the Bankruptcy Estate against Jomboy regarding its pre-petition transactions with the Debtor and its principal; claims which Jomboy vigorously denies. The Parties entered into extensive negotiations regarding such alleged claims.

F. On October 5, 2022, Trustee and Jomboy entered into a tolling agreement regarding potential claims by the Bankruptcy Estate against Jomboy. Doc. No. 135. The Parties subsequently further extended the tolling agreement, with the current expiration date being March 18, 2024. Doc. Nos. 154, 187 and 191.

G. On November 30, 2023, the Parties filed a stipulation to participate in the Bankruptcy Dispute Resolution Program ("**BDRP**") for the Northern District of California. Doc. No. 189. On December 18, 2023, the parties participated in a BDRP mediation (the "**Mediation**").

H. The Parties' ongoing efforts resulted in a settlement agreed to at the Mediation memorialized by this Agreement, which subject to Court approval upon appropriate notice to creditors.

1

# AGREEMENT

Based on the foregoing, in consideration of the promises and the mutual covenants of the Parties stated in this Agreement, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows, in full and final settlement of all potential claims between the Parties:

1. **Bankruptcy Court Approval**. This Agreement is conditioned upon the approval of the Court. In connection with obtaining approval of the Court, upon full execution of this Agreement, Trustee shall, subject to the provisions of Section 2 hereof, file a motion under Rule 9019 of the Federal Rules of Bankruptcy Procedure and provide notice of that motion, as required by Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "**9019 Motion**"). The Parties agree to cooperate in obtaining approval of such motion. This Agreement shall become effective on the date the order of the Court approving this Agreement ("**Order**") becomes final and non-appealable (the "**Effective Date**"). The Parties agree to a waiver of the 14-day stay as set forth in Bankruptcy Rule 6004 with respect to the effectiveness of the Order.

2. **Filing Under Seal**. Prior to filing the 9019 Motion, Trustee shall file a motion seeking the Court's approval to file the 9019 Motion and the supporting declaration, attached to which will be this Agreement, under seal (the "**Seal Motion**"). The Parties agree to cooperate in seeking such relief from the Court but also further agree to be bound by the decision of the Court as to extent to which the 9019 Motion and any related documents (including but not limited to the supporting declaration and its exhibit(s)) may be filed under seal. The Parties waive the right to appeal the Court's decision on the Seal Motion. For the avoidance of doubt, this Agreement shall become effective as set forth in Section 1 above, and its effectiveness is not contingent upon the 9019 Motion and/or any related documents or order being filed under seal.

3. **Settlement Payment**. Jomboy will pay to Trustee the total sum of $200,000 (the "**Settlement Payment**"), as follows:

    3.1 $50,000, within 10 calendar days of the Effective Date, and

    3.2 The $150,000 balance paid, at Jomboy's option, in three (3) or four (4) installments of not less than $37,500 each due within ninety (90) days of the prior payment due date (with the first installment due ninety (90) days from the date the payment set forth in Section 3.1 is due), provided that any remaining balance of the Settlement Payment must be paid in full and received by Trustee by no later than 11:59 p.m. prevailing Pacific Time on December 31, 2024.

    Each installment of the Settlement Payment shall be made by wire transfer as the only acceptable payment method, pursuant to written instructions to be provided separately by counsel for Trustee

4. **Notices**. Notwithstanding any requirements to the contrary, whether under state law, federal law, or otherwise, all notices, demands, requests, consents, or other communications under this Agreement shall be in writing and shall be given by mail and email to the parties at the

2

addresses shown below, or to such other address or by other such methods as may be designated by written notice given by either party to the other party.

    4.1  **To Jomboy**:

        By mail :                       Jomboy Corporation
                                          Attn: Courtney Hirsch, COO
                                          48 West 37th Street, 15th Floor
                                          New York, NY 10018

        With a copy by email:    courtney@jomboymedia.com; bahirsch@gmail.com;
                                          kbanner@greenbergglusker.com;
                                          eperlmuttergumbiner@greenbergglusker.com

    4.2  **To Trustee:**

        By mail:                        Kyle Everett, Chapter 7 Trustee
                                          150 Post Street, Suite 400
                                          San Francisco, CA 94108

        With a copy by email:    keverett@dsiconsulting.com; kfineman@fhlawllp.com;
                                            jhayes@fhlawllp.com.

5.  **<u>Event of Default as to Settlement Payment and Liquidated Damages</u>.**

    **5.1 Notice and Cure Period.** In the event that Jomboy does not timely pay any installment of the Settlement Payment on or before the applicable due dates, Trustee or his counsel shall provide notice of the default as provided in Section 4.1 of this Agreement. Jomboy shall have fifteen (15) calendar days from the date notice is given (the "**Cure Period**") to cure the default. Trustee in his sole and absolute discretion may decide whether to further extend the Cure Period. Jomboy's failure to cure any default prior to the expiration of the Cure Period, as such period may have been extended, shall constitute an "**Event of Default**".

    **5.2 Liquidated Damages**. Upon the occurrence of an Event of Default, the Parties hereby agree that Trustee shall be entitled to liquidated damages in the amount of $310,000, less any payments received by Trustee prior to the occurrence of the Event of Default (the "**Liquidated Damages**"). The Liquidated Damages reflects the Parties' best estimate of the probable loss to the Bankruptcy Estate flowing from any breach of this Agreement. The Parties acknowledge the exact damages would be uncertain and difficult to calculate and, in light thereof, the Parties have agreed on the Liquidated Damages amount as an essential term of this Agreement.

    **5.3 Motion for Entry of Judgment.** Upon the occurrence of an Event of Default, Trustee in his sole and absolute discretion may bring a motion before the Court for entry of a

3

judgment in an amount not to exceed the Liquidated Damages (the "**Default Motion**"). Challenges that may be raised by Jomboy in opposition to such a motion are limited to (1) whether a payment default has occurred and (2) the amount of payments received, in accordance with Section 3 above, at the time of the alleged default. For the avoidance of doubt, Jomboy waives all other potential objections and defenses in connection with the Default Motion including the amount of the Liquidated Damages, and consents to the Court's authority to enter a final judgment with respect to the Default Motion.

6. **Release by Trustee**. Except as otherwise set forth in this Agreement, in consideration of the promises, covenants and agreements set forth herein and for other good and valuable consideration, Trustee, and his affiliates, successors and/or assigns, on behalf of the Bankruptcy Estate hereby waives, remises, releases, acquits, satisfies, and forever discharges Jomboy, its parent, subsidiaries and related persons and entities, as well as all of their past, present and future owners, shareholders, members, officers directors, employees, agents, professionals, attorneys, accountants, predecessors, successors and assigns (the "**Jomboy Released Parties**") of and from all manner of action and actions, cause and causes of action, suits, debts, sums of money, accounts, covenants, contracts, controversies, agreements, promises, trespasses, damages, judgments, executions, claims, and demands whatsoever, in law or in equity including, without limitation, all claims which were made or could have been asserted in the Bankruptcy Case, with the exception of the Parties' obligations under this Agreement. For the avoidance of doubt, nothing in this Agreement releases or impairs Trustee's duties as set forth in section 4.N.9 of the Handbook for Chapter 7 Trustees published by the U.S. Department of Justice (version dated March 24, 2023). Furthermore, nothing in this Agreement impairs or prevents Trustee from communicating with governmental agencies, regulatory authorities, and/or third parties about the claims alleged against Jomboy, whether or not Trustee's claims are released.

7. **Release by Jomboy**. Except as otherwise set forth in this Agreement, in consideration of the promises, covenants and agreements set forth herein and for other good and valuable consideration, Jomboy, and its affiliates, successors, and/or assigns hereby waive, remise, release, acquit, satisfy, and forever discharge Trustee, Trustee's professionals, including but not limited to his attorneys and accountants, and the Bankruptcy Estate, as well as their agents, representatives, predecessors, successors, spouses, and assigns (the "**Bankruptcy Estate Released Parties**"), of and from all manner of action and actions, cause and causes of action, suits, debts, sums of money, accounts, covenants, contracts, controversies, agreements, promises, trespasses, damages, judgments, executions, claims, and demands whatsoever, in law or in equity including, without limitation, all claims which were made or could have been asserted in the Bankruptcy Case, with the exception of the Parties' obligations under this Agreement.

8. **Release of Unknown Claims**. The Parties specifically waive and relinquish all rights and benefits afforded by Section 1542 of the California Civil Code, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

4

The Parties' waiver of all rights and benefits afforded by Section 1542 is done with their understanding and acknowledgement of the significance of such a specific waiver of Section 1542. Notwithstanding the provisions of Section 1542, and for the purpose of implementing a full and complete release and discharge of each and all the Parties hereto, the Parties expressly acknowledge that this Agreement is intended to include in its effect (without limitation) all claims the Parties know or suspects to exist in their respective favor, and all claims the Parties do not know or suspect to exist in their respective favor at the time each Party executes this Agreement, which contemplates the extinguishment of any such claims. This waiver also applies to any other relevant re-codification or similar laws implemented hereafter substantially covering the subject matter of Section 1542.

9. **Representations and Warranties**. Jomboy represents and warrants to Trustee that it is not aware of any third-party or organization claiming to have or having any interest in any claim against the Bankruptcy Estate released by hereunder and Jomboy it is the sole owner and holder of the claims released herein. Additionally, Jomboy and Trustee represent and warrant to each other that they have not assigned, hypothecated, or otherwise transferred any interest in the claims and causes of action resolved by this Agreement. Jomboy represents and warrants to Trustee that it is not aware of any third party or organization which has asserted or may assert a claim or lien against the proceeds of the settlement memorialized by this Agreement, other than the creditors of the Bankruptcy Estate (i.e., Jomboy is not providing encumbered funds to the Bankruptcy Estate). Trustee represents and warrants that he is authorized to release all claims against Jomboy held by the Bankruptcy Estate, including any claim that Benja Incorporated or EPHE Corporation may have had against Jomboy prior to commencement of the bankruptcy proceedings.

10. **No Admission of Liability**. Nothing in this Agreement shall constitute or be construed as an admission of liability on behalf of Trustee or Jomboy, or their respective agents, affiliates, assigns, parents, successors, subsidiaries, and/or successors, or an admission as to the validity of the allegations asserted by the Parties in the course of their negotiations. It is also understood and agreed to by the Parties that this Agreement does not constitute an order or finding of any violation of law related to fraudulent, manipulative, or deceptive conduct.

11. **Voluntary Agreement/Attorney Representation**. The Parties represent that in the execution and negotiation of this Agreement, they are represented by counsel of their choice and that said attorneys advised their respective clients with respect to the advisability of making the settlement and release provided herein and of executing this Agreement; or if they are not represented by counsel, that they had the opportunity to consult legal counsel of their own selection and the decision not to be represented by counsel is a decision that the Parties have freely made. The Parties further represent and warrant that they are fully aware of the terms contained in this Agreement, made any desired changes, and have voluntarily and without coercion, duress, or undue influence of any kind, entered into this Agreement and the documents executed in connection with this Agreement.

12. **Entire Agreement**. This Agreement constitutes the sole and entire agreement between the Parties and supersedes all prior and contemporaneous statements, promises, understandings or agreements, whether written or oral.

13. **Amendments**. This Agreement may be amended, modified or altered at any time

kpb

5

upon the approval of the Parties; however, any such amendment must be in writing and signed by all Parties in order for such amendment to be of any force and effect.

      14. **Partial Invalidity**. In the event that any provision of this Agreement is declared by any court of competent jurisdiction or any administrative judge to be void or otherwise invalid, all of the other terms, conditions and provisions of this Agreement shall remain in full force and effect to the same extent as if that part declared void or invalid had never been incorporated in the Agreement and in such form, the remainder of the Agreement shall continue to be binding upon the Parties.

      15. **Survival**. All representations and warranties contained herein shall survive the execution and delivery of this Agreement, and the execution and delivery of any other document or instrument referred to herein.

      16. **Applicable Law**. This Agreement shall be subject to and governed by the laws of the State of California, without regard to conflict of law rules.

      17. **Attorneys' Fees and Costs**. In the event of a dispute regarding this Agreement and/or its terms, the prevailing party in such dispute is entitled to reasonable attorneys' fees and costs, upon approval of same by the Court. Unless otherwise provided in this Agreement, each of the Parties has agreed to bear his or its own attorneys' fees and costs with respect to the Bankruptcy Case, and all claims made therein, and the preparation of any and all documents necessary to enter into this Agreement.

      18. **Counterparts**. This Agreement may be signed and executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one Agreement. Delivery of an executed counterpart of a signature page of this Agreement by facsimile or email shall be effective as delivery of an originally executed counterpart of this Agreement.

      19. **No Adverse Construction**. The Parties acknowledge that this Agreement has been prepared by each of them through counsel. In the event any part of this Agreement is found to be ambiguous, such ambiguity shall not be construed against any Party.

      20. **Agreement is Not Evidence**. This Agreement shall not be used as evidence in any proceeding other than one to enforce this Agreement, or one seeking damages arising from a breach of this Agreement.

      21. **Authority**. The Parties represent and warrant to each other that each is the sole and lawful owner of all right, title, and interest in and to every claim and other matter which each releases in this Agreement. In the event that such representation is false, and any such claim or matter is asserted against either Party by anyone who is the assignee or transferee of such a claim or matter, then the Party who assigned or transferred such claim or matter shall fully indemnify, defend, and hold harmless the Party against whom such claim or matter is asserted and its successors from and against such claim or matter.

22. **Further Assurances**. The Parties shall perform such further acts and things and execute and deliver such additional agreements, powers and instruments, as may reasonably be required or reasonably deem advisable to carry into effect the purposes of this Agreement.

23. **Jury Waiver**. TO THE FULLEST EXTENT PERMITTED UNDER CALIFORNIA LAW, THE PARTIES HEREBY IRREVOCABLY WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT.

24. **Choice of Forum; Personal Jurisdiction**. Subsequent to the Effective Date, the Parties agree that any claim or dispute between them regarding the enforcement or interpretation of this Agreement must be resolved by the Court. The Parties expressly submit to the personal jurisdiction of the Court for the purpose of litigating all such claims and disputes and consent to the Court's authority to enter a final judgment with respect to this Agreement and all related matters.

**[THE REMAINDER OF THIS PAGE INTENTIONALLY BLANK.
SIGNATURE PAGE(S) TO FOLLOW.]**

**BY SIGNING BELOW, THE PARTIES ACKNOWLEDGE THAT THEY HAVE READ AND UNDERSTAND THE TERMS OF THIS AGREEMENT AND EXPRESSLY CONSENT THERETO.**

The Parties have executed this Agreement as of the date(s) set forth below.

DATED: _____

**BENJA INCORPORATED**

By: *Kyle Everett*
Kyle Everett (Jan 5, 2024 17:08 PST)
Name: Kyle Everett
Title: Chapter 7 Trustee of the Benja Bankruptcy Estate

DATED: _____

**JOMBOY CORP.**

By: *Courtney Hirsch*
Name:
Title:

**APPROVED AS TO FORM**:

DATED: January 5, 2024

**FINESTONE HAYES LLP**

By: *Kimberly S. Fineman*
Name: Kimberly S. Fineman, Attorneys for the Chapter 7 Trustee of the Benja Bankruptcy Estate

DATED: _____

**GREENBERG GLUSKER FIELDS CLAMAN & MACHTINGER LLP**

By: *Keith Patrick Banner*
Keith Patrick Banner (Jan 8, 2024 10:01 PST)
Keith Patrick Banner
Attorneys for Jomboy Corp.

8

# Settlement Agreement and Release Benja-Jomboy vf

Final Audit Report 2024-01-09

| | |
|---|---|
| Created: | 2024-01-06 |
| By: | Kimberly Fineman (kfineman@fhlawllp.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAmH5hpYcgwaHmkKPBH9b2oVgMTzO4XCec |

## "Settlement Agreement and Release Benja-Jomboy vf" History

- Document created by Kimberly Fineman (kfineman@fhlawllp.com)
  2024-01-06 - 0:19:46 AM GMT

- Document emailed to keverett@dsiconsulting.com for signature
  2024-01-06 - 0:22:26 AM GMT

- Email viewed by keverett@dsiconsulting.com
  2024-01-06 - 1:08:06 AM GMT

- Signer keverett@dsiconsulting.com entered name at signing as Kyle Everett
  2024-01-06 - 1:08:52 AM GMT

- Document e-signed by Kyle Everett (keverett@dsiconsulting.com)
  Signature Date: 2024-01-06 - 1:08:54 AM GMT - Time Source: server

- Document emailed to Keith Banner (kbanner@greenbergglusker.com) for signature
  2024-01-06 - 1:08:55 AM GMT

- Email viewed by Keith Banner (kbanner@greenbergglusker.com)
  2024-01-08 - 5:58:44 PM GMT

- Signer Keith Banner (kbanner@greenbergglusker.com) entered name at signing as Keith Patrick Banner
  2024-01-08 - 6:01:24 PM GMT

- Document e-signed by Keith Patrick Banner (kbanner@greenbergglusker.com)
  Signature Date: 2024-01-08 - 6:01:26 PM GMT - Time Source: server

- Document emailed to Courtney Hirsch (courtney@jomboymedia.com) for signature
  2024-01-08 - 6:01:28 PM GMT

Adobe Acrobat Sign

Email viewed by Courtney Hirsch (courtney@jomboymedia.com)
2024-01-09 - 5:51:36 PM GMT

Document e-signed by Courtney Hirsch (courtney@jomboymedia.com)
Signature Date: 2024-01-09 - 5:52:04 PM GMT - Time Source: server

Agreement completed.
2024-01-09 - 5:52:04 PM GMT

Adobe Acrobat Sign