**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re | Case No. 20-30819 DM |
| | Chapter 7 |
| BENJA INCORPORATED, | |
| | **NOTICE AND OPPORTUNITY** |
| Debtor. | **FOR HEARING ON CHAPTER 7** |
| | **TRUSTEE'S MOTION TO** |
| | **APPROVE COMPROMISE OF** |
| | **CONTROVERSY WITH JOMBOY** |
| | **CORP.** |
| | |
| | [No Hearing Unless Requested; Filed Pursuant to B.L.R. 9014-1(b)(3)] |

**TO THE DEBTOR, CREDITORS, THE OFFICE OF THE UNITED STATES TRUSTEE, AND PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that Kyle Everett, Chapter 7 Trustee (the "Trustee") of the bankruptcy estate (the "Bankruptcy Estate") of Benja Incorporated (the "Debtor"), has filed a Chapter 7 Trustee's Motion to Approve Compromise of Controversy with Jomboy Corp. (the "Motion"), pursuant to Bankruptcy Code section 105, Bankruptcy Rule 9019(a), and Local Bankruptcy Rule 9014-1(b)(3). The Motion seeks entry of an order approving the settlement agreement (the "Settlement Agreement") reached between the Trustee, on the one hand, and Jomboy Corp. dba Jomboy Media ("Jomboy"), on the other hand. The Motion is supported by the points and authorities set forth therein and summarized below, this Notice and Opportunity for Hearing, the supporting Declaration of Kyle Everett filed under seal (the "Everett Declaration"), and the proof of service. This Notice summarizes the dispute, the terms of the proposed compromise, and the procedure for filing an objection, if any. Anyone who would like a copy of the Motion should contact Kimberly S. Fineman to request a copy: (415) 209-5027; kfineman@fhlawllp.com.

The Settlement Agreement resolves avoidable transfer claims asserted by Trustee against Jomboy in return for a net settlement payment of $200,000. All potential claims between the Bankruptcy Estate and Jomboy are also released, except those arising from the Settlement Agreement. Payment of the $200,000 will be made in installments, with the first installment of not less than $50,000 payable within 10 days of the entry of a final order approval this Motion and the final installment to be received before the end of calendar year. The Settlement Agreement is subject to, and conditioned upon, Bankruptcy Court approval.

**BACKGROUND**

Benja Incorporated ("Benja" or the "Debtor") was ostensibly an e-commerce advertising startup founded by Andrew Chapin ("Chapin") in 2014.

Jomboy is a multimedia sports and entertainment company started by James O'Brien in 2017.

On October 15, 2020, Chapin caused the Debtor to file a Chapter 11 bankruptcy case (the "Bankruptcy Case"). The Court granted a motion to appoint a Chapter 11 trustee in the Bankruptcy Case on October 26, 2020. Trustee was appointed as the Chapter 11 Trustee on November 3, 2020. On January 29, 2021, the Bankruptcy Case was converted to Chapter 7 and Trustee was appointed as Chapter 7

-1-

On or about November 23, 2020, Chapin was arrested and charged in federal court with multiple counts of fraud in connection with a multi-million-dollar scheme to deceive the Debtor's investors and creditors. On June 16, 2021, Chapin pled guilty to bank fraud, wire fraud, and securities fraud.

Trustee alleges that between June and October 2018, Chapin purported to invest in Jomboy using accounts he also used for Benja, from funds allegedly sourced from Benja's investors (the "Transfers"). Trustee further alleges that Chapin purported to have Jomboy repurchase his investment in Jomboy post-petition in December 2020. Accordingly, Trustee has informally asserted several claims against Jomboy to avoid and recover the Transfers and avoid the repurchase transaction pursuant to sections 548, 549 and 550 of the Bankruptcy Code. Trustee estimates the current value of the Transfers arising from this investment would be between $310,000 and $340,000.

Jomboy vigorously denies the claims asserted. Jomboy insists it did not know nor should have known that Benja's assets were purportedly used to fund Chapin's investment; and that any transactions with Chapin were arm's length transactions made in good faith for value. Trustee and Jomboy entered into extensive negotiations regarding the asserted claims and potential defenses.

On November 30, 2023, Trustee and Jomboy filed a stipulation to participate in the Bankruptcy Dispute Resolution Program ("BDRP") for the Northern District of California. On December 18, 2023, the parties participated in a BDRP mediation (the "Mediation"). The parties reached a settlement at the Mediation, which was memorialized by the Settlement Agreement dated January 9, 2024.

## SETTLEMENT AGREEMENT TERMS

As set forth more fully in the Settlement Agreement, the key terms of the Settlement Agreement, which is subject to this Court's approval, are as follows:

- **Settlement Payment**. Jomboy will pay to Trustee the total sum of $200,000 (the "**Settlement Payment**"), as follows:
  - $50,000, within 10 calendar days of the Effective Date, and
  - The $150,000 balance paid, at Jomboy's option, in three (3) or four (4) installments of not less than $37,500 each due within ninety (90) days of the prior payment due date (with the first installment due ninety (90) days from the date the initial payment set forth above is due), provided that any remaining balance of the Settlement Payment must be paid in full and received by Trustee by no later than 11:59 p.m. prevailing Pacific Time on December 31, 2024.

  Each installment of the Settlement Payment shall be made by wire transfer.

- **Mutual Release**. The Bankruptcy Estate and Jomboy mutually release each other from all claims and obligations except those under the Settlement Agreement.

- **No admission of liability**. Nothing in the Settlement Agreement shall constitute or be construed as an admission of liability.

- **Settlement Agreement Conditioned Upon Bankruptcy Court Approval.** The Settlement Agreement is conditioned upon the approval of the Bankruptcy Court. The Parties agree to a waiver of the 14-day stay as set forth in Bankruptcy Rule 6004 with respect to the effectiveness of the Order.

Case: 20-30819    Doc# 197    Filed: 01/22/24    Entered: 01/22/24 14:43:28    Page 2 of 5

## LEGAL ARGUMENT

By his Motion, the Trustee seeks approval of the Settlement Agreement pursuant to Bankruptcy Code § 105(a), B.L.R. 9014-1(b)(3), and Bankruptcy Rule 9019(a), which provides:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.

"The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986); *cert. den. sub nom Martin v. Robinson*, 479 U.S. 854 (1986). The bankruptcy court has great latitude in approving compromise agreements. *Woodson v. Fireman's Fund Insurance Co.* (*In re Woodson*), 839 F.2d 610, 620 (9th Cir. 1988). However, the court's discretion is not unlimited. The court may approve a compromise only if it is "fair and equitable." *A & C Properties* at 1381. In approving a proposed compromise in bankruptcy proceedings, the court must consider:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* at 1381 (citations omitted).

"It is not necessary to satisfy each of these factors provided that the factors as a whole favor approving the settlement." *In re Pacific Gas & Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004). The Court's role in considering a proposed compromise is "to canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Id.* at 417 citing *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496-97 (Bankr. S.D.N.Y. 1991). Although the Trustee bears the burden of persuasion, "a court generally gives deference to a trustee's business judgment in deciding whether to settle a matter." *Goodwin v. Mickey Thompson Entm't. Group, Inc.* (*In re Mickey Thompson Entm't Group, Inc.*), 292 B.R. 415, 420 (9th Cir. BAP 2003).

For the reasons stated below, the Trustee believes in his reasonable business judgment that the Settlement Agreement fulfills the *A & C Properties* factors. Everett Declaration, ¶ 20. As set forth below, the most significant of the *A & C Properties* factors supporting approval of the settlement are the uncertainty of litigation and significant expense, inconvenience, and delay in collection that would be created absent approval of the Settlement Agreement.

## Probability of Success

Trustee's probability of establishing the potential claims against Jomboy is moderately high, but not without potential risk. Trustee is confident the Transfers to Jomboy are easily traceable to funds received in the bank accounts used by Benja as investments in Benja. The only inflow of funds to the bank accounts at issue was from Benja investors. However, the bank accounts used by Benja were, at the time of the Transfers, in Chapin's name. Further, the investment made by Chapin was not for shares in Jomboy, but for a right to purchase future shares, which further complicates the value of the investment and whether the estate can recover the same. To recover the investment, Trustee would have to establish: (1) the rights arising from the investment belong to the Bankruptcy Estate and not Chapin, (2) the Bankruptcy Estate should recover more than the initial cash amount used to invest, but rather the value of the investment, (3) the repurchase of the investment is avoidable under either Bankruptcy or California state law and (4) one of the triggering events for the issuance of shares has, in fact, occurred.

This is a substantial burden of proof to meet, even with the overwhelming evidence that Chapin used Benja as a Ponzi scheme. Case law provides a presumption of actual fraud when, as here, there is a criminal plea establishing

Case: 20-30819   Doc# 197   Filed: 01/22/24   Entered: 01/22/24 14:43:28   Page 3 of 5

the elements of a Ponzi scheme and when the transfers were made in the course of such Ponzi scheme. *Santa Barbara Capital Mgmt v. Neilson (In re Slatkin)*, 525 F.3d 805, 814 (9th Cir. 2008); see *Kasolas v. Nicholson (In re Fox Ortega Enterprises, Inc.)*, 631 B.R. 425 (Bankr. N.D. Cal. 2021). Despite this presumption, however, Trustee still bears the burden of establishing that the transfers made to Jomboy were part of any Ponzi scheme orchestrated by Chapin. *Fox Ortega* at 449-50, 456. The recovery of the Transfers is not the typical type of transfer avoided in a Ponzi scheme case. Jomboy isn't an investor in Benja who received a later partial payout at the expense of other creditors. In fact, Jomboy isn't a creditor of the Bankruptcy Estate at all. Absent settlement, both factual and legal issues would be at issue. Thus, this factor favors approval of the Settlement Agreement.

**Difficulty of Collection**
The difficulty of collection element also weighs in favor of approving the Settlement Agreement. Although the liquidity of Jomboy's shares might be challenging, there is no evidence to suggest that Jomboy would be unable to pay a monetary judgment against it in the range of maximum values estimated by Trustee. Jomboy is a Delaware corporation with its headquarters and principal assets in New York City metropolitan area. To collect on any judgment entered by this Court, Trustee would have to domesticate the judgment, which would require additional costs and delay in recovery for the Bankruptcy Estate.

**Complexity of Litigation, Expense, Inconvenience, and Delay**
This factor weighs slightly in favor of approval of the Settlement Agreement. Trustee believes this matter could be immediately set for trial, without the need for further discovery by Trustee. Although there are both legal and factual disputes, Trustee believes the facts presented are relatively straight forward. Trustee estimates that it would require at least $50,000 in attorneys' fees and costs, and at least 6 months, to reach a judgment against Jomboy on the potential claims. Jomboy estimates that its vigorous defense of the alleged claims would result in substantially more delay and significantly more costs to the Bankruptcy Estate if this matter were brought to trial. In return for a discount on the larger potential litigation recovery, the Bankruptcy Estate avoids significant additional expense and will receive an immediate payment of $50,000, with the balance in measured installments before the year's end.

**Paramount Interest of Creditors**
Trustee believes the paramount interest of creditors factor is neutral. Any recovery from Jomboy, whether through the Settlement Agreement or through an ultimate judgment, would directly benefit the Bankruptcy Estate. Jomboy has no current claim against the Bankruptcy Estate and, under the Settlement Agreement, would further release all potential claims against the Bankruptcy Estate. While the recovery might be greater if the matter was litigated, there would also be substantial offsetting costs to such litigation. Rather than incur at least $50,000 in attorneys' fees in costs to pursue the claims, the Settlement Agreement results in the Bankruptcy Estate's realization of $200,000 in unencumbered funds without the need for the costs and uncertainty of litigation.

In summary, the Trustee submits the Settlement Agreement is fair and equitable, within the range of reasonableness, and, in the Trustee's reasonable business judgment, in the best interest of the Estate.

## WAIVER OF RULE 6004(h) AND RELATED STAY PROVISIONS
The Motion also requests that the order granting the Motion provide: "This Order is effective upon entry, and the stay otherwise imposed by Rule 62(a) of the Federal Rules of Civil Procedure and/or Bankruptcy Rule 6004(h) shall not apply."

Case: 20-30819    Doc# 197    Filed: 01/22/24    Entered: 01/22/24 14:43:28    Page 4 of 5

**PLEASE TAKE FURTHER NOTICE** that Local Rule 9014-1 of United States Bankruptcy Court for the Northern District of California prescribes the procedures to be followed with respect to any objection to the proposed settlement or any request for hearing thereon.

Any objection to the requested relief, or a request for hearing on the matter, must be filed and served upon the initiating party within 21 days of mailing the notice;

Any objection or request for a hearing must be accompanied by any declarations or memoranda of law any requesting party wishes to present in support of its position;

If there is no timely objection to the requested relief or a request for hearing, the court may enter an order granting the relief by default.

In the event of a timely objection or request for hearing, the initiating party will give at least seven days written notice of the hearing to the objecting or requesting party, and to any trustee or committee appointed in the case.

Any objection or request for hearing should be served on the undersigned and filed with the Clerk of the Bankruptcy Court no later than February 13, 2024.

Dated: January 22, 2024                    FINESTONE HAYES LLP

*/s/ Kimberly S. Fineman*
Kimberly S. Fineman
Attorneys for Kyle Everett, solely in his capacity as
Chapter 7 Trustee of the Benja Incorporated bankruptcy
estate

Kimberly S. Fineman (184433)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Tel. (415) 209-5027
Fax (415) 398-2820
kfineman@fhlawllp.com

Case: 20-30819    Doc# 197    Filed: 01/22/24    Entered: 01/22/24 14:43:28    Page 5 of 5