Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
Kimberly S. Fineman (184433)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Tel. (415) 616-0466
Fax (415) 398-2820
jhayes@fhlawllp.com

Attorneys for Chapter 7 Trustee
Kyle Everett

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| In re | Case No. 20-30819-DM |
|---|---|
| BENJA INCORPORATED, | Chapter 7 |
| Debtor. | **CHAPTER 7 TRUSTEE'S MOTION TO APPROVE COMPROMISE OF CONTROVERSY WITH BUSEY BANK** |
| | [No Hearing Unless Requested; Notice and Opportunity for Hearing Filed Pursuant to B.L.R. 9014-1(b)(3)] |

      Kyle Everett, Chapter 7 Trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Benja Incorporated (the "Debtor"), files this motion (the "Motion"), pursuant to section 105(a), Bankruptcy Rule 9019(a), and B.L.R. 9014-1(b)(3) [1] for entry of an order approving the stipulation (ECF 204, the "Stipulation") reached between the Trustee, on the one hand, and Busey Bank ("Busey"), on the other hand. The Stipulation resolves a claim dispute between the Trustee

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, and "B.L.R." references are to the Bankruptcy Local Rules for the Northern District of California. "ECF" references are to the docket in the above-captioned bankruptcy case.

MOTION TO APPROVE COMPROMISE      1

and Busey. Busey filed a secured proof of claim in the sum of $5,035,579.96 (Claim No. 1, the "Busey Claim"), based on prepetition loans it made to Benja Incorporated (the "Debtor"). Busey made the loan to the Debtor based on false representations made via Andrew Chapin, who was the Debtor's criminal founder. As filed, the Busey Claim did not include prepetition default interest and attorneys' fees to which Busey was entitled under the loan documents.

In communications with Busey, the Trustee informally objected to the secured nature of the Busey proof of claim, other than as to $123,000, which is the approximate sum of cash in Debtor's bank account as of the petition date. As to the remainder of Busey's proof of claim, the Trustee contended that it was unsecured, because the only remaining assets in the estate were the proceeds from avoidable transfer litigation claims, as to which the Trustee contends Busey's security interest did not extend. Busey disputed this contention. Busey further disagreed with the Trustee's position that investor claims should be treated pari passu with creditor claims. *See* ECF 193, *Trustee's Motion to Compromise Controversy with SEC*.

The Stipulation resolves all disputes between the Trustee and Busey. The Stipulation further provides that no one, including the Trustee, may object to the amended proof of claim to be filed by Busey in accordance with the Stipulation.

The Motion is supported by the points and authorities set forth below, the concurrently filed Notice and Opportunity for Hearing, the supporting Declaration of Kyle Everett (the "Everett Declaration"), and the related proof of service.

**I.   BACKGROUND**

Debtor was ostensibly an e-commerce advertising startup founded by Andrew Chapin ("Chapin") in 2014. On October 15, 2020 (the "Petition Date"), Mr. Chapin caused Debtor to file a Chapter 11 bankruptcy case (the "Bankruptcy Case"). ECF No. 1. The Court granted a motion to appoint a Chapter 11 trustee in the Bankruptcy Case on October 26, 2020. ECF Nos. 19 and 26. Mr. Everett was appointed as the Chapter 11 Trustee on November 3, 2020. ECF No. 45. Everett Declaration, ¶1.

On October 30, 2020, Busey timely filed a secured proof of claim in the sum of $5,035,579.96, exclusive of prepetition default interest and prepetition attorneys' fees, which

Busey reserved the right to add. Proof of Claim No. 1 (the "Busey Claim", Rider to Busey Claim, ¶¶8, 9; ECF No. 88, ¶8). The Busey Claim is based on prepetition promissory notes (together, the "Loan") with the Debtor, which were secured by blanket liens on the Debtor's assets pursuant to a UCC-1 financing statement Busey filed with the Delaware Secretary of State on or about July 19, 2019. The Loan provides that false statements under the Loan are an event of default, and that, in the event of default, "the interest rate on this Note shall be increased by adding an additional 5.000 percentage point margin". Busey Claim Rider, Exhibit 1. The Loan also includes an attorneys' fees provision. *Id.*

On or about November 23, 2020, Mr. Chapin was arrested and charged in federal court with multiple counts of fraud in connection with a multi-million-dollar scheme to deceive the Debtor's investors and creditors (the "Criminal Case"). Everett Declaration, ¶7.

On January 15, 2021, Mr. Everett, then acting as the Chapter 11 Trustee, moved to convert the case to Chapter 7. ECF No. 67. On January 29, 2021, the Bankruptcy Case was converted to Chapter 7 and Mr. Everett was appointed as Chapter 7 Trustee. ECF Nos. 85, 86. Everett Declaration, ¶1.

On June 16, 2021, Mr. Chapin pled guilty in the Criminal Case to bank fraud, wire fraud, and securities fraud (the "Plea Agreement"). Everett Declaration, ¶7. The Plea Agreement, which is lengthy, provides, *inter alia*, as follows:

> During the relevant time period (June 2019 through September 2020), I looked for additional investors and credit lines for Benja. I told creditors and prospective investors that Benja generated $6,200,000 and $13,200,000 in revenue in 2018 and 2019, respectively, and had signed large contracts with numerous well-known companies including Nike, Fanatics, Patagonia, and Backcountry, to place advertisements for their excess inventory. In truth, I knew that my representations to creditors and investors were false, as I had fabricated Benja's revenue and did not have contracts with any of these companies. **To perpetuate the fraud scheme, beginning in June of 2019 and continuing until August of 2019, I made a series of false statements to Busey Bank to secure lines of credit totaling $5,000,000** (emphasis added).

(Adv. Proc. 21-03036, ECF 22, Exhibit F, Plea Agreement pp.3:23-4:5). Based on the Plea Agreement, it is undisputed that Chapin made false statements to Busey to secure the Loan and that Busey is thus entitled to default interest under the Loan. Everett Declaration, ¶8. It is also

MOTION TO APPROVE COMPROMISE 3
Case: 20-30819 Doc# 206 Filed: 03/13/24 Entered: 03/13/24 14:14:29 Page 3 of 8

undisputed that Busey is entitled to attorneys' fees and costs under the Loan, based on the Loan's contractual provision authorizing Busey same. Everett Declaration, ¶8. Busey asserts that, prepetition, the amount of default interest owed to Busey under the Loan totals $134,706.55 and the attorneys' fees and expenses to which Busey is entitled under the Loan total $65,136.98, and Busey provided proof to the Trustee of these calculations. *Id.*

The Trustee asserts that the Busey Claim is only secured by the approximately $123,000 that was in Benja's bank account as of the Petition Date, and that the proceeds generated during the case from litigation are not subject to Busey's lien. Busey disputes this. Everett Declaration, ¶5.

The Trustee has filed a Motion to Approve Compromise of Controversy with the Securities and Exchange Commission, which seeks to allow the claims of investors of the Debtor pari-passu with the claims of creditors of the Debtor, and which is scheduled for hearing on March 15, 2024. ECF No. 193. Absent the Stipulation, Busey would have objected to the Trustee's SEC Motion. Everett Declaration, ¶¶5,9.

## II. STIPULATION TERMS

As set forth more fully in the Stipulation,[2] the key terms of the Stipulation are as follows:

- Busey shall file an amended proof of claim in the sum of $5,234,843.53 (the "Amended Busey Claim") which shall be deemed allowed, as follows, upon entry of an order approving this stipulation pursuant to a Rule 9019 motion that the Trustee shall file:
    i. a secured claim in the sum of $123,000; and
    ii. a nonpriority general unsecured claim in the sum of $5,111,843.53, comprised of $4,912,000 owing on the Loan; $134,706.55 in default interest; and $65,136.98 in attorneys' fees and expenses.
- Busey shall not object to the SEC Motion.

---

[2] If there is a discrepancy between this Motion and the Stipulation, the Stipulation shall control.

- No one, including the Trustee, may object to the Amended Busey Claim, so long as it conforms to the terms of the Stipulation.

### III. LEGAL ARGUMENT

By this Motion, the Trustee seeks approval of the Stipulation pursuant to Bankruptcy Code § 105(a), B.L.R. 9014-1(b)(3), and Bankruptcy Rule 9019(a), which provides:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.

"The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986); *cert. den. sub nom Martin v. Robinson*, 479 U.S. 854 (1986). The bankruptcy court has great latitude in approving compromise agreements. *Woodson v. Fireman's Fund Insurance Co.* (*In re Woodson*), 839 F.2d 610, 620 (9th Cir. 1988). However, the court's discretion is not unlimited. The court may approve a compromise only if it is "fair and equitable." *A & C Properties* at 1381. In approving a proposed compromise in bankruptcy proceedings, the court must consider:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* at 1381 (citations omitted).

"It is not necessary to satisfy each of these factors provided that the factors as a whole favor approving the settlement." *In re Pacific Gas & Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004). The Court's role in considering a proposed compromise is "to canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Id.* at 417 citing *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496-97 (Bankr. S.D.N.Y. 1991). Although the Trustee bears the burden of persuasion, "a court generally gives deference to a trustee's business judgment in deciding whether to settle a matter." *Goodwin v. Mickey*

*Thompson Entm't. Group, Inc. (In re Mickey Thompson Entm't Group, Inc.),* 292 B.R. 415, 420 (9th Cir. BAP 2003).

For the reasons stated below, the Trustee believes in his reasonable business judgment that the Stipulation fulfills the *A & C Properties* factors. Everett Declaration at ¶ 10.

### A. Probability of Success

The probability of success factor favors approval of the Stipulation. Everett Declaration, ¶11. The Trustee's probability of successfully objecting to the secured nature of the Busey Claim, other than as to the amount secured by the cash in the estate's bank account as of Petition Date, is high. *Id.* The Loan Documents do not support a security interest in the estate's litigation claims. *Id.* However, objecting to the secured nature of the Busey Claim would take time and money, and be opposed by Busey, requiring motion practice and one or more hearings. *Id.* The same holds true for defending against Busey's would-be objection to the Trustee's motion to treat the investors pari passu with the estate's creditors. *Id.* For the reasons set forth in the Trustee's motion re same (ECF 193, the "SEC Motion"), the Trustee believes that the law favors paying investors and creditors pari passu, under the particular factors of this case, in which the SEC is entitled to damages against the Debtor for its violations of securities laws, but yet the SEC is willing to withdraw its claim in exchange for pari passu payment of investors and creditors. Everett Declaration, ¶11. Absent the Stipulation, Busey would have objected to the SEC Motion, and the estate would have borne the attorneys' fees and delay related to filing a reply brief and attending one or more hearings on the SEC Motion. *Id.* There is no binding law that would have governed that dispute, and it is unclear how the Court would have ruled, had the SEC Motion been litigated, instead of unopposed. *Id.*

On balance, the Trustee believes that the probability-of-success factor favors approval of the Stipulation, particularly given that the Stipulation means that the SEC Motion is now unopposed.[3] Everett Declaration at ¶11.

---

[3] The deadline to file opposition to the Motion was March 1, 2024, and no opposition was filed by Busey or otherwise. As to Busey, the reason for its non-opposition was the Stipulation reached between Busey and the Trustee.

### B. Difficulty of Collection

The difficulty of collection element does not apply. Everett Declaration, ¶12.

### C. Complexity of Litigation, Expense, Inconvenience, and Delay

This factor favors approval of the Stipulation. Absent the Stipulation, and as set forth in greater default above, the Trustee would object to the secured nature of the Busey Claim, and Busey would have objected to the Trustee's SEC Motion. Although the Trustee is confident that the estate would prevail, at least as to the secured nature of the Busey Claim, the litigation would cause, at a minimum, expense and delay. If the SEC Motion had been litigated, it is unclear how the Court would have ruled, given the absence of binding law on the issue. The Trustee believes that the estate has the better side of the argument; however, ultimately the Court would rule. In the absence of binding law, the outcome of that ruling is uncertain. Everett Declaration, ¶13.

### D. Paramount Interest of Creditors

This factor also favors approval of the Stipulation. The Stipulation resolves the parties' disputes, in exchange for Busey amending its Claim to add default interest and attorneys' fees to which it is unambiguously entitled under the Loan Documents. Everett Declaration, ¶14.

In summary, the Trustee submits the Stipulation is fair and equitable and, in the Trustee's reasonable business judgment, in the best interest of the Estate. *Id.* at ¶ 15.

### IV. WAIVER OF RULE 6004(h) AND RELATED STAY PROVISIONS

The Trustee requests that the order approving compromise provide: "This Order is effective upon entry, and the stay otherwise imposed by Rule 62(a) of the Federal Rules of Civil Procedure and/or Bankruptcy Rule 6004(h) shall not apply."

### V. CONCLUSION

For the reasons stated above, the Trustee requests entry of an order granting his Motion and approving the Stipulation, which is filed on the Docket as ECF 204.

| | | |
|---|---|---|
| 1 | Dated: March 13, 2024 | **FINESTONE HAYES LLP** |
| 2 | | |
| 3 | | |
| 4 | | By: *Jennifer C. Hayes* |
| | | Jennifer C. Hayes, on behalf of Kyle Everett, |
| 5 | | solely in his capacity as Chapter 7 Trustee of the Benja bankruptcy estate |