UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

In re

BENJA INCORPORATED,

Debtor.

Case No. 20-30819 DM
Chapter 7

**NOTICE AND OPPORTUNITY FOR HEARING ON CHAPTER 7 TRUSTEE'S MOTION TO APPROVE COMPROMISE OF CONTROVERSY WITH BUSEY BANK**

[No Hearing Unless Requested; Filed Pursuant to B.L.R. 9014-1(b)(3)]

**TO THE DEBTOR, CREDITORS, THE OFFICE OF THE UNITED STATES TRUSTEE, AND PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that Kyle Everett, Chapter 7 Trustee (the "Trustee") of the bankruptcy estate (the "Estate") of Benja Inc. (the "Debtor"), has filed a Motion to Approve Compromise of Controversy (the "Motion") with Busey Bank ("Busey"), pursuant to Bankruptcy Code section 105, Bankruptcy Rule 9019(a), and Local Bankruptcy Rule 9014-1(b)(3). The Motion, which seeks entry of an order approving the stipulation, ECF 204 (the "Stipulation"), reached between the Trustee and Busey, is supported by this Notice, the points and authorities set forth in the accompanying Motion and summarized below, the Declaration of Kyle Everett, and a proof of service. This Notice summarizes the dispute, the terms of the proposed compromise, and the procedure for filing an objection, if any. Anyone who would like a copy of the Motion and/or the Everett Declaration should contact Jennifer C. Hayes to request a copy: (415) 616-0466; jhayes@fhlawllp.com.

The Stipulation resolves a claim dispute between the Trustee and creditor Busey. Busey filed a secured proof of claim in the sum of $5,035,579.96 (the "Busey Claim"), based on prepetition loans it made to the Debtor. Busey made the loans based on false representations made via Andrew Chapin, who was the Debtor's criminal founder. As filed, the Busey Claim did not include prepetition default interest and attorneys' fees to which Busey was entitled under the loan documents. The Trustee informally objected to the secured nature of the Busey Claim, other than as to $123,000, which was the approximate sum of cash in Debtor's bank account as of the petition date. As to the remainder of the Busey Claim, the Trustee contended that it was unsecured, because the only remaining assets in the estate were proceeds from avoidable transfer litigation claims, as to which the Trustee contends Busey's security interest did not extend. Busey disputed this contention. Busey further disagreed with the Trustee's position that investor claims should be treated pari passu with creditor claims. The Stipulation resolves all disputes between the Trustee and Busey. The Stipulation further provides that no one, including the Trustee, may object to the amended proof of claim to be filed by Busey in accordance with the Stipulation.

**BACKGROUND**

Debtor was ostensibly an e-commerce advertising startup founded by Andrew Chapin in 2014. On October 15, 2020 (the "Petition Date"), Debtor filed a Chapter 11 bankruptcy case (the "Bankruptcy Case"). The Court granted a motion to appoint a Chapter 11 trustee in the Bankruptcy Case on October 26, 2020. Mr. Everett was appointed as the Chapter 11 Trustee on November 3, 2020.

On October 30, 2020, Busey timely filed its secured Claim in the sum of $5,035,579.96, exclusive of prepetition default interest and prepetition attorneys' fees, which Busey reserved the right to add. The Busey Claim is based on prepetition promissory notes (together, the "Loan") with the Debtor, which were secured by blanket liens on the Debtor's assets pursuant to a UCC-1 financing statement filed with the Delaware Secretary of State on or about July 19, 2019. The Loan provides that false statements under the Loan are an event of

default, and that, in the event of default, "the interest rate on this Note shall be increased by adding an additional 5.000 percentage point margin". The Loan also includes an attorneys' fees provision.

On or about November 23, 2020, Mr. Chapin was arrested and charged in federal court with multiple counts of fraud in connection with a multi-million-dollar scheme to deceive the Debtor's investors and creditors (the "Criminal Case"). On January 15, 2021, Mr. Everett, then acting as the Chapter 11 Trustee, moved to convert the case to Chapter 7. On January 29, 2021, the Bankruptcy Case was converted to Chapter 7 and Mr. Everett was appointed as Chapter 7 Trustee.

On June 16, 2021, Mr. Chapin pled guilty in the Criminal Case to bank fraud, wire fraud, and securities fraud (the "Plea Agreement"). The Plea Agreement, which is lengthy, provides, *inter alia*, as follows:

> I told creditors and prospective investors that Benja generated $6,200,000 and $13,200,000 in revenue in 2018 and 2019, respectively, and had signed large contracts with numerous well-known companies. . . . In truth, I knew that my representations to creditors and investors were false, as I had fabricated Benja's revenue and did not have contracts with any of these companies. **To perpetuate the fraud scheme, beginning in June of 2019 and continuing until August of 2019, I made a series of false statements to Busey Bank to secure lines of credit totaling $5,000,000** (emphasis added).

Based on the Plea Agreement, it is undisputed that Chapin made false statements to Busey to secure the Loan and that Busey thus is entitled to default interest under the Loan. It is also undisputed that Busey is entitled to attorneys' fees and costs under the Loan, based on the Loan's contractual provision authorizing Busey same. Busey provided the Trustee proof that, prepetition, the amount of default interest owed to Busey under the Loan totals $134,706.55 and the attorneys' fees and expenses to which Busey is entitled under the Loan total $65,136.98. As set forth above, the Trustee asserts that the Busey Claim is only secured by the cash that was in Benja's bank account as of the Petition Date, and that the proceeds generated during the case from litigation are not subject to Busey's lien. Busey disputes this. In addition, the Trustee had filed a Motion to Approve Compromise of Controversy with the Securities and Exchange Commission, which seeks to allow the claims of investors of the Debtor pari-passu with the claims of creditors of the Debtor, and which is scheduled for hearing on March 15, 2024. ECF No. 193. Absent the Stipulation with the Trustee, Busey would have objected to the SEC Motion.

## STIPULATION TERMS

As set forth more fully in the Stipulation (ECF 204), the key terms of the Stipulation are as follows:
- Busey shall file an amended proof of claim in the sum of $5,234,843.53 (the "Amended Busey Claim") which shall be deemed allowed, as follows, upon entry of an order approving the stipulation pursuant to the Trustee's Rule 9019 motion:
    i. a secured claim in the sum of $123,000; and
    ii. a nonpriority general unsecured claim in the sum of $5,111,843.53, comprised of $4,912,000 owing on the Loan; $134,706.55 in default interest; and $65,136.98 in attorneys' fees and expenses.
- Busey shall not object to the SEC Motion.
- No one, including the Trustee, may object to the Amended Busey Claim, so long as it conforms to the terms of the Stipulation.

## LEGAL ARGUMENT

By his accompanying Motion, the Trustee seeks approval of the Stipulation pursuant to Bankruptcy Code § 105(a), B.L.R. 9014-1(b)(3), and Bankruptcy Rule 9019(a), which provides: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." "The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating

sharply contested and dubious claims." *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986); *cert. den. sub nom Martin v. Robinson*, 479 U.S. 854 (1986). The bankruptcy court has great latitude in approving compromise agreements. *Woodson v. Fireman's Fund Insurance Co.* (*In re Woodson*), 839 F.2d 610, 620 (9th Cir. 1988). However, the court's discretion is not unlimited. The court may approve a compromise only if it is "fair and equitable." *A & C Properties* at 1381. In approving a proposed compromise in bankruptcy proceedings, the court must consider: "(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *Id.* at 1381 (citations omitted). "It is not necessary to satisfy each of these factors provided that the factors as a whole favor approving the settlement." *In re Pacific Gas & Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004). The Court's role in considering a proposed compromise is "to canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Id.* at 417 citing *In re Drexel Burnham Lambert Group, Inc*., 134 B.R. 493, 496-97 (Bankr. S.D.N.Y. 1991). Although the Trustee bears the burden of persuasion, "a court generally gives deference to a trustee's business judgment in deciding whether to settle a matter." *Goodwin v. Mickey Thompson Entm't. Group, Inc.* (*In re Mickey Thompson Entm't Group, Inc.),* 292 B.R. 415, 420 (9th Cir. BAP 2003).

For the reasons stated below, the Trustee believes in his reasonable business judgment that the Stipulation fulfills the *A & C Properties* factors.

**Probability of Success**
The probability of success factor favors approval of the Stipulation. The Trustee's probability of successfully objecting to the secured nature of the Busey Claim, other than as to the amount secured by the cash in the estate's bank account as of the Petition Date, is high. The Loan Documents do not support a security interest in the estate's litigation claims. However, objecting to the secured nature of the Busey Claim would take time and money, and be opposed by Busey, requiring motion practice and one or more hearings. The same holds true for defending against Busey's objection to the Trustee's motion to treat the investors pari passu with the estate's creditors. For the reasons set forth in the Trustee's motion re same (ECF 193, the "SEC Motion"), the Trustee believes that the law favors paying investors and creditors pari passu, under the particular factors of this case. Absent the Stipulation, however, Busey would have objected to the SEC Motion, and the estate would have borne the attorneys' fees and delay related to filing a reply brief and attending hearing(s) on the SEC Motion. There is no binding law that governing that dispute, and it is unclear how the Court would have ruled, had the SEC Motion been litigated, instead of unopposed. On balance, the Trustee believes that the probability-of-success factor favors approval of the Stipulation, given that the Stipulation means that the SEC Motion is now unopposed.

**Difficulty of Collection**
The difficulty of collection element does not apply.

**Complexity of Litigation, Expense, Inconvenience, and Delay**
This factor favors approval of the Stipulation. Absent the Stipulation, and as set forth in greater default above, the Trustee would object to the secured nature of the Busey Claim, and Busey would object to the Trustee's SEC Motion. Although the Trustee is confident that the estate would prevail, the litigation would cause expense and delay.

**Paramount Interest of Creditors**
This factor also favors approval of the Stipulation. The Stipulation resolves the parties' disputes, in exchange for Busey amending its Claim to add default interest and attorneys' fees to which it is unambiguously entitled under the Loan Documents. In summary, the Trustee submits the Stipulation is fair and equitable and, in the Trustee's reasonable business judgment, in the best interest of the Estate.

## WAIVER OF RULE 6004(h) AND RELATED STAY PROVISIONS

The Motion also requests that the order granting the Motion provide: "This Order is effective upon entry, and the stay otherwise imposed by Rule 62(a) of the Federal Rules of Civil Procedure and/or Bankruptcy Rule 6004(h) shall not apply."

**PLEASE TAKE FURTHER NOTICE** that Local Rule 9014-1 of United States Bankruptcy Court for the Northern District of California prescribes the procedures to be followed with respect to any objection to the proposed settlement or any request for hearing thereon.

> Any objection to the requested relief, or a request for hearing on the matter, must be filed and served upon the initiating party within 21 days of mailing the notice;
>
> Any objection or request for a hearing must be accompanied by any declarations or memoranda of law any requesting party wishes to present in support of its position;
>
> If there is no timely objection to the requested relief or a request for hearing, the court may enter an order granting the relief by default.
>
> In the event of a timely objection or request for hearing, the initiating party will give at least seven days written notice of the hearing to the objecting or requesting party, and to any trustee or committee appointed in the case.

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court's website provides information regarding how to arrange a telephonic or video appearance. If you have questions regarding how to appear at a court hearing, you may contact the Bankruptcy Court by calling 888-821-7606 or by using the Live Chat feature on the Bankruptcy Court's website.

**PLEASE TAKE FURTHER NOTICE** that as of January 1, 2005, electronic filing became mandatory in the United States Bankruptcy Court for the Northern District of California. Those persons who may wish to object but are not qualified to filed documents electronically with the Bankruptcy Court should check with the Bankruptcy Court's website (www.canb.uscourts.gov) for guidance.

Dated: March 13, 2024          FINESTONE HAYES LLP

*Jennifer C. Hayes*
Jennifer C. Hayes (197252)
Attorneys for Chapter 7 Trustee of the Benja Bankruptcy Estate