Stephen D. Finestone (125675)
Jennifer C. Hayes (197252)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, 20th Floor
San Francisco, California 94104
Tel. (415) 616-0466
Fax (415) 398-2820
sfinestone@fhlawllp.com

Attorneys for Chapter 7 Trustee,
Kyle Everett

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>BENJA INCORPORATED,<br><br>    Debtor. | Case No. 20-30819-DM<br><br>Chapter 7<br><br>**THIRD AND FINAL FEE APPLICATION OF COUNSEL FOR THE CHAPTER 7 TRUSTEE**<br><br>Date:  TBD<br>Time: TBD<br>Place: In Person or Zoom<br>      450 Golden Gate Avenue, 16th Floor<br>      San Francisco, CA<br><br>Please check www.canb.uscourts.gov for additional details regarding how to participate by Zoom |

Finestone Hayes LLP ("Applicant"), attorneys of record for Kyle Everett, Chapter 7 Trustee of the above-captioned bankruptcy estate, files its Third and Final Fee Application for compensation and expense reimbursement and in support thereof represents as follows:

## I.

## <u>INTRODUCTION</u>

1.     **Debtor:** Benja Incorporated ("Benja" or the "Debtor") is a Delaware Corporation that filed for Chapter 11 bankruptcy relief on October 15, 2020 (the "Petition Date").

2.     **Appointment of Trustee**: The Trustee was appointed as the Chapter 11 trustee

THIRD AND FINAL FEE APPLICATION

on November 3, 2020.  The Chapter 11 case was converted to Chapter 7 on January 29, 2021, and the Trustee was appointed as Chapter 7 Trustee.

3.      **Counsel Employment:** On November 18, 2020, the Court entered an Order Authorizing Employment of Counsel (Finestone Hayes LLP) authorizing Applicant to serve as the Trustee's counsel in the Chapter 11 bankruptcy estate (ECF 59).  On September 7, 2022, the Court entered an order authorizing the employment of Trustee's counsel in the Chapter 7 bankruptcy case, retroactive to the date of conversion from Chapter 11 to Chapter 7.  (ECF 115, 117).

4.      **Prior Compensation:** On September 30, 2022, the Court entered an order approving Applicant's First Interim Fee Application in the sum of $313,777.50 in fees and $7,563.87 in expenses (ECF 133).  Applicant has been paid in full on its First Interim Fee Application.  On October 6, 2023, the Court entered an order approving Applicant's Second Interim Fee Application in the sum of $154,043 in fees and $2,069.10 in expenses (ECF 185). Applicant has been paid in full on its Second Interim Fee Application.  The fees as to which Applicant sought and obtained approval for payment on an interim basis related to services concerning the estate's successful prosecution of litigation claims against third parties.  By this Third and Final Fee Application, Applicant requests final approval of these fees and expenses previously approved by the Court on an interim basis.

5.      **Current Compensation:** During the course of representing the Trustee for the period of November 9, 2020 through April 29, 2026, Applicant performed the services described in this Application, for which it seeks compensation, and in the time summaries attached to the Declaration of Jennifer C. Hayes in support of the Third and Final Fee Application.  Applicant also incurred the actual and necessary expenses itemized in the billing and expense summary attached to the Declaration of Jennifer C. Hayes in Support of the Third and Final Fee Application.

6.      **Compliance with Guidelines:**  Except as otherwise expressly stated, Applicant is in compliance with the Guidelines for Compensation and Expense Reimbursement of Professionals and Trustees (the "Guidelines").   Lexis searches and expenses for which

Case: 20-30819    Doc# 228    Filed: 05/01/26    Entered: 05/01/26 14:48:38    Page 2 of 20

compensation are sought are charged at cost to the Applicant. The hourly rates charged by Applicant generally are no less favorable than those rates charged for non-court appointed services, and in fact are materially lower than Applicant's current hourly rates.

7. **2016 Compensation Statement:** Applicant has not agreed to share any compensation awarded with any other person and the source of any award authorized will be estate funds.

8. **Project Billing:** In order to comply with the Court's guidelines regarding project billing, Applicant created categories for project billing purposes, which are identified on Applicant's time summaries attached to the Declaration. Applicant seeks fees in this Third and Final Fee Application in the following categories: (i) 341; (ii) 2004; (iii) 2004 – Goode (Assets 2); (iv) Admin; (v) Assets; (vi) Claims; (vii) Complaint (DIP loan); (x) Creditor Issues; (xi) Discovery MHC ESI; (xii) Discovery; (xiii) Discovery BB; (xiv) Discovery MHC (turnover); (xv) Employment; (xvi) Fee Application; (xvii) Investigation; (xviii) Litigation - Peters; (xviiii) Litigation; (xx) Mediation; (xxi) Motion; (xxii) Motion - MHC (Motion 3); (xxiii) Motion 6; (xxiv) Preference; (xxv) Relief from Stay; (xxvii) Settlement; (xxviii) UST; and (xxviiii) Taxes. The total unpaid fees are set forth in the attached spreadsheet, submitted here as "Exhibit C." As the two prior fee applications included Exhibits A and B, this submission is designated as Exhibit C to maintain consistency and clarity. Exhibit C reflects all *unpaid* fees to date, including amounts previously listed in Exhibits A and B that remain outstanding. Attached as Exhibits D, E, and F are additional invoices, containing the back-up detail for the time entries in Exhibit C. Given that there have been two interim fee applications, which sought time for matters as to which successful results had been achieved, rather than all matters in the invoice at issue, Applicant has amassed all unpaid time entries and entered them individually into Exhibit C, by time entry number, date, timekeeper, time spent, and amount. As to categories for which Applicant seeks compensation, and which are in excess of the $20,000 category-limits generally established by the Guidelines, Applicant asserts that further breakdown of such categories is impracticable, in light of the extensive services required in connection with the prosecution of the estate's valuable and complex litigation claims against MHC and Mr. Peters, and the estate's

THIRD AND FINAL FEE APPLICATION

litigation claim against Mr. Weiner.

9. **Funds on Hand:** Funds on hand are as set forth in the Trustee's Final Report.

## II.

## <u>BACKGROUND</u>

Benja was a San Francisco-based e-commerce startup company founded by Andrew Chapin, who served as Benja's CEO from its founding until at least September 2020. Benja held itself out as a successful company that had agreements with various retailers such as Backcountry, Columbia Sportswear, Fanatics, New Balance, Nike, Patagonia, and Zappos, to drive consumer traffic to purchase goods from the retailers, with Benja ostensibly to be compensated based on the number of impressions by consumers of Benja's advertising. Chapin falsely represented to creditors and investors that Benja generated millions of dollars in revenue and had large contracts with numerous well-known national companies to place advertisements for their excess inventory. In a plea agreement in his criminal case, Chapin admitted that Benja had no such contracts with or revenue from these companies. Chapin also admitted to forging contracts, fabricating or altering documents that reflected revenue, using falsified documents, impersonating corporate representatives, or causing their impersonation, to create the appearance of business relationships and profitmaking opportunities that did not exist in order to obtain additional financing.

Chapin sought out loans and investors for Benja, from which Chapin obtained funds to use for his personal expenses and benefit, to pay obligations that arose from earlier fraudulent transactions, and to conceal Benja's ongoing fraud. Other than *de minimis* legitimate business transactions, Chapin operated Benja as a fraudulent scheme wherein Benja made payments to creditors and earlier investors from the proceeds of later, fraudulently obtained loans and investments, rather than from profits of the putative underlying business venture. This pattern of using new money from later fraudulent transactions to fund the fulfillment of earlier obligations constitutes a Ponzi scheme. Benja's payments to creditors and investors, including Mr. Buerck, related entities, and MHC, were pursuant to a Ponzi scheme and not related to any legitimate business transaction, because in fact no such legitimate profitmaking business existed.

THIRD AND FINAL FEE APPLICATION

Benja incurred obligations for the purpose of acquiring funds necessary for the continuation of the fraud. Benja made transfers to creditors and investors with the purpose of concealing the ongoing fraud, to lull investors, creditors, and customers into a false sense that Benja was a legitimate business, to cause lenders and investors to continue to send money to Benja, and to prevent the Defendants and other lenders and investors from commencing legal action and/or complaining to law enforcement authorities.

The estate's principal assets are litigation claims against creditors and investors, all of which have been settled and finally resolved.

## III.

## SERVICES RENDERED[1]

**A.     341**

The services involved extensive handling of a Section 2004 examination related to claims against Peters and coordination with multiple parties including counsel for Peters, Chapin, and the client. Tasks performed included reviewing and drafting the 2004 application, numerous emails and telephone calls for coordination and discussion of the examination process, preparation for and participation in the 2004 examination of Chapin, document review and production to opposing counsel, and review of financial documents such as bank statements. Applicant engaged in ongoing communication and strategy sessions with counsel and the client throughout the process.

In performing these services, Applicant spent 1.2 hours and believes $630.00 in fees is reasonable compensation therefor. The time entries related to these services are summarize in Exhibit C to the accompanying Hayes Declaration, with the backup detail in Exhibits D, E, and/or F.

---

[1] As to categories for which Applicant seeks compensation, and which are in excess of the Guidelines for the Northern District of California, which generally limit categories to $20,000, Applicant asserts that further breakdown of such categories is impracticable, in light of the extensive services required in connection with the prosecution of the estate's valuable and complex litigation claims against MHC.

THIRD AND FINAL FEE APPLICATION

Case: 20-30819     Doc# 228     Filed: 05/01/26     Entered: 05/01/26 14:48:38     Page 5 of 20

**B.     2004**

Applicant drafted a 2004 application with respect to Mr. Peters and the estate's litigation claims against him and communicated with the Trustee and with counsel for Mr. Peters re same.  Applicant also communicated with Mr. Peters' counsel regarding Mr. Peters' document production, and Applicant reviewed estate documents in advance of receiving Mr. Peters' document production.  Applicant produced documents to Mr. Peters and reviewed documents in advance of Mr. Peters' 2004 examination.

In performing these services, Applicant spent 6.9 hours and believes $3,622.50 in fees is reasonable compensation therefor.  The time entries related to these services are summarize in Exhibit C to the accompanying Hayes Declaration, with the backup detail in Exhibits D, E, and/or F.

**C.     2004-Goode (Assets 2)**

The work performed included coordinating with Counsel for Goode to rearrange the 2004 examination and address document production through emails and phone calls. Applicant had various communications with Counsel for Goode regarding document production, followed by an initial document review. Applicant further reviewed documents from Goode, preparing for the 2004 examination, and holding multiple conferences with the Trustee and Erevshare to discuss strategy and logistics. The preparation concluded with assembling exhibits necessary for the examination.

In performing the aforementioned services, Applicant spent 25 hours and believes $13,506 in fees is reasonable compensation therefor.  The time entries related to these services are summarize in Exhibit C to the accompanying Hayes Declaration, with the backup detail in Exhibits D, E, and/or F.

**D.     Admin**

Applicant engaged in email correspondence regarding case administration and participated in internal communications concerning various matters. Applicant also conducted conference calls to update litigation targets and discuss the status of subpoenas. In addition, Applicant drafted notices, sent follow-up emails, and performed substantive legal work

THIRD AND FINAL FEE APPLICATION

including drafting and reviewing motions and declarations, as well as reviewing additional email correspondence relevant to the case.   Applicant also reviewed financial statements, schedules, criminal complaints, and various correspondence, drafted and amended creditor matrices, attended meetings and status conferences, communicated with third parties such as litigation service providers, conducted legal research on bond issues and criminal referrals. Throughout, Applicant engaged in frequent communications with the client, opposing counsel, and service providers to manage case logistics, settlement negotiations, billing, and compliance with procedural requirements.

In performing the above services, Applicant spent 42.9 hours and believes $20,303.50 in fees is reasonable compensation therefor.   The time entries related to these services are summarize in Exhibit C to the accompanying Hayes Declaration, with the backup detail in Exhibits D, E, and/or F.

Added with the time in the Admin Category from the First Interim Fee Application ($0) and the Second Interim Fee Application (8.8 hours, $4,697), the total amount in the Admin category is $25,000.50 across all three Fee Applications, which is approximately 3.0% of the total fees and expenses sought in all three Fee Applications ($824,024.24), which complies with the 15% cap in the Guidelines on fees in this category.

**E.     Assets**

Applicant engaged in a range of legal and administrative activities in support of the estate, including drafting and finalizing correspondence related to the return of payments and recovery of transfers. Applicant participated in a conference call concerning potential claims against brokers, updates on 2004 examinations, and other related matters. Additional efforts included reviewing and responding to correspondence, conducting telephone calls regarding estate claims, and drafting demand letters for the recovery of transfers. Applicant also performed legal research concerning statutes of limitations and potential causes of action, and participated in meetings focused on evaluating possible litigation strategies.

In performing the above services, Applicant spent 10 hours and believes $5,362 in fees is reasonable compensation therefor.   The time entries related to these services are summarize in

THIRD AND FINAL FEE APPLICATION

7

Case: 20-30819    Doc# 228    Filed: 05/01/26    Entered: 05/01/26 14:48:38    Page 7 of 20

Exhibit C to the accompanying Hayes Declaration, with the backup detail in Exhibits D, E, and/or F.

**F.     Claims**

Applicant engaged in reviewing recently filed claims and corresponded with Trustee regarding the Chapter 7 claims. Applicant further reviewed correspondence from counsel concerning payment of administrative claims and drafted, revised, and finalized a letter to counsel for M. Reilly concerning a Chapter 11 administrative claim and demand for payment. This involved further coordination with Trustee through emails and phone calls, revising W-2 documentation, and finalizing the response to M. Reilly's counsel. Applicant conducted legal research related to potential claims arising from these matters and participated in discussions with Trustee regarding both M. Reilly's claim and property issues raised by A. Chapin. Additional work included reviewing and analyzing emails from Trustee regarding subpoenas to trace stock purchases by A. Chapin, updating the action item and subpoena list accordingly, and reviewing related correspondence. Applicant also reviewed communications concerning A. Chapin's new business venture and revised potential estate claims and related work product, including materials concerning Benja board compensation. Finally, Applicant exchanged emails with counsel for Kema Partners/Inverness in connection with a demand for return of payment.

In performing the above services, Applicant spent 24.4 hours and believes $11,935 in fees is reasonable compensation therefor.  The time entries related to these services are summarize in Exhibit C to the accompanying Hayes Declaration, with the backup detail in Exhibits D, E, and/or F.

**G.     Complaint (DIP Loan)[2]**

Applicant participated in telephone calls to gather background information for the Jomboy complaint and reviewed discovery productions and related records in preparation for

---

[2] This title was an available category in Applicant's billing software.  Given the number of complaints filed in this case, as claims were the estate's principal asset, Applicant availed itself of this category to comply with Local Guidelines regarding category amount limitations, even though the complaint at issue does not relate to a DIP loan.

THIRD AND FINAL FEE APPLICATION

8

Case: 20-30819   Doc# 228   Filed: 05/01/26   Entered: 05/01/26 14:48:38   Page 8 of 20

drafting the adversary complaint. Applicant began drafting the complaint, conducted research into Jomboy's corporate history and capitalization for inclusion in the allegations, and engaged in internal communications regarding the complaint's status. The draft was subsequently revised based on further analysis. Applicant corresponded with Trustee to discuss recommended litigation strategy and participated in a conference call with them regarding the draft complaint. Additional efforts included a telephone conference with counsel for Jomboy concerning the draft adversary complaint and extension of the tolling agreement, reviewing the order approving the stipulation to extend the agreement, and analyzing the terms of a stipulated protective order in anticipation of filing. Applicant also drafted and finalized a transmittal letter to P. Banner and S. Stein enclosing the draft Jomboy complaint.

In performing the above services, Applicant spent 23.9 hours and believes $11,008 in fees is reasonable compensation therefor. The time entries related to these services are summarize in Exhibit C to the accompanying Hayes Declaration, with the backup detail in Exhibits D, E, and/or F.

**H.      Creditor Issues**

This category contains time regarding communications with counsel for Busey Bank, counsel for Empowerment, and the SEC concerning investor claims and related issues.  The work involved comprehensive management and analysis of creditor issues over an extended period. Key activities included reviewing and analyzing SAFE agreements, frequent communications with various creditor representatives and counsel (notably for Busey Bank, Empowerment, SEC, and other creditors), coordinating and participating in conference calls, and addressing claim and notice-related matters. Applicant conducted legal research on priority, subordination, and potential denial of claims—especially concerning SEC claims, investor claims, and employee claims linked to a Ponzi scheme.  Applicant drafted, revised, and finalized multiple legal documents such as stipulations to dismiss adversary proceedings, 9019 settlements and motions, declarations, and correspondence related to claims resolution and mediation efforts. Applicant also engaged in ongoing settlement negotiations, analyzed distribution spreadsheets and tax implications, and coordinated with the client and opposing counsel regarding case status updates.

THIRD AND FINAL FEE APPLICATION

Overall, the work reflected extensive efforts to manage creditor claims, mediate disputes, and facilitate resolution consistent with applicable law.

In performing the above services, Applicant spent 56.5 hours and believes $30,512.50 in fees is reasonable compensation therefor[3]. The time entries related to these services are summarize in Exhibit C to the accompanying Hayes Declaration, with the backup detail in Exhibits D, E, and/or F.

**I.  Discovery MHC ESI**

This category concerns discovery-related matters, including review of an email from UnitedLex regarding e-discovery services and invoice, as well as internal communications regarding a motion for approval of payment for those services.

In performing the above services, Applicant spent 0.1 hours and believes $56 in fees is reasonable compensation therefor. The time entries related to these services are summarize in Exhibit C to the accompanying Hayes Declaration, with the backup detail in Exhibits D, E, and/or F.

**J.  Discovery**

This category concerns services provided by Applicant in connection with discovery matters arising in the case. Applicant provided extensive discovery activities from early 2021 through mid-2024. The tasks included discussing case background and upcoming document reviews, reviewing and analyzing large volumes of discovery documents, communicating with opposing counsel regarding document production, drafting and prosecuting subpoenas to financial institutions, payment platforms, and other third parties, and researching service addresses and corporate records to properly issue subpoenas. Applicant also negotiated protective orders and stipulations related to document productions. Applicant evaluated compliance with discovery demands and followed up on failures to respond or produce the required documents. Applicant reviewed and analyzed transcripts and supplementary

[3] While this category does exceed the $20,000 cap set forth in the Guidelines for the Northern District of California, Applicant asserts that further breakdown is impracticable due to the extensive and complex services rendered in connection with this category.

THIRD AND FINAL FEE APPLICATION

Case: 20-30819   Doc# 228   Filed: 05/01/26   Entered: 05/01/26 14:48:38   Page 10 of 20

document productions from various witnesses.  Applicant managed e-discovery processes, including hosting, archiving, and transfer of documentary evidence.  Applicant communicated with the client, various opposing counsel, and discovery service providers throughout the discovery process.

In performing the above services, Applicant spent 143.8 hours and believes $64,862.50 in fees is reasonable compensation therefor[4].  The time entries related to these services are summarize in Exhibit C to the accompanying Hayes Declaration, with the backup detail in Exhibits D, E, and/or F.

**K.** **Discovery – BB**

This category concerns discovery-related matters, including correspondence with J. Zagajeski regarding the executed acknowledgement of the protective order stipulation with BlockFi.

In performing the above services, Applicant spent 0.1 hours and believes $45 in fees is reasonable compensation therefor.  The time entries related to these services are summarize in Exhibit C to the accompanying Hayes Declaration, with the backup detail in Exhibits D, E, and/or F.

**L.** **Discovery – MHC (Turnover)**

This category concerns discovery-related matters, including emails with counsel for UMB regarding document production and related communication with the client.  Applicant also participated in a telephone call regarding the background for discovery requests in the MHC Financial adversary proceeding and reviewed emails concerning document productions.

In performing the above services, Applicant spent 0.6 hours and believes $295.50 in fees is reasonable compensation therefor.  The time entries related to these services are summarize in Exhibit C to the accompanying Hayes Declaration, with the backup detail in Exhibits D, E, and/or F.

---

[4] While this category does exceed the $20,000 cap set forth in the Guidelines for the Northern District of California, Applicant asserts that further breakdown is impracticable due to the extensive and complex services rendered in connection with extensive discovery related to evaluation and prosecution of the estate's valuable litigation claims.

THIRD AND FINAL FEE APPLICATION

11

Case: 20-30819   Doc# 228   Filed: 05/01/26   Entered: 05/01/26 14:48:38   Page 11 of 20

**M.      Employment**

This category concerns services related to the employment of estate professionals, including tax advisors and a private investigator.  Applicant's work included drafting and revising employment applications, supporting declarations, and proposed orders, as well as communicating with the Trustee, tax professionals, and other parties regarding the status and timely filing of employment-related documents.  Applicant drafted, reviewed, and revised multiple employment applications, declarations, and related documents for various professionals and consultants, including Applicant's employment application as counsel for the Chapter 7 trustee, an ESI consultant (UnitedLex), a private investigator, tax professionals, and other vendors. The attorneys engaged in extensive communication with the client and third parties regarding employment agreements, amendments to applications, and revisions to supporting documents.  Applicant also drafted and lodged orders approving the employment applications.  The services provided included telephone calls, emails, drafting and revising applications, orders, declarations, proof of service, and drafting an errata associated with these employment matters.

In performing the above services, Applicant spent 18.4 hours and believes $8,197 in fees is reasonable compensation therefor.  The time entries related to these services are summarize in Exhibit C to the accompanying Hayes Declaration, with the backup detail in Exhibits D, E, and/or F.

**N.      Fee Application**

This category concerns services related to the preparation and review of interim and final fee applications, including drafting, revising, and assisting with supporting documents, conducting legal research regarding the treatment of administrative claims, analyzing billing records, and coordinating service and notice of hearing.

In performing the above services, Applicant spent 62.9 hours and believes $31,086.50 in fees is reasonable compensation therefor.  The time entries related to these services are summarize in Exhibit C to the accompanying Hayes Declaration, with the backup detail in Exhibits D, E, and/or F.

Case: 20-30819   Doc# 228   Filed: 05/01/26   Entered: 05/01/26 14:48:38   Page 12 of 20

The total time spent in this category for the First Interim, Second Interim, and Third and Final Fee Application is 62.9 hours, and the total amount is $31,086.50, which is 3.77% of the total compensation sought for all three fee applications ($824,024.24).

**O.  Investigation**

This category contains time related to the factual development of the estate's claims against Mr. Weiner, including reviewing extensive documents to determine the level of Mr. Weiner's alleged participation in the Ponzi scheme fraud, and researching anticipated factual defenses.  Applicant conducted a comprehensive investigation into potential litigation claims, which included internal communications among legal team members, emailing clients with updates on the status of the investigation, and researching potential litigation targets. The work also involved reviewing and responding to emails related to the investigation, drafting and revising memoranda addressing relevant litigation claims, and conducting both fact and legal research into additional potential claims. Applicant further performed document review and engaged in analysis of potential claims, evaluating their legal and factual viability to inform litigation strategy and client decision-making.

In performing the above services, Applicant spent 94.8 hours and believes $48,195 in fees is reasonable compensation therefor[5].  The time entries related to these services are summarize in Exhibit C to the accompanying Hayes Declaration, with the backup detail in Exhibits D, E, and/or F.

**P.  Lit – Peters**

The "Lit-Peters" category pertains to the litigation against Tom Peters, which resulted in settlement.  Services provided by the Applicant include revising the complaint, communicating with Mr. Peters' counsel regarding stipulating to amend the complaint, and drafting the first amended complaint and the stipulation re same. This category contains time related to communications with counsel for defendants and the client, including emails and

---

[5] While this category does exceed the $20,000 cap set forth in the Guidelines for the Northern District of California, Applicant asserts that further breakdown is impracticable due to the extensive and complex services rendered in connection with the prosecution of the estate's valuable litigation claims.

THIRD AND FINAL FEE APPLICATION

13

telephone calls discussing settlement options, settlement offers, and trial-related issues. Time was also spent analyzing settlement terms, reviewing and responding to counteroffers, and advising the client on strategic considerations. Additionally, this category includes reviewing and proposing revisions to draft settlement agreements and related correspondence, ensuring consistency with the client's objectives and legal positioning.

In performing the above services, Applicant spent 23.2 hours and believes $9,646 in fees is reasonable compensation therefor.  The time entries related to these services are summarize in Exhibit C to the accompanying Hayes Declaration, with the backup detail in Exhibits D, E, and/or F.

## Q.     Litigation

This category contains time related to the research and development of litigation claims and strategy, and discussions and drafting of various tolling agreements against multiple possible litigation targets (fiduciaries, employees, officers, and directors).   This category also contains discussions and analysis regarding the estate's claims against Mr. Weiner and communications with the Trustee regarding same.  The services provided included involved extensive litigation related to multiple matters including District Court litigation with the SEC, adversary proceedings, and disputes with various defendants, including Tom Peters, MHC, Chapin, and Jomboy.  Key activities included communications and negotiations with opposing counsel, drafting and reviewing complaints, motions, stipulations, protective orders, and court filings.  Applicant conducted legal research on claims such as fraudulent transfer and avoidance claims, transferee defenses, and related bankruptcy law issues.  Applicant prosecuted discovery matters including subpoenas and document productions, prepared for and attended status and settlement conferences, and engaged in settlement discussions and mediation.  A significant portion of the work focused on settlement negotiations and the drafting of related agreements and court motions, particularly concerning the Jomboy matter, including drafting mediation briefs, settlement agreements, motions for court approval, and related correspondence. Throughout, Applicant engaged in ongoing strategic planning, analysis, and coordination with the client regarding litigation status, claims evaluation, discovery strategy, and settlement

THIRD AND FINAL FEE APPLICATION

14

options.

In performing the above services, Applicant spent 106.3 hours and believes $49,501 in fees is reasonable compensation therefor[6]. The time entries related to these services are summarize in Exhibit C to the accompanying Hayes Declaration, with the backup detail in Exhibits D, E, and/or F.

**R.     Mediation**

This category concerns Applicant's final preparation for mediation, participation in the mediation, and related internal communications. Applicant engaged in emails regarding the SEC's position and the treatment of investor claims in the context of the mediation, and participated in additional internal communications regarding settlement offer terms and the status of the mediation. Applicant also reviewed the Jomboy mediation brief and related communications in preparation for mediation discussions.

In performing the above services, Applicant spent 12.0 hours and believes $6,676 in fees is reasonable compensation therefor.  The time entries related to these services are summarize in Exhibit C to the accompanying Hayes Declaration, with the backup detail in Exhibits D, E, and/or F.

**S.     Motion**

This category concerns review and revision of the 9019 motion regarding the SEC settlement, drafting the Trustee's declaration in support of the motion, and communicating with the Trustee and counsel regarding the same. Applicant also drafted the notice of hearing and coordinated service, reviewed applicable local procedures, and finalized the motion and supporting documents. Additionally, Applicant drafted a motion to convert the case, along with the supporting declaration, motion to shorten time, and related filings. Applicant prepared for and attended the hearing on the motion to convert and coordinated with the U.S. Trustee regarding the order and appointment of the Chapter 7 Trustee.

---

[6] While this category does exceed the $20,000 cap set forth in the Guidelines for the Northern District of California, Applicant asserts that further breakdown is impracticable due to the extensive and complex services rendered in connection with the prosecution of the estate's valuable litigation claims.

THIRD AND FINAL FEE APPLICATION

Case: 20-30819    Doc# 228    Filed: 05/01/26    Entered: 05/01/26 14:48:38    Page 15 of 20

In performing the above services, Applicant spent 13.7 hours and believes $7,486.50 in fees is reasonable compensation therefor. The time entries related to these services are summarize in Exhibit C to the accompanying Hayes Declaration, with the backup detail in Exhibits D, E, and/or F.

**T.        Motion 3 – MHC**

This category includes Applicant's work on the MHC 9019 motion, including drafting, reviewing, and revising the motion, supporting declarations, notice of hearing, and related documents. Applicant communicated extensively with Trustee, G. Gerstner, and B. Reed regarding the motion and supporting materials, including coordination on edits to declarations and preparation of supplemental filings. Applicant also reviewed and analyzed supporting spreadsheets, addressed service and filing issues, and prepared an errata and supplemental declaration in connection with the motion. Communications included emails and telephone calls to finalize the motion and supporting documents for filing and to ensure compliance with procedural requirements.

In performing the above services, Applicant spent 5.7 hours and believes $3,192 in fees is reasonable compensation therefor. The time entries related to these services are summarize in Exhibit C to the accompanying Hayes Declaration, with the backup detail in Exhibits D, E, and/or F.

**U.        Motion 6**

This category includes Applicant's services related to the second Peters motion and the Busey 9019 motion, including drafting, reviewing, and revising motions, declarations, and supporting documents for entry of orders by default. Applicant communicated with S. Finestone and Trustee regarding motion drafts, declarations, and related filings, and also finalized and filed relevant documents. Additionally, Applicant prepared a comfort order concerning the Peters compromise order and coordinated with the Trustee's team regarding supporting materials, including review of spreadsheets and related correspondence.

In performing the above services, Applicant spent 4.5 hours and believes $2,520 in fees is reasonable compensation therefor. The time entries related to these services are summarize

Case: 20-30819    Doc# 228    Filed: 05/01/26    Entered: 05/01/26 14:48:38    Page 16 of 20

in Exhibit C to the accompanying Hayes Declaration, with the backup detail in Exhibits D, E, and/or F.

**V.      Preference**

This category concerns Applicant's work related to potential preference claims, including drafting a memorandum regarding substantive consolidation and conducting related legal research. Applicant also reviewed a response letter from MHC concerning a settlement demand for avoidance claims and engaged in internal communications regarding MHC's asserted defenses to the preference claims and strategy for responding to the same.

In performing the above services, Applicant spent 2.6 hours and believes $1,105 in fees is reasonable compensation therefor.  The time entries related to these services are summarize in Exhibit C to the accompanying Hayes Declaration, with the backup detail in Exhibits D, E, and/or F.

**W.      Relief from Stay**

This category concerns Applicant's work related to automatic stay issues, including emails to A. Leitner regarding the stay's application to ongoing SEC litigation and a related research assignment. Applicant conducted legal research regarding potential violations of 11 U.S.C. § 362 and analyzed research prepared by A. Leitner addressing automatic stay implications in connection with the SEC lawsuit.

In performing the above services, Applicant spent 2.1 hours and believes $742.50 in fees is reasonable compensation therefor.  The time entries related to these services are summarize in Exhibit C to the accompanying Hayes Declaration, with the backup detail in Exhibits D, E, and/or F.

**X.      Settlement**

This category includes Applicant's review and analysis of settlement payment issues, including communications with Peters regarding reduced payment under the 9019 settlement and related terms and procedures. Applicant reviewed emails concerning nonpayment of the settlement and the Trustee's decision whether to seek judgment or accept a reduced amount and discussed resolution of the Busey objection. Additional time was spent reviewing the court's

THIRD AND FINAL FEE APPLICATION

Case: 20-30819   Doc# 228   Filed: 05/01/26   Entered: 05/01/26 14:48:38   Page 17 of 20

order approving the Jomboy settlement, analyzing payment due dates, and addressing potential defenses related to settlement payment issues.

In performing the above services, Applicant spent 3.7 hours and believes $2,072 in fees is reasonable compensation therefor. The time entries related to these services are summarize in Exhibit C to the accompanying Hayes Declaration, with the backup detail in Exhibits D, E, and/or F.

**Y.** **Taxes**

This category includes Applicant's communications with creditor and the Trustee regarding the status of the estate's tax returns and subsequent anticipated distribution to 2creditors, upon completion of the tax returns and filing and service of the estate's fee applications and Trustee's final report.

In performing the above services, Applicant spent 11.5 hours and believes $2,128 in fees is reasonable compensation therefor. The time entries related to these services are summarize in Exhibit C to the accompanying Hayes Declaration, with the backup detail in Exhibits D, E, and/or F.

**Z.** **UST**

This category includes communications with the U.S. Trustee and the client regarding the designation and absence of the responsible individual, as well as telephone calls addressing the impact of that absence on the meeting of creditors. Applicant drafted responses to inquiries from the U.S. Trustee and discussed these matters with the Trustee. Additionally, Applicant drafted a stipulation for conversion of the case and participated in a court call regarding the same, which included incurrence of a court appearance fee.

In performing the above services, Applicant spent 2.2 hours and believes $1,155 in fees is reasonable compensation therefor. The time entries related to these services are summarize in Exhibit C to the accompanying Hayes Declaration, with the backup detail in Exhibits D, E, and/or F.

**IV. REIMBURSEABLE EXPENSES**

Applicant seeks reimbursement of expenses in this Application totaling $10,729.77 for

THIRD AND FINAL FEE APPLICATION

Case: 20-30819   Doc# 228   Filed: 05/01/26   Entered: 05/01/26 14:48:38   Page 18 of 20

costs incurred in connection with this matter, as set forth in particularity in Exhibits C and D to the accompanying Hayes Declaration.  These expenses include court call fees, deposition costs, FedEx charges, filing fees, online legal research through LEXIS, mileage, photocopies, postage, service fees, transcript costs, and travel-related expenses.  All expenses are billed at Applicant's actual cost. Applicant charges $0.20 per page for any printing or copying services.

## V.  ESTABLISHMENT OF FEES AND EXPENSES

"A compensation award based on a reasonable hourly rate multiplied by the number of hours actually and reasonably expended is presumptively a reasonable fee." *In re Manoa Finance Company*, 853 F.2d. 687 (9th Cir. 1988). Establishing a reasonable hourly rate requires consideration of market rates in the relevant community which are, in turn, at least partly a function of the type of services rendered and the lawyer's experience, skill and reputation. Applicant's services in this matter were performed by partners Stephen D. Finestone, Jennifer C. Hayes and associates/contract attorneys Amy Leitner, Johnson Lee, Kimberly Fineman, and Ryan A. Witthans (now a partner).  The hourly rates for Mr. Finestone and Ms. Hayes during the Second Interim Application period were $525-$560 and the hourly rates for the associate and contract attorneys ranged from $350-$450.[7]

## VI.  CONCLUSION AND PRAYER

In performing the services described above, Applicant spent 890.3 hours performing services for the Trustee related to various litigation matters and incurred billable fees of **$335,841**.  Applicant presently seeks final allowance and payment of those fees as its reasonable compensation for its services, calculated on the basis of the hours and hourly rates listed in the billing records attached to the Declaration.  Applicant also requests final approval of the fee and expenses previously approved on an interim basis.

In performing its services during the same time period, Applicant incurred actual and necessary expenses of **$10,729.77**, as itemized in the expense itemization attached in summary form at the end of Exhibit C, with back-up detail at the end of Exhibits D, E, and/or F to the

---

[7] Applicant's current hourly rates for senior partners is $710 and $450-$635/hour for the Firm's other attorneys.

THIRD AND FINAL FEE APPLICATION

19

Case: 20-30819   Doc# 228   Filed: 05/01/26   Entered: 05/01/26 14:48:38   Page 19 of 20

accompanying Hayes Declaration.

Applicant submits that these efforts are properly compensable pursuant to *In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir. 1985).

Based on the foregoing, Finestone Hayes LLP requests that this Court authorize allowance of fees and costs as follows:

1. Allow on a final basis the First Interim Fee Application (ECF 133) and the Second Interim Fee Application (ECF 185) in the sums of:

    a. $313,777.50 in fees and $7,563.67 in expenses (First Interim Fee Application);

    b. $154,054 in fees and $2,069.10 in expenses (Second Interim Fee Application).

    c. The total amount of the above is $467,831.50 in fees and $9,632.77 in expenses for a total of $477,464.27.

    d. Including the fees and expenses in this Third and Final Fee Application

2. Allow final compensation in the Third and Final Fee Application for fees in the sum of **$335,841** plus expense reimbursement in the sum of **$10,729.77** for total final compensation of $340,799.77 for the specified services rendered by Applicant in the Third and Final Fee Application for the period from November 9, 2020 through April 29, 2026.

3. Authorize the Trustee to disburse to Finestone Hayes LLP the sum of **$346,570.77** representing those amounts noted in Paragraph 2 above.

4, Grant such other and further relief as may be appropriate under the circumstances.

Dated: May 1, 2026                FINESTONE HAYES LLP

/s/ Jennifer C Hayes
Jennifer C. Hayes
Attorneys for Kyle Everett, Chapter 7
Trustee

THIRD AND FINAL FEE APPLICATION

Case: 20-30819   Doc# 228   Filed: 05/01/26   Entered: 05/01/26 14:48:38   Page 20 of 20